UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION | MDL No. 1950<br><br>Master Docket No. 08-02516 (VM)(JCF) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF PLAINTIFF HAYWOOD COUNTY, TENNESSEE
IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL**

Plaintiff Haywood County, Tennessee ("Haywood County"), by and through its attorneys, respectfully submits this memorandum of law in support of its motion for the appointment of Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz") as interim lead counsel pursuant to Fed. R. Civ. P. 23 (g)(3), to represent the class plaintiffs in this consolidated action, along with such other lead counsel firms as the Court may find appropriate.

**I.**

**PRELIMINARY STATEMENT**

Pomerantz filed an action on behalf of plaintiff Haywood County in this District more than three months ago, on March 24, 2008, and succeeded on June 16, 2008 in achieving transfer of the related cases to this District under 28 U.S.C. §1407. As described in greater detail below, the Pomerantz firm is one of the nation's foremost specialists in corporate, securities, antitrust and ERISA class litigation. Declaration of J. Douglas Richards dated July 1, 2008 ("Richards Decl."), Exhibit A. For more than 70 years, the Firm has specialized in representing victims of securities fraud, breaches of fiduciary duty, corporate mismanagement, and price-fixing conspiracies. *Id.* As this Court previously noted, the Pomerantz firm is "experienced in

prosecuting class action cases, having done so on a number of occasions in the past." *In re Livent Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (Marrero, J.).

The Pomerantz partners who would lead the work in this case, J. Douglas Richards and Michael M. Buchman, have served as co-lead counsel in many other antitrust class actions in this District and elsewhere, including some of the most prominent and hard-fought antitrust class actions in this Circuit in recent years, such as *Twombly v. Bell Atl. Corp.*, 425 F.3d 99 (2d Cir. 2005), *rev'd*, *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007), *Billing v. Credit Suisse First Boston Ltd.*, 426 F.3d 130 (2d Cir. 2005), *rev'd*, *Credit Suisse Secs. (USA) LLC v. Billing*, ___ U.S. ___, 127 S.Ct. 2383 (2007) and *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002).

In recent weeks, Pomerantz has discussed with other plaintiffs' counsel the possibility of a joint leadership motion on behalf of all plaintiffs. However, actions previously taken by some of the plaintiffs' counsel in this case have introduced troubling complications into those efforts. Specifically, in September 2007 – approximately six months prior to the filing of any of the consolidated cases – the firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("CMHT") entered into a written agreement (the "CMHT Agreement") with defendant Bank of America Corporation ("Bank of America"). A copy of the CMHT Agreement is annexed as Exhibit B to the accompanying Richards Declaration. In that agreement CMHT agreed that in the event that Bank of America provides certain cooperation to CMHT, "each person or entity represented by" CMHT would waive the treble damages and joint and several liability provided for by the antitrust laws as to Bank of America – evidently including any class plaintiffs whom CMHT might represent if it were to be appointed as lead counsel. Since that time, to implement its private commitments to defendant Bank of America under the CMHT Agreement, CMHT and

various associated firms have filed distinct and somewhat different complaints against Bank of America and against the other Defendants, seeking only single damages against Bank of America. We respectfully submit that the CMHT Agreement raises questions which should be considered by the Court in appointing a leadership structure for the plaintiff class, much like the "justifiable suspicions" that Magistrate Judge Pohorelsky previously expressed with regard to CMHT's analogous conduct in *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y. 2006)(Mag. J.) (stating that "The CMHT Group . . . carries baggage which may interfere with the resolution of these actions," that "justifiable suspicions arise about the motivations underlying" CMHT's pre-complaint settlements, and that to appoint CMHT as a lead counsel might "promote[] an appearance that the defendants have influenced the selection of interim class counsel").

Under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), Pub. L. 108-237, a copy of which is annexed to the Richards Declaration as Exhibit C, the District Court in which antitrust litigation is pending may limit damages recoverable against an antitrust defendant who enters into an amnesty agreement with the Antitrust Division of the Department of Justice, pursuant to its Corporate Leniency Policy, in essentially the same fashion provided for by CMHT Agreement. However, ACPERA explicitly provides that whether to grant such relief to an amnesty applicant is to be decided by the District Court presiding in the relevant civil litigation -- not by plaintiffs' counsel. Equally importantly, by *explicitly excluding* "a State or a subdivision of a State" from ACPERA's definition of "claimant," Congress clearly made a legislative judgment in ACPERA that limitation of antitrust recoveries to single damages, of precisely the type that CMHT has purported to agree to here, is

*inappropriate* in an action by municipalities, counties or other state entities that are the primary plaintiffs in this case.

