**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*City of Los Angeles v. Bank of America, N.A., et al.;* No. 08-10351<br>*City of Riverside, et al. v. Bank of America, N.A., et al.;* No. 09-10102<br>*City of Stockton v. Bank of America, N.A., et al.;* No. 08-10350<br>*Contra Costa County v. Bank of America, N.A., et al.;* No. 09-1197<br>*County of San Diego v. Bank of America, N.A., et al.;* No. 09-1195<br>*County of San Mateo v. Bank of America, N.A., et al.;* No. 09-1196<br>*County of Tulare v. Bank of America, N.A., et al.;* No. 10-0628<br>*Los Angeles World Airports v. Bank of America, N.A., et al.;* No. 10-0627<br>*The Redevelopment Agency of the City of Stockton, et al. v. Bank of America, N.A., et al.;* No. 10-0630<br>*Sacramento Municipal Utility District v. Bank of America, N.A., et al.;* No. 09-10103;<br>*Sacramento Suburban Water District v. Bank of America, N.A., et al.;* No. 10-0629 | MDL No. 1950<br><br>Master Docket No. 08-2516 (VM) (GWG)<br><br>**PUBLIC ENTITY PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT COÖPERATIVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A.'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

Page(s)

I. **PLAINTIFFS HAVE MADE SUFFICIENT ALLEGATIONS TO "PLAUSIBLY SUGGEST" THAT RABOBANK PARTICIPATED IN THE CONSPIRACY**. . . . . 1

    A. Plaintiffs Do Not Need To Allege Conspiratorial Communications Made By Rabobank To Plausibly Tie It To The Conspiracy.. . . . . . . . . . . . . . . . . . . . . . . . . 1

    B. Rabobank Submitted Multiple Courtesy Bids In Furtherance of the Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C. Rabobank Has Been Implicated In The Suspect Transactions Targeted In The DOJ's Ongoing Investigation Into The Conspiracy. . . . . . . . . . . . . . . . . . . . . . . . 4

II. **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**
*Hinds County, Miss. v. Wachovia Bank N.A.*
     620 F. Supp.2d 499 (S.D.N.Y. 2009)..................................... 1, 4

*Starr v. Sony BMG Music Entm't*
     592 F.3d 314 (2d Cir. 2010)............................................. 1

I.  **PLAINTIFFS HAVE MADE SUFFICIENT ALLEGATIONS TO "PLAUSIBLY SUGGEST" THAT RABOBANK PARTICIPATED IN THE CONSPIRACY**

As this Court recently confirmed, "[f]or pleading purposes a plaintiff must make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy." *See* "Decision and Order", pg. 28 (March 25, 2010) ("March 25, 2010 Order") (Dkt No. 632). To do this, "Plaintiffs need not necessarily provide any particular details about conduct undertaken by [a defendant] in furtherance of the conspiracy." *Id.*; *see also Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010). Moreover, this Court previously held that even one instance of alleged conspiratorial conduct on the part of a Defendant was sufficient to support the Plaintiffs' conspiracy claims as to that Defendant. *Hinds County, Miss. v. Wachovia Bank N.A.*, 620 F. Supp.2d 499, 516-18 (S.D.N.Y. 2009) ("*Hinds*"). The Public Entity Plaintiffs' ("Plaintiffs") allegations against Defendant Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. ("Rabobank") exceed this standard, and raise a reasonable expectation that discovery will reveal evidence of illegal agreement between it and its co-conspirators.

    A.  **Plaintiffs Do Not Need To Allege Conspiratorial Communications Made By Rabobank To Plausibly Tie It To The Conspiracy**

Citing to this Court's April 29, 2009 Order, Rabobank asserts that Plaintiffs' allegations are insufficient because they do not allege that specific Rabobank employees communicated with employees of other Defendants in furtherance of the conspiracy. Rabobank Sup. at 1. However, this Court imposed no such requirement. The Court's direction to set forth allegations regarding specific conspiratorial communications by specific individuals was made in the context of allegations regarding those employees. *Hinds*, 620 F. Supp.2d at 518; *see also Starr*, 592 F.3d 314, 325 (plaintiffs are "not required to mention a specific time, place or person involved in each conspiracy allegation"). Indeed, the Court found that allegations regarding various Defendants'

1

involvement in the conspiracy to be sufficiently pled without reference to the Defendants' employees specific involvement in the conspiracy. March 25, 2010 Order, at pp. 27-35.

> B. **Rabobank Submitted Multiple Courtesy Bids In Furtherance of the Conspiracy**

Plaintiffs' statistical analysis of bidding patterns in 89 reinvestment derivative auctions reveals that Rabobank submitted multiple courtesy bids in furtherance of the conspiracy. As alleged, courtesy bids play an important role in the operation of the conspiracy alleged. ¶¶ 192-219.[1] This is because prior to an auction, potential and actual bidders to an auction have access to the same market information, including market rates, and if a potential bidder does not seek to participate in a particular auction, it can pass, or decline to bid. ¶¶ 384-385. As a consequence, according to IRS guidelines, it is assumed that in a competitive auction, the range between the lowest and highest bids in that auction would be narrow. ¶ 386. This was confirmed in the analysis of the 89 transactions, where the median spread between the highest and lowest bid was approximately 25 basis points. ¶ 386. According to IRS guidelines, bids that diverge from this narrow spread support the inference that they were improper courtesy bids. ¶¶ 388-443. Other evidence of courtesy bidding includes the presence of only three bidders in an auction or patterns of reciprocal bidding patterns between providers. *Id.*

