UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION | MDL No. 1950 |
| This Document Relates To: | Master Docket No. 08 Civ. 2516 |
| *City of Stockton v. Bank of America, N.A. et al.*, No. 08 Civ. 10350 | |
| *City of Los Angeles v. AIG Financial Products Corp, etc.*, No. 08 Civ. 10351 | |
| *County of San Diego v. Bank of America*, No. 09 Civ. 1195 | |
| *County of San Mateo v. Bank of America, NA*, No. 09 Civ. 1196 | |
| *County of Contra Costa v. Bank of America, NA*, No. 09 Civ. 1197 | |
| *City of Riverside, et al. v. Bank of America, N.A., et al.*, No. 09 Civ. 10102 | |
| *Sacramento Municipal Utility District v. Bank of America, N.A., et al.*, No. 09 Civ. 10103 | |
| *Los Angeles World Airports v. Bank of America, N.A., et al.*, No. 10 Civ. 627 | |
| *County of Tulare v. Bank of America, N.A., et al.*, No. 10 Civ. 628 | |
| *Sacramento Suburban Water District v. Bank of America, N.A., et al.*, No. 10 Civ. 629 | |
| *Redevelopment Agency of the City of Stockton, et al. v. Bank of America, N.A., et al.*, No. 10 Civ. 630 | |

**DEFENDANT AIG FINANCIAL PRODUCTS CORP.'S SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF DISMISSING CERTAIN COMPLAINTS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.      AIG FP Is Not Implicated by the CDR Indictment ............................................. 3

II.     There Are No Factual Allegations Surrounding the San Mateo County Swap Transaction That Give Rise To An Inference of Wrongdoing by AIG FP ........................... 4

III.    The Oklahoma Turnpike GIC Is Not Part of the Broader Conspiracy Alleged, and in Any Event, AIG FP Did Not Participate in It .................................................. 6

IV.    All Other Allegations Against AIG FP Are Indicative Only Of Market Participation ............................................................................................................ 7

CONCLUSION .................................................................................................................. 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009)..................................................................................................5, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 570 (2007).....................................................................................................2

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*,
   996 F.2d 537 (2d Cir. 1993).................................................................................................8

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
   848 F.2d 24 (2d Cir. 1988)...................................................................................................5

*Hinds County v. Wachovia Bank, N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009)............................................................................1, 4, 6

*Hinds County v. Wachovia Bank, N.A.*,
   No. 08-cv-2516, No. 08-md-1950,
   2010 WL 1244765 (S.D.N.Y. Mar. 25, 2010) ................................................................1, 5, 6

*Laflamme v. Societe Air France*,
   No. 08-cv-1079 (KAM),
   2010 WL 1292262 (E.D.N.Y. Apr. 5, 2010) ....................................................................2, 5

*MetLife Sec., Inc. v. Bedford*,
   456 F. Supp. 2d 468 (S.D.N.Y. 2006), *aff'd*, 254 F. App'x 77 (2d Cir. 2007) ..........................7

*MM Ariz. Holdings LLC v. Bonnano*,
   No. 08 Civ. 5353(CM), 2008 WL 5203691 (S.D.N.Y. Dec. 10, 2008).....................................7

*Murray v. Miner*,
   74 F.3d 402 (2d Cir. 1996)...................................................................................................7

*Starr v. Sony BMG Music Entertm't*,
   592 F.3d 314 (2d Cir. 2010)............................................................................................2, 9

**RULES**

Fed. R. Civ. P. 8...............................................................................................................2, 3

Fed. R. Civ. P. 12(e) ..............................................................................................................2

## PRELIMINARY STATEMENT

Defendant AIG Financial Products Corp. ("AIG FP") has not received a target letter, was not referenced in the CDR indictment, and was not listed as an alleged co-conspirator in the CDR Bill of Particulars—in short, Plaintiffs do not (and cannot) make any such allegations against AIG FP. AIG FP's appearance in this lawsuit is based solely on its participation in the municipal derivatives market and, in particular, in a swap transaction relating to San Mateo County. But by Plaintiffs' own admission, AIG FP's only alleged role in the San Mateo transaction was as a substitute for Lehman after the deal had been negotiated, because San Mateo had become uncomfortable with Lehman's credit rating.[1] The only reasonable inference to be drawn—indeed, an inference that is explicitly drawn in Plaintiffs' own Complaints—is that Lehman's deteriorating credit led to AIG FP's participation in that transaction. And as this Court already held when it dismissed AIG FP from the consolidated class action, "the mere fact that defendants are involved in an industry that is purportedly rife with antitrust violations is not, without more, enough to state a § 1 claim."[2]

