UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE MUNICIPAL DERIVATIVES
ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

*City of Los Angeles v.
AIG Financial Products Corp.*, No. 08-10351;
*City of Stockton v. Bank of America, N.A.*,
No. 08-10350;
*County of San Diego v. Bank of America, N.A.*,
No. 09-1195;
*County of San Mateo v. Bank of America, N.A.*,
No. 09-1196;
*County of Contra Costa v. Bank of America, N.A*,
No. 09-1197;
*Sacramento Municipal Utility District v.
Bank of America, N.A.*, No. 09-10103;
*City of Riverside v. Bank of America, N.A.*,
No. 09-10102;
*Los Angeles World Airports v.
Bank of America, N.A*, No. 10-0627;
*Sacramento Suburban Water District v.
Bank of America, N.A.*, No. 10-0629;
*County of Tulare v. Bank of America, N.A.*,
No. 10-0628;
*Redevelopment Agency of the City of Stockton v.
Bank of America, N.A.*, No. 10-0630

MDL No. 1950

Master Docket No. 08-02516 (VM) (GWG)

SUPPLEMENTAL REPLY
MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT ASSURED
GUARANTY US HOLDINGS INC.'S
MOTION TO DISMISS

**DEFENDANT ASSURED GUARANTY US HOLDINGS INC.'S SUPPLEMENTAL
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Assured Guaranty US Holdings Inc. ("Assured") respectfully submits this supplemental reply memorandum in further support of Defendants' joint motion to dismiss the above captioned Plaintiffs' ("Cotchett Plaintiffs") complaints ("Complaints") for failure to state a claim upon which relief can be granted pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## ARGUMENT

Assured is not named as a defendant in the federal or California class complaints. The arguments herein are entirely distinct from the arguments related to the federal and California classes, and serve as independent bases for dismissing Assured from the Complaints.

The Cotchett Plaintiffs assert two flawed arguments in opposition to Assured's Supplemental Motion to Dismiss: (1) that Financial Security Assurance Holdings Ltd. ("FSA Holdings") is either directly liable or, alternatively, vicariously liable for the actions of the FSA GIC Subsidiaries;[2] and (2) that Assured is, in turn, liable for the actions of FSA Holdings. However, there is no basis of support for either of these arguments — both of which would have to be accepted for the Cotchett Plaintiffs' claims against Assured to survive — and the Cotchett Plaintiffs' claims fail on this account. First, the assertions in the Cotchett Plaintiffs' Supplemental Memorandum in Opposition to Assured's Motion to Dismiss ("Opposition Brief") that might speak to vicarious liability are not facts alleged in the Complaints. Second, Assured, a stock purchaser, cannot be liable as a successor to FSA Holdings.[3]

---

[1] Assured joins in the Defendants' joint reply memorandum in support of the motion.

[2] The FSA GIC Subsidiaries were the subsidiaries of FSA Holdings who are alleged to have directly engaged in the municipal derivatives business. *See* Tulare Compl. ¶ 58.

[3] Section 2.1 of the Purchase Agreement executed between Dexia and Assured, of which both Assured and the Cotchett Plaintiffs have requested this Court take judicial notice, states: "Section 2.1 Purchase and Sale of Shares. On the terms and subject to the conditions set forth in Article VII, Seller will sell, convey

## I. The Complaints Do Not Allege FSA Holdings is Liable for Transactions Entered into by the FSA GIC Subsidiaries

The Complaints fail to allege any facts sufficient to hold FSA Holdings vicariously liable for the actions of the FSA GIC Subsidiaries (and, by extension, Assured liable as a corporate parent to FSA Holdings). Nevertheless, the Cotchett Plaintiffs now claim in their Opposition Brief that the Complaints do make such allegations. Opp. Br. at 1. The Opposition Brief makes the bald assertion that vicarious liability is properly stated by the following three allegations:

> "[T]he FSA GIC Subsidiaries and FSAI all acted with the actual and apparent authority of FSA Holdings and that FSA Holdings ratified those actions." Opp. Br. at 3.
> The FSA GIC Subsidiaries acted "at the direction of FSA Holdings." *Id.*
> "It was FSA Holdings that controlled the entire transaction, acting through its agents." *Id.*

Whether or not these allegations would be sufficient to establish vicarious liability of FSA Holdings is irrelevant because ***these allegations do not appear in the Complaints***. Nor are they natural inferences from any factual allegation made in the Complaints. Rather, they appear for the first time in the Opposition Brief, and accordingly, are not properly considered on a motion to dismiss. *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774 (S.D.N.Y. 2006) ("[A]llegations made outside of the complaint introduced by plaintiffs in their memorandum of law in opposition to motions to dismiss are not properly before the court on a motion to dismiss.") (internal quotation and punctuation omitted).

