UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION | MDL No. 1950 |
| | Master Docket No. 08-02516 (VM) (GWG) |
| THIS DOCUMENT RELATES TO: | REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE COTCHETT COMPLAINTS |

*City of Los Angeles v. AIG Financial Products Corp., et al.*; No. 08-10351

*City of Stockton v. Bank of America, N.A., et al.*, No. 08-10350

*County of San Diego v. Bank of America, N.A., et al.*, No. 09-1195

*County of San Mateo v. Bank of America, N.A., et al.*, No. 09-1196

*County of Contra Costa v. Bank of America, N.A., et al.*, No. 09-1197

*Sacramento Municipal Utility District v. Bank of America, N.A., et al.*, No. 09-10103

*City of Riverside, et al. v. Bank of America, N.A. et al.*, No. 09-10102

*Los Angeles World Airports v. Bank of America, N.A.*, No. 10-0627

*Sacramento Suburban Water District v. Bank of America, N.A.*, No. 10-0629

*County of Tulare v. Bank of America, N.A.*, No. 10-0628

*Redevelopment Agency of the City of Stockton, et al. v. Bank of America, N.A.*, No. 10-0630

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................3

I.    THE COTCHETT PLAINTIFFS HAVE FAILED TO ALLEGE FACTS
SUFFICIENT TO ESTABLISH INDIVIDUAL STANDING ..............................3

II.    THE CLAIMS ARE TIME BARRED AND THE OPPOSITION BRIEF
ASSERTS NO VALID ARGUMENTS TO THE CONTRARY ...........................3

A.    The Discovery Rule and Continuing Violation Doctrine Are
Inapplicable to the Cotchett Plaintiffs' Antitrust Claims............................4

B.    No Other Equitable Tolling Provisions are Applicable to Extend
the Limitations Period ..................................................................................6

1.    The Cotchett Plaintiffs' Allegations of Fraudulent
Concealment Are Not Adequately Pled ...........................................6

2.    The American Pipe Doctrine Does Not Toll the Applicable
Limitations Period............................................................................8

III.    THE COTCHETT PLAINTIFFS' CARTWRIGHT ACT CLAIMS MUST
BE DISMISSED ..............................................................................................10

CONCLUSION....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*131 Main Street Assocs. v. Manko*, 179 F. Supp. 2d 339 (S.D.N.Y. 2002) .................................................................................................... 7

*American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974)........................................... 9

*Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977) .......................................... 10

*Aurora Enters., Inc. v. Nat'l Broadcasting Co., Inc.*, 688 F.2d 689 (9th Cir. 1982)........................................................................................... 6

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) .................................................................................................... 4

*Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086 (S.D.N.Y. 1990)........................................ 9

*City of El Paso v. Darbyshire Steel Co., Inc.*, 575 F.2d 521 (5th Cir. 1978) .................................................................................................... 6

*Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983) .................................................. 9

*Dean v. United of Omaha Life Ins.*, No. CV-05-6067-GHK, 2007 WL 7079558 (C.D. Cal. Aug. 27, 2007)........................................................ 4

*Earl v. Novartis Consumer Health, Inc.*, No. 07 Civ. 9595 (RMB) 2008 WL 4274468 (S.D.N.Y. Sept. 12, 2008)................................................ 10

*Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401 (6th Cir. 1999) .................................................................................................... 5

*In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002) .................................................................................................... 5

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188 (E.D.N.Y. 2003)............................................................................... 5

*Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239 (3d Cir. 2001) .................................................................................................... 5

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002)............................................. 5

*State of New York v. Cedar Park Concrete Corp.*, 684 F. Supp. 1229 (S.D.N.Y. 1988)............................................................................... 8

*Stutz Motor Car of Am. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353
(C.D. Cal. 1995)............................................................................................................4

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321
(1971)............................................................................................................................4

Defendants submit this reply memorandum in further support of their motions, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss each of the above-captioned complaints ("Cotchett Complaints" or "Complaints") for failure to state a claim upon which relief can be granted.[1]

