```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
HINDS COUNTY, MISSISSIPPI,           :
                                     :
                  Plaintiff,         :
                                     :
     - against -                     :
                                     :  08 Civ. 2516
                                     :
WACHOVIA BANK N.A. et al.,           :
                                     :
                  Defendants.        :
------------------------------------X
IN RE MUNICIPAL DERIVATIVES          :
ANTITRUST LITIGATION                 :  08 MDL No. 1950
                                     :
THIS DOCUMENT RELATES TO:            :  DECISION AND ORDER
                                     :
CITY OF OAKLAND v. AIG FINAN.        :
PRODS. CORP., ET AL., 08 CIV. 6340;  :
COUNTY OF ALAMEDA v. AIG FINAN.      :
PRODS. CORP., ET AL., 08 CIV. 7034;  :
CITY OF FRESNO v. AIG FINAN. PRODS.  :
CORP., ET AL., 08 CIV. 7355;         :
FRESNO COUNTY FINANCING AUTH.        :
v. AIG FINAN. PRODS. CORP., ET AL.   :
09 CIV.1199                          :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

This action is part of the consolidated pretrial proceedings of the multidistrict litigation In re Municipal Derivatives Antitrust Litigation, 08 MDL No. 1950. Plaintiffs City of Oakland ("Oakland"), County of Alameda, City of Fresno and Fresno County Financing Authority (collectively, "Plaintiffs") are municipalities and other purchasers of investment instruments known as municipal derivatives. Plaintiffs brought four separate complaints in federal courts in California alleging federal and state law claims arising out of municipal derivatives transactions. All four cases

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-26-10

were transferred by order of the Judicial Panel on Multidistrict Litigation ("MDL") to this Court for pretrial coordination (the "MDL Order"). Plaintiffs filed this joint second amended complaint on December 15, 2009 (the "JSAC"), claiming that sixteen corporate defendants and others illegally rigged bids, limited competition, and fixed prices in the municipal derivatives market, in violation of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 ("§ 1"), and California State law. All defendants except BoA (collectively, "Defendants") now move to dismiss the JSAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. PROCEDURAL BACKGROUND

#### 1. Multidistrict Litigation

In January 2007, Bank of America, N.A. ("BoA") entered into the antitrust corporate leniency program administered by the Department of Justice, Antitrust Division ("DOJ Antitrust") under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"). See Pub. L. No. 108-237, tit. II, §§ 201-221, 118 Stat. 661, 665-669. BoA's action was prompted by DOJ Antitrust's investigation into transactions of certain financial institutions involved in the municipal

derivatives market. Multiple civil antitrust actions against various defendants were subsequently filed by various municipalities and other entities across the country alleging violations of § 1 arising from bidding on municipal derivatives offerings. Pursuant to 28 U.S.C. § 1407, the Judicial Panel on MDL transferred all pending and subsequent related actions to this District on June 16, 2008, and ordered that they be assigned to this Court for coordinated or consolidated pretrial proceedings. In accordance with the MDL Order, fifteen cases were ultimately transferred and consolidated with the designated lead case. By Decision and Order dated July 31, 2008 (the "July 2008 Decision"), the Court granted the motion of nine municipalities to appoint the law firms of Cohen, Milstein, Hausfeld & Toll P.L.L.C., Boies, Schiller & Flexner LLP, and Susman Godfrey LLP as interim lead counsel (collectively, "Interim Lead Counsel"), and denied Plaintiffs' motion to have its counsel Lieff, Cabraser, Heimann & Bernstein LLP ("Lieff Cabraser") serve as lead counsel or co-lead counsel for the putative class.

