UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*City of Los Angeles v. Bank of America, N.A., et al.;* No. 08-10351<br>*City of Riverside, et al. v. Bank of America, N.A., et al.;* No. 09-10102<br>*City of Stockton v. Bank of America, N.A., et al.;* No. 08-10350<br>*Contra Costa County v. Bank of America, N.A., et al.;* No. 09-1197<br>*County of San Diego v. Bank of America, N.A., et al.;* No. 09-1195<br>*County of San Mateo v. Bank of America, N.A., et al.;* No. 09-1196<br>*County of Tulare v. Bank of America, N.A., et al.;* No. 10-0628<br>*Los Angeles World Airports v. Bank of America, N.A., et al.;* No. 10-0627<br>*The Redevelopment Agency of the City of Stockton, et al. v. Bank of America, N.A., et al.;* No. 10-0630<br>*Sacramento Municipal Utility District v. Bank of America, N.A., et al.;* No. 09-10103;<br>*Sacramento Suburban Water District v. Bank of America, N.A., et al.;* No. 10-0629 | MDL No. 1950<br><br>Master Docket No. 08-2516 (VM) (GWG)<br><br>**PUBLIC ENTITY PLAINTIFFS' SUPPLEMENTARY BRIEF IN OPPOSITION TO ANTITRUST DIVISIONS' MOTION FOR STAY OF DISCOVERY** |

**TABLE OF CONTENTS**

                                                                                         **Page**

I. **PRELIMINARY STATEMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. **UNPRECEDENTED FINANCIAL CHALLENGES FACING PUBLIC ENTITY PLAINTIFFS MAKE THE PUBLIC INTEREST IN THEIR TIMELY RECOVERY OVERWHELMING**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.     City Of Los Angeles.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.     City Of Stockton. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.     San Diego County. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.     Contra Costa County. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    E.     Redevelopment Agencies Of The Cities Of Riverside And Stockton. . . . . . . . . . . 6

III. **PROLONGED PENDENCY OF LITIGATION COMPLICATES PUBLIC ENTITY PLAINTIFFS BUSINESS DEALINGS WITH DEFENDANTS AND CREATES OPPORTUNITIES FOR DEFENDANTS TO EVADE LIABILITY**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# I.
# PRELIMINARY STATEMENT

The City of Los Angeles, County of San Diego, County of Tulare, Los Angeles World Airports, Sacramento Suburban Water District, City of Stockton, Public Finance Authority of the City of Stockton, Redevelopment Agency of the City of Stockton, Contra Costa County, City of Riverside, Public Finance Authority of the City of Riverside, Redevelopment Agency of the City of Riverside, Sacramento Municipal Utility District, and the County of San Mateo ("Public Entity Plaintiffs") respectfully submit this supplemental brief in further support of the opposition of all Plaintiffs in the above referenced coordinated actions ("Coordinated Actions") to the Motion by the Department of Justice, Antitrust Division ("ATR") for a Stay of Discovery in the Coordinated Actions.[1]

The Public Entity Plaintiffs submit this supplemental brief to amplify the public interest implications of the ATR's request to renew for another year the stay which has already effectively shut down discovery by Plaintiffs in the Coordinated Actions for the past year. The Public Entity Plaintiffs together represent over 11.1 million Californians. Declaration of Nanci Nishimura ("Nishimura Dec.") at ¶¶ 2-10. The Great Recession – which was caused in no small part by the reckless actions of many of the same financial institutions that are Defendants – has made providing the necessary and expected services for those citizens more difficult for Public Entity Plaintiffs than at any time since the 1930s.

The Coordinated Actions brought by the Public Entity Plaintiffs allege that Defendants conspired with one another to depress the returns and inflate the costs that the Public Entity

---

[1]The Public Entity Plaintiffs join in the arguments made in the Joint Memorandum of Law In Opposition to the ATR's Motion for a Stay of Discovery ("Joint Opposition").

Plaintiffs earned in investment and hedging transactions associated with municipal bonds. To put it bluntly, the Public Entity Plaintiffs' Complaints allege that Defendants cheated the taxpayers and ratepayers out of millions if not billions of dollars. At a time when the Public Entity Plaintiffs are literally faced with deciding whether to cut the ranks of public school teachers, the ranks of their police, and other providers of public services, the *public* interest in the expeditious return of this money cannot be overstated.

