# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE MUNICIPAL DERIVATIVES
ANTITRUST LITIGATION

MDL No. 1950

Master Docket No. 08-02516
(VM) (GWG)

THIS DOCUMENT RELATES TO:

ALL ACTIONS

**CORRECTED
PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO ANTITRUST
DIVISION'S MOTION FOR A
STAY OF DISCOVERY**

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................................1

II.  BACKGROUND .............................................................................................4

   A. The Civil Class Action ...............................................................................4

   B. The Criminal Case ....................................................................................5

   C. The Prior Stay of Discovery .......................................................................6

III. ARGUMENT .................................................................................................7

   A. The Proposed Stay Is Overly Broad in Scope, Both as to its Nature and Duration. ..............9

   B. The Balance of Equities Weigh Against the Reimposition of a Stay ..................................13

     1.   Prejudice to Plaintiffs' Interests .................................................................13

     2.   Burden on Defendants ............................................................................20

     3.   Burden on the Court ..............................................................................20

     4.   Burden on Non-Parties ...........................................................................21

     5.   Public Interest .....................................................................................21

   C. Alternatives to ATR's Proposed Stay Are Sufficient to Address ATR's Asserted Concerns. ..............................................................................................26

IV.  CONCLUSION ..............................................................................................27

**TABLE OF AUTHORITIES**

**CASES**

*Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assocs.*, 743 F.2d 1519 (11th Cir. 1984)...................................................................................................................14

*Application of the United States Authorizing the Interception*, 413 F. Supp. 1321 (E.D. Pa. 1976)...............................................................................................................15

*Arden Way Assocs. v. Boesky*, 660 F.Supp. 1494 (S.D.N.Y. 1987)................................26

*Arnold-Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564 (3d Cir. 1986)...................19

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F. 3d 718 (9th Cir. 1997).............................................................................................11, 14

*Braswell v. United States*, 487 U.S. 99 (1988) ...............................................................20

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962) .....................................................23

*Citibank, N.A. v. Hakim*, 1993 WL 481335 (S.D.N.Y. 1993) ...............................13, 26

*Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8 (D. Mass. 1991) .........................21

*Fairfax County, Va. v. Bank of America*, Case No. 1:08-433 (D.D.C. Mar. 12, 2008)..................................................................................................................4

*Four In One Company, Inc. v. SK Foods, LP*, No. 08-03017, Docket No. 96 (E.D. Cal. Apr. 28, 2009)...................................................................................................11

*Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53 (E.D. Pa. 1980)...................................................................11, 18, 21, 26

*Hinds County, Miss. v. Wachovia Bank, N.A.*, Case No. 1:08-2516 (S.D.N.Y. Mar. 13, 2008).........................................................................................................5

*In re Aftermkt. Lighting Products Antitrust Litig.*, No. 09-02007, Docket No. 54 (C.D. Cal. Apr. 20, 2009) ......................................................................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.* No. 07-05944, Docket No. 379 (N.D. Cal. Sept. 12, 2008).....................................................................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-05944, Docket No. 425 (N.D. Cal. Feb. 5, 2009)...........................................................................................11

*In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004) .....................................18

*In re High Fructose Corn Syrup Antitrust Litig.*, 259 F.3d 651 (7th Cir. 2002) .........19

*In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. 47 (S.D.N.Y. 1989) .................................23

*In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568 (E.D. Pa. 2003) ......................19

*In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004) ......................19

*In re Plastics Additives Antitrust Litig.*, Civ. No. 03-2038 (E.D. Pa. Aug. 28, 2007) ..............................................................................................................................19

*In re Plastics Additives Antitrust Litig.*, Civ. No. 03-2038 (E.D. Pa. Jan 7, 2005) ......19

*In re Plastics Additives Antitrust Litig.*, Civ. No. 03-2038 (E.D. Pa. June 26, 2008) ..............................................................................................................................19

*In re Plastics Additives Antitrust Litig.*, Civ. No. 03-2038 (E.D. Pa. Mar. 19, 2008) ..............................................................................................................................19

*In re Plastics Additives Antitrust Litig.*, Civ. No. 03-2038 (E.D. Pa. Mar. 21, 2006) ..............................................................................................................................19

*In re Plastics Additives Antitrust Litig.*, Civ. No. 03-2038 (E.D. Pa. Nov. 20, 2006) ..............................................................................................................................19

*In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) ...............................................................................................12, 26

*In re Residential Doors Antitrust Litig.*, 900 F.Supp. 749 (E.D. Pa. 1995) .........12, 26

*In re Scrap Metal Antitrust Litig.*, No. 1:02 Civ. 844, 2002 WL 31988168 (N.D. Ohio, Nov. 7, 2002).......................................................................................14, 20, 27

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. M:07-cv-1819 (N.D. Cal. June 21, 2007)..............................................................................................22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, Master File No. M:07-1827 (N.D. Cal. May 27, 2008).........................................................................22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, Docket No. 631 (N.D. Cal. May 27, 2008)...................................................................................................11

*In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1475705 (D.D.C. May 9, 2000) ..............................................................................................................................19

*In re Vitamins Antitrust Litig.*, No. 99-197, MDL No. 1285 (D.D.C.) ...........................22

*Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995) .............................8

*Lender's Serv., Inc. v. Dayton Bar Ass'n*, 758 F. Supp. 429 (S.D. Ohio 1991) ............15

iv

*Ostrer v. Aronwald*, 434 F.Supp. 379 (S.D.N.Y. 1977) ....................................................14

*Pagtalunan v. Galaza*, 291 F.3d 639 (9th Cir. 2002)....................................................14

*Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118 (S.D.N.Y.1980) ....................................................16

*SEC v. Chestman*, 861 F.2d 49 (2d. Cir. 1988) ....................................................17

*SEC v. Doody*, 186 F. Supp. 2d 379 (S.D.N.Y. 2002) ....................................................11

*SEC v. Downe*, No. 92-CV-4092, 1993 U.S. Dist. LEXIS 753, 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993)....................................................23

*SEC v. Dresser Indus.*, 628 F.2d 1368 (D.C. Cir. 1980)....................................................14

*SEC v. Grossman*, 1987 WL 9192 (S.D.N.Y. Mar. 30, 1987) ....................................................26

*SEC v. Merskv*, No. Civ. 93-5200, 1994 U.S. Dist. LEXIS 519 (E.D. Pa. Jan. 25, 1994)....................................................23

*Shaw v. United States*, 371 F. Supp. 2d 265 (E.D.N.Y. 2000) ....................................................19

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573 (S.D.N.Y. 2001) ..............8, 12

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007 (E.D.N.Y. 1992) ....................11, 17

*United States v. All Funds on Deposit*, 767 F. Supp. 36 (E.D.N.Y. 1991) ....................................24

*United States v. Leasehold Interests*, 754 F. Supp. 282 (E.D.N.Y. 1990) ....................................24

*United States v. Mellon Bank, N.A.*, 545 F.2d 869 (3d Cir. 1976)....................................................17

*United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*, 811 F. Supp. 802 (E.D.N.Y. 1992) ....................................................20

*Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993) ...............13, 20

*Walsh Sec., Inc. v. Cristo Prop. Mgmt, Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1988)....................................11

*Weil v. Markowitz*, 829 F.2d 166 (D.C. Cir. 1987)....................................................7

**STATUTES**

15 U.S.C. § 15b....................................................13

18 U.S.C. § 1005....................................................13

18 U.S.C. § 3293....................................................13

Antitrust Criminal Penalty Enhancement and Reform Act of 2004, P.L. 108-237,
  118 Stat. 665 (2004)...................................................................................................17