Furthermore, Paragraph 3 of the CMHT Agreement requires that Addendum B be executed by each client whom CMHT may act as counsel – a potentially very problematic requirement if CMHT were to serve as Co-Lead Counsel for the entire class since expensive, time consuming notice to all class members could be required. In paragraph 6 of its separate complaints against Bank of America, CMHT also asserts that Bank of America's "alleged wrongdoing occurred in a shorter period than was the case for its co-conspirators" -- a representation that seems to have been accepted by CMHT from Bank of America without the benefit of merits discovery from other defendants.

Whether it was appropriate for CMHT to enter into the CMHT Agreement with Bank of America is a complex issue, as to which Haywood County and Pomerantz express no definite opinion at this time. Instead, we submit that whether that agreement should be implemented and approved by this Court is a question that should be given careful consideration by lead counsel and duly briefed to the Court if necessary, after full deliberation with the benefit of additional information. Unfortunately, however, other plaintiffs' firms which evidently hope to apply for lead counsel positions in this case, including the firms of Boies Schiller & Flexner LLP and Susman & Godfrey LLP, are working closely with and appear to have shared with CMHT the information that was provided by Bank of America under the CMHT Agreement. If firms that have shared such information and worked closely with CMHT were to comprise a majority of the lead counsel group, it is difficult to see how an objective decision could be made whether to recommend that the Court approve the CMHT Agreement. Accordingly, Pomerantz respectfully submits that, as in *Air Cargo, supra,* at least a majority of any lead counsel group that the Court

might appoint should be comprised of well-qualified law firms, such as Pomerantz, that have not shared information with CMHT pursuant to the CMHT Agreement or been included on the complaints filed in this matter by CMHT. The Pomerantz firm's "performance in [*Livent* and other class actions in its more than seventy year history] indicate . . . that [it] is competent and capable of representing the putative class members vigorously and effectively" in this antitrust class action. *In re Livent Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002) (Marrero, J.).

## II.

## ARGUMENT

### A. Organization of Counsel Will Help to Ensure This Case is Efficiently Litigated.

Due to the complexity of this antitrust class action and the number of lawsuits involved, the appointment of interim lead counsel is warranted to promote efficiency and economy in the representation of all Plaintiffs. In complex cases such as this one, it is well-established that a district court judge may appoint lead counsel to coordinate the prosecution of the matter. *See, In re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774-75 (9th Cir. 1977); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1014-15 (5th Cir. 1977); *Farber v. Riker-Maxson Corp.*, 442 F.2d 457, 459 (2d Cir. 1971). Indeed, "it is almost standard practice for the court to issue an order at an early stage, defining the responsibilities of liaison and lead counsel and the organization of the plaintiffs' attorneys." H. Newberg & A. Conte, *Newberg on Class Actions*, § 9.35 at 9-99 (3 ed. 1992); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 202 (D. Me. 2003) (DBH) ("I assigned specific responsibilities to lead counsel and liaison counsel respectively, so as to move the litigation along as expeditiously and efficiently as possible.").

5

The appointment of lead counsel imposes order on what otherwise might become an inefficient, if not unruly proceeding. The successful history of the appointment of lead counsel in consolidated litigation, and its efficiency in avoiding delay, overlap and duplication of effort is long recognized. *See MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958) (court noted that "[t]he benefits achieved by consolidation and the appointment of general [lead] counsel, i.e., elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation.").

Appointing lead counsel will ensure "efficiency and economy without jeopardizing fairness to the parties in the litigation." *Manual for Complex Litigation (4th) ("Manual")* § 10.221 ("The types of appointments and assignments of responsibilities will depend on many factors. The most important is achieving efficiency and economy without jeopardizing fairness to the parties.").

The *Manual* summarizes the responsibilities of lead counsel as follows:

> ***Lead counsel.*** Charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group – either personally or by coordinating the efforts of others – in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

*Id.* §10.221.