Rabobank's role in the conspiracy was revealed in part through this analysis. Plaintiffs allege that in a GIC auction conducted by the City of Riverside on August 1, 2003, Rabobank submitted a courtesy bid of 3.85%, 136 basis points below the winning bid of 5.21%, submitted by Defendant CDC. ¶¶ 396-397. As IRS Director Scott stated, "When a bid is 100 to 150 basis points below the market and there is no justification for that being so low, one of the assumptions

---

[1] Unless otherwise indicated, all ¶ references herein are to the Complaint of Tulare County.

you can draw is that there are courtesy bids being provided." ¶ 383. Moreover, Rabobank's bid was 110 basis points below the next lowest bid, and all of the other bids were tightly concentrated around the 4.95% to 5.21% range. This supports the inference that participants to the auction all had reasonably equal access to information, including market rates (¶ 397) and that all or some of them cooperated with each other to support the pre-selected winning bidders, CDC. Otherwise, Rabobank was free to decline to bid and not compete for the contract offered.

Plaintiffs also allege that Rabobank submitted a courtesy bid in a February 12, 2004 GIC auction conducted on behalf of the City of Riverside. ¶ 407. The DOJ has subpoenaed the City of Riverside for documents involving numerous derivatives auctions. See Plaintiffs' Request for Judicial Notice, ("RJN"), Exh. 22. In this auction Rabobank submitted a bid of 2.65%, 85 basis points below the winning bid of 3.50% submitted by Defendant Société Générale. ¶ 408. The spread between Rabobank's bid of 2.65% and the next lowest bid of 3.20% was 55 basis points, while all of the other bids are within 1 to 29 basis points of one another. *Id.* This supports the inference that all of the bidders to the auction had reasonably equal access to the same information, including market rates, and that Rabobank did not submit this bid in the reasonable expectation that it would be competitive. Moreover, given that Rabobank could have chosen to pass if it did not want to competitively bid in this auction, the most plausible explanation is that its bid was submitted as a courtesy, for the benefit of SocGen.

In an attempt to argue around these allegations, Rabobank asks this Court to draw two inferences in its favor. First, Rabobank asks the Court to ignore Plaintiffs' reasonable inference that these bids were submitted for the benefit of the Rabobank's conspirators, and instead assume "that Rabobank placed on a low value on . . . [the] transactions" and bid accordingly. Rabobank Sup. at 3. Second, Rabobank argues that there is no reason for it to have submitted courtesy bids

because the transactions had the minimum three required bids. *Id.* Both arguments are improper[2] and ignore Plaintiffs' clear allegations. Whether Rabobank simply placed a low value on these transactions, or whether in fact the bids were courtesy bids is a quintessential question of fact for the jury. Moreover, as explained in the Plaintiffs' Omnibus Brief, courtesy bids are not only submitted to meet the three bid requirement, but also to conceal the fact that a certain Defendant has been favored in other transactions, and to give the transactions an outward appearance of legitimacy. ¶ 599. Thus, whether or not a bid was submitted to help meet the Treasury's safe-harbor rules is not indicative of whether an a bid was submitted as a courtesy.

### C. Rabobank Has Been Implicated In The Suspect Transactions Targeted In The DOJ's Ongoing Investigation Into The Conspiracy

The conclusion the Rabobank is plausibly involved in the conspiracy is augmented by the fact that Rabobank bid on multiple GIC transactions under scrutiny by the DOJ. ¶ 528. On July 2, 2009, as part of the DOJ's investigation into the conspiracy, a subpoena was issued to the City of Riverside seeking a detailed list of documents concerning the municipal derivatives the City of Riverside entered into that are associated with a $110,000,000 bond issuance in 2004. *Id.* Rabobank was involved in four GIC auctions that are under scrutiny. *Id.*; RJN, Exh. 22. This fact, and the fact that Plaintiffs' statistical analysis plausibly suggests that Rabobank submitted courtesy bids, raises a reasonable expectation that discovery will reveal evidence of illegal agreement between Rabobank and its co-conspirators.

## II. CONCLUSION

For the reasons stated above and in the Public Entity Plaintiffs' Omnibus Brief, Defendant Rabobank's Motion to Dismiss should be denied.

---

[2] *See, e.g., Hinds*, 620 F. Supp. 2d at 511 ("The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.")

Dated: March 26, 2010          **COTCHETT, PITRE & McCARTHY**

By      */s/ Steven N. Williams*
Joseph W. Cotchett
Nanci E. Nishimura
Steven N. Williams
Stuart G. Gross
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Imtiaz A. Siddiqui
**COTCHETT, PITRE & McCARTHY**
100 Park Avenue, Suite 2600
New York, NY 10017
Telephone: (212) 682-3198
Facsimile: (646) 219-6678

*Counsel for All Plaintiffs*

Dated: March 26, 2010          **RENNE SLOAN HOLTZMAN SAKAI LLP**

By      */s/ Louise H. Renne*
Louise H. Renne
**RENNE SLOAN HOLTZMAN SAKAI LLP**
350 Sansome St., Ste 300
San Francisco, CA 94104
Telephone: (415) 678-3805
Facsimile: (415) 678-3838

*Counsel for Contra Costa County, City of Los Angeles, County of San Diego, County of Tulare, Los Angeles World Airports, and Sacramento Suburban Water District*

Dated: March 26, 2010  **PARISH & SMALL**

By _____*/s/ William H. Parish*_____
William H. Parish
**PARISH & SMALL**
1919 Grand Canal Blvd., Suite A-5
Stockton, CA 95207-8114
Telephone: (209) 952-1992
Facsimile: (209) 952-0250

*Counsel for The City of Stockton, The Public Finance Authority of the City of Stockton, and The Redevelopment Agency of the City of Stockton*