Plaintiffs must plead facts that plausibly suggest AIG FP "made an agreement" to participate in the alleged conspiracy.[3] They have not. Instead, Plaintiffs have pleaded facts establish-

---

[1] *See* Tulare Compl. ¶ 453. In this brief, "Tulare Compl." refers to the Complaint filed by the County of Tulare, which is the exemplar complaint that Plaintiffs refer to in their opposition brief. For ease of reference, this brief also cites to that complaint.

[2] *See Hinds County v. Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 515 (S.D.N.Y. 2009). The class plaintiffs did not name AIG FP as a defendant in the Second Consolidated Amended Complaint.

[3] *See Hinds County v. Wachovia Bank, N.A.*, No. 08-cv-2516, No. 08-md-1950, 2010 WL 1244765, at *7, *11 (S.D.N.Y. Mar. 25, 2010).

ing that AIG FP was a participant in the municipal derivatives market.[4]  Nothing more.  To be clear, there are no allegations that AIG FP solicited, accepted, or submitted courtesy bids, received "last looks," made or accepted "kickback" payments, manipulated the terms of derivative transactions, or was a pre-selected winner in any transaction as part of the alleged conspiracy.

**ARGUMENT**

Plaintiffs point to three allegations in their opposition as sufficient to keep AIG FP in this lawsuit and subject it to the costs associated with significant and extended discovery.  Each of those three, however, is based on sheer speculation or conclusory allegations, rather than facts that would, if true, establish that AIG FP agreed to participate in the alleged conspiracy, and they do not provide "enough facts to state a claim to relief that is plausible on its face."[5]

---

[4] Many of these allegations are against "AIG," a defined term that the complaints use to refer collectively to AIG FP, nonparty AIG SunAmerica Company, and nonparty AIG Matched Funding Corp.  AIG FP reiterates its argument that such "lumping" renders the complaints fatally deficient under Fed. R. Civ. P. 8.  *See* Defendant AIG Financial Products Corp.'s Supplemental Memorandum in Support of Dismissing Certain Complaints ("<u>AIG FP's Supplemental Memo of Law</u>") at 1.  At a minimum, therefore, AIG FP is entitled to a more definite statement from Plaintiffs as to these allegations.  *See* Fed. R. Civ. P. 12(e).

[5] *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs cite to *Starr* for the proposition that they "need not necessarily provide any particular details about conduct undertaken by [a defendant] in furtherance of the conspiracy."  *See* Public Entity Plaintiffs' Supplemental Memorandum of Points and Authorities in Opposition to Defendant AIG Financial Products Corp.'s Motion to Dismiss ("<u>Plaintiffs' Supplemental Opposition Memo of Law</u>") at 1.  Unlike *Starr*, where each of the defendants had allegedly engaged in identical parallel conduct that together was sufficient to raise an inference of wrongdoing, Plaintiffs here have not plead circumstances sufficient to avoid the requirement of specific allegations against AIG FP.  *See*, *e.g.*, *Laflamme v. Societe Air France*, No. 08-cv-1079 (KAM), 2010 WL 1292262, at *11 (E.D.N.Y. Apr. 5, 2010) ("[T]o allow an inference of conspiracy to arise from allegedly parallel conduct, *Twombly* contemplates a 'factually suggestive' context involving some sort of anomalous behavior on the part of defendants.").

**I.   AIG FP Is Not Implicated by the CDR Indictment**

Plaintiffs claim that "the DOJ's indictment of Defendant CDR and CDR executives also implicates AIG Financial."[6] In support of this allegation, Plaintiffs cite to the Complaint of the County of Tulare which discusses the identity of "Provider B," a "group of separate financial services entities that were controlled by or were part of a company headquartered in Connecticut," and are described in the CDR indictment as having engaged in conspiratorial conduct.[7] According to ¶ 551 of the Tulare Complaint:

> A November 2, 2009 Bond Buyer article and November 18, 2009 Bloomberg article cite unidentified sources who say that Provider B is Defendant GE Trinity. Indeed, Defendants GE Trinity SPEs, together with their parent Defendant GECC, fit the definition of Provider B. Defendant AIG Financial also fits this definition.