## II. Assured Cannot Have Successor Liability Because It Was a Purchaser of Stock

The Cotchett Plaintiffs allege that Assured incurred successor liability when it acquired FSA Holdings through its stock purchase agreement with Dexia. However, under either New

---

assign, transfer and delivery to Buyer, free and clear of all Encumbrances, and Buyer will purchase, acquire and accept from Seller, all of Seller's right, title and interest in and to the Shares [of FSA Holdings]." Plaintiffs' RJN 30 at p. 15.

York or California law, the purchaser of a company's stock cannot be deemed to have successor liability for the purchased company's liabilities. *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44-45 (2d Cir. 2003) (stating that, under New York law, a purchaser of stock does not assume the purchased company's debts absent piercing the corporate veil); *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, 2007 WL 2462142 at *6 (N.D. Cal. Aug. 29, 2007) ("[S]uccessor liability under California law requires the purchase of *assets*, not merely the purchase of stock") (emphasis in original). Accordingly, the Cotchett Plaintiffs' allegations regarding *de facto* merger and the mere continuation doctrine, two theories that can support successor liability under the appropriate circumstances, are wholly irrelevant. *See, e.g.*, *New York v. National Service Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) (listing bases imposing successor liability on an asset purchaser, including *de facto* merger and the mere continuation doctrines).

The Cotchett Plaintiffs cite no legal authority from any jurisdiction applying successor liability to stock acquisitions. Yet, even if the Cotchett Plaintiffs were to convince this Court to be the first to apply the doctrine of successor liability to an acquirer of stock under New York or California law, the Cotchett Plaintiffs' claims still fail because the Complaints fail to set forth sufficient factual allegations to support the doctrine.[4]

---

[4] The elements New York courts consider to determine whether a transaction is a *de facto* merger are: "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." *New York v. National Service Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). California courts add a fifth element: "was the consideration paid for the assets solely stock of the purchaser or its parent." *Sunnyside Dev. Co., LLC,* 2007 WL 2462142 at *8.

Mere continuation, under both New York and California law, requires that the company selling its assets not survive the transaction. *Douglas v. Stamco*, 2010 WL 337043 at *1 (2d Cir. Feb. 1, 2010) (dismissing successor liability claim due to selling corporation surviving); *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1064 (N.D. Cal. 2007) ("[T]he 'mere continuation' doctrine also requires that the selling entity dissolve – because only one corporation may remain after the transaction.").

The Opposition Brief incorrectly claims that "[t]he complaint alleges that Assured took over and continued the business operations of FSA Holdings after the acquisition, providing financial guaranties and serving as the counter-party to municipal derivative transactions." Opp. Br. at p. 4. Again, no such factual allegation appears in the Complaints. The closest allegation is that "**Assured Guaranty Ltd.** continued the business of FSA Holdings subsidiaries [sic], and expressly and/or implicitly assumed liabilities thereof."[5] Tulare Compl. at ¶ 59 (emphasis added). The only relevant allegations against Assured are that "Assured US Holdings is a mere continuation of FSA Holdings and/or the July 1, 2009 transaction was a *de facto* merger of FSA Holdings with Assured US Holdings." *Id.* These, of course, are legal conclusions that the Court is not bound to accept as true. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009).

Lastly, the Cotchett Plaintiffs' reliance on this Court's treatment of the class claims against Wells Fargo as successor in interest to Wachovia is misplaced. *See* Opp. Br. at 4. The Wells Fargo-Wachovia transaction was a merger, as evidenced in the documents cited by the SCAC. *See* SCAC ¶ 29 (*citing* Wells Fargo & Company, Quarterly Report, Form 10-Q, filed May 11, 2009). In the March 25 Order, the Court stated that through the merger Wells Fargo acquired Wachovia's assets and liabilities. *Id.* 35 n.4. However, the treatment of that merger has no bearing on the acquisition of FSA Holdings by Assured, which was accomplished through a stock purchase. As already discussed, a stock acquisition alone is not sufficient to hold Assured liable for the actions of FSA Holdings.

## **CONCLUSION**

For the reasons stated above and for the reasons set forth in the Joint Memoranda, the Court should dismiss Assured from the Complaints with prejudice.

---

[5] Assured Guaranty Ltd., not a party to this litigation, is the parent company of Assured.

| | |
|---|---|
| Dated: April 16, 2010 | CADWALADER, WICKERSHAM & TAFT LLP |
| | By: <u>    s/ Joseph J. Bial    </u> |

Charles F. Rule
Joseph J. Bial
700 Sixth Street, NW
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

Gregory A. Markel
One World Financial Center
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Attorneys for Defendant Assured Guaranty US Holdings Inc.*