## <u>INTRODUCTION</u>

For the reasons set forth in Defendants' opening Memorandum ("Defs.' Mem."), the Court should dismiss the Cotchett Complaints. Defendants recognize, however, that the Court's March 25, 2010 Decision and Order (the "March 25 Decision") denied Defendants' Motion to Dismiss the Second Consolidated Amended Class Action Complaint ("SCAC"), which alleged a purported industry-wide conspiracy similar, in certain aspects, to the conspiracy alleged by the Cotchett Plaintiffs. Defendants will not repeat arguments decided by the March 25 Decision and hereby incorporate Defendants' Reply Memorandum in Further Support of Defendants' Joint Motion to Dismiss the Second Consolidated Amended Class Action Complaint, dated November 18, 2009. We note, however, that our opening Memorandum in support of Defendants' Joint Motion to Dismiss the Cotchett Complaints identified specific allegations in the Cotchett Complaints—allegations not present in the SCAC—which show both the implausibility of the alleged industry-wide conspiracy and the Cotchett Plaintiffs' failure to

---

[1] The Defendants submitting this reply memorandum include all defendants named in the above-captioned complaints other than Bank of America, Merrill Lynch & Co., Inc., The Goldman Sachs Group, Inc., Goldman Sachs Mitsui Marine Derivative Products, L.P., Goldman Sachs Bank USA, Syncora Guarantee Inc., and Syncora Holdings Ltd. The Plaintiffs ("Cotchett Plaintiffs") have filed eleven substantially similar complaints, although later-filed complaints contain certain additional allegations. Like Defendants' opening memorandum, this memorandum responds to all eleven complaints, and unless otherwise stated, cites to the Sacramento Suburban Water District complaint (filed December 10, 2009) ("Complaint" or "Compl.") as it incorporates the total universe of allegations set forth by the Cotchett Plaintiffs.

adequately plead individual standing or that their claims are timely. Specifically, we noted (1) the transactions alleged to be collusive included many brokers and providers who are not named as defendants or co-conspirators, undermining Plaintiffs' claims of an industry-wide conspiracy (*see* Defs.' Mem. at 12-14),[2] (2) the Cotchett Plaintiffs name many defendants who previously were dismissed from the putative class action in the Court's April 30, 2009 Order, or were never defendants in that action, and (3) Plaintiffs' "statistical analysis" actually shows that the transactions identified by Plaintiffs did not satisfy Plaintiffs' own criteria for collusion (*see* Defs.' Mem. at 21-26),[3] and each of the Plaintiffs has pled no basis to show that its *own* transactions were negatively impacted by the alleged conspiracy. These flaws provide independent bases to dismiss the Cotchett Complaints that were not addressed in the March 25 Decision.

In addition, as explained more fully below, the Cotchett Plaintiffs fail to allege facts to establish standing and fail to adequately allege any misconduct within the relevant statutory period or any legitimate basis for tolling the statutory period.[4]

---

[2]   The Cotchett Plaintiffs halfheartedly address this significant point in a footnote (Opp. Br. at 29 n. 14), but do not deny that **60%** of their identified transactions involve entities not alleged to be involved in the purported conspiracy or explain how the alleged conspiracy could be plausible if less than all members of the industry participate. There is no plausible explanation.

[3]   The Cotchett Plaintiffs do not respond to this argument except to try to run away from their own criteria for bid rigging and to suggest that their statistical analysis must be meaningful because Defendants spent six pages addressing it. Opp. Br. at 35-37. Defendants spent six pages addressing the statistical analysis because Plaintiffs' own analysis affirmatively establishes the ***im***plausibility of the alleged conspiracy. In any event, each Cotchett Plaintiff has failed to adequately plead that its transactions were affected by the alleged conspiracy.

[4]   Several of the individual defendants named in the Cotchett Complaints, while joining this reply, which addresses arguments common to all the Defendants, have also filed reply memoranda addressing the sufficiency of the Complaints' allegations as to those particular defendants.