2. Federal Class Action

Interim Lead Counsel filed the original consolidated class action complaint (the "CAC") in this action on August 22, 2008 against more than forty corporate defendants

(collectively, "CAC Defendants").[1] The CAC alleged that CAC Defendants conspired to fix, maintain or stabilize the price of, and to rig bids and allocate customers and markets for, municipal derivatives in violation of § 1. All but three CAC Defendants filed a joint motion to dismiss the CAC. By Decision and Order dated April 29, 2009 (the "April 2009 Decision"), the Court granted CAC Defendants' joint motion with leave to replead.[2]

Interim Lead Counsel filed a second consolidated amended complaint (the "SCAC") on June 18, 2009, again alleging a § 1 claim against sixteen corporate defendants. The SCAC plaintiffs ("SCAC Plaintiffs") purport to represent a class (the "SCAC Class") consisting of:

> All state, local and municipal government entities, independent government agencies and private entities that

---

[1] The defendants as named in the CAC were: BoA; Wachovia Bank N.A. ("Wachovia"); AIG Financial Products Corp. ("AIG"); Bear, Stearns & Co., Inc. ("Bear Stearns"); Financial Security Assurance Holdings, Ltd. ("Financial Security Holdings"); Financial Security Assurance, Inc. ("Financial Security Assurance"); Financial Guaranty Insurance Co. LLC; GE Funding Capital Market Services, Inc.; Genworth Financial Investment Management, LLC; Feld Winters Financial LLC ("Feld Winters"); Natixis S.A. ("Natixis"); JP Morgan Chase & Co. ("JP Morgan"); Piper Jaffray & Co. ("Piper Jaffray"); Société Générale SA ("Société Générale"); AIG SunAmerica Life Assurance Co.; UBS AG ("UBS"); XL Capital, Ltd.; XL Asset Funding Co. I, LLC; XL Life Insurance & Annuity Inc.; Merrill Lynch & Co., Inc.; Morgan Stanley; National Westminster Bank PLC ("NatWest"); Natixis Funding Corp ("Natixis Funding"); Investment Management Advisory Group, Inc. ("Investment Management Advisory"); CDR Financial Products ("CDR"); Winters & Co. Advisors, LLC ("Winters & Co."); First Southwest Company; George K. Baum & Co. ("Baum"); Kinsell Newcomb & De Dios Inc.; PackerKiss Securities, Inc.; Shockley Financial Corp.; Sound Capital Management, Inc. ("Sound Capital"); Cain Brothers & Co., LLC; Morgan Keegan & Co., Inc.; Trinity Funding Co. LLC; and Municipal Government Investors Corp.

[2] The April 2009 Decision is reported as Hinds County, Miss. v. Wachovia Bank N.A., 620 F. Supp. 2d 499 (S.D.N.Y. 2009).

-4-

purchased by competitive bidding or auction [m]unicipal [d]erivatives directly from a [p]rovider [d]efendant, at any time from January 1, 1992 through the present in the United States and its territories or for delivery in the United States and its territories.

(SCAC ¶ 183.) Defendants as named in the SCAC are: BoA; Bear Stearns; JP Morgan; Morgan Stanley; NatWest; Piper Jaffray; Société Générale; UBS; Wachovia; Wells Fargo; Natixis Funding; Investment Management Advisory; CDR; Winters & Co.; Baum; and Sound Capital (collectively, "SCAC Defendants").

All SCAC Defendants except BoA filed a joint motion to dismiss the SCAC, dated September 18, 2009. By Decision and Order dated March 25, 2010 (the "March 2010 Decision"), the Court denied SCAC Defendants' joint motion to dismiss and found that SCAC Plaintiffs had alleged plausible § 1 claims.[3]

B. FACTUAL BACKGROUND[4]

The facts of this case are set forth in the April 2009 and March 2010 Decisions, familiarity with which is assumed. Here, the Court will briefly review the facts relevant to this motion to dismiss.

Plaintiffs bring federal and state law claims on behalf of themselves and a class virtually identical to the SCAC

---

[3] The March 2010 Decision is reported as Hinds County, Miss. v. Wachovia Bank N.A., - F. Supp. 2d -, 2010 WL 1244765 (S.D.N.Y. March 25, 2010).