In a decision issued on April 26, 2010, Judge Victor Marrero found that Public Entity Plaintiffs had plausibly alleged claims against a total of 36 Defendants, including 27 investment banks and financial insurance companies that provide municipal derivatives ("Provider Defendants") and 9 municipal derivative brokers ("Broker Defendants"). *See* Dckt. No.711. The ATR now seeks to put the Public Entity Plaintiffs' case against these Defendants on ice for *at least* another year while it pursues criminal charges against *one* Broker Defendant and its current and former executives. For the reasons argued in the Joint Opposition, there is no legitimate legal basis on which to grant the ATR its request to delay for another year the Public Entity Plaintiffs' and other Plaintiffs' pursuit of civil remedies for their injuries. For the reasons discussed below, the public interest bases for *expediting* rather than delaying this pursuit are overwhelming.

## II.
## UNPRECEDENTED FINANCIAL CHALLENGES FACING PUBLIC ENTITY PLAINTIFFS MAKE THE PUBLIC INTEREST IN THEIR TIMELY RECOVERY OVERWHELMING

Unlike the vast majority of the civil antitrust cases in which the ATR might seek a stay of discovery, the victims of the conspiracy alleged here are not for profit companies, but the public entities and real people, the taxpayers and ratepayers they represent. Thus, the interest of each

2

Public Entity Plaintiff in expeditiously pursuing compensation for these injuries is not properly considered a "private" interest but rather is manifestly "public." The unprecedented financial challenges currently facing Public Entity Plaintiffs make this public interest overwhelming.

The financial situation for Public Entity Plaintiffs and, in fact, all of the governmental victims of Defendants' conspiracy is dire. As has been well reported, unemployment is at an all time high in many areas, while consumer spending is at an all time low and property values are dropping. This has presented Public Entity Plaintiffs with an unprecedented set of financial difficulties: tax revenues are down dramatically while the needs for public services are up dramatically. Further intensifying these difficulties, the State of California has funneled scarce public funds away from Public Entity Plaintiffs and into State coffers in an effort to deal with its own financial difficulties. All the while, Public Entity Plaintiffs continue, as they must, to make substantial debt service payments to the holders of their bonds.[2] The following describes just a few of the well publicized examples of the financial hardships facing Public Entity Plaintiffs.

**A.** **City Of Los Angeles**

The City of Los Angeles is the second largest city in the United States with a population of approximately 3.8 million people, spanning approximately 500 square miles. Nishimura Dec. at ¶ 2. When combined with surrounding areas of Riverside (another Public Entity Plaintiff) and Long Beach, the economy of Los Angeles is the fifteenth largest in the world. *Id.* Even with the exclusion of certain city departments, such as Los Angeles World Airports (another Public Entity Plaintiff), providing services to this population costs the City well over $7.11 billion annually. *Id.*

---

[2] In fact, as a consequence of the collapse of the bond insurance companies in 2008, the debt service payments of many of the Public Entity Plaintiffs spiked dramatically in 2008 and led, ultimately, to extremely expensive refundings of many affected bonds. "Los Angeles Files Suit Against Insurers", *The Bond Buyer* (July 25, 2010).

A substantial portion of this amount each year is supplied through borrowing and accordingly a substantial amount was invested in municipal derivatives subject to Defendants alleged conspiracy. Los Angeles First Amended Complaint at ¶ 28.

In February 2010, the Mayor of Los Angeles reported that it was facing a projected budget shortfall of $212 million, and ordered 1,000 job cuts. "L.A. Mayor Orders 1,000 Job Cuts To Start Closing $212 Million Hole", *The Bond Buyer* (February 8, 2010). By April 2010, the Los Angeles Controller reported that the City was at the brink of bankruptcy and would run out of money within a month without action by elected officials. "Los Angeles Nears Edge of Fiscal Cliff", *The Bond Buyer* (April 7, 2010).