**OTHER AUTHORITIES**

150 Cong. Rec. H3659.................................................................................................16

150 Cong. Rec. S3614.................................................................................................16

Ianthe Jeanne Dugan, *States Bristle as Investors Make Wagers on Defaults*, Wall
  Street Journal, Apr. 27, 2010, at C1.........................................................................3

Robert J. Bloch, How To Respond to a Criminal Antitrust Investigation: A
  Practical Approach in Today's Enforcement Environment, A.B.A. Sec.
  Antitrust, Sixth Ann. Int'l Cartel Workshop (Feb. 2006).......................................23

Class Plaintiffs and Plaintiffs in the separate California actions (collectively "Plaintiffs") file this Joint Memorandum of Law in Opposition to the Department of Justice's ("DOJ") Antitrust Division's ("ATR") Motion for a Stay of Discovery.[1]

Plaintiffs request that ATR's motion for a stay be denied, as ATR fails to demonstrate the exceptional circumstances required to justify such an extraordinary remedy. There are many practical and workable alternatives to the blanket stay ATR has proposed. A protective order, either standing alone or in combination with a narrowly tailored stay, would permit discovery to proceed while mitigating any risk that civil discovery would jeopardize the criminal proceedings.

## I. PRELIMINARY STATEMENT

ATR's proposed stay is not crafted with particularity, so as to apply on a document-by-document, or witness-by-witness basis, but instead imposes a blanket prohibition on the use of broad categories of discovery tools. In fact, despite ATRs repeated claims, there is nothing "tailored" at all about ATR's proposed stay. By its very terms, it provides that "no depositions shall be taken, nor shall interrogatories be propounded," excepting only those directed at document custodians to determine the "volume and existence" of records. The complete bar on interrogatories prevents Plaintiffs from efficiently identifying discoverable materials, witnesses,

---

[1] For the sake of this Court's time, Plaintiffs will not contest ATR's right to intervene. The only remaining issue now before the Court should have been, and was capable of being, resolved between the parties. Last month, anticipating a renewed stay request, Class Plaintiffs reached out to ATR and asked for a meeting to discuss alternatives to the terms of the prior stay. (*See* ATR's Mem. Supp. of Government's Mot. Intervene and For Limited Stay Disc. (hereinafter, "Mem.") at 4-5.) ATR, however, refused to meet with Class Plaintiffs. (*Id.*) This refusal repeats an episode in May of last year where ATR refused to meet with Class Plaintiffs to discuss a proposed stay until Judge Marrero, at a hearing on the matter, directed that they do so. (Stay Hr'g Tr. 7-12, May 22, 2009 (Declaration of M. Jimenez Train ("Jimenez Decl.") Ex. B); Stipulation and Order Re Limited Stay, June 24, 2009 (Docket No. 452).) Thus, Plaintiffs are left with no alternative other than to litigate this matter before the Court.

and transactions. The bar on merits discovery forces Plaintiffs to take overly broad discovery on the "volume and existence" of the totality of Defendants' records, instead of just those records implicated by Defendants' interrogatory answers. The bar on discovery of audio recordings prevents Plaintiffs from beginning their investigation in earnest until three years after most of their claims were filed (March 2008 to April 2011).

Thus, examination of the actual terms of ATR's requested stay reveals that it is aberrational: it is tone deaf to the rights of victims, inconsistent with the DOJ's practice in other matters, and contrary to the weight of applicable authority. As the head of DOJ's Criminal Division observed in a speech last week, "[j]ust because there's a civil action … and a parallel criminal action, *the days are gone* where the civil action will necessarily be stayed until the criminal action is over." Jonathan Stempel, *Top Cop: SEC May Not Delay Civil Cases*, Reuters, May 4, 2010) (emphasis added) (Jimenez Decl. Ex. C). Even beyond the ordinary public interest that courts routinely recognize in private antitrust cases, here the victims are public institutions, which directly serve and represent the public interest. They include counties and towns all across this country, with an ongoing responsibility to service their bond payments and fund infrastructure projects such as schools, roads, and water systems for the benefit of their citizenry. Justice should no longer be delayed for these Plaintiffs and their citizens.

While Class Plaintiffs agreed to the initial stay in June of last year, this case is now in a fundamentally different procedural posture. Class Plaintiffs' claims have now been pending for two years. All Plaintiffs have survived a motion to dismiss and are ready to proceed with discovery. ATR's proposed stay, however, prohibits any meaningful discovery. Its practical effect is clear: for a cumulative period of at least 21 months, Plaintiffs will be deprived of what ATR concedes is "critical evidence" in support of their claims. (Mem. at 13.)

For example, it is ATR's position—having produced 670,000 audio files ("tapes") to the defendants in the parallel criminal proceeding months ago—that Plaintiffs are entitled to *not a single tape* from Defendants. *See* Letter to Judge Marrero from Rebecca Meiklejohn, *United States v. Rubin/Chambers Dunhill Ins. Serv., Inc. et al.,* No. 09-CR-1058 (S.D.N.Y. filed Feb. 23, 2010) ("*CDR*") (Docket No. 35)[2] (Jimenez Decl. Ex. D) (detailing production dates of audio files). Instead, under ATR's proposed stay, Plaintiffs must spend the next eleven months deposing document custodians only as to the "existence and volume" of such tapes.

ATR—in the wake of an indictment charging only *one* of the thirty six Defendants named in some or all of the coordinated actions—presents only the most conclusory of allegations regarding potential risks of harm to the secrecy of its investigation. It nonetheless asks this Court to impose a stay of drastic length—21 months in total—which effectively puts Plaintiffs' cases on ice for another year. The law, however, does not permit so casual a derogation of Plaintiffs' right to civil redress. The factors used by courts to determine whether to grant a stay weigh decidedly against the imposition of one here. With no logical end in sight, the proposed stay will congest this Court's civil docket by creating further delays in this matter, which has now been pending for two years. Moreover, the prejudicial impact of ATR's proposed stay upon Plaintiffs is clear: (1) the statute of limitations is running against new claims and new defendants, thereby threatening Plaintiffs' ability to timely name all co-conspirators; (2) the proposed stay would deny Plaintiffs the timely assistance of cooperating defendants that Congress intended in enacting the Antitrust Criminal Penalty Enhancement and Reform Act; (3) municipalities are under increasing financial pressure,[3] making the timeliness of any recovery

---

[2] Entries on the docket sheet of the *CDR* action are cited as "*CDR* Docket No. __."

[3] *See, e.g.,* Ianthe Jeanne Dugan, *States Bristle as Investors Make Wagers on Defaults*, Wall St. J., Apr. 27, 2010, at C1 (Jimenez Decl. Ex. E).

achieved here even more important; (4) the Defendant companies' financial situations fluctuate, thus affecting their ability to satisfy a judgment and Plaintiffs' ability to be compensated for any alleged injury; (5) memories fade as to the relevant facts, thereby undermining Plaintiffs' abilities to prove their case when questioning witnesses; (6) Plaintiffs will be forced to bear the cost of duplicative and inefficient discovery if denied the ability to stage discovery based on the facts of the case, as opposed to the existence of records; and (7) Plaintiffs will be further handicapped relative to Defendants in their efforts to prepare their respective cases

When applied to the facts and circumstances of this case, the applicable authority militates in favor of this Court's exercise of its discretion to deny a stay *in toto*, with appropriate protective orders issued to accommodate ATR's asserted concerns. Or, if this Court determines that a stay is required, it should, as courts have done in analogous circumstances, impose what can correctly be described as a narrowly tailored stay. (*See* Pls'. Proposed Order.) Either solution recognizes and protects the important public interest in ensuring that ATR's criminal case and the claims of these municipal Plaintiffs are allowed to efficiently, expeditiously, and effectively proceed.