Factors that courts consider important when appointing lead counsel include relevant experience, the capability of counsel to command the respect of their colleagues, and the ability to work cooperatively with opposing counsel and the court. *Manual* §10.221. Pomerantz is a

well-respected and nationally-recognized class action expert. It has served frequently and successfully as lead or co-lead counsel in numerous complex class actions. Pomerantz will devote the time and resources necessary to prosecute this case successfully. Pomerantz also has worked closely and successfully in the past with many of the Plaintiffs' firms in this case.

Pomerantz is one of the preeminent law firms engaged in plaintiffs' antitrust, securities and other complex litigation in the United States. Pomerantz has been involved in major complex litigation for more than seventy years and has recovered over a billion dollars for its clients. The firm is deep in talent and well-capitalized, allowing it to dedicate considerable human and other resources and to advance expenses in numerous contingent class action cases simultaneously to the fullest extent necessary to achieve the best possible result for its clients. Courts have consistently acknowledged Pomerantz's ability to vigorously pursue the claims of class members. In granting the fee request in *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP) (S.D.N.Y.), where the firm successfully negotiated a $100 million settlement for the class in a complex antitrust and securities case, Judge Patterson stated:

> I am going to approve the settlement, and I am going to approve the attorneys' fees that you have requested with cost.
>
> As I am doing it so summarily, does not mean I have not considered it at length. But it does not need that much consideration because I've observed the conduct of the attorneys involved here. They get the work done, and it was a tough one.
>
> I think that there were a lot of people who thought there was going to be no recovery at all in this case.

And in *In re Wiring Devices Antitrust Litigation*, MDL Docket No. 331 (E.D.N.Y. Sept. 9, 1980), where the firm was again lead counsel, Chief Judge Jack B. Weinstein stated:

> Counsel for the plaintiffs I think did an excellent job .... They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They

7

> recovered a very large amount given the possibility of no recovery here which was in my opinion substantial.

The specific Pomerantz partners, Messrs. Buchman and Richards, who will be principally responsible in this case, have effectively managed in a leadership capacity a number of antitrust class action cases including:

- *In re Buspirone Antitrust Litigation*, MDL 1413 (S.D.N.Y.) (Koeltl, J.) ($90 million settlement);

- *In re Relafen Antitrust Litigation*, Master File No. 01-12222-WGY (D. Mass. 2001) ($75 million settlement);

- *In re Microsoft Antirust Litigation* (*Cox v. Microsoft*) (Supr N.Y.) ($120 million settlement on behalf of New York consumers);

- *In re Augmentin Antitrust Litigation.*, 02 Civ. 445 (E.D. Va. Norfolk Div.) ($29m settlement);

- *In re Christie's/Sotheby's Antitrust Litigation* (*Kruman v. Christie's*)(Kaplan, J.) ($40m settlement on behalf of foreign purchasers/sellers);

- *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, 363 F. Supp. 2d 514 (E.D.N.Y. 2005) (pending on appeal); and

- *In re Wellbutrin SR/Zyban Antitrust Litigation*, 2:04-cv-5525 (E.D. Pa.) (pending).

Messrs. Buchman and Richards' representation in antitrust class action cases has been praised by courts. They have been "tenacious and skillful" (*Christie's*) (Kaplan, J.), have done a "stupendous job" (*Buspirone*) (Koeltl, J.) and have presented settlements which were the result of "a great deal of fine lawyering." (*Relafen*) (Chief Judge Young, D. Mass.). In sum, the firm and its partners who will manage this case have successfully prosecuted numerous antitrust class actions, obtaining impressive recoveries on behalf of various antitrust classes, and their diligence and expertise in antitrust issues have been acknowledged by the courts.

## III.

## CONCLUSION

For the foregoing reasons, Plaintiff Haywood County, Tennessee respectfully requests that Pomerantz Haudek Block Grossman & Gross LLP be appointed Interim Lead Counsel to represent the class plaintiffs in this consolidated action, pursuant to Rule 23(g)(3), along with such other Lead Counsel firms as the Court may find appropriate.

Dated: July 2, 2008
      New York, New York

                                **POMERANTZ HAUDEK BLOCK**
                                **GROSSMAN & GROSS LLP**

By: ___/s/ J. Douglas Richards___
        J. Douglas Richards
Michael M. Buchman
100 Park Avenue
New York, New York 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

Michael J. Banks
BANKS LAW FIRM
108 S. Washington Avenue
Brownsville, Tennessee 38012
Telephone: (731 772-5300
Facsimile: (731) 772-5302

*Counsel for Plaintiff Haywood County Tennessee*

9