Of course, this Court now knows the identity of Provider B; and it is not AIG FP, which neither received a target letter from the DOJ nor was identified as an alleged co-conspirator in the CDR case.[8] Not only is this allegation factually incorrect, it is also grossly insufficient on its face to meet the requirements of Rule 8. The only basis Plaintiffs have to mention AIG FP is the location of its headquarters. But any number of companies also meets this description, meaning the Complaints' reference to AIG FP is pure coincidence based on AIG FP being a defendant in

---

[6] *See* Plaintiffs' Supplemental Opposition Memo of Law at 4.

[7] *See* Tulare Compl. ¶¶ 547, 550.

[8] A copy of the CDR Bill of Particulars is attached as a sealed exhibit to Defendant Morgan Stanley's Memorandum of Law in Support of its Motion for Reconsideration. *See* Memorandum of Law in Support of Motion for Reconsideration, dated Apr. 7, 2010, Case No. 08 Civ. 3516, 08 MDL No. 1950 (VM) (S.D.N.Y.) [Dkt. No. 672].

this action.[9] This purely speculative—and wrong—allegation does not make AIG FP's alleged involvement in the conspiracy any more plausible.

## II. There Are No Factual Allegations Surrounding the San Mateo County Swap Transaction That Give Rise To An Inference of Wrongdoing by AIG FP

Plaintiffs also claim the November 17, 2003 San Mateo County swap transaction, which is described in greater detail in AIG FP's supplemental moving brief, establishes that AIG FP was part of the alleged conspiracy.[10] This transaction, however, fails to make AIG FP's alleged participation in the industry-wide conspiracy plausible because there is simply no factual allegation to support an inference that AIG FP made any unlawful agreement related to the transaction.

The core of Plaintiffs' allegations is the allegedly supra-competitive and suspiciously similar price quotations made by Defendants UBS and Piper Jaffray.[11] <u>But AIG FP became involved in the transaction only after these allegedly suspect price quotations had been made</u>.[12] In opposition, Plaintiffs acknowledge this problematic timing, but insist that AIG FP still became involved before the "date set for pricing" and must therefore have analyzed the proposed terms of the transaction and figured out that that the transaction had been "manipulated."[13] This elaborate theory is pleaded nowhere in the Complaints and is nothing more than a strained attempt to

---

[9] Such a coincidence will not make AIG FP's alleged involvement in the conspiracy more plausible. *See Hinds County*, 620 F. Supp. 2d at 515 (rejecting allegations of conspiracy "based entirely on . . . happenstance").

[10] *See* AIG FP's Supplemental Memo of Law at 2-3.

[11] *See* Tulare Compl. ¶¶ 450-51, 456-458.

[12] *See id.* ¶¶ 453-54. In fact, the first nine paragraphs discussing the San Mateo transaction do not even mention AIG FP. *See id.* ¶¶ 444-52.

[13] *See* Plaintiffs' Supplemental Opposition Memo of Law at 3. Plaintiffs also argue that AIG FP hid the terms of the deal from San Mateo and cite to ¶¶ 453-54 of the Tulare Compl. to support this allegation. In fact, ¶¶ 453-54 say only that San Mateo was "not made privy" to the negotiations between Lehman and AIG FP, a fact that is unsurprising, since the transaction only involved Lehman and AIG FP, not San Mateo.

4

impute some involvement in the alleged conspiracy to AIG FP where none otherwise exists.[14] There is absolutely no basis for inferring that AIG FP knew that UBS and Piper Jaffray had supposedly learned of the terms of Lehman's proposed pricing or was otherwise involved in any agreement that resulted in the similar price quotations. And even if Plaintiffs could plead that AIG FP had somehow suspected that the transaction had been manipulated, that is not the same as pleading that AIG FP entered into an illegal agreement to manipulate the transaction.