**ARGUMENT**

I.    **THE COTCHETT PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO ESTABLISH INDIVIDUAL STANDING**

The Cotchett Plaintiffs respond to Defendants' argument that they failed to allege facts sufficient to establish standing by relying solely on the March 25 Decision.  Opp. Br. at 41-42.  Here, however, the unique allegations in the Cotchett Complaints—not in the SCAC— militate against finding individual standing based on market-wide impact of the alleged conspiracy.  In fact, many of the allegations in Plaintiffs' complaints undermine any argument that Plaintiffs' own transactions were negatively affected.  The Cotchett Plaintiffs admit that a wide majority of their identified transactions involved at least one broker or bidder *not named* as a defendant or co-conspirator.  *See* Defs.' Mem. at 12-13.  Additionally, none of the 89 of the transactions the Cotchett Complaints include in their "statistical analysis" meet the Cotchett Plaintiffs' own criteria for bid rigging.  Indeed, none of the Cotchett Complaints alleges that issuers earned less than the maximum permitted under the IRS's Anti-Arbitrage Regulations.[5]  In light of the fact that not all municipal derivatives transactions were subject to the purported conspiracy, each of the individual Cotchett Plaintiffs must allege facts showing that each Plaintiff's own transactions were subject to the conspiracy.  They do not, and, therefore, the Court should dismiss the Cotchett Complaints.

II.   **THE CLAIMS ARE TIME BARRED AND THE OPPOSITION BRIEF ASSERTS NO VALID ARGUMENTS TO THE CONTRARY**

The Cotchett Plaintiffs fail to allege any actionable "misconduct" that occurred during the respective limitations periods for their complaints.  Some of the Cotchett Plaintiffs

---

[5]    The IRS Anti-Arbitrage Regulations preclude issuers from earning arbitrage profits on the reinvestment of tax exempt bond proceeds.  Therefore, absent allegations that issuers earned less than the maximum profit allowed, they could not even theoretically have been harmed by collusive bidding.

add routine transactions to which they were a party, which ostensibly occurred during the limitations periods, but fail to allege any facts showing that these routine transactions were part of a purported conspiracy. These routine transactions were known to the Cotchett Plaintiffs for some time—a fact that the Cotchett Plaintiffs do not dispute—and were added now in an attempt to save the Complaints. Other Cotchett Plaintiffs (*i.e.*, San Mateo and Sacramento Suburban Water District) do not even attempt to allege any transactions to which they were a party—even routine ones—within the limitations periods. Recognizing that their claims fall outside the limitations period, the Cotchett Plaintiffs contend in their Opposition that their claims are timely due to fraudulent concealment, and, unlike the Class Plaintiffs, the Cotchett Plaintiffs also argue for application of the discovery rule, continuing violations doctrine, and the *American Pipe* doctrine. However, for the reasons discussed below, these arguments are fatally flawed.

> **A.  The Discovery Rule and Continuing Violation Doctrine Are Inapplicable to the Cotchett Plaintiffs' Antitrust Claims**

It has been black letter law for nearly 40 years that an antitrust claim accrues on the date of injury for all damages flowing from that injury. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971). Despite this clear and controlling authority, the Cotchett Plaintiffs contend that their claims did not begin to accrue until they discovered their claims. However, the discovery rule does not apply in the context of antitrust claims.[6] *See Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979) ("It is 'plain from the treble-damage statute itself' . . . that 'a cause of action accrues and the statute begins to run

---

[6]     As with the federal antitrust claims, the discovery rule does not apply to the Cotchett Plaintiffs' Cartwright Act claims. *See Dean v. United of Omaha Life Ins.*, No. CV-05-6067-GHK, 2007 WL 7079558, at *14 n.7 (C.D. Cal. Aug. 27, 2007) (*citing Stutz Motor Car of Am. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995) (holding that, as with the Cartwright Act, claims under the California Unfair Competition Law accrue on the date of the injury, "irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine.")).

when a defendant commits an act that injures a plaintiff's business.'") (citing *Zenith Radio*, 401 U.S. at 338); *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 246 n.8 (3d Cir. 2001) (citing *Zenith Radio* and noting that "antirust claims are subject to the less plaintiff-friendly 'injury occurrence' accrual rule.").[7]

The Cotchett Plaintiffs assert that their untimely claims are nevertheless viable by characterizing them as part of a "continuing violation" that persists up to the present and potentially decades into the future. Opp. Br. at 45-46. The Cotchett Plaintiffs allege that each time a payment is made on an alleged transaction, the recipient Plaintiff "is injured by receiving artificially depressed amounts." *Id.* at 46. Presumably, the Cotchett Plaintiffs contend that each subsequent interest payment constitutes a separate overt act that restarts the limitations period.[8] That is incorrect. Interest payments made by Defendants on pre-limitations contracts merely constitute subsequent performance of those contracts. The law is clear that this is insufficient to restart the statute of limitations. *See In re Buspirone Patent Litig.* at 379; *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 229 (E.D.N.Y. 2003) ("[T]he performance of an allegedly anticompetitive, pre-existing contract is not a new predicate act.").[9]

---

[7]   *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) is the only authority the Opposition Brief cites in support of its argument regarding the discovery rule, but *Pearl* is a RICO case and does not reference the accrual of *antitrust claims* in any way.