[4] The facts below are taken from the JSAC, which the Court accepts as true for the purpose of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Technology Fin. Group, Inc., 67 F.3d 463, 465 (2d Cir. 1995)).

-5-

Class (the "JSAC Class"). (Compare JSAC ¶ 226, with SCAC ¶ 183.) Plaintiffs purport to represent

> All state, local or municipal Government Entities and private entities in the United States and its territories that purchased [m]unicipal [d]erivatives directly from one or more of the [p]rovider [d]efendants and/or through one or more of the [b]roker [d]efendants at any time from January 1, 1992 through the present. Excluded from the Class are all federal government entities and instrumentalities of the federal government.

(JSAC ¶ 226.) The JSAC's allegations and factual underpinnings largely track the SCAC, and Defendants as named in the JSAC are virtually identical to SCAC Defendants.[5] In addition to the § 1 claim, the JSAC also asserts three state law claims: (1) violation of the California Cartwright Act, Cal. Bus. & Prof. Code § 16720 (the "Cartwright Act"); (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;[6] and (3) violation of the California False Claims Act, Cal. Gov. Code § 12650 (the "False Claims Act"). The JSAC relies on the same allegations contained in the SCAC, supplemented with allegations specific to municipal derivatives transactions in California.

---

[3] Defendants as named in the JSAC are: BoA; Bear Stearns; JP Morgan; Morgan Stanley; Piper Jaffray; Société Générale; UBS; UBS Financial Services Inc. ("UBS Financial") f/k/a PaineWebber Inc.; Wachovia; Wells Fargo; Natixis Funding; Investment Management Advisory; CDR; Winters & Co.; Baum; and Sound Capital. The JSAC names all of the same defendants as the SCAC, with the exception of NatWest and the addition of UBS Financial.

[4] Plaintiffs have voluntarily dismissed their Unfair Competition Law claim against Defendants. (See Plaintiffs Opposition to Defendants' Joint Motion to Dismiss JSAC, dated March 26, 2010 ("Pls' Opp."), at 2 n.4.).

-6-

Identical to the SCAC, this action involves allegations of a conspiracy "to fix, maintain or stabilize the price of, and to rig bids and allocate customers and markets for" municipal derivatives sold in the United States and its territories. (JSAC ¶ 1.) The JSAC alleges that Defendants combined and conspired to allocate customers and fix and stabilize the prices of municipal derivatives, including the interest rates paid to issuers on such derivatives. Plaintiffs rely largely on the same sources of information relied upon in the SCAC, including the same BoA confidential witness and antitrust investigations undertaken by DOJ Antitrust and the Internal Revenue Service. The JSAC alleges that individuals employed by Defendants knowingly acted as conduits for communication of pricing and bidding information among Defendants, with the knowledge and consent of Defendants. Further, like SCAC Plaintiffs, Plaintiffs allege that Defendants shared profits from winning bids, provided secret compensation to losing bidders and paid kickbacks to co-conspirators.

The JSAC also cites transactions that allegedly involved bid-rigging, kickbacks and collusive pricing in California municipal derivatives transactions. For example, the JSAC alleges that, in 2000, CDR acted as Oakland's broker in securing a forward delivery agreement and falsely certified

that it had provided notice to potential providers that submission of bids "is a representation that the potential provider did not consult with any other potential provider about its bid ... [that] the bid was determined without regard to any formal or informal agreement ... and that the bid is not being submitted solely as a courtesy." (Id. ¶ 146.) Plaintiffs allege that CDR "went on to designate [BoA] as the provider" for Oakland's municipal derivative transaction. (Id.)

Plaintiffs allege that they purchased millions of dollars worth of municipal derivatives from Defendants and, as a result, were injured by the conspiracy.