**B.      City Of Stockton**

The City of Stockton is a city of approximately 300,000 persons in the Central Valley of California. Nishimura Dec. at ¶ 4. While traditionally an agricultural community, over the last ten years Stockton has become a significant bedroom community for commuters working in both the Sacramento and San Francisco Bay areas. *Id.* Accompanying this growth was dramatic real estate boom, followed by an equally dramatic real estate bust. In just the twelve months that ended on September 30, 2007, the median home price in Stockton dropped 44%. "Home Sellers Suffer Amid Wave Of Foreclosures", *CNNMoney.com* (Dec. 2, 2008).

In April 2010, the City of Stockton issued layoff notices to four dozen police officers and dozens of other employees. Stockton Officials' Message is Dire: 'There is No Good This Year. It's All Bad,' Mayor Says at Town Hall Forum", *Record* (May 6, 2010). And on May 6, 2010, at a somber town hall meeting, Stockton's Mayor reported that "things are not getting any better for the City of Stockton", noting that it faced a projected budget shortfall of $23 million. More layoffs will occur in July. *Id.*

### C. San Diego County

San Diego County is the Southwestern-most county in the contiguous 48 states and has a population of approximately 3 million people. Nishimura Dec. at ¶ 5. While this population is growing, because of declining revenues and moneys coming from the State, San Diego has been forced to cut the amount it budgets to provide services to that population by approximately $110 million in the upcoming year. "County Eyes Smaller Budget With Fewer Workers, Services", *North County Times* (May 7, 2010). In 2009, the County already eliminated approximately 770 jobs. These further cuts will result in the elimination of approximately 600 more. *Id.* Among the services already affected by previous cuts and identified for further reductions are services are child welfare and substance abuse services, respectively slated for $5.2 and $7.2 million reductions. *Id.*

### D. Contra Costa County

Contra Costa County has a population of well over a million people and includes significant agricultural as well as urban industrial populations as well as bedroom communities. Nishimura Dec. at ¶ 6. Like many California counties, Contra Costa County has been hit hard in recent years by the crash in home prices and increases in health care costs of its current and retired workers. *Id*.

To deal with the enormous imbalance this has created between revenues and costs, the County Administrator announced in April 2010, that "as we [the county] move towards fiscal years 2010-2011-2012 and beyond, it is not possible to understate how serious we are being challenged in our efforts to meet our public service mission" which is "to provide public services which improve the quality of life of our residents and the economic viability of our businesses." *Id.*, Ex. A (April 9, 2010 Report and Proposal to the County Board of Supervisors by David Twa,

5

County Administrator) at p.1. Accordingly, the County Administrator proposed cuts in the tens of millions, explaining that "[a]s was the case for the past two years, significant cuts will be necessary." *Id.*

**E.     Redevelopment Agencies Of The Cities Of Riverside And Stockton**

The Redevelopment Agencies of the Cities of Riverside and Stockton are facing financial challenges to their very abilities to accomplish the economic development purposes for which they were created. On May 5, 2010, efforts by California redevelopment agencies to halt the State from taking more than $2 billion in redevelopment funds from redevelopment agencies failed. "This Time, Judge Rules California Can Raid RDAs to Balance Budget – Redevelopment Association to Appeal", *The Bond Buyer* (May 5, 2010). In anticipation of the State's ultimately successful efforts to do so, the City of Riverside, pulled $17 million from Plaintiff Riverside Redevelopment Agency's housing program. Loss of these funds will prevent the agency and thus the Ctity from paying for new projects, and housing-assistance programs will lose funds that were slated to help dozens of first-time homebuyers with down payment assistance. Moreover, fewer homes will be rehabbed, and fewer foreclosed homes in the City will be repurchased and resold. According the City of Riverside officials, the State raid will cost the city's economy nearly $239 million and about 2,300 construction jobs. "Projects In Lurch As Battle Over Millions Rages", *Press-Enterprise* (May 6, 2010).

_____

These descriptions are just snapshots of the kinds of financial difficulties that are being faced by all Public Entity Plaintiffs, indeed, by all Plaintiffs in the coordinated action. The public interest in securing, as quickly a possible, compensation from Defendants for the moneys that Defendants' conspiracy allegedly denied Public Entity Plaintiffs is concrete and obvious. For

6

example, such compensation could quite literally make the difference between San Diego County having the funds to ensure that abused and neglected children in the County are identified and protected or left to their own devices.