## II. BACKGROUND

### A. The Civil Class Action

In March of 2008, the first complaint alleging bid rigging in the derivatives industry was filed in the United States District Court for the District of Columbia on behalf of Fairfax County and a putative class that would include all Plaintiffs. *Fairfax County, Va. v. Bank of America*, Case No. 1:08-433 (D.D.C. Mar. 12, 2008). More complaints were then filed there, and in other districts and on behalf of other municipalities. *See e.g.*, *Hinds County, Miss. v. Wachovia Bank, N.A.*, Case No. 1:08-2516 (S.D.N.Y. Mar. 13, 2008); *City of Los Angeles v. Bank of America*,

4

*N.A.*, Case No. BC394944 (Los Angeles Cnty. Sup. Crt July 23, 2008).   On June 16, 2008, the

Judicial Panel on Multidistrict Litigation transferred all pending and subsequent actions to this

District for pre-trial coordination.[4]

On August 28, 2008, Class Plaintiffs filed a Consolidated Amended Complaint ("CAC").

In response to various motions to dismiss, the CAC was dismissed as to all but certain

defendants on April 29, 2009.  Class Plaintiffs then repleaded their claims in a Second

Consolidated Amended Complaint ("SCAC") on June 18, 2009.  The SCAC alleges that sixteen

named corporate Defendants and others illegally conspired to rig bids, limit competition, and fix

prices in the municipal derivatives market.  The Defendants' motion to dismiss the SCAC was

denied by Judge Marrero on March 25, 2010.  On April 24, 2010, Judge Marrero denied motions

by thirty-six Defendants to dismiss the individual Complaints filed by the City of Los Angeles

and twelve other California cities, counties and public utilities.[5]

B.  The Criminal Case

Various governmental agencies have investigated bid ridding in the derivatives industry.

(SCAC at ¶ 6, ¶¶ 155-161 (IRS), ¶¶ 162-168 (ATR),  ¶¶ 173-74 (State Attorneys General)).  The

first was the Internal Revenue Service ("IRS").  (SCAC at ¶ 155.)  In January 2005, the IRS

announced that it had "found pervasive bid-rigging for guaranteed investment contracts."  Next,

in November of 2006, the Federal Bureau of Investigation executed search warrants at the offices

---

[4] Actions filed by Plaintiff City of Los Angeles and others in California State court were
removed to federal courts in various districts in California and transferred to S.D.N.Y. for pre-
trial coordination.

[5] In addition to the City of Los Angeles: County of San Diego, County of Tulare, Los Angeles
World Airports, Sacramento Suburban Water District, City of Stockton, Public Finance
Authority of the City of Stockton, Redevelopment Agency of the City of Stockton; Contra Costa
County, City of Riverside, Public Finance Authority of the City of Riverside, Redevelopment
Agency of the City of Riverside and County of San Mateo

of three broker Defendants: CDR, IMAGE, and Sound Capital. (SCAC at ¶ 163.) ATR then

publicly confirmed the existence of an investigation, and various companies disclosed their

receipt of grand jury subpoenas. (Jimenez Decl. Ex. F (Nov. 16, 2006 *Bloomberg News* article);

SCAC ¶ 162.) On February 9, 2007, Bank of America, NA ("BOA") announced its entry into

DOJ's conditional amnesty program. (SCAC ¶ 169.)

In October of 2009, almost three years after search warrants were executed on CDR, and

two and a half years after BOA's entry into the conditional amnesty program, ATR obtained a

grand jury indictment of CDR and three of its employees.

C.  The Prior Stay of Discovery

In May of 2009, ATR sought a stay of discovery in this matter. On May 22, 2009, Judge

Marrero held a hearing in regard to ATR's request. At the hearing, Judge Marrero repeatedly

requested that ATR meet with Class Plaintiffs to attempt to resolve differences. (Stay Hr'g Tr. 7,

May 22, 2009 (Jimenez Decl. Ex. B).) ATR repeatedly refused, at which point the following

colloquy ensued:

> MS. JANNACO: . . . We are asking for something very simple.
> We want a six month stay on specific periods of discovery.
>
> THE COURT: And I am asking you for something very simple
> too. Sit down with the Plaintiffs and see to it to what extent you
> are asking for is not going to raise any objections and if that is the
> case, then agree upon that and we will know that there is no
> objection to certain types of discovery and if there is disagreement
> on some other areas, then you can come back to the court and I
> will issues whatever appropriate order is called for at that point.

(Id. at 7:25-8:9.)

The ATR prosecutor continued to protest the Court's direction to meet and confer. The

Court responded as follows:

> THE COURT: I don't need any motions on my docket, Ms.
> Jannaco. That is what I am trying to tell you. If we can get this

> matter resolved by the two of you getting together in a week, we
> don't need a motion because if you put a motion on the docket that
> means they will be entitled to a period of time within which to
> respond and then I would have to sit down and see whether I need
> to write an opinion on that. I am trying to avoid that and make
> matters simple and more expeditious for both of you.

*(Id.* at 8:23-9:6.)

The Class Plaintiffs and ATR then conferred in accordance with the Court's directive, and stipulated to a stay of discovery through December 24, 2009. (Stipulation and Order Re Limited Stay of Discovery, 1-2, Docket No. 452.) On December 22, 2009, this Court extended the stay until resolution of the motions to dismiss the SCAC. (Order, Docket No. 545.)

On March 25, 2010, Judge Marrero denied the motions to dismiss the SCAC, and ordered that the parties meet and confer to propose an agreed case management plan, to be presented at a pretrial conference on April 30, 2010. By the terms of the Court's December 22, 2009 Order, the existing stay expired upon the Court's denial of Defendants' motion to dismiss the SCAC. In April of 2010, anticipating the possibility that ATR might attempt to seek an additional stay, Class Plaintiffs initiated contact with ATR. (Mem. at 4-5.) Despite the prior admonishment from Judge Marrero, ATR again refused even to meet with Plaintiffs. (Stay Hr'g Tr. 7, May 22, 2009 (Jimenez Decl. Ex. B); Mem. at 5.) ATR then filed letters with this Court seeking a stay, and Plaintiffs filed their objections. (*See* Jannaco Aff. Ex. C. at 2.)

On April 27, 2010, in response to a letter request from Defendants, the April 30 hearing was continued pending resolution of this motion. (Endorsed Letter to Judge Marrero from Joe Wayland, Docket No. 708.)

### III. ARGUMENT

As a general matter, a stay of discovery is an "extraordinary remedy." *Weil v. Markowitz,* 829 F.2d 166, 175 n.17 (D.C. Cir. 1987) (observing that a "stay of discovery pending

the outcome of related criminal proceedings is an extraordinary remedy appropriate for extraordinary circumstances."). In the absence of substantial prejudice, "parallel proceedings are unobjectionable under our jurisprudence." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). The decision to grant or deny a stay is discretionary, and should be made on a case-by-case basis. *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) ("*Sterling*").

Applicable law dictates that the proposed stay should be denied for the following principal reasons.

*First*, the proposed stay is not narrowly tailored, and is far broader than necessary to protect against potential jeopardy to the criminal proceedings. Its terms deprive Plaintiffs of the most critical evidence in the case, despite the fact that many parties besides ATR already have access to such evidence. Furthermore, when considered in conjunction with the prior stay of discovery, it is evident that ATR seeks a stay of great and prejudicial length—at least 21 months.