AIG FP's only alleged role in the San Mateo transaction was as a substitute for Lehman after San Mateo became uncomfortable with Lehman's credit rating.[15] The only reasonable inference to be drawn from this allegation is that AIG FP evaluated the previously agreed terms of the swap and made a business decision to take on the transaction on such terms, and not, as Plaintiffs allege, that AIG FP uncovered and joined the conspiracy. Plaintiffs' conclusory allegation that AIG FP "colluded to artificially depress the terms of the deal"[16] lacks any factual support, and cannot survive this motion to dismiss.[17] Thus, the allegations surrounding the San Mateo transaction are insufficient to keep AIG FP in this action.[18]

---

[14] *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (allegations made in legal memoranda or briefs are considered outside of the pleadings for purposes of 12(b)(6) motions).

[15] *See* Tulare Compl. ¶ 453.

[16] *See id.* ¶ 455.

[17] *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("[P]leadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *Laflamme*, 2010 WL 1292262, at *8 (rejecting the presumption of truth for a "bald, conclusory allegation").

[18] Additionally, the San Mateo transaction is time barred under the four-year antitrust statute of limitations. Contrary to Plaintiffs' argument, the Court's March 25, 2010 opinion on fraudulent concealment relates only to ***competitively*** bid auctions in which plaintiffs' met their due diligence requirement because defendants "had to certify that they were not entering a courtesy bid and the bid was determined without regard to an agreement with another issuer." *See Hinds County*, 2010 WL 1244765, at *16. The San Mateo transaction was not such a transaction and no such certification took place. Thus, Plaintiffs—who have not alleged any diligence what-

### III. The Oklahoma Turnpike GIC Is Not Part of the Broader Conspiracy Alleged, and in Any Event, AIG FP Did Not Participate in It

The final transaction Plaintiffs rely on is a GIC for the Oklahoma Turnpike Authority (the "OTA").[19] Specifically, each of the Complaints alleges that in 1989, "the corporate parent of Defendants AIG Financial and AIG Sunamerica" paid $300,000 to Pacific Matrix in return for a "last look" at the bids for the OTA GIC.[20] According to the Complaints, the plan was orchestrated and carried out by Robert Cochran, the executive vice president of non-defendant broker Stifel, Nicolaus & Co., and executives at non-defendant Pacific Matrix.[21] This allegation provides no factual support for Plaintiffs' claims against AIG FP for all of the following reasons.

First, the OTA GIC is not even part of the broader conspiracy alleged. It took place in 1989 and was the subject of a January 30, 1998 SEC order.[22] Thus, by 1998 the activities were known and could not have been part of a contemporaneous or subsequent conspiracy. Equally significant, none of the parties alleged to have participated in the OTA GIC—Pacific Matrix, Cochran, and Stifel Nicolaus & Co.—are named defendants in this action or appear in any other allegations anywhere in the Complaints. Thus, the OTA GIC could not be part of the broader, present-day antitrust conspiracy alleged by Plaintiffs.

---

soever—have failed to meet their due diligence requirement in order to toll the statute of limitations for the San Mateo transaction. *See id.* at *15 ("[D]ue diligence is not adequately pled if plaintiffs 'did not allege in the [complaint] that they exercised due diligence' or if they 'make no allegation of any specific inquiries of [defendants], [or] detail when such inquiries were made, to whom, regarding what, and with what response.'") (internal citations omitted). And aside from the San Mateo transaction, there is no other transaction in which Plaintiffs ever allege that AIG FP was aware of or engaged in alleged wrongdoing.

[19] *See* Plaintiffs' Supplemental Opposition Memo of Law at 3-4.

[20] *See* Tulare Compl. ¶¶ 462-465.

[21] *Id.*

[22] *See Hinds County,* 620 F. Supp. 2d at 515.

6

Second, this exact allegation has already been rejected by the Court when it was pleaded in the Consolidated Amended Class Action Complaint ("CAC"). In a prior opinion dismissing the CAC as against AIG FP, among others, the Court stated with respect to the OTA GIC:

> Sanctions imposed in 1998 and a civil settlement regarding [a transaction] in 1989 . . . that did not involve any of these Defendants cannot be said to establish a history of fraud in the market, and even if they could, these allegations do not make the claims against any of such Defendants more plausible.[23]

The Court thus held that allegations concerning the twenty-one-year-old OTA GIC, without more, are insufficient to withstand a motion to dismiss.