[8]   A plaintiff "can proceed with a claim . . . [only] if it is based on an overt act that occurred *within the statute of limitations*." April 30, 2009 Order Dismissing the CAC ("April 30, 2009 Order") at 37 (emphasis added). For an act to be overt, "the act must be a new and independent act, not merely a reaffirmation of a previous act; and it must inflict new injury on the plaintiff." *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 379 (S.D.N.Y. 2002) (holding that performance on a pre-limitations contract is not an overt act restarting the statute of limitations).

[9]   Other courts agree. *See, e.g.*, *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 405-07 (6th Cir. 1999) (holding, in the context of the Robinson-Patman Act, that payments made under an allegedly anticompetitive contract "were only a manifestation of the previous agreement" and did not constitute 'new and independent' acts sufficient to

The Cotchett Plaintiffs' interpretation of the continuing violation doctrine would allow a plaintiff to bring a claimed violation decades into the future even if that plaintiff is presently fully aware of the conduct underlying the alleged violation.

**B.      No Other Equitable Tolling Provisions are Applicable to Extend the Limitations Period**

1.      *The Cotchett Plaintiffs' Allegations of Fraudulent Concealment Are Not Adequately Pled*

The Opposition relies only on the March 25 Decision to support the claim that they adequately pled fraudulent concealment.  Opp. Br. at 44.  However, the Cotchett Plaintiffs' allegations differ materially from the allegations in the SCAC, and, as the Defendants demonstrated in their opening Memorandum, the Cotchett Plaintiffs' allegations do not sufficiently plead fraudulent concealment.

First, the Cotchett Plaintiffs do not allege with the requisite particularity that each Plaintiff remained in ignorance of the alleged violations until sometime within the limitations period.  Their only relevant allegation is that, as of December 2006, they "lacked the ability ***to confirm*** the true nature of the alleged conspiracy from publicly available information."  Compl. ¶ 574 (emphasis added).  This is significantly different from the SCAC's allegation that the class plaintiffs remained entirely unaware of the alleged conspiracy prior to Bank of America's announcement of cooperation with the DOJ investigation.  SCAC ¶ 199.  As fully briefed, the fact that the Cotchett Plaintiffs could not "confirm" the conspiracy is irrelevant.  Defs.' Mem. at

---

restart the statute of limitations); *Aurora Enters., Inc. v. Nat'l Broadcasting Co., Inc.*, 688 F.2d 689, 693-94 (9th Cir. 1982) (holding that payments made by plaintiffs on contracts alleged to have resulted from defendants' illegal tying agreement were not overt acts but were merely performance on a pre-limitations contract); *City of El Paso v. Darbyshire Steel Co., Inc.*, 575 F.2d 521, 523-24 (5th Cir. 1978) (holding payments received by defendants alleged to have obtained a series of contracts through collusive bid rigging did not restart the statute of limitations).

42-44.  The Cotchett Plaintiffs' fraudulent concealment claim requires they plead the date they each became aware of facts regarding their claims.  *See* April 30, 2009 Order Dismissing the CAC at 41.  They did not plead these dates, and the fact that this Court found that the Class Plaintiffs adequately pled the requisite date in the SCAC is of no avail.  Moreover, the Cotchett Plaintiffs allege that a wide bid spread is indicative in and of itself of an antitrust conspiracy (*e.g.*, Compl. ¶¶ 382, 383, 386), and the Cotchett Plaintiffs knew or should have known that there was a purported wide bid spread at the time they received the bids and awarded the contract.  Therefore, they cannot now claim ignorance of the terms of the bids they received—and the alleged evidence of anticompetitive behavior the Cotchett Plaintiffs assert them to be—in order to avail themselves of tolling for fraudulent concealment.  *See 131 Main Street Assocs. v. Manko*, 179 F. Supp. 2d 339, 348 (S.D.N.Y. 2002) ("[a]ll that is necessary to cause the tolling period to cease is for there to be reason to suspect the probability of any manner of wrongdoing.") (citation and internal punctuation omitted).