## II. **DISCUSSION**

Defendants move to dismiss the JSAC's § 1 and Cartwright Act antitrust claims for the same reasons asserted by SCAC Defendants, and move to dismiss Plaintiffs' California False Claims Act claim on grounds that (1) Plaintiffs may not bring a False Claims Act claim on behalf of other government entities; (2) Plaintiffs have failed to plead the claim with the particularity required; and (3) the claim is time-barred.

A. LEGAL STANDARD

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer sufficient factual allegations making the

asserted claim plausible on its face. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The task of the Court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (quotation marks omitted). The Court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

B. ANTITRUST CLAIMS

As an initial matter, the Court notes that it treats the JSAC's § 1 claims as brought by Plaintiffs as individual municipalities, and not as class claims. In its July 2008 Decision, the Court appointed Interim Lead Counsel as lead class counsel, and denied Plaintiffs' motion to have Lieff Cabraser appointed as co-lead counsel. Defendants argue that Lieff Cabraser improperly seeks to contravene the July 2008 Decision and that, as a result of the Court's appointment of Interim Lead Counsel, Plaintiffs are precluded from bringing

any class claims in this multidistrict litigation. The Court disagrees. To the extent that Plaintiffs bring state law class action claims distinct from the federal class claims brought by Interim Lead Counsel, the Court will consider those claims. Any case management issues raised by Plaintiffs' state law class claims that survive Defendants' motion to dismiss will be considered at a later stage. Plaintiffs have not formally moved for class certification and class definition is unnecessary at this juncture to analyze the plausibility of Plaintiffs' state law claims.

In its March 2010 Decision, the Court found the SCAC's § 1 claims plausible as to all SCAC Defendants. As indicated above, the JSAC's § 1 allegations largely track the SCAC's allegations. The Court thus incorporates by reference the legal analysis, reasoning and conclusions of the March 2010 Decision and finds that Plaintiffs' individual § 1 claims are plausible as to all Defendants.[7]

---

[5] The JSAC's only § 1 claims not addressed in the March 2010 Decision are the claims against UBS Financial and BoA. The JSAC details conduct allegedly undertaken by UBS Financial in furtherance of the alleged conspiracy. For example, the JSAC contains an email purporting to show that BoA paid a substantial sum to UBS Financial in 2002 for a municipal derivatives transaction in which UBS Financial was not involved. (See JSAC ¶ 174.) On the basis of the allegations contained in the JSAC, and for substantially the same reasons discussed at length in the March 2010 Decision, the Court finds the § 1 claim against UBS Financial plausible for the purposes of a motion to dismiss. As for BoA, the parties to this action have stipulated and agreed that BoA shall have until forty-five days following the Court's ruling on all motions to dismiss in the MDL to answer or otherwise respond to all of the MDL complaints.

-10-

The Court also finds that Plaintiffs have stated a plausible Cartwright Act claim, on behalf of themselves and the JSAC Class, against each Defendant. Both parties concede that, at minimum, the Cartwright Act proscribes the same conduct as § 1 of the Sherman Act. (See Defendants' Memorandum in Support of Defendants' Joint Motion to Dismiss JSAC, dated February 9, 2010, at 13; Pls' Opp. at 10.) As a result, for substantially the reasons discussed in the March 2010 Decision, the Court denies Defendants' motion to dismiss the JSAC's Cartwright Act claims.

C. FALSE CLAIMS ACT

Defendants move to dismiss Plaintiffs' False Claims Act claims on grounds that (1) Plaintiffs may not bring a False Claims Act claim in a representative capacity on behalf of other political subdivisions; (2) Plaintiffs have failed to satisfy the applicable heightened pleading standards; and (3) the claim is time-barred.