Criminal prosecution by the ATR of one of the 36 Defendants from which Public Entities seek such compensation would serve an important public interest. However, that public interest is not so great that it should overwhelm consideration of the public interest impacts of delaying Public Entities abilities to seek such compensation for another year. This is especially so when, as argued in the Joint Brief, the ATR's need for that delay in order to ensure the success of the population is so questionable at best.

### III.
### PROLONGED PENDENCY OF LITIGATION COMPLICATES PUBLIC ENTITY PLAINTIFFS BUSINESS DEALINGS WITH DEFENDANTS AND CREATES OPPORTUNITIES FOR DEFENDANTS TO EVADE LIABILITY

The financial challenges facing Public Entity Plaintiffs have paradoxically placed them in greater need to conduct business with many of the same companies that are among the principal Defendants in this litigation. As the imbalance between revenues collected by Public Entity Plaintiffs and the costs of providing services to their populations have risen so have the Public Entity Plaintiffs' needs to bridge those imbalances through the municipal finance market. Among the 29 Provider Defendants are all of the major U.S. and European participants in the field of municipal finance. Thus, Public Entity Plaintiffs have no choice other than to continue doing business with these entities whom Public Entity Plaintiffs allege conspired in a manner that cost Public Entity Plaintiffs millions. The prolonged pendency of this litigation, which the ATR's proposed stay will only extend, not only makes these business dealings more difficult, it gives Defendants the opportunity to leverage Public Entity Plaintiffs' needs to do business with them to evade liability for their participation in the alleged conspiracy.

For example, on January 27, 2010, a representative of J. Aron, an affiliate of Defendant Goldman Sachs with whom the Sacramento Municipal Utility District (SMUD) has engaged in financial gas, basis and power trading since 2001, that because SMUD named Defendant Goldman Sachs and some of its affiliates in the instant action, J. Aron was instructed by "senior legal people" at Goldman to no longer do business with SMUD until the litigation is resolved. Declaration of Dennis Holcomb ("Holcomb Dec.") at ¶¶ 2-4, Ex. A (Transcript of Jan. 27, 2010 call), p. 4. It is clear from the statements of the representative of the Goldman affiliate, J. Aron, that the order not to do business with SMUD was intended to place pressure on SMUD to abandon its claims in the instant action against Goldman. At several points in the conversation, the J. Aron representative states that the order not to do business with SMUD will be in place until the instant litigation "gets sorted out." Holcomb Dec. at p. 3; *see also id.* at pp. 4, 6. Indeed, at the conclusion of the conversation, the J. Aron representative makes the coercive intent of the order not to do business with SMUD explicit, stating in response to the SMUD representative's expression of disappointment in the decision:

> Yeah. Well, hopefully, you know – hopefully it just causes people to just get stuff resolved, fixing it [sic] rather that later.

*Id.* at p. 6.

SMUD is a public utility that supplies power to approximately 1.4 million people living in a 900 mile area that includes Sacramento, the State capital of California. Nishimura Dec. at ¶ 9. Since 2001, "J. Aron was an important financial trading counterparty for SMUD" for almost a decade. Holcomb Dec. at ¶ 3. It is manifestly contrary to the public interest for SMUD to be placed in a position in which it must choose between pursuing claims against the Goldman Defendants that the Court has upheld and having available to it the full panoply of potential counterparties with whom it can execute deals that result in lower ultimate power costs for its

ratepayers.

More generally, a strong public interest has been served through the decision of Public Entity Plaintiffs to pursue the instant actions against Defendants. That decision sends a strong and clear message that the guardians of public moneys will not hesitate to take legal action against those accused of cheating Public Entity Plaintiffs in their dealings with them, even if the accused represent the most powerful financial institutions in the world. This strong public interest is manifestly not served when, because of delays imposed on Public Entity Plaintiffs' abilities to pursue such litigation, Public Entity Plaintiffs become subject to overt and implicit pressure from the accused entities to abandon such litigation.

### IV.
### CONCLUSION

For the foregoing reasons and the reasons stated in the Joint Opposition Brief, Public Entity Plaintiffs respectfully request that the Court deny the ATR's requested stay and allow Public Entity Plaintiffs to pursue the instant actions on behalf of their taxpayers and ratepayers.