*Second*, a balancing of the competing interests of the parties weighs in favor of denying the proposed stay. The harms to Plaintiffs' interests posed by the proposed stay are real and not speculative, as is the specter of delay to this Court's civil docket. After all, many of Plaintiffs' claims have been pending for more than two years and witnesses' memories of key events fade by the day. For reasons which are unique to this case, there is a substantial public interest in the timely resolution of these claims as Plaintiffs are themselves public entities, with an ongoing responsibility to provide for the welfare of their citizenry. By comparison, ATR's assertions of harm to the secrecy of its investigation are conclusory, do not withstand scrutiny, and ignore an abundance of publicly available information about the very matters ATR claims to be secret.

For these reasons, we respectfully submit that no stay is warranted, and that appropriate protective orders can be issued to protect ATR's asserted interests. However, if the Court is inclined to impose a stay, there are reasonable alternatives to ATR's draconian proposal. Many courts in analogous circumstances have crafted and imposed narrowly tailored alternatives, and there is no reason why that cannot be done here. Plaintiffs offer such an alternative in their attached Proposed Order.

A. The Proposed Stay Is Overly Broad in Scope, Both as to its Nature and Duration.

Before addressing the various factors which bear upon whether a stay should or should not be granted, it is critical to consider the scope, duration, and nature of *this* proposed stay.

*First*, by its very terms, the proposed stay is blanket in nature. It permits depositions and interrogatories only to determine "the existence and volume of records." (ATR Proposed Order at 1.) It allows *no other discovery by interrogatory or deposition.* (*See id.* at 1 ("No deposition shall be taken, nor interrogatories propounded, except as follows. . . .").) It explicitly bars discovery of: (1) the audio recordings of what transpired on Defendants' or third parties' municipal derivatives trading desks; and (2) depositions of all former employees of any Defendant or third party. (*Id.* at 1-2.) The proposed stay prevents Plaintiffs from discovery of what ATR concedes is "critical evidence." (Mem. at 13.) As the SCAC makes clear, the key and perhaps only percipient witnesses in the case are former employees of the Defendants.

The proposed stay is not "tailored" so as to apply with particularity, on a witness-by-witness or item-by-item basis. It has no limitation as to subject matter or party and would apply across all discovery by deposition or interrogatory in this matter and to all tapes. Thirty-six companies are named as Defendants in some of all of the coordinated actions, whereas the criminal indictment names only one of them, CDR, as a defendant. Critically, the proposed stay is *not* limited to the three individuals and one company indicted in *CDR*. For the putative

purpose of protecting the secrecy of the *CDR* indictment and its ongoing investigation, ATR proposes to stay—for a cumulative amount of time approaching at least two years—all meaningful civil discovery by any plaintiff *across the bulk of the municipal derivatives industry* until after the *CDR* trial. Thus, to characterize the proposed stay as "limited" and "narrowly tailored" is simply inaccurate.

*Second*, if granted, the proposed stay would bar Plaintiffs from discovery of massive amounts of relevant and meaningful information. As to tapes, for example, public filings in the *CDR* matter indicate that ATR produced to the defense in that case some *670,000 audio files* (tapes). Mem. Supp. Defs.' Mot. Bill of Particulars at 3, *CDR* Docket No. 45 (Mar. 24, 2010) (Jimenez Decl. Ex. G). Certain of the defendants in that case have submitted declarations attesting to the fact that it would take a single person working 24 hours a day four years to listen to each tape. *See* Decl. of Robert Decicco Regarding EDiscovery [sic] Costs at 4, *CDR* Docket No. 45-1 (Mar. 24, 2010) (Jimenez Decl. Ex. H). Yet under ATR's proposed stay, Plaintiffs are entitled to discovery of *not a single tape* from Defendants. In essence, ATR asks this Court to presume that the discovery of even one of these tapes would prejudice its prosecution. Such a presumption is unsupportable.

*Third*, it is critical to note the cumulative length of the proposed stay, when taken in conjunction with the prior stay. The prior stay was entered on June 24, 2009. If the *CDR* case concludes by the time ATR suggests (April 1, 2011), and the stay is lifted at that time, one year, nine months and eight days will have passed with Plaintiffs barred from obtaining the discovery most valuable to proving their claim. Significantly, a stay of such excessive length—21 months—is presumptively prejudicial to a civil litigant. Courts have recognized that stays of discovery of a *shorter* duration effectively "place plaintiffs out of court." *Blue Cross & Blue*

*Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F. 3d 718, 724 (9th Cir. 1997) ("*Blue Cross*") (noting cases holding that an 18 month stay was sufficient to effectively place plaintiffs out of court). The 21 month stay proposed here is far longer than the stays at issue in cases cited by ATR. *See, e.g., Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1008-09 (E.D.N.Y. 1992) ("*Twenty First*") (four months); *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56-57 (E.D. Pa. 1980) ("*Golden Quality*") (approximately seven months); *SEC v. Doody*, 186 F. Supp. 2d 379, 382 (S.D.N.Y. 2002) (less than five months after civil case filed); *Philip Morris v. Heinrich*, 1996 U.S. Dist. LEXIS 9156, at *3-4 (S.D.N.Y. June 8, 1996) (stay lasting six months and six days from entry, with leave for the government to request an extension); *Walsh Sec., Inc. v. Cristo Prop. Mgmt, Ltd.*, 7 F. Supp. 2d 523, 529 (D.N.J. 1988) (five months).[6]

*Finally*, ATR's proposed stay is essentially unlimited in duration. One year ago, in May of 2009, the ATR prosecutor represented to Judge Marrero that ATR sought "a very limited stay of discovery both in terms of time and scope," and repeatedly characterized the length of such stay as "six months." (Stay Hr'g Tr. 4, 5, 8, May 22, 2009 (Jimenez Decl. Ex. B).) Now, ATR returns to this Court to seek a "limited stay of discovery until April, 2011." (Mem. at 5.) When April of 2011 arrives, it will likely be the case that the grand jury's investigation will not have concluded, and/or that the *CDR* trial may not have concluded for any of a number of reasons.

---

[6] It also far exceeds ATR-requested stays granted by federal district courts in recent antitrust cases. *See, e.g.* Order at 2, *Four In One Company, Inc. v. SK Foods, LP*, No. 08-03017, Docket No. 96 (E.D. Cal. Apr. 28, 2009) (nine months) (attached as Jimenez Decl. Ex. I); Order at 5, *In re Aftermkt. Lighting Products Antitrust Litig.*, No. 09-02007, Docket No. 54 (C.D. Cal. Apr. 20, 2009) (six months) (attached as Jimenez Decl. Ex. J); Order at 3, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, Docket No. 631 (N.D. Cal. May 27, 2008) (twelve months) (attached as Jimenez Decl. Ex. K); Order at 1, *In re Cathode Ray Tube (CRT) Antitrust Litig.* No. 07-05944, Docket No. 379 (N.D. Cal Sept. 12, 2008) (six months) *modified*, Order at 2, *CRT*, No. 07-05944, Docket No. 425 (N.D. Cal. Feb. 5, 2009) (extending prior six month stay to twelve months in total) (together, attached as Jimenez Decl. Ex. L).