Finally, as alleged by Plaintiffs, the wrongdoing was not committed by AIG FP. And alleged wrongdoing by a corporate parent has no bearing on the plausibility of its subsidiary's participation in a conspiracy because a subsidiary may only be held responsible for the acts of its parent in extraordinary circumstances which must be plead by the Plaintiffs.[24] Here, the Complaints contain no facts suggesting any reason why the subsidiary AIG FP should be held responsible for the alleged acts of its parent over twenty years ago.

## IV. All Other Allegations Against AIG FP Are Indicative Only Of Market Participation

Absent any factual allegations that AIG FP was involved in the alleged conspiracy, Plaintiffs are left only with allegations that AIG FP, AIG Matched Funding, and "AIG"—represented

---

[23] *Id.*

[24] *See Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996) ("Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil."); *MetLife Sec., Inc. v. Bedford*, 456 F. Supp. 2d 468, 472 (S.D.N.Y. 2006), *aff'd*, 254 F. App'x 77 (2d Cir. 2007) ("It is a basic principle of corporate law that, provided none of the special circumstances recognized by the law is present, a subsidiary cannot be held liable for the acts of its parent company based solely on the subsidiary's membership in the same corporate family."); *MM Ariz. Holdings LLC v. Bonnano*, No. 08 Civ. 5353(CM), 2008 WL 5203691 (S.D.N.Y. Dec. 10, 2008) (dismissing

by certain individuals—bid on, passed on, and sometimes won GICs.[25] For example, in discussing a May 6, 2002 auction for a forward purchase agreement, the Tulare Complaint alleges that "[o]ther bidders in this transaction included AIG, AMBAC, JP Morgan, Solomon Smith Barney and Wachovia."[26] Such allegations are nothing more than examples of AIG FP's participation in the municipal derivatives market, which this Court has found are insufficient to state a § 1 claim.[27] In its opposition to the joint motion, Plaintiffs turn these instances of market participation into charts designed to show "opportunities to conspire" among certain repeat industry participants, including AIG FP and its representatives.[28] But these "opportunity" charts cannot replace factual allegations, because a "mere opportunity to conspire does not by itself support the inference that such an illegal combination actually occurred."[29] The fact remains that there are no allegations contained anywhere in the Complaints that AIG FP solicited, accepted, or submitted courtesy bids, received "last looks," made or accepted "kickback" payments, manipulated the terms of derivative transactions, or was a pre-selected winner in any transaction as part of the alleged conspiracy.[30] The remaining allegations of market participation are not enough to state a claim to relief that is plausible on its face. Accordingly, where, as here, "the well-pleaded facts

---

counterclaims against a subsidiary of Lehman Brothers when the alleged wrongdoing had been committed by Lehman itself, the parent corporation.).

[25] *See* Tulare Compl. ¶¶ 363, 394, 400, 406, 411, 416, 429, 443, 501-502, 504-505, 522. As discussed *supra*, any allegations against "AIG" are impermissibly vague.

[26] *Id.* ¶ 364.

[27] *See* note 2, *supra*.

[28] *See* Public Entity Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion to Dismiss, Exs. B and C.

[29] *Capital Imaging Assocs.,P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 545 (2d Cir. 1993).

[30] AIG FP is not even listed as having supplied any courtesy bids based on the statistical analysis contained in the Complaints. *See* Tulare Compl. ¶¶ 380-387.

do not permit the court to infer more than the mere possibility of misconduct . . . dismissal is appropriate."[31]

## CONCLUSION

For the reasons stated above and in the Defendants' joint reply to the Plaintiffs' opposition to the motion to dismiss, AIG FP respectfully requests that this Court dismiss with prejudice the claims asserted against it in the Complaints.

Dated: New York, New York
April 16, 2010

Respectfully Submitted,

 /s/ Robert H. Hotz, Jr.
Robert H. Hotz, Jr.
Robert H. Pees
Joseph L. Sorkin
Christopher M. Egleson
Dean L. Chapman, Jr.
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
*Counsel for AIG Financial Products Corp.*

---

[31] *Starr*, 592 F.3d at 321, *citing Iqbal*, 129 S.Ct. at 1950.

# CERTIFICATE OF SERVICE

I certify that copies of the foregoing Supplemental Reply Memorandum were served by ECF on all counsel of record on April 16, 2010.

Dated: New York, New York
April 16, 2010

                                                 /s/ Joseph L. Sorkin
                                                 Joseph L. Sorkin