Second, the Cotchett Plaintiffs specifically admitted that information about government investigations of potentially collusive bidding practices was publicly available at least as early as January 2005—more than four years before any Cotchett Plaintiff brought a claim under the Sherman Act.  In earlier incarnations of their respective Complaints, Stockton, Contra Costa, Los Angeles, San Diego and San Mateo referred to a January 2005 *Bond Buyer* article that is the source of former IRS official Mark Scott's alleged statement regarding courtesy bids.  *See, e.g.*, Stockton First Amended Compl. (Nov. 25, 2008) ¶ 79.  Realizing that the allegation that information about the government's investigation was in the public realm more than four years before the filing of their Complaints defeats any potential fraudulent concealment argument, the Cotchett Plaintiffs removed the citation (and date) of Mr. Scott's partial quote

from the most recent versions of their Complaints.[10]  Erasing a bad fact from your complaints does not make it go away, and the Court should bind the Cotchett Plaintiffs to their judicial admission and find that they were aware or should have been aware of the alleged antitrust violations more than four years before the filing of their Sherman Act claims.

Lastly, the Cotchett Plaintiffs fail to adequately plead the exercise of due diligence to discover the alleged antitrust violations.  Apart from reliance by one unidentified issuer—not even identified as one of the Cotchett Plaintiffs—on a single denial of wrongdoing by a defendant,[11] the Cotchett Plaintiffs' sole act of "due diligence" was seeking representations from Defendants prior to the transactions at issue that they had not engaged in collusion.  As Defendants set forth in their opening Memorandum, this Court has held that such activities taken prior to the accrual of a claim are patently insufficient.  *See State of New York v. Cedar Park Concrete Corp.*, 684 F. Supp. 1229, 1232-33 (S.D.N.Y. 1988) (plaintiffs failed to plead properly the exercise of due diligence to discover the alleged antitrust violation despite requiring an affirmative non-collusion declaration from each bidder).  The Cotchett Plaintiffs do not dispute that this is the applicable law or that they failed to allege any post-transaction "due diligence." Accordingly, this Court should dismiss the Cotchett Complaints as untimely.

2.  *The American Pipe Doctrine Does Not Toll the Applicable Limitations Period*

The Cotchett Plaintiffs erroneously claim that the filing of the Hinds County complaint on March 12, 2008 ("Hinds County Complaint") tolled the Cotchett Plaintiffs' statute

---

[10]  In Defendants' opening Memorandum, Defendants describe the Cotchett Plaintiffs' deceptive removal of the citation and date of Mr. Scott's partial quote in their most recent versions of their Complaints, and the Cotchett Plaintiffs do not dispute this or attempt to justify their attempt to hide this crucial fact from the Court.

[11]  Plaintiffs do not plead that *they* each relied on this representation or that they were even aware of this disclosure and therefore cannot cure the defect in their pleadings.

of limitations as of that date.  Opp. Br. at 43.  In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), the Supreme Court adopted an equitable tolling rule that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the putative class who would have been putative class members.  However, the doctrine is limited so as to balance the judicial efficiency sought by the rule against the possibility for abuse and prejudice to defendants.  *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350-53 (1983).

In *Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086 (S.D.N.Y. 1990), the court limited equitable tolling in similar circumstances to those presented here.  In *Camotex*, the original antitrust class complaint that the individual plaintiffs argued tolled their claims was so broad that it "failed to give [defendants] adequate notice to prepare a defense against a subgroup's specialized grievances."  *Id.* at 1091.  As a result, the *Camotex* court dismissed the individual plaintiff's antitrust claim as time-barred, holding:  "It would be contrary to the *American Pipe* doctrine to hold that class complaints asserting the generalized grievances of an open-ended group alert the defendant to the identity of those likely to participate in the action against him."  *Id.*  In Camotex, the relevant antitrust class was "all those who purchased or held silver futures, silver bullion, or refined silver in commercial quantities."  *Id*.  Here, the class alleged in the Hinds County Complaint is similarly defined as "[a]ll state, local and municipal government entities, independent government agencies and private entities that purchased by competitive bidding or auction Municipal Derivatives . . . ."  Hinds County Complaint ¶ 105.  The class proposed in the Hinds County Complaint included everybody, government or private, who purchased any of at least 12 distinct financial instruments.  Like the *Camotex* class, this class is a "generalized laundry list" of possible plaintiffs that does not give Defendants adequate notice to