1. Representative Capacity

Plaintiffs assert, "on behalf of themselves and all others similarly situated," that Defendants "knowingly presented or caused to be presented false claims, as defined in [the False Claims Act] to officers or employees of political subdivisions within California." (JSAC ¶ 259.) Defendants counter that, pursuant to the False Claims Act,

-11-

Plaintiffs may not bring their claim on behalf of similarly-situated municipalities. Defendants argue that the False Claims Act provides specific statutory procedures for private persons bringing qui tam actions on behalf of state or political subdivisions, but does not provide similar statutory authority for political subdivisions to proceed in a representative capacity on behalf of other public entities. Defendants argue that this statutory omission precludes the class action claims asserted here by Plaintiffs. The Court agrees.

The California Supreme Court addressed this precise issue in California ex rel. Harris v. PricewaterhouseCoopers, LLP, 141 P.3d 256 (Cal. 2006). The Harris court addressed whether "a political subdivision [may] bring an action under Cal. Gov. Code § 12652(c) ("§ 12652(c)") [i.e., the False Claims Act], to recover funds on behalf of the state or another political subvision." Id. at 259. The Harris Court found that the False Claims Act carefully distinguishes between private persons, who may sue as qui tam relators, from officials of political subdivisions, who may assert claims only on behalf of the public entities they represent. See id. at 261 ("The obvious purpose of these provisions is to delineate the boundaries of official jurisdiction, to make each public entity's prosecuting officer or officers responsible only for

funds falsely claimed from that entity, and to preclude one government agency's false claims jurisdiction from intruding on another's.").

Plaintiffs argue that their False Claims Act claim arises under a distinct statutory provision, Cal. Gov. Code § 1252(b) ("§ 1252(b)"), which authorizes the prosecuting authority of a political subdivision to bring a civil action under § 1252(b). Plaintiffs contend that § 1252(b) does not preclude a municipality from asserting class claims on behalf of another municipality. However, as thoroughly examined in <u>Harris</u>, the California legislature was careful to excise public entities from the statutory definition of "person" for <u>qui</u> <u>tam</u> purposes. 141 P.3d at 261 ("A subtantial subsequent amendment to the [False Claims Act] bill <u>excised the references to government entities</u>, and the definition of 'person' was changed to the form finally adopted." (emphasis in original)); <u>see also</u> <u>Wells v. One2One Learning Foundation</u>, 141 P.3d 225, 236-37 (Cal. 2006). In other words, the California legislature contemplated and rejected the prospect of political subdivisions bringing False Claims Act claims on behalf of other public entities. Consequently, the Court denies Plaintiffs' attempt to circumvent this express statutory intent by asserting a class claim, and dismisses

Plaintiffs' False Claims Act claims brought on behalf of other public entities.

The Court will thus proceed to consider only whether Plaintiffs have stated claims as public entities alleging false claims implicating their own funds.

2. <u>Particularity</u>

Defendants assert that Plaintiffs have failed to plead their False Claims Act claim with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"). As a fraud-based cause of action, False Claims Act claims must be pled with the particularity required by Rule 9(b). See, e.g., County of Santa Clara v. Astra U.S., 428 F. Supp. 2d 1029, 1036 (N.D. Cal. 2006); United States v. Sequel Contractors, Inc., 402 F. Supp. 2d 1142, 1152 (C.D. Cal. 2005); see also Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1477 (2d Cir. 1995) (applying Rule 9(b) to federal false claims act pleadings). Rule 9(b) requires that allegations of fraud must "(1) specify the statements that Plaintiffs contend were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). However, courts have relaxed the Rule 9(b) pleading requirements where much of the factual information needed to fill out a plaintiff's complaint

lies within the opposing party's knowledge. See Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990); Corley v. Rosewood Care Center, Inc., 142 F.3d 1041, 1051 (7th Cir. 1998); United States ex rel. Polansky v. Pfizer, Inc., No. 04 Civ. 0704, 2009 WL 1456582, at *1, 8 (E.D.N.Y. 2009); United States ex rel. Johnson v. Shell Oil Co., 183 F.R.D. 204, 206-07 (E.D. Tex. 1998) (collecting cases). "This exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." Wexner, 902 F.2d at 172.