DATED: May 10, 2010  **COTCHETT, PITRE & McCARTHY**

By: ⎯⎯ /s/ Stuart G. Gross ⎯⎯
NANCI E. NISHIMURA
JOSEPH W. COTCHETT
STEVEN N. WILLIAMS
STUART G. GROSS
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

**COTCHETT, PITRE & McCARTHY**
IMTIAZ SIDDIQUI
One Liberty Plaza, 23rd Floor
New York, NY 10006
Telephone: (212) 682-3198
Facsimile: (212) 219-6678

*Counsel for City of Los Angeles, County of San Diego, County of Tulare, Los Angeles World Airports, Sacramento Suburban Water District, City of Stockton, Public Finance Authority of the City of Stockton, Redevelopment Agency of the City of Stockton; Contra Costa County, City of Riverside, Public Finance Authority of the City of Riverside, Redevelopment Agency of the City of Riverside, County of San Mateo, and, Sacramento Municipal Utility District*

**GENERAL COUNSEL, SACRAMENTO MUNICIPAL UTILITY DISTRICT**
ARLEN ORCHARD
STEVEN M. COHN
6201 S Street, M.S. B406, P.O. Box 15830
Sacramento, CA 95852
Telephone: (916) 732-6121
Facsimile: (916) 732-6581

**CITY ATTORNEY OF LOS ANGELES**
CARMEN A. TRUTANICH
DAVID J. MICHAELSON,
Deputy City Attorney
BEVERLY A. COOK,
Deputy City Attorney
800 City Hall East
200 North Main Street
Los Angeles, CA 90012
Telephone: (213) 978-8100
Facsimile: (213) 978-8312

**CITY ATTORNEY, THE CITY OF RIVERSIDE**
GREGORY P. PRIAMOS
3900 Main Street
Riverside, CA 92522
Telephone: (951) 826-5567
Facsimile: (951) 826-5540

**CITY ATTORNEY, CITY OF STOCKTON**
JOHN LUEBBERKE
425 North El Dorado Street
Stockton, CA 95202-1950
Telephone: (209) 937-8009
Facsimile: (209) 937-8898

**COUNTY COUNSEL,**
**CONTRA COSTA COUNTY**
SILVANO B. MARCHESI,
County Counsel
KATHLEEN M. ANDRUS,
Deputy County Counsel
651 Pine Street, 9th Floor
Martinez, CA 94553
Telephone: (925) 335-1800
Facsimile: (925) 646-1078

**COUNTY COUNSEL,**
**COUNTY OF SAN MATEO**
MICHAEL P. MURPHY,
County Counsel
JOHN C. BEIERS,
Chief Deputy County Counsel
Hall of Justice and Records
400 County Center, Sixth Floor
Redwood City, CA 94063-1662
Telephone: (650) 363-4250
Facsimile: (650) 363-4034

**COUNTY COUNSEL,**
**COUNTY OF TULARE**
KATHLEEN BALES-LANGE,
County Counsel
2900 W. Burrel Avenue
Visalia, CA 93291
Telephone: (559) 636-4950
Facsimile: (559) 737-4319

**GENERAL COUNSEL, LOS ANGELES**
**WORLD AIRPORTS**
KELLY M. MARTIN, General Counsel
RAYMOND S. ILGUNAS,
Asst. General Counsel
1 World Way
Los Angeles, CA 90045
Telephone: (310) 646-3260
Facsimile: (310) 464-9617

**PARISH & SMALL**
WILLIAM H. PARRISH
1919 Grand Canal Blvd., Suite A-5
Stockton, CA 95207-8114
Telephone: (209) 952-1992
Facsimile: (209) 952-0250

**RENNE SLOAN HOLTZMAN**
**SAKAI LLP**
LOUISE H. RENNE
350 Sansome St., Ste. 300
San Francisco CA 94104
Telephone: (415) 678-3805
Facsimile: (415) 678-3838

*Co-Counsel for City of Stockton, Public Finance Authority of the City of Stockton, Redevelopment Agency of the City of Stockton*

*Co-Counsel for City of Los Angeles, County of San Diego, County of Tulare, Los Angeles World Airports, Sacramento Suburban Water District, Contra Costa County, City of Riverside, Public Finance Authority of the City of Riverside, Redevelopment Agency of the City of Riverside*