Anticipating this contingency, ATR's proposed stay leaves a loophole to *again* seek an additional extension. (*See* ATR Proposed Order at 3.) What this sequence of events makes clear is that ATR is effectively asking for the civil case to go away until its investigation is resolved. Courts have denied such stay requests as indefinite in nature. *See Sterling*, 175 F. Supp. 2d at 579 (rejecting as indefinite a requested stay of depositions for six months pending resolution of an ongoing Grand Jury investigation because "the argument for a further stay [six months later] will be at least as potent as it is now"); *In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591, at *5 (E.D. Pa. Nov. 29, 2004) ("*Plastics*") ("This Court refuses to bifurcate discovery on the basis of concurrent grand jury proceedings that may extend indefinitely."); *In re Residential Doors Antitrust Litig.*, 900 F.Supp. 749, 756 (E.D. Pa. 1995) ("*Residential Doors*") (rejecting argument that discovery can be stayed without prejudice to plaintiffs until completion of ATR's criminal investigation of unspecified others at unknown future date).

Indeed, there are substantial reasons to believe that even if ATR continues to pursue this investigation it may not be completed for many years. Significantly, certain of the offenses charged in *CDR* carry a *ten-year* statute of limitations. *See CDR* Docket No. 1 (Oct. 29, 2009) (Indictment, ¶¶ 67-69) (charging false entries in bank records, 18 U.S.C. § 1005). That limitations period goes far beyond that applicable to a civil antitrust case. *Compare* 18 U.S.C. § 3293 (providing a ten-year statute of limitations for false entries in bank records, 18 U.S.C. § 1005) *with* 15 U.S.C. § 15b (subjecting civil antitrust claims to a four-year statute of limitations). As courts have noted, one practical effect of a ten-year statute of limitations is that it tends to cause government investigations to lag. *See also Sterling*, 175 F. Supp. 2d at 580 n.6 ("[T]he statute of limitations for many of the crimes presumably being considered by the grand jury is ten years. . . . As a former supervising prosecutor, I am well aware that one of the

unfortunate effects of extended statutes of limitations is the removal or urgency from the government's investigative processes.").

B.  The Balance of Equities Weigh Against the Reimposition of a Stay

The relevant factors courts consider in deciding a motion to stay are: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 38 (S.D.N.Y.1993) ("*Volmar*") (balancing relevant factors "is a case-by-case determination, with the basic goal being to avoid prejudice"); *Citibank, N.A. v. Hakim,* 1993 WL 481335, at *3 (S.D.N.Y. 1993) (reciting factors).

ATR recites these factors, but fails to apply all of them.  Furthermore, ATR addresses only its interests in isolation, (Mem. at 8), while lumping together the interests of the Court and other litigants.  (Mem. at 11.)  ATR fails even to mention interests routinely noted by courts in reviewing stay motions, for example, a court's interest in clearing its docket and timely resolving cases brought before it.  *See* Section III.B.3, *infra*.

An analysis in which *all* relevant factors are considered is set forth below.

1.  Prejudice to Plaintiffs' Interests

The proposed stay of discovery would substantially prejudice Plaintiffs in several ways.

*First*, as many courts have recognized, the sheer passage of time compromises Plaintiffs' ability to prove their claims.  Key witnesses may become unavailable, witnesses' memories may fade, and other contingencies detrimental to Plaintiffs may arise.  As the D.C. Circuit explained:

> Grand jury investigations take time, as do criminal prosecutions.  If
> [the Department of] Justice moves too slowly the statute of

> limitations may run, witnesses may die or move away, memories
> may fade, or enforcement resources may be diverted. . . . Thus, we
> should not block parallel investigations… in the absence of
> 'special circumstances' in which the nature of the proceedings
> demonstrably prejudices substantial rights of the investigated party
> or of the government.

*SEC v. Dresser Indus.*, 628 F.2d 1368, 1377 (D.C. Cir. 1980) (en banc); *accord Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) (observing that delay "inherently increases the risk that witnesses' memories will fade and evidence will become stale"). Even if litigation resumes, stays create a "danger of denying justice by delay." *Blue Cross*, 490 F.3d at 724 (citing *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assocs.*, 743 F.2d 1519, 1524 (11th Cir. 1984)).

As noted previously, the cumulative length of ATR's proposed stay—21 months—is beyond the length of time at which courts presume prejudice. Further, with the passage of time, any one or more of the Defendants may cease to be going concerns, thereby preventing any recovery against them. Moreover, Plaintiffs themselves, as cities, counties and other public entities, face some of the most challenging financial realities in their histories, making timely recoveries that much more critical.

*Second*, discovery may well alert Plaintiffs to the existence of additional claims or Defendants prior to the expiration of the statute of limitations. *See In re Scrap Metal Antitrust Litig.*, No. 1:02 Civ. 844, 2002 WL 31988168, at *5 (N.D. Ohio, Nov. 7, 2002) ("*Scrap Metal*") (pointing out that while most defendants might be identified before statute of limitation runs, "Plaintiffs, as class representatives, have an obligation to the class to attempt to maximize the possible recovery against all potential Defendants."). The general rule is that a court-ordered stay tolls the statute of limitations with respect to the alleged claims. *See Ostrer v. Aronwald*, 434 F.Supp. 379, 388-89 (S.D.N.Y. 1977), *aff'd*, 567 F.2d 551 (2d Cir.1977) (quoting *Application of the United States Authorizing the Interception*, 413 F. Supp. 1321, 1335 (E.D. Pa.

1976) ("the broad rule that whenever some paramount authority prevents a person from exercising his legal remedy, the statute is tolled for that period during which he has been so thwarted")). However, the statute of limitations may run during the stay with respect to unnamed defendants and with respect to unalleged antitrust theories. *See Lender's Serv., Inc. v. Dayton Bar Ass'n*, 758 F. Supp. 429, 444 (S.D. Ohio 1991) ("Since no claim had yet been asserted against the individual defendants at the time the stay order was entered, the stay order could not possibly have applied to new claims being asserted against new defendants."). If years later in 2012, discovery reveals new claims against new defendants, Plaintiffs may be prohibited from asserting them based on their complaints filed in 2008.[7]

*Third*, collection and review of the discoverable materials in this case may take years. In *CDR* alone there are 670,000 tapes and 2.5 terabytes of documents equivalent to 125 million pages. *CDR* Docket No. 45-1 (Mar. 24, 2010) (Decicco Declaration at 4) (Jimenez Decl. Ex. H). Plaintiffs, some of which filed their claims more than two years ago, should not be forced to sit idly by for *another* year before beginning the work of reviewing critical evidence that proves their claims.

In light of the enormous volume and breadth of discoverable materials available in this case, it is substantially burdensome to force Plaintiffs to proceed with discovery in a piecemeal fashion as suggested by ATR. Depriving Plaintiffs of the use of interrogatories is especially pernicious, because it prevents Plaintiffs from being able to narrowly tailor their discovery requests. Without interrogatories, Plaintiffs cannot ask the type of "who, what, when, where" questions that permit them to avoid making far broader requests. Further, Plaintiffs should not be forced to undertake document discovery or depositions without access to the tapes. This is

---

[7] If ATR's stay is granted as drafted, Plaintiffs will file a motion asking this Court to toll any and all applicable statutes of limitation against named and potential defendants.

not the-run-of-the-mill case in which document discovery alone provides a sufficient basis to undertake depositions. Plaintiffs are clearly entitled to depose percipient witnesses in this case, while armed with such witnesses recorded conversations, if any. It would be highly inefficient, for example, to re-depose multiple witnesses if such tapes are provided at a later date. Similarly, without the tapes, there is no meaningful way to analyze and interpret documents such as transactional data. Such transactional data may omit, for example, critical information such as the identity of bidders or the bid spread. If the proposed stay is granted, Plaintiffs will suffer prejudice both from the denial of such critical evidence, and from being forced to proceed with discovery in a piecemeal fashion. *See Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.,* 486 F.Supp. 1118, 1119 (S.D.N.Y. 1980) (observing that discovery "proceeding in a splintered manner" prejudices the plaintiff).