prepare a defense against any particular subgroup's grievance. 741 F. Supp. at 1091-92. As in *Camotex*, the massive breadth of the Hinds County class complaint forecloses the application of *American Pipe* tolling.

Even if *American Pipe* tolled the Cotchett Plaintiffs' claims (which it does not), such tolling applies only against defendants named in the putative class complaint. *See Earl v. Novartis Consumer Health, Inc.*, No. 07 Civ. 9595 (RMB) 2008 WL 4274468, at *4 (S.D.N.Y. Sept. 12, 2008); *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977) ("[N]othing in *American Pipe* suggests that the statute be suspended from running in favor of a person not named as a defendant in the class suit, and we decline so to extend the rule. A different conclusion would not comport with reason.") (overturned and superseded by statute on other grounds). Therefore, the rule cannot apply to those Defendants named in the Cotchett Complaints but not the Hinds County Complaint ("Cotchett-Only Defendants").[12]

## III. THE COTCHETT PLAINTIFFS' CARTWRIGHT ACT CLAIMS MUST BE DISMISSED

The Cotchett Plaintiffs do not present any separate reasons why their Cartwright Act claim should not be dismissed. Therefore, the Cotchett Plaintiffs' Cartwright Act claim should be dismissed on the same grounds as the federal Sherman Act claims for the reasons set forth above and in Defendants' opening Memorandum.

---

[12]   Therefore, *American Pipe* tolling is wholly inapplicable to, *at the very least*, the following Cotchett-Only Defendants: Assured Guaranty US Holdings, Inc.; Bayerische Landesbank Gironzentrale; Citibank, N.A.; Citigroup Financial Products; Citigroup Global Markets Holdings Inc.; Dexia S.A.; General Electric Capital Corporation; Goldman Sachs Bank USA; The Goldman Sachs Group, Inc.; Goldman Sachs Mitsui Marine Derivative Products, L.P.; J.P. Morgan Securities Inc.; MBIA Inc.; PFM Asset Management LLC; Natixis S.A.; PFM Group, Inc.; Rabobank Group; Syncora Guarantee, Inc.; Transamerica Life Insurance Company; Trinity Plus Funding Co., LLC; UBS Securities, LLC; and XL Capital Ltd.

## CONCLUSION

For the reasons stated above and in Defendants' opening Memorandum, the

Defendants respectfully request that, pursuant to Federal Rule of Civil Procedure 12(b)(6), the

Court dismiss the Cotchett Complaints with prejudice.


Respectfully Submitted,

SIMPSON THACHER & BARTLETT LLP

Dated:  April 16, 2010


By s/Joseph F. Wayland

Joseph F. Wayland
Ryan A. Kane
Peri L. Zelig
425 Lexington Ave.
New York, New York 10017-3954
Telephone: 212-455-2000

*Attorneys for JP Morgan Chase & Co. and J.P. Morgan Securities Inc.*



DORSEY & WHITNEY LLP

Dated:  April 16, 2010


By s/ J Jackson
J Jackson
*Admitted Pro Hac Vice*
I. Jenny Winkler
*Admitted Pro Hac Vice*
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600

*Attorneys For Piper Jaffray & Co.*

GIBSON, DUNN & CRUTCHER LLP

Dated:  April 16, 2010

By s/ Brian M. Lutz
     Brian M. Lutz
200 Park Avenue, 47th Floor
New York, New York 10166
Telephone:  (212) 351-4000

*Attorneys for the Citibank, N.A., Citigroup*
*Financial Products Inc. and Citigroup Global*
*Market Holdings Inc.*