Here, the substantial detail alleged in the JSAC regarding Defendants' false certifications and rigged bids support a strong inference of fraud. Insofar as Plaintiffs have not identified the who, when, and where attributable to each alleged false certification or rigged bid underlying their False Claims Act claims, Defendants are correct that Plaintiffs have not pled their claims with the particularity required by Rule 9(b). Nonetheless, as previously discussed in the March 2010 Decision with regard to Defendants' alleged fraudulent concealment, the Court finds that the information necessary to plead the claim at issue with the particularity

required by Rule 9(b), if it exists, is likely in Defendants' possession. Accordingly, the Court finds Plaintiffs' False Claims Act pleadings sufficient for the purposes of this motion to dismiss.

The Court notes that its ruling here is consistent with the spirit and purpose of the Rule 9(b) particularity requirement. Rule 9(b) is designed primarily to (1) ensure that defendants have sufficient notice of plaintiff's claims, (2) discourage strike suits, and (3) safeguard a defendant's reputation. See O'Brien v. National Prop. Analysts Parnters, 936 F.2d 674, 676 (2d Cir. 1991); United States ex rel. Smith v. New York Presbyterian Hosp., No. 06 Civ. 4056, 2007 WL 2142312, at *6 (S.D.N.Y. July 18, 2007); see also Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996); United States ex rel. Smith v. Yale Univ., 415 F. Supp. 2d 58, 82-83 (D. Conn. 2006). The factual allegations underpinning Plaintiffs' False Claims Act claims are part and parcel of Plaintiffs' § 1 claims. The Court has already found that Plaintiffs have stated plausible § 1 claims arising, in part, out of Defendants' alleged bid-rigging and the associated false bid certifications that Plaintiffs rely on to plead their False Claims Act claims. The Court therefore finds that there will be no additional discovery burden or reputational harm to Defendants as a result of affording Plaintiffs the opportunity

to attempt to pursue their False Claims Act following discovery. Defendants rightly assert that Rule 9(b) fails "in its purpose if conclusory generalizations ... permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing." Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 116 (2d Cir. 1982). But here, discovery on the alleged conduct at issue will proceed regardless, and Defendants' likely possession of information necessary for sufficiently particularized pleading does not preclude the False Claims Act claims' survival at this stage.

### 3. Statute of Limitations

Defendants finally contend that Plaintiffs' False Claims Act claims are time-barred under the applicable California three-year statute of limitations. Like the SCAC Defendants, Defendants here argue that Plaintiffs have not asserted actionable misconduct within the limitations period.

The JSAC asserts that Plaintiffs had no knowledge of the alleged unlawful conduct until BoA's cooperation with DOJ Antitrust, and that they remained ignorant of the conduct through no fault or lack of diligence on their part. For substantially the same reasons discussed at length in the March 25, 2010 Decision, the Court finds that Plaintiffs have sufficiently alleged concealment so as to toll the statute of limitations for the purposes of a motion to dismiss.

## III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 591) of Wachovia Bank N.A.; Wells Fargo & Co., Inc.; Bear, Stearns & Co., Inc.; Natixis Funding Corp.; JP Morgan Chase & Co.; Piper Jaffray & Co.; Société Générale SA; UBS AG; UBS Financial Services Inc.; Morgan Stanley; Investment Management Advisory Group, Inc.; CDR Financial Products; Winters & Co. Advisors, LLC; George K. Baum & Co.; and Sound Capital Management, Inc. to dismiss the joint second amended class action complaint is GRANTED in part and DENIED in part; and it is further

**ORDERED** that the parties are directed to appear at a pretrial conference on April 30, 2010 at 1:30 p.m. and, in preparation for that conference, to confer and propose an agreed upon Case Management Plan in the form provided by the Court.

**SO ORDERED.**

Dated: New York, New York
26 April 2010

Victor Marrero
U.S.D.J.