*Fourth,* the delay from ATR's proposed stay would deny Plaintiffs the benefits Congress intended in enacting the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"). Pub. L. No. 108-237, 118 Stat. 665 (2004). Under ACPERA, amnesty applicants are provided a lucrative reduction in civil damages. This valuable reduction was granted to cooperating leniency applicants because it was expected that ACPERA cooperation would be so complete and useful to civil plaintiffs in their litigation "that the total compensation to victims of antitrust conspiracies will be increased because of the requirement that Amnesty Applicants cooperate." 150 Cong. Rec. S3614. An ACPERA Amnesty Applicant's cooperation must be provided in a "timely" fashion. *See id.* (Apr. 2, 2004) (Remarks of Sen. Hatch) ("[i]mportantly, the limitation on damages is *only* available to corporations... if they provide *adequate and timely cooperation . . .*to any subsequent private plaintiffs bringing a civil suit.") (emphasis added); *see also* 150 Cong. Rec. H3659 (June 2, 2004) (Remarks of Rep. Scott) (noting that the DOJ "will

*only* grant such leniency if the company provides *adequate and timely* cooperation to both the government and any subsequent private plaintiffs in civil suits.") (emphasis added). An Amnesty Applicant has an affirmative obligation under the Act to provide civil plaintiffs with full cooperation early and continuously until their case is concluded (either through settlement(s) or trial). ATR, however, has prohibited Bank of America from revealing the full extent of the conspiracy.[8] Bank of America's provision of cooperation has been and will be impacted by ATR's proposed stay, devaluing Plaintiffs' bargained-for cooperation.

*Fifth*, it is without merit to suggest, as ATR does, that "resolution of the government's investigation will most likely reduce and simplify discovery" in this action. (Mem. at 11.) The two cases cited by ATR in support of this proposition do not address ongoing investigations, but rather, discrete and already-indicted cases which overlapped *completely* with the parallel civil cases at issue.[9] Neither case addressed facts or procedural circumstances analogous to this case.[10] Resolution of the *CDR* matter may produce evidence in the form of tapes and transcripts of witness testimony, but again, the *CDR* indictment includes only one of the thirty-six Defendants named in some or all of the coordinated actions. More specifically, CDR is just one

---

[8] *See* SCAC ¶ 4 ("The DOJ, which is investigating anticompetitive practices in the Municipal Derivatives sector, *has prevented plaintiffs from obtaining certain documentation of illegal conspiratorial conduct* (including, but not limited to, the audiotapes of conspiratorial conversations engaged in by certain members of Bank of America's Municipal Derivatives trading desk and transcriptions thereof).") (emphasis added).)

[9] *See United States v. Mellon Bank, N.A.*, 545 F.2d 869, 873 (3d Cir. 1976) (involving attempts by an individual criminal tax defendant to gain access to government investigative files via discovery in civil tax action); *Twenty First Century*, 801 F. Supp. at 1007 (involving criminal case against company employees for misappropriation of funds from a single business, and a civil claim by the business against such employees).

[10] Similarly, *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988), cited by ATR (Mem. at 11), speaks to preparation for trial *by a defendant* in a civil SEC action, rather than by a plaintiff prosecuting a complex antitrust case.

17

of nine *Broker* Defendants named in these actions. Given that, generally, only a one broker is involved in a municipal derivative transaction, this is further indication that evidence derived from *CDR* would represent a narrow portion of that which is relevant to Plaintiffs claims. Thus, resolving *CDR*, or even additional indictments beyond it, will not resolve Plaintiffs' actions.

Similarly meritless is ATR's claim that Plaintiffs should simply await "outcomes in the government's favor" from ATR's trials and investigations, in hopes of saving resources. (Mem. at 12.) In support of this argument, ATR cites to *Golden Quality*. (*Id.*) That case, however, is readily distinguishable. In *Golden Quality*, the five indicted corporations were the exact same defendants as in the class actions. Here, however, *only one* of the *thirty six* Defendants in the private actions is named in the indictment.[11]

The significance of the distinction between *Golden Quality*, in which an existing indictment overlapped completely with the civil case, and this case, in which the pending indictment addresses only one of the thirty-six Defendant companies in the civil case, cannot be overstated. Whether Plaintiffs are allowed to timely receive discovery cannot rest on the mere hope that one day ATR's investigation may in fact result in the criminal prosecution of all of the entities and allegations contained in Plaintiffs' Complaints prior to the expiration of the statute of limitations.

As a matter of historical fact, there are many instances in which ATR's investigations have been dropped or not pursued, and yet significant recoveries were achieved in private actions. *See, e.g., In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d Cir. 2004) (ATR

---

[11] Evidently aware of this distinction, ATR cites to *Golden Quality* as referring to the "resolution of the government's investigation." (Mem. at 12.) However, what the court in *Golden Quality* was in fact referring to, immediately prior to the language quoted by ATR, was the possibility of "a resolution favorable to the Government *in the overlapping criminal prosecution.*" 87 F.R.D. at 56 (emphasis added).

investigation led to no indictments, but court allowed claims of price-fixing of flat glass to go to trial; $120 million in total settlements were achieved); *In re High Fructose Corn Syrup Antitrust Litig.*, 259 F.3d 651 (7th Cir. 2002), *cert. denied sub nom. Archer-Daniels-Midland Co. v. Dellwood Farms, Inc.*, 537 U.S. 1188 (2003), *on remand*, 261 F. Supp. 2d 1017 (C.D. Ill. 2003) (ATR investigation led to no indictments, but courts allowed claims of price-fixing conspiracy with respect to high fructose corn syrup to go to trial; $530 million in total settlements were achieved); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568 (E.D. Pa. 2003) and 321 F.Supp.2d 619 (E.D. Pa. 2004) (nearly $200 million in settlements achieved in a case where FTC sued only one of the twelve defendants named in the class action); *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1475705 at *18 (D.D.C. May 9, 2000) (denying defendants' motion to sever based on the terms of their negotiated criminal pleas because "criminal guilty pleas do not establish boundaries for this civil litigation"; the class obtained a jury verdict against certain chloride defendants that ATR never pursued, ultimately settling for $53 million); *In re Plastics Additives Antitrust Litig.*, Civ. No. 03-2038 (E.D. Pa Jan. 7, 2005, Mar. 21, 2006, Nov. 20, 2006, Aug. 28, 2007, Mar. 19, 2008, and June 26, 2008) (settlements achieved in a case where the ATR investigation resulted in no indictments).

Even in the highly unlikely event that such a criminal resolution will completely overlap with *all* of the civil claims asserted here, it would still not resolve those issues which are uniquely civil in nature, such as class certification, antitrust injury, and damages. *Compare Arnold-Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 572 (3d Cir. 1986) (holding that a civil action under the Sherman Act requires "that the plaintiffs were injured as a proximate result of that conspiracy") *with Shaw v. United States*, 371 F. Supp. 2d 265, 272 (E.D.N.Y. 2000) (observing that "a relevant market and an antitrust injury are not required elements to prove a

criminal violation of Section 1 of the Sherman Act"). Plaintiffs must obtain discovery to address these issues.