SKADDEN ARPS SLATE MEAGHER &
FLOM LLP

Dated:  April 16, 2010

By s/Shepard Goldfein
     Shepard Goldfein
     Paul M. Eckles
     Nicholas Danella
Four Times Square
New York, NY 10036
Telephone:  (212) 735-3000

*Attorneys for Morgan Stanley*

AKIN GUMP STRAUSS HAUER & FELD
LLP

Dated:  April 16, 2010

By s/ Robert H. Hotz, Jr.
     Robert H. Hotz, Jr.
     Robert H. Pees
     Joseph L. Sorkin
     Christopher M. Egleson
     Dean L. Chapman, Jr.
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000

*Attorneys for the AIG Financial Products Corp.*

Dated:  April 16, 2010

CADWALADER, WICKERSHAM & TAFT LLP


By s/ Charles F. Rule_____
  Charles F. Rule
  Joseph J. Bial
700 Sixth Street, NW
Washington, DC 20001
Telephone:  (202) 862-2200

Gregory A. Markel
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000

*Attorneys for Assured Guaranty Municipal Corp. (f/k/a Financial Security Assurance Inc.) Assured Guaranty US Holdings Inc. and Dexia S.A.*


PILLSBURY WINTHROP SHAW PITTMAN LLP

Dated:  April 16, 2010


By s/Mark R. Hellerer_____
  Mark R. Hellerer
  James G. Wheaton
1540 Broadway
New York, NY  10024
Telephone:  (212) 858-1000

*Attorneys for Bayerische Landesbank Girozentrale*

ARNOLD & PORTER LLP

Dated:  April 16, 2010

By s/Craig A. Stewart_____
    Craig A. Stewart
399 Park Avenue
New York, New York 10002
Telephone:  (212) 715-1000

And

    Douglas L. Wald
    *Admitted Pro Hac Vice*
    John Arak Freedman
    Sonia Kuester Pfaffenroth
    *Admitted Pro Hac Vice*
    Laura Cofer Taylor
    *Admitted Pro Hac Vice*
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone:  (202) 942-5000

*Attorneys for GE Funding Capital Market Services, Inc., Trinity Funding Co., LLC, Trinity Plus Funding Co., LLC, and General Electric Capital Corp. (collectively, the "GE/Trinity" entities)*

BROWNSTEIN HYATT FARBER SCHRECK, LLP

Dated:  April 16, 2010

By s/John V. McDermott_____
    John V. McDermott
410 Seventeenth Street
Suite 2200
Denver, CO  80202
Telephone:  (303) 223-1100

*Attorneys for George K. Baum & Company*

HOWREY LLP

Dated:  April 16, 2010

By   s/Richard W. Beckler
      Richard W. Beckler
      Joseph Walker
      Amory W. McAndrew
1299 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:  (202) 383-0800

*Attorneys for CDR Financial Products*

VINSON & ELKINS LLP

Dated:  April 16, 2010

By s/Alden L. Atking
      Alden L. Atkins
The Willard Office Building
1455 Pennsylvania Avenue, NW
Washington, DC 20004-1008
Telephone:  (202) 639-6613

By s/Brian E. Robison
      Brian E. Robison
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975
Telephone:  (214) 220-7700

*Attorneys for First Southwest Company*

DAVIS & GILBERT LLP

Dated:  April 16, 2010

By s/Howard J. Rubin
  Howard J. Rubin
  Peggy S. Chen
  Sean P. Cameron
1740 Broadway
New York, NY  10019
Telephone:  (212) 468-4800

*Attorneys for Nataxis S. A. and Natixis Funding Corporation*

FREDRIKSON & BYRON, P.A.

Dated:  April 16, 2010

By s/John W. Lundquist
  John W. Lundquist
  *Admitted Pro Hac Vice*
  Nicole M. Moen
  *Admitted Pro Hac Vice*
200 South Sixth Street
Suite 4000
Minneapolis, MN  55402
Telephone:  (612) 492-7000

*Attorneys for Sound Capital Management, Inc.*

SCHULTE ROTH & ZABEL LLP

Dated:  April 16, 2010

By s/Harry S. Davis
  Harry S. Davis
  Taleah E. Jennings
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for National Westminster Bank Plc*

PROSKAUER ROSE LLP

Dated:  April 16, 2010

By s/Ronald S. Rauchberg
     Ronald S. Rauchberg
     John D. Roesser
1585 Broadway
New York, New York 10036
Telephone:  (212) 969-3000