### 2. Burden on Defendants

Defendants may assert a burden in responding to civil and criminal discovery simultaneously. However, it can reasonably be expected that, at least as to the tapes, Defendants have already made production to the grand jury. If anything, because the proposed stay will prevent Plaintiffs from being able to use interrogatories to focus and narrow its requests for documents and tapes, the stay may well impose greater burdens of discovery upon the Defendants than would otherwise be the case. Further, it is "a function of the antitrust laws, and not of Plaintiffs' personal desire to burden Defendants, that puts Defendants in a position to respond to simultaneous proceedings." *Scrap Metal*, 2002 WL 31988168 at *5.

Courts often recognize the dilemma faced by individuals who are defendants in parallel civil and criminal proceedings, in deciding whether to assert their Fifth Amendment rights in depositions which may occur before the criminal trial. *See e.g.*, *Volmar*, 152 F.R.D. at 39-40. Here, however, Defendants are not individuals, but corporations, and have no such burden. Corporations have no Fifth Amendment rights. *Braswell v. United States*, 487 U.S. 99, 102 (1988). The potential burden upon such individuals as non parties is discussed in section III.B.4 *infra*.

### 3. Burden on the Court

This Court has a substantial interest in moving its civil docket, and in not allowing these cases to stagnate. *See Scrap Metal*, 2002 WL 31988168 at *7 ("The Court has an obligation to move its docket, and not to let cases languish before it."); *United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992) ("[C]onvenience of

the courts is best served when motions to stay proceedings are discouraged."). ATR's criminal investigation could foreseeably extend for many years. A stay on all meaningful discovery until ATR's criminal investigations conclude will have long-reaching ramifications on the Court's docket, and thus should be denied. *See Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 13 (D. Mass. 1991) ("The convenience to the court weighs against a stay because it is unrealistic to postpone indefinitely the pending action until criminal charges are brought or the statute of limitations has run for all crimes conceivably committed by [defendants].")

### 4. Burden on Non-Parties

The interests of non-party employees or former employees of Defendants are not implicated by the production of tapes, because such tapes belong to the Defendant corporations rather than individual employees. Certain individual current or former employees may face the choice of whether or not to assert their Fifth Amendment rights in a deposition. Here, however, this burden should not be given significant weight. The interests of such employees can be addressed on a witness-by-witness basis, rather than in a blanket fashion. Furthermore, such a predicament—of whether to assert the Fifth Amendment in a deposition—will abate only after the conclusion of ATR's investigation and the expiration of the applicable statutes of limitation, or following an event such as the testimony of such witness(es) as cooperator in court. In other words, this predicament may exist for ten years.

### 5. Public Interest

There are two categories of public interest recognized by courts in an antitrust case involving parallel proceedings: the public interest in the expeditious resolution of private antitrust actions and the public interest in the prosecution of crimes. *See Golden Quality*, 87 F.R.D. at 58. Here however, an additional public interest is at stake because the Plaintiffs

themselves include government entities. There is a substantial public interest in having victim municipalities timely obtain recoveries. These competing interests are discussed in turn below.

### a. The Prosecution

As a threshold matter, ATR's request for a stay is at odds with widespread DOJ practice in many other cases of no less import. In the *Vitamins* antitrust litigation, one of ATR's most successful efforts, no stay of discovery was sought by ATR, and parallel civil and criminal investigations and trials proceeded successfully. *See In re Vitamins Antitrust Litig.*, No. 99-197, MDL No. 1285 (D.D.C.) (numerous settlements and a successful jury verdict). In numerous other instances, ATR has agreed to narrowly tailored stays, or has not sought a stay at all. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, Master File No. M:07-1827 (N.D. Cal. May 27, 2008) (ATR agreed to a limited stay allowing for discovery of all defendant documents produced to the grand jury prior to a certain date) (attached as Jimenez Decl. Ex. K); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. M:07-cv-1819 (N.D. Cal. June 1, 2007) (at hearing, ATR stated that that "[w]e simply don't have an objection way or the other to disclosure or nondisclosure by the defendants" of materials produced to the ATR or the grand jury) (attached as Jimenez Decl. Ex. M).

ATR's primary argument—that a stay is necessary to protect its interests—is set forth at pages eight through ten of its memorandum. A close reading of this argument, however, reveals little in the way of support for what ATR advances.

ATR asserts, first, that a stay is necessary "to prevent the use of civil discovery rules from being used to circumvent the more limited rules of criminal discovery." (Mem. at 8.) The cases upon which ATR relies, however, are not applicable here. In the cases cited by ATR, the government was *itself* a party in the parallel civil case, and as a result, criminal defendants or

22

likely targets sought to obtain information such as internal investigative reports from the government via civil discovery.[12] Here, the federal government is *not* a party to the civil action and hence these risks are non-existent.

Significantly, the defendants in *CDR* (the relevant party with a motive to "circumvent") *already have* access to 670,000 tapes and the electronic equivalent of 125 million pages of documents produced to them by ATR. At least as to tapes, there is no danger that civil discovery will provide the *CDR* defendants something they do not already have. As a practical matter, it is reasonable to assume that Defendants here have already shared information about such tapes by means of a joint defense agreement[13]—leaving Plaintiffs as the only party to this litigation without direct access to the tapes. As to other sources of discovery such as depositions, there is no reason why the potential danger of "circumvention," if any, cannot be addressed on a witness-by-witness or item-by-item basis.

---

[12] *See Campbell v. Eastland*, 307 F.2d 478, 487-88 (5th Cir. 1962) (criminal defendant using civil rules in a tax refund suit as means for obtaining pre-trial discovery against the government in criminal proceedings ); *SEC v. Merskv*, No. Civ. 93-5200, 1994 U.S. Dist. LEXIS 519 at *2 (E.D. Pa. Jan. 25, 1994) (ordering a stay of discovery where the defendants in a civil SEC action sought to subpoena SEC for "all records and witness testimony compiled during the investigation"); *SEC v. Downe*, No. 92-CV-4092, 1993 WL 22126, at *12-13 (S.D.N.Y. Jan. 26, 1993) (staying discovery in civil SEC, where defendant sought production of privileged materials from SEC and deposition of cooperating witness who had pled guilty); *In re Ivan F. Boesky Sec. Litig.*, 128 F.R.D. 47, 48-49 (S.D.N.Y. 1989) (staying discovery where SEC defendants attempted to subpoena investigative files of the SEC).

[13] *See* Robert J. Bloch, *How To Respond to a Criminal Antitrust Investigation: A Practical Approach in Today's Enforcement Environment*, A.B.A. Sec. Antitrust, Sixth Ann. Int'l Cartel Workshop (Feb. 2006), at 20 (Jimenez Decl. Ex. N) ("[s]haring information [through joint defense agreement] allows counsel to assess the strength and substance of the government's case at an early stage"); *see also* Letter of M. Hausfeld to J. Wayland, dated April 8, 2010, (Jimenez Decl. Ex. O) asking Defendants to confirm whether they have entered into a joint defense agreement, and whether the exchange of any audio recordings is permitted by such agreement. Plaintiffs have received no response to this letter.

The remainder of ATR's argument, (Mem. at 10), is a disjointed litany of speculative potential abuses. ATR asserts that witness intimidation, witness tampering, subornation of perjury, and the improper dissemination of information about ATR's case may somehow occur if a stay is denied. Significantly, ATR cites no authority in support of its arguments in this regard. Such conclusory allegations should be rejected. *See United States v. All Funds on Deposit*, 767 F. Supp. 36, 42 (E.D.N.Y. 1991) ("[M]ere conclusory allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly exploit civil discovery . . . will not avail on a motion for a stay.") (emphasis in original) (quoting *United States v. Leasehold Interests*, 754 F. Supp. 282, 287 (E.D.N.Y. 1990)).