     Of Counsel:
     Scott P. Cooper
2049 Centure Park East, 32nd Floor
Los Angeles, CA 90067-3206
Telephone:  (310) 557-2900

*Attorneys for MBIA, Inc.*


WILLIAMS & CONNOLLY LLP

Dated:  April 16, 2010

By s/Christopher N. Manning
     Christopher N. Manning
     Jesse T. Smallwood
725 Twelfth Street NW
Washington, DC  20005
Telephone:  (202) 434-5880

*Attorneys for UBS Securities, LLC*


QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Dated:  April 16, 2010

By s/Stephen R. Neuwirth
     Stephen R. Neuwirth
     Lee Turner
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7165

*Attorneys for Rabobank Group*

STEVENS & LEE, P.C.

Dated:  April 16, 2010

By *s/ Alec P. Ostrow*
    Alec P. Ostrow
485 Madison Avenue
New York, NY 10022
Phone: (212) 319-8500

    Daniel B. Huyett
    *Admitted Pro Hac Vice*
    Julie E. Ravis
    *Admitted Pro Hac Vice*
111 N. Sixth Street, P.O. Box 679
Reading, PA  19603-0679
Telephone:  (610) 478-2219

*Attorneys for PFM Asset Management LLC*


DLA PIPER LLP (US)

Dated:  April 16, 2009

By s/Timothy E. Hoeffner
    Timothy E. Hoeffner
One Liberty Place
1650 Market Street - Suite 4900
Philadelphia, Pennsylvania 19103
Telephone:  (215) 656-3341

*Attorneys for Investment Management Advisory
Group, Inc.*

MAYER BROWN LLP

Dated:  April 16, 2010

By s/Steven Wolowitz

    Steven Wolowitz
    Richard M. Steuer
    Michael O. Ware
1675 Broadway
New York, NY 10019
Telephone:  (212) 506-2500

and

    John J. Tharp, Jr.
71 S. Wacker Dr.
Chicago, IL 60606
Telephone:  (312) 782-0600

*Attorneys for Société Générale S.A.*

DLA PIPER LLP (US)

Dated:  April 16, 2010

By s/Anthony D. Gill

    Anthony D. Gill
    Rachel A. Gupta
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 335-4500

    Quincy M. Crawford
    *Admitted Pro Hac Vice*
6225 Smith Avenue
Baltimore, MD  21209-3600
Telephone:  (410) 580-4130

*Attorneys for Transamerica Occidental Life
Insurance Company*

WILLIAMS & CONNOLLY LLP

Dated:  April 16, 2010

By s/Steven R. Kuney
     Steven R. Kuney
     Jon R. Fetterolf
     Jesse T. Smallwood
725 Twelfth Street NW
Washington, DC  20005
Telephone:  (202) 434-5880

*Attorneys for UBS AG*


WILLIAMS & CONNOLLY LLP

Dated:  April 16, 2010

By s/Christopher N. Manning
     Christopher N. Manning
     Jesse T. Smallwood
725 Twelfth Street NW
Washington, DC  20005
Telephone:  (202) 434-5880

*Attorneys for UBS Financial Services, Inc.*


SULLIVAN & CROMWELL LLP

Dated:  April 16, 2010

By s/David B. Tulchin
     David B. Tulchin
     Stephanie G. Wheeler
125 Broad Street
New York, NY  10004
Telephone:  (212) 558-4000

*Attorneys for Wachovia Bank N.A. & Wells Fargo & Company*

BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS & LINCENBERG, P.C.

Dated: April 16, 2010

By s/Marc E. Masters
     Marc E. Masters
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
Telephone: (310) 201-2100

*Attorneys for Winters & Co. Advisors, LLC*

CAHILL GORDON & REINDEL LLP

Dated: April 16, 2010

By  s/Thorn Rosenthal
     Thorn Rosenthal
     Laurence T. sorkin
     Scott Watnik
80 Pine Street
New York, NY 10005
Telephone: (212) 701-3000

*Attorneys for XL Capital Ltd, XL Asset Funding
Company I LLC, XL Life and AnnuityHolding
Company, and XL Life Insurance and Annuity
Company*