Moreover, ATR's representations to this Court that civil discovery threatens to compromise the secrecy of its grand jury investigation is meritless. ATR suggests to this Court that the identity of the targets, subjects, and witnesses of the investigation, and the nature and direction of the grand jury investigation, are secret and unknown to the public. (Mem. at 10; Jannaco Aff. at ¶ 16 ("Except as stated in paragraphs 3 and 4 of this Affidavit, the identities of potential witnesses, targets, and subjects have not been disclosed")). However, ATR's affidavit fails even to acknowledge, much less address, a vast quantum of information, available from a wide variety of public sources, regarding matters it asserts to be secret,[14] including the following:

**News Articles**:

- From the CDR indictment, the financial press identified various co-conspirators. (*See* SCAC at ¶¶ 102-129, 144-149.)

- One of the CDR defendants publicly filed a list of co-conspirators provided to them by the government. This list

---

[14] Despite the extent of this public information, Plaintiffs require discovery to ascertain the metes and bounds of the Defendants alleged conspiracy (which to date is not public).

was later withdrawn from public filing,[15] but not before the press had made extensive disclosures about its contents, including the identity of various individuals and companies designated as co-conspirators. (*See* Jimenez Decl. Ex. P.)

**FINRA Filings**:

- The identity of targets has routinely been reported by various companies in filings with the Financial Industry Regulatory Authority. Such filings have identified various targets by name. (*See* SCAC at ¶ 100-01; Jimenez Decl. Q.)

**SEC Filings**:

- Various companies who are defendants or targets have made various disclosures with the SEC. These filings detail the nature of the government's investigation. (*See* SCAC at ¶ 172.)

**Bank of America (BOA) Announcement**:

- In February 2007, BOA publicly announced its entry into ATR's Corporate Leniency Program. This event was widely reported in the financial and mainstream press. BOA also proffered information to certain Plaintiffs, including disclosure of the identity of co-conspirators. This information is reported in detail in the complaints filed in this action. (*See* SCAC at ¶¶ 102-129, 144-149.)

***CDR* Filings**:

- ATR publicly filed a list of 250 "affected" transactions. (*See* Jimenez Decl. Ex. D at 5.)[16]

**The Complaints**:

- Plaintiffs' Complaints include a plethora of detailed recitation of publicly available information regarding ATR's investigation, and its targets and subjects. They also disclose various information about BOA's cooperation, including specific transactions and the identities of co-conspirators. (SCAC at ¶ 100.)

---

[15] Irrespective of this list being filed publicly, ATR's list of co-conspirators has also likely been shared among Defendants by means of a joint defense agreement. *See* n. 11 *supra*.

[16] Plaintiffs do not assert that any of ATR's disclosures referenced herein violated Fed. R. Crim. P. 6(e).

The importance of these disclosures with respect to the balancing of equitable factors is clear: ATR's argument that civil discovery will now somehow "let the cat out of the bag" is implausible.

Finally, to the extent that there remain any legitimate concerns about dissemination of information in unabated civil discovery, such concerns are cured by a protective order. ATR notes that the protective order in the criminal case "ameliorates its concerns," (Mem. at 9 n.3), but offers no reason why a protective order in the civil case would not be likewise satisfactory.

b. The Public Interest in Private Action

Multiple courts have recognized a compelling public interest in the "vigorous[] enforce[ement of] national anti-trust laws through the expeditious resolution of . . . private antitrust litigation." *Plastics*, 2004 WL 2743591, at *8 (citing *Golden Quality*, 87 F.R.D at 58, and *Residential Doors*, 900 F. Supp. at 756). This public interest is even greater in class actions. *Id.* This interest is magnified here by the fact that the Plaintiffs are themselves government entities, cities and countries, that represent the public..

C. Alternatives to ATR's Proposed Stay Are Sufficient to Address ATR's Asserted Concerns.

Based on the foregoing, Plaintiffs submit that no stay of discovery is necessary, and that a simple protective order similar to that entered in *CDR* can adequately address concerns about potential abuse. As noted by Judge Mukasey in *Citibank v. Hakim*, "there are measures less extreme than a stay that address defendant's concerns. For instance, this Court can seal and limit the use of depositions and interrogatory answers, and otherwise limit disclosures to counsel." *See Citibank, N.A. v. Hakim,* 1993 WL 481335, at *3 (S.D.N.Y. 1993) (citing *Arden Way Assocs. v. Boesky*, 660 F.Supp. 1494, 1500 (S.D.N.Y. 1987) and *SEC v. Grossman*, 1987 WL 9192 at *2 (S.D.N.Y. Mar. 30, 1987)). Plaintiffs here could, for example, be prohibited from disclosing

publicly the audio recordings before the *CDR* trial. There are a myriad of tailored options that can be chosen as circumstances arise.

However, if the Court is nonetheless inclined to enter a stay of discovery, Plaintiffs ask this Court to adopt the stay reflected in Plaintiffs' Proposed Order. Plaintiffs' proposed stay is narrowly tailored in nature, consistent with the approach taken by the Court in *Scrap Metal*, 2002 WL 31988168, at *8-9. There, ATR was ordered to provide its objection to depositions on a witness-by-witness basis, and parties seeking to notice depositions were required to apply to the court.

## IV. CONCLUSION

Given the circumstances and procedural posture of this case, Plaintiffs' right to discovery should no longer be swept aside by unfounded fears about its impact on ATR's investigation. It is simply too late in the day, and the stakes are simply too high. The concerns cited by ATR are conclusory and do not withstand scrutiny. By comparison, the harms to the interests of Plaintiffs are real. By a wide margin, ATR's showing fails to demonstrate the necessity of a stay.


Dated: May, 10, 2010

Respectfully submitted,

By:____/s/ Magda M. Jimenez Train____

Magda M. Jimenez Train

On behalf of Plaintiffs' Interim co-lead counsel:

William A. Isaacson
Tanya S. Chutkan
Jonathan M. Shaw
Jack A. Simms
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave., N.W., Suite 800
Washington, DC 20015
Telephone: 202-237-2727
Facsimile: 202-237-6131

Magda M. Jimenez Train
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone: 212-446-2300
Facsimile: 212-446-2350

H. Lee Godfrey
Erica W. Harris
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: 713-651-9366
Facsimile: 713-654-6666

William C. Carmody
Arun S. Subramanian
Seth D. Ard
SUSMAN GODFREY L.L.P.
654 Madison Avenue, 5th Floor
New York, NY 10065-8440
Telephone: 212-336-8330
Facsimile: 212-336-8340

Michael D. Hausfeld
Robert G. Eisler
Megan E. Jones
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201

Michael P. Lehman
Christopher L. Lebsock
Jon T. King
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: 415-633-1908
Facsimile: 415-358-4980

Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: 310-789-3100
Facsimile: 310-789-315

*Plaintiffs' Interim Co-Lead Counsel*

Aron K. Liang
Nanci E. Nishimura
Steven N. Williams
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577

Imtiaz A. Siddiqui
COTCHETT, PITRE & MCCARTHY
100 Park Avenue, Suite 2600
New York, NY 10001
Telephone: 212-682-3198
Facsimile: 212-219-6678

*Counsel for Individual California Plaintiffs*

Steven E. Fineman
Daniel Edward Seltz
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212-355-9500
Facsimile: 212-355-9592

Andrew Kingsdale
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
Facsimile: 415-956-1008

G. Scott Emblidge
James A. Qaudra
Sylvia Sokol
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, CA 94101
Telephone: 415-362-3599
Facsimile: 415-362-2006

*Counsel for California Class Plaintiffs*