# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION | ) ) ) ) | Master Docket #No. 08 Civ. 2516 (VM) (GWG) |
| | ) | MDL No. 1950 |
| This Document Relates to: ALL ACTIONS | ) ) ) | |

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter, "Agreement") is made and entered into this 27th day of August 2010, by and between Defendant Morgan Stanley and Class Plaintiffs the City of Baltimore, MD, the University of Mississippi Medical Center, the University of Southern Mississippi, the Mississippi Department of Transportation, the University of Mississippi, the Central Bucks School District, and the Bucks County Water & Sewer Authority, individually and on behalf of the putative class of purchasers in the above-captioned class action. This Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

## R E C I T A L S

WHEREAS, Class Plaintiffs have alleged, among other things, that (1) Defendant violated Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, by illegally rigging bids, limiting competition, and fixing prices in the municipal derivatives industry in the United States and their territories; and (2) these acts caused the Class to incur significant damages;

WHEREAS, Defendant has denied and continues to deny: (1) each and all of the claims and allegations of wrongdoing made by the Class Plaintiffs and the Class in the Actions and maintain furthermore that it has meritorious defenses; (2) all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Actions, and Defendant vigorously contends that the factual allegations in the Class Plaintiffs' complaints relating to it are materially inaccurate; and (3) the allegations that the Class Plaintiffs or any Person in the Class was harmed by any conduct by Defendant alleged in the Actions or otherwise;

1

WHEREAS, indictments have been filed against CDR and certain associated individuals for alleged activity in the municipal derivatives industry, and the Department of Justice has not identified Morgan Stanley as an alleged co-conspirator;

WHEREAS, Class Plaintiffs and Defendant agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendant or of the truth of any of the claims or allegations alleged in the Actions;

WHEREAS, counsel for Defendant has informed Class Plaintiffs' Interim Co-Lead Counsel that no current employee of Defendant is aware of any information inculpatory of Morgan Stanley in these Actions;

WHEREAS, counsel for Defendant has informed Class Plaintiffs' Interim Co-Lead Counsel that Morgan Stanley is not presently the target of any current investigation;

WHEREAS, Defendant agrees to cooperate with Class Counsel (as defined below) and Class Members by providing truthful information (to the extent such information is in the possession, custody, or control of Defendant) related to the municipal derivatives industry and/or claims asserted by Class Plaintiffs in the Actions against the named defendants and parties not currently named as defendants;

WHEREAS, arm's length settlement negotiations have taken place between Defendant and Class Plaintiffs' Interim Co-Lead Counsel (as defined below), and this Agreement, which embodies all of the terms and conditions of the settlement between Defendant and Class Plaintiffs, both individually and on behalf of the Class, has been reached subject to the approval of the Court as provided herein and is intended to supersede any prior agreements between the Settling Parties;

WHEREAS, Class Plaintiffs' Interim Co-Lead Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Second Consolidated and Amended Class Action Complaint filed in MDL Docket No. 1950 the legal and factual defenses thereto and the applicable law, that it would be in the best interests of the Class to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Class and, further, that Class Plaintiffs' Interim Co-Lead Counsel consider the settlement set forth herein to be fair, reasonable and adequate and in the best interests of Class Plaintiffs and the Class; and

WHEREAS, Defendant, despite the belief that it is not liable for the claims asserted against it in the Actions and that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and thereby to put to rest this controversy with respect to the Class and avoid the risks inherent in complex litigation.

### A G R E E M E N T

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Class Plaintiffs (on behalf of themselves and each Person in the Class) and Defendant, by and through their counsel and attorneys of record, that, subject to the approval of the Court, the Actions and the Released Claims as against Defendant and other Releasees shall be finally and fully settled, compromised and dismissed on the merits and with prejudice upon and subject to the terms and conditions of this Agreement, as follows.

A.  **Definitions**  1.  As used in this Agreement the following terms have the meanings specified below. In the event of any inconsistency between any definition set forth

below and any definition set forth in any other document related to the settlement set forth in this Agreement, the definition set forth below shall control.

    (a)    "Actions" means *In re Municipal Derivatives Antitrust Litigation* and each of the cases previously or later consolidated and/or included as part of MDL Docket No. 1950, Master Docket No. 08-2516 (VM) (GWG).

    (b)    "Authorized Claimant" means any Class Member who, in accordance with the terms of this Agreement, is entitled to a distribution from the Net Settlement Fund pursuant to any Distribution Plan or Order of this Court.

    (c)    "Class" (or "Settlement Class") is defined, for purposes of this Settlement only, to include all state, local and municipal government entities, independent government agencies and private entities that purchased by negotiation, competitive bidding or auction municipal derivatives directly from an Alleged Provider Co-Conspirator, or through an Alleged Broker Co-Conspirator, at any time from January 1, 1992 through the present in the United States and its territories or for delivery in the United States and its territories. As will be reflected in the class notices approved by the Court, excluded from the Class are the Defendant and its affiliates, and any of its officers, directors, or employees. Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

    (d)    "Alleged Provider Co-Conspirators" means Bank of America, N.A., Bear, Stearns & Co., Inc., JP Morgan Chase & Co., Morgan Stanley, National Westminster Bank Plc, Piper Jaffray & Co., Societe Generale SA, UBS AG,

Wachovia Bank N.A., Wells Fargo & Co., Inc., Natixis Funding Corp. f/k/a IXIS Funding Corp, and before that, f/k/a CDC Funding Corp., AIG Financial Products Corp., SunAmerica Life Assurance Co., Financial Security Assurance Holdings, Ltd., Financial Security Assurance, Inc., Trinity Funding Co. LLC, GE Funding Capital Market Services, Inc., Lehman Brothers, XL Capital Ltd., XL Asset Funding Co. I LLC, XL Life Insurance & Annuity, Inc., and any other provider that is added as a defendant in the Actions prior to the time that the Notice is mailed, as well as all employees, direct and indirect parents, subsidiaries, affiliates, predecessors and successors of each of the foregoing.

(e)   "Alleged Broker Co-Conspirators" means Natixis Funding Corp. f/k/a IXIS Funding Corp, and before that, f/k/a CDC Funding Corp., Investment Management Advisory Group, Inc., CDR Financial Products, Winters & Co. Advisors, LLC, George K. Baum & Co, Sound Capital Management, Inc., Piper Jaffray & Co., Feld Winters Financial LLC, First Southwest Company, Kinsell Newcomb & De Dios Inc., Mesirow Financial, Morgan Keegan & Co., Inc., PackerKiss Securities, Inc., and any other broker that is added as a defendant in the Actions prior to the time that the Notice is mailed, as well as all employees, direct and indirect parents, subsidiaries, affiliates, predecessors and successors of each of the foregoing.

(f)   "Class Counsel" means both (i) Class Plaintiffs' Interim Co-Lead Counsel; and (ii) any attorney or law firm that seeks to receive any portion of the

5

attorneys' fees that may be awarded by the Court in connection with this Settlement.

(g) "Class Member" means a Person who falls within the definition of the Class and has not timely and validly excluded itself from the Class in accordance with the procedure to be established by the Court.

(h) "Class Plaintiffs' Interim Co-Lead Counsel" means Boies, Schiller & Flexner LLP, Hausfeld LLP, and Susman Godfrey LLP.

(i) "Court" means the United States District Court for the Southern District of New York.

(j) "Defendant" means Morgan Stanley.

(k) "Distribution Plan" means any plan or formula of allocation of the Gross Settlement Fund, to be approved by the Court upon notice to the Class, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants. Any Distribution Plan is not part of this Agreement, and Defendant shall have no responsibility or liability with respect thereto.

(l) "Effective Date" means the first date by which all of the events and conditions specified in ¶ 23 of this Agreement have occurred and have been met.

(m) "Escrow Agent" means the agent jointly designated by Class Plaintiffs' Interim Co-Lead Counsel and Defendant, and any successor agent as provided therein.

(n) "Execution Date" means the date this Agreement is executed by all parties.

(o)    "Final" means, with respect to any order of court, including without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when:  (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.  Any appeal or other proceeding pertaining solely to any order adopting or approving a Distribution Plan, and/or to any order issued in respect of an application for attorneys' fees and expenses pursuant to ¶¶ 14-15 and 19 below, shall not in any way delay or preclude the Judgment from becoming Final.

(p)    "Gross Settlement Fund" means the Settlement Amount and the Fees and Cost Amount, plus any interest that may accrue.

(q)    "Judgment" means the order of judgment and dismissal of the Actions with prejudice, which shall mutually agreed upon by the parties..

(r)    "Net Settlement Fund" means the Gross Settlement Fund, less the payments set forth in ¶ 14(a)-(d), below.

7

(s)     "Notice and Claims Administrator" means the Notice and/or Claims Administrator(s) to be approved by the Court.

(t)     "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and any spouses, heirs, predecessors, successors, representatives or assignees of any of the foregoing.

(u)     "Class Plaintiffs" means the City of Baltimore, MD, the University of Mississippi Medical Center, the University of Southern Mississippi, the Mississippi Department of Transportation, the University of Mississippi, the Central Bucks School District, the Bucks County Water & Sewer Authority.

(v)     "Proof of Claim and Release" means the form to be sent to Class Members, upon further order(s) of the Court, by which any Class Member may make claims against the Net Settlement Fund.

(w)     "Released Claims" means any and all manner of claims, demands, rights, actions, suits, causes of action, whether class, individual or otherwise in nature, fees, costs, penalties, damages whenever incurred, and liabilities of any nature whatsoever, known or unknown (including, but not limited to "Unknown Claims"), suspected or unsuspected, asserted or unasserted, in law or in equity, which Releasors or any of them, whether directly,

8

representatively, derivatively, or in any other capacity, ever had, now have or hereafter can, shall or may have, relating in any way to any conduct prior to the date of this Agreement and arising out of or related in any way to the purchase of municipal derivatives in the United States during the period from January 1, 1992 to the present, or any conduct alleged in the Actions or that could have been alleged in the Actions, including but not limited to any conduct or legal claims similar to those alleged in United States v. Rubin/Chambers, et al., 09 Cr. 1058 (VM) (S.D.N.Y.) and/or United States v. Carollo, et al., 10 Cr. 0654 (HB) (S.D.N.Y.), against the Releasees by Releasors (including, but not limited to, all claims under the Sherman Antitrust Act, California's Cartwright Act, any other federal or state statute or common law, or the law of any foreign jurisdiction).

(x) "Releasees" means Defendant and its direct and indirect parents, subsidiaries, and affiliates, and its respective present and former officers, directors, employees, managers, members, partners, agents, shareholders (in their capacity as shareholders), attorneys, and legal representatives, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

(y) "Releasors" means the Class Plaintiffs and each and every Class Member on their own behalf and on behalf of their respective direct and indirect parents, subsidiaries and affiliates, their present and former officers, directors, employees, agents, and legal representatives, and the

9

predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

(z)    "Settlement" means the settlement of the Released Claims set forth herein.

(aa)    "Settlement Amount" means an amount of FOUR MILLION NINE HUNDRED FIFTY THOUSAND DOLLARS ($4,950,000) to be paid by Morgan Stanley for the settlement of the Released Claims;

(bb)    "Fees and Costs Amount" means an amount of and ONE MILLION FIVE HUNDRED FIFTY THOUSAND DOLLARS ($1,550,000) to be paid by Morgan Stanley for the Notice and Administrative Costs, Taxes and Tax Expenses Fee and Expense Award (as described below and to be paid pursuant to ¶ 14(a)-(d) below).

(cc)    "Settling Parties" means, collectively, Defendant and the Class Plaintiffs (on behalf of themselves and each of the Class Members).

(dd)    "Unknown Claims" means any Released Claim that any Class Plaintiff and/or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Releasees that if known by him, her or it, might have affected his, her or its settlement with and release of the Releasees, or might have affected his, her or its decision not to object to this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Class Plaintiffs shall expressly waive, and each of the Class Members shall be deemed to

10

have waived, and by operation of the Judgment shall have waived the
provisions, rights and benefits equivalent to California Civil Code §1542
(to the extent it applies to the Actions), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT KNOW
> OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE
> MATERIALLY AFFECTED HIS OR HER
> SETTLEMENT WITH THE DEBTOR.

The Class Plaintiffs shall expressly waive, and each of the Class Members
shall be deemed to have waived, and by operation of the Judgment shall
have waived any and all provisions, rights and benefits conferred by any
law of any state or territory of the United States, or principle of common
law or foreign law, that is similar, comparable or equivalent in effect to
California Civil Code § 1542. The Class Plaintiffs and Class Members may
hereafter discover facts in addition to or different from those that any of
them now knows or believes to be true with respect to the subject matter of
the Released Claims, but each Class Plaintiff shall expressly have, and upon
the Effective Date, each Class Member shall be deemed to have, and by
operation of the Judgment shall have fully, finally and forever settled and
released any and all Released Claims, known or unknown, suspected or
unsuspected, contingent or non-contingent, whether or not concealed or
hidden, that now exist or heretofore have existed, upon any theory of law or
equity now existing or coming into existence in the future, including, but
not limited to, conduct that is negligent, reckless, intentional, with or

without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Plaintiffs acknowledge, and the Class Members shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

**B.**    **Preliminary Approval Order, Notice Order, and Settlement Hearing**

**2.**    **Reasonable Best Efforts to Effectuate this Settlement.** The Settling Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of this Agreement. As soon as is practicable, , after the Execution Date of this Agreement, Class Plaintiffs' Interim Co-Lead Counsel and Defendant shall jointly file with the Court a stipulation for suspension of all class action proceedings against Morgan Stanley pending approval of this Agreement.

**3.**    **Motion for Preliminary Approval.** As soon as is practicable, but not later than September 30, 2010, Class Plaintiffs' Interim Co- Lead Counsel shall submit this Agreement to the Court and shall, with the Settling Parties, apply for entry of an order (the "Preliminary Approval Order") requesting, *inter alia*, preliminary approval of the Settlement, including certification of the Settlement Class, and for a stay of all proceedings in the Actions against the Releasees until the Court renders a final decision on approval of the Settlement. The motion shall include: (a) the proposed Preliminary Approval Order; (b) the proposed Forms of Notice (with Claim Form) and

publication notice of the Settlement to the Class; (c) a proposed Order finally approving the Settlement (the "Final Approval Order"); and (d) the proposed Judgment.

4. **Notice to Class.** In the event that the Court preliminarily approves the Settlement, Class Plaintiffs' Interim Co-Lead Counsel shall, as soon as practicable and in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's Preliminary Approval Order, provide those Persons that have been identified by reasonable means as within the Class with notice of the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed Settlement (the "Settlement Hearing"). This notice shall also include the general terms of the Settlement set forth in the Agreement, the general terms of the proposed Distribution Plan, the general terms of the Fee and Expense Application (as defined in ¶ 19 below), and a description of the rights of those Persons in the Class to object to the Settlement, opt out of the Class, and/or appear at the Settlement Hearing.

5. **Publication.** Class Plaintiffs' Interim Co-Lead Counsel shall cause to be published a summary of the notice ("Summary Notice"). Publication will be carried out as soon as is reasonably practicable but in no event later than seventy-five (75) days after the Court enters the Preliminary Approval Order. Defendant shall not have any responsibility for providing notice of this Settlement to the Class. The Settling Parties shall mutually agree on any content relating to Defendant that will be used by the Class Counsel in any settlement-related press release or other media, including on websites, of Class Counsel, and/or the Claims Administrator.

6. **Motion for Final Approval and Entry of Final Judgment.** Not less than ninety (90) calendar days following the entry of the Preliminary Approval Order and at least thirty-five (35) calendar days before the Settlement Hearing, Class Plaintiffs' Interim Co-Lead Counsel shall submit a motion for final approval of the Settlement by the Court, after notice to the Class of the

13

Settlement Hearing pursuant to ¶¶ 4-5 above, and the parties hereto shall jointly seek entry of the Final Approval Order and Judgment:

(a) fully and finally approving the Settlement contemplated by this Agreement and its terms as being fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

(b) finding that the notice given to the Class as contemplated in ¶¶ 4-5 above constitutes the best notice practicable under the circumstances and complies in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

(c) directing that the Actions be dismissed with prejudice as to Defendant and, except as provided for herein, without costs;

(d) discharging and releasing the Releasees from all Released Claims;

(e) permanently barring and enjoining the institution and prosecution, by Class Plaintiffs and the Class Members, of any other action against the Releasees in any court asserting any Released Claims;

(f) reserving continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration, consummation and enforcement of this Agreement;

(g) determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing entry of a final judgment as to Defendant; and

(h) containing such other and further provisions consistent with the terms of this Agreement to which the parties expressly consent in writing.

14

At the Settlement Hearing, Class Plaintiffs' Interim Co-Lead Counsel also will request that the Court approve the proposed Distribution Plan and the application for attorneys' fees and reimbursement of expenses (as described below).

**C.**    **Settlement Fund**

**7.**    **Payments made by Morgan Stanley.**  Defendant shall pay by wire transfer the entire Settlement Amount and Fees and Cost Amount to the Escrow Agent pursuant to mutually agreeable escrow instructions within ten (10) business days after the Execution Date.  These amounts constitute the total payment that Defendant is required to make in connection with this Settlement Agreement.  These payments shall not be subject to reduction, and upon the occurrence of the Effective Date, except as provide in ¶ 42 below, no funds may be returned to Defendant.  In the event that the attorneys' fees and costs approved by the Court are less than the Fees and Cost Amount or the amount requested by Class Plaintiffs' Interim Co-Lead Counsel, any excess amounts shall become part of the Net Settlement Fund and shall be distributed to Authorized Claimants pursuant to the Distribution Plan.  The Escrow Agent shall only act in accordance with the mutually agreed escrow instructions.

**8.**    **Disbursements Prior to Effective Date.**  No amount may be disbursed from the Gross Settlement Fund unless and until the Effective Date, except that: (a) reasonable costs of the notice ("Notice and Administrative Costs") described in ¶¶ 4-5 may be paid from the Gross Settlement Fund as they become due; and (b) Taxes and Tax Expenses (as defined in ¶ 11 below) may be paid from the Gross Settlement Fund as they become due.  Class Plaintiffs' Interim Co-Lead Counsel will attempt in good faith to minimize the amount of Notice and Administrative Costs.

9.     **Refund by Escrow Agent.**   If the Settlement as described herein is finally disapproved by any court or it is terminated as provided herein, or the Judgment is overturned on appeal or by writ, the Gross Settlement Fund, including the Settlement Amount, the Fees and Cost Amount, and all interest earned on those amounts while held and accrued in the escrow account, excluding only proper, previously disbursed Notice and Administrative Costs and proper, previously disbursed Taxes and Tax Expenses (as defined in ¶ 11 below), will be refunded, reimbursed, and repaid by the Escrow Agent to Defendant within three (3) business days after receiving notice pursuant to ¶ 27 below.

10.     **No Additional Payments by Defendant.**   Under no circumstances will Defendant be required to pay more or less than the Settlement Amount pursuant to this Agreement and the Settlement set forth herein.   For purposes of clarification, the payment of any Fee and Expense Award (as defined in ¶ 20 below), the Notice and Administrative Costs, and any other costs associated with the implementation of this Settlement Agreement, as reflected in ¶ 14 below, shall be made exclusively from the Gross Settlement Fund.

11.     **Taxes.**   The Settling Parties and the Escrow Agent agree to treat the Gross Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 11, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.   Such elections shall be made in compliance with the procedures and requirements contained in such regulations.   It shall be the responsibility of the Escrow Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)   For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.   The Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. §1.468B-2 by, *e.g.*, (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or withholding requirements imposed on distributions from the Gross Settlement Fund, and (iii) timely and properly filing applicable federal, state and local tax returns necessary or advisable with respect to the Gross Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)) and paying any taxes reported thereon.   Such returns (as well as the election described in this ¶ 11) shall be consistent with this ¶ 11 and in all events shall reflect that all Taxes as defined in subparagraph 11(b) below on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided in ¶ 14 hereof;

(b)   All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Gross Settlement Fund, including without limitation, any taxes or tax detriments that may be imposed upon Defendant or its counsel with respect to any income earned by the Gross Settlement Fund for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 11, including

17

without limitation expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 11 (collectively, "Tax Expenses"), shall be paid out of the Gross Settlement Fund; in all events neither Defendant nor its counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. With funds from the Gross Settlement Fund, the Escrow Agent shall indemnify and hold harmless Defendant and its counsel for Taxes and Tax Expenses (including without limitation Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Gross Settlement Fund and shall timely be paid by the Escrow Agent out of the Gross Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither Defendant nor its counsel is responsible therefor, nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 11.

12.    **Releases.** Upon the Effective Date, the Releasors, and any other Person claiming (now or in the future) through or on behalf of them, and regardless of whether any such Releasor

ever seeks or obtains by any means, including without limitation by submitting a Proof of Claim and Release, any distribution from the Gross Settlement Fund, shall be deemed to have, and by operation of the Judgment shall have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Releasees and shall have covenanted not to sue the Releasees with respect to all such Released Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting any such Released Claim against the Releasees.

13. **Payment of Fees and Expenses.** Subject to Court approval, Plaintiffs and Class Counsel shall be reimbursed and paid solely out of the Gross Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees and expenses awarded by the Court shall be payable from the Gross Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Class Counsel's obligation to make appropriate refunds or repayments to the Gross Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed. The Defendant shall not be liable for any costs, fees, or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court may be paid out of the Gross Settlement Fund. In no event shall Defendant have any obligation with respect to giving notice of this Agreement to Class Members.

D. **Administration and Distribution of Gross Settlement Fund**

14. **Distribution of Gross Settlement Fund.** The Notice and Claims Administrator, subject to such supervision and direction of the Court and/or Class Plaintiffs' Interim Co-Lead Counsel as may be necessary or as circumstances may require, shall administer the claims

19

submitted by Class Members and shall oversee distribution of the Gross Settlement Fund to Authorized Claimants pursuant to the Distribution Plan.

Subject to the terms of this Agreement and any order(s) of the Court, the Gross Settlement Fund shall be applied as follows:

      (a)    to pay all costs and expenses reasonably and actually incurred in connection with providing notice to the Class pursuant to ¶¶ 4-6 above;

      (b)    to pay all costs and expenses reasonably and actually incurred in soliciting Class Members' claims and assisting them with the filing and processing of such claims;

      (c)    to pay the Taxes and Tax Expenses as defined herein;

      (d)    to pay any Fee and Expense Award that is allowed by the Court, subject to and in accordance with the provisions of ¶¶ 19-20.

      (e)    to distribute the balance of the "Net Settlement Fund" to Authorized Claimants as allowed by the Agreement, any Distribution Plan, or order of the Court.

    **15.**    **Distribution of Net Settlement Fund.**  Upon the Effective Date and thereafter, and in accordance with the terms of this Agreement, the Distribution Plan, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

      (a)    Each Class Member who claims to be an Authorized Claimant shall be required to submit to the Notice and Claims Administrator a completed Proof of Claim and Release signed under penalty of perjury by an

authorized official and supported by such documents as specified in the Proof of Claim and Release and as are reasonably available to such Class Member;

(b)    Except as otherwise ordered by the Court, each Class Member who fails to submit a Proof of Claim and Release within such period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Agreement and the Settlement set forth herein, but shall in all other respects be subject to and bound by the provisions of this Agreement, the releases contained herein, and the Judgment;

(c)    The Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with a Distribution Plan to be approved by the Court upon such further notice to the Class as may be required. Any such Distribution Plan is not a part of this Agreement. No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the Effective Date; and

(d)    All Persons who fall within the definition of the Class who, to the extent permitted under Rule 23 and applicable law, did not timely and validly request to be excluded from the Class shall be subject to and bound by the provisions of this Agreement, the releases contained herein, and the Judgment with respect to all Released Claims, regardless of whether such Persons seek or obtain by any means, including without limitation by

submitting a Proof of Claim and Release or any similar document, any distribution from the Gross Settlement Fund or the Net Settlement Fund.

16.     **No Liability for Distribution of Settlement Funds.**  Neither the Releasees nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Gross Settlement Fund, the Distribution Plan, the determination, administration, or calculation of claims, the payment or withholding of Taxes, the distribution of the Net Settlement Fund, or any losses incurred in connection with any such matters. Effective immediately upon the execution of this Agreement, the Releasors hereby fully, finally, and forever release, relinquish, and discharge the Releasees and their counsel from any and all such liability.  No Person shall have any claim against Class Counsel or the Notice and Claims Administrator based on the distributions made substantially in accordance with the Agreement and the Settlement contained herein, the Distribution Plan, or further orders of the Court.

17.     **Balance Remaining in Net Settlement Fund.**  If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Class Plaintiffs' Interim Co-Lead Counsel may reallocate such balance among Authorized Claimants in an equitable and economic fashion, subject to Court approval.

E.   <u>Cooperation</u>

18.     **Defendant shall provide cooperation pursuant to this Agreement.**  All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.  Defendant's cooperation obligations shall only apply to Releasors who act with, by or through Class Counsel pursuant to this Agreement in the Actions.  Notwithstanding any other provision in this Settlement Agreement, Defendant may assert where applicable the work-product doctrine, the attorney-client privilege, the common interest, the joint defense privilege and/or any

other applicable privilege or protection with respect to any documents, interviews, declarations and/or affidavits, depositions, testimony, material, and/or information requested under this Settlement Agreement. Any documents, declarations, affidavits, deposition testimony and information provided to Class Counsel pursuant to this provision shall be covered by the protective order in place in this case. None of the cooperation provisions are intended to, nor do they, waive any such privilege or protection. Defendant agrees that its counsel will meet with Class Counsel as is reasonably necessary to discuss any applicable privilege or protection.

(a) **Preliminary Approval**: Defendant agrees to cooperate to the extent reasonably necessary in connection with Class Counsel's preparation of the motion for preliminary approval and any related documents necessary to effectuate and implement the terms and conditions of this Agreement.

(b) **Proffers**: Beginning within five (5) business days of the Preliminary Approval, Defendant agrees that its counsel will meet with Class Counsel to provide a general description of the municipal derivatives industry, including Defendant's participation in transactions that are the subject matter of the Actions.

(c) **Production of Documents:** Within ten (10) business days after preliminary approval of this Agreement by the Court, Defendant shall produce those documents that Defendant has already produced to the Department of Justice and any state attorney general pursuant to the respective subpoenas or civil investigative demands, as modified through negotiations, regarding investigations of alleged antitrust violations in the municipal derivatives industry. Subsequent to that production, while any Action remains pending, at Class Counsel's written request and explanation, Defendant also will produce specific documents related to particular transactions. In the event of a disagreement between Defendant and Class Counsel regarding the scope, burden, relevance or permissibility of any such requests, the parties will seek resolution of such disputes from the Court.

(d) **Interviews**: After preliminary approval of this Agreement by the Court and upon reasonable notice, Defendant shall make available for truthful interview(s) with Class Counsel and/or their experts no more than three current officers and employees of Defendant designated by Class Counsel. Each interview shall take place on a single day and shall not exceed eight hours. The interviews will not be videotaped, recorded or professionally transcribed. Defendant will also respond to reasonable follow-up inquiries at the time of class certification. At Class Counsel's request, Defendant will meet and confer regarding any additional interviews sought by Class Counsel, but failing agreement between the parties, the

parties will seek resolution of such disputes from the Court. Notwithstanding any other provision of this Agreement, in the event that Defendant believes that Class Counsel has unreasonably designated any current officer or employee for interview, the parties agree to meet and confer regarding such designation and seek resolution from the Court if necessary. Defendant shall use commercially reasonable efforts to assist Class Counsel in arranging interviews with former officers and employees of Morgan Stanley. Class Counsel and Defendant will confer regarding the use of telephone interviews where appropriate. Other than its own legal fees, Defendant shall not be responsible for any expenses associated with interviews of former officers or employees.

(e)    **Declarations and Affidavits:**    After final approval of this Agreement by the Court and upon reasonable notice, Defendant shall make available to Class Counsel no more than three current officers and employees of Defendant designated by Class Counsel for the preparation of truthful declarations and/or affidavits in connection with class certification or summary judgment motions. At Class Counsel's request, Defendant will meet and confer regarding any additional individuals, but failing agreement the parties shall seek resolution by the Court. Defendant will also make current officers and employees available to provide declarations or affidavits regardingthe authentification of documents (such declarations and/or affidavits shall not count towards the three (3) permitted pursuant to this paragraph . Notwithstanding any other provision of this Agreement, in the event that Defendant believes that Class Counsel has unreasonably designated any current officer or employee for the preparation of truthful declarations and/or affidavits, the parties agree to meet and confer regarding such designation and seek resolution from the Court if necessary. Defendant shall use commercially reasonable efforts to assist Class Counsel in arranging for such declarations and/or affidavits from former officers and employees of Defendant for such purposes. Other than its own legal fees, Defendant shall not be responsible for any expenses associated with interviews of former officers or employees.

(f)    **Depositions:**    After final approval of this Agreement by the Court and upon reasonable notice, Defendant shall make available for truthful deposition(s) in the Actions no more than three current officers and employees of Defendant designated by Class Counsel. At Class Counsel's request, Defendant will meet and confer regarding any additional individuals, but failing agreement the parties will seek resolution by the Court. Written notice by Class Counsel upon Defendant's counsel shall constitute sufficient service for such depositions. Defendant shall use commercially reasonable efforts to assist Class Counsel in arranging the deposition of former officers and employees of Defendant. Notwithstanding any other provision of this Agreement, in the event that Defendant believes that Class Counsel has unreasonably designated any current officer or employee for deposition, the parties agree to meet and confer regarding such designation and seek resolution from the Court if necessary. Other than its own legal fees, Defendant shall not be responsible for any expenses associated with interviews of former officers or employees.

24

(g)     **Testimony at Trial**:  Upon reasonable notice and at Defendant's expense, Defendant shall make available for truthful testimony at trial, each of the then current officers and employees of Defendant designated by Class Counsel, who possess information, based on Class Counsel's good faith belief, that would assist Plaintiffs in trial of the Plaintiffs' claims as alleged in the Actions.  Defendant will make available for truthful merits depositions no more than three individuals for trial testimony (such limitation on witnesses shall not include authentification witnesses whose testimony cannot be obviated by declarations).  Defendant shall use commercially reasonable efforts to assist Class Counsel in arranging for the appearance of former officers and employees at trial, but Defendant shall not be obligated to bear the expenses, including but not limited to legal fees, of testimony of such former officers and employees.  Notwithstanding any other provision of this Agreement, in the event that Defendant believes that Class Counsel has unreasonably designated any current officer or employee for testimony at trial, the parties agree to meet and confer regarding such designation and seek resolution from the Court if necessary.

(h)     **Quantum Meruit**:  Defendant will not object to any application made by Class Member or Class Counsel for quantum meruit from any entity or person who opts out of this Settlement.  Defendant shall have no liability to any Class Member or Class Counsel with respect to such claims.

(i)     **Termination**:  Defendant's obligations to cooperate under the Agreement terminate when final judgment has been rendered, with no remaining rights of appeal, in the Actions against all defendants.

**F.**     **Attorneys' Fees and Reimbursement of Expenses**

**19.**     **Fee and Expense Application.**  Class Plaintiffs' Interim Co-Lead Counsel may, at their discretion and election, choose to submit an application or applications (the "Fee and Expense Application") for distributions to them from the Gross Settlement Fund, for an award of attorneys' fees plus reimbursement of expenses incurred in connection with prosecuting the Actions, as may be awarded by the Court that shall in no circumstances exceed the Fees and Cost Amount.

**20.**     **Payment of Fee and Expense Award.**  Any amounts that are awarded by the Court pursuant to ¶ 19 above (the "Fee and Expense Award") shall be paid from the Gross

25

Settlement Fund as provided in ¶ 14 above, and may be paid no earlier than the Effective Date. Defendant and the Releasees will take no position on Class Counsel's fee and expense applications.

21.     **Award of Fees and Expenses not Part of Settlement.**  The procedure for, and the allowance or disallowance by the Court of, the Fee and Expense Application are not part of the Settlement set forth in this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Agreement.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Judgment and the Settlement of the Actions as set forth herein.  No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Award or Distribution Plan shall constitute grounds for cancellation or termination of this Agreement.

22.     **No Liability for Fees and Expenses of Class Counsel.**  The Releasees shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Class Counsel pursuant to ¶¶ 19-20 above, and/or to any other Person who may assert some claim thereto, or any Fee and Expense Award that the Court may make in the Actions.

G.     **Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

23.     **Effective Date.**  The Effective Date of this Agreement shall be conditioned on the occurrence of all of the following events:

(a)     Defendant no longer has any right under ¶ 25 and below to terminate this Agreement or, if Defendant does have such right, it has given written notice

26

to Class Plaintiffs' Interim Co-Lead Counsel that it will not exercise such right;

(b)    the Court has finally approved the Settlement as described herein, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and has entered the Judgment; and

(c)    the Judgment has become Final.

24.    **Occurrence of Effective Date.** Upon the occurrence of all of the events referenced in ¶ 23 above, any and all remaining interest or right of Defendant in or to the Gross Settlement Fund, if any, shall be absolutely and forever extinguished, and the Gross Settlement Fund (less any Notice and Administrative Costs, Taxes or Tax Expenses or any Fee and Expense Award paid) shall be transferred from the Escrow Agent to the Notice and Claims Administrator as successor Escrow Agent within 10 days after the Effective Date.

25.    **Failure of Effective Date to Occur.** If all of the conditions specified in ¶ 23 are not met, then this Agreement shall be cancelled and terminated, subject to and in accordance with ¶ 27 below, unless the Settling Parties mutually agree in writing to proceed with this Agreement.

26.    **Failure to Enter Proposed Preliminary Approval Order, Final Approval Order or Judgment.** If the Court does not enter the Preliminary Approval Order, the Final Approval Order, or the Judgment, or if this Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified, or reversed, then this Agreement and the Settlement incorporated therein shall be cancelled and terminated, unless all parties who are adversely affected thereby, in their sole discretion within thirty (30) days from the date of the mailing of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed

with the Settlement under the terms of the Preliminary Approval Order, the Final Approval Order or the Judgment as modified by the Court or on appeal. Such notice may be provided on behalf of Class Plaintiffs and the Class-by Class Plaintiffs' Interim Co- Lead Counsel. No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application or Distribution Plan, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Agreement by any Settling Party. Without limiting the foregoing, Defendant shall have, in its sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of all of the Actions against it and full discharge of the Released Claims.

27. **Termination.** Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement should terminate, or be cancelled, or otherwise fail to become effective for any reason, including without limitation in the event that the Settlement as described herein is not finally approved by the Court or the Judgment is reversed or vacated following any appeal taken therefrom, then:

(a) within three (3) business days after written notification of such event is sent by counsel for Defendant or Class Plaintiffs' Interim Lead Counsel to the Escrow Agent, the Gross Settlement Fund, including the Settlement Amount and all interest earned in the escrow account and all payments disbursed, including all expenses, costs, excluding only Notice and Administrative Costs that have either been properly disbursed or are due and owing pursuant to ¶¶ 4-5, and Taxes and Tax Expenses that have been

28

properly paid or that have accrued and will be properly payable at some later date, will be refunded, reimbursed, and repaid by the Escrow Agent to Defendant;

(b)    any Fee and Expense Award or other fees and expenses disbursed to Class Counsel will be refunded, reimbursed, and repaid by Class Counsel to Defendant;

(c)    the Escrow Agent or its designee shall apply for any tax refund owed to the Gross Settlement Fund and pay the proceeds to Defendant, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund;

(d)    the Settling Parties shall be restored to their respective positions in the Actions as of the Execution Date, with all of their respective claims and defenses, preserved as they existed on that date;

(e)    the terms and provisions of this Agreement, with the exception of ¶¶ 9-10, 12, 21, 24-28, 30, 32, 33, 35-41 (which shall continue in full force and effect), shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in the Actions or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect); and

(f)    any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

29

### H.     No Admission of Liability

**28.     Final and Complete Resolution.**  The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Actions and to compromise claims that are contested, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Actions.

**29.     Use of Agreement as Evidence.**  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, of any allegation made in the Actions, or of any wrongdoing or liability of Defendant; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission of the Releasees in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Releasees may file this Agreement and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.  The limitations described in this paragraph apply whether or not the Court enters the Preliminary Approval Order, the Final Approval Order or the Judgment.

### I.     Miscellaneous Provisions

**30.     Morgan Stanley's Right to Communicate.**     Interim Co-Lead Counsel acknowledges and agrees that Morgan Stanley has the right to communicate orally and in writing

30

with, and to respond to inquiries from, Settlement Class Members, including (without limitation): (1) Communications between Settlement Class Members and representatives of Morgan Stanley whose responsibilities include client relations to the extent such communications are initiated by Settlement Class Members; (2) Communications between Settlement Class Members who are ongoing clients of Morgan Stanley, or who seek to become clients of Morgan Stanley; and (3) Communications that might be necessary to conduct Morgan Stanley's normal business.

31. **Voluntary Settlement.** The Settling Parties agree that the Settlement Amount and the other terms of the Settlement as described herein were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

32. **Consent to Jurisdiction.** Defendant and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement.

33. **Resolution of Disputes; Retention of Exclusive Jurisdiction.** Any disputes between or among Defendant and any Class Member or Members (or their counsel) concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Agreement.

34. **Binding Effect.** This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Class Plaintiffs, and Class Plaintiffs' Interim Co-Lead Counsel shall be binding upon all Class Members.

35.    **Authorization to Enter Settlement Agreement**. The undersigned representatives of Defendant represent that they are fully authorized to enter into and to execute this Agreement on behalf of Defendant. Class Plaintiffs' Interim Co-Lead Counsel, on behalf of the Class Plaintiffs, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of this Class pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or amendments to the Agreement on behalf of the Class that they deem appropriate.

36.    **Notices**. All notices under this Agreement shall be in writing. Each such notice shall be given either by (a) e-mail, (b) hand delivery, (c) registered or certified mail, return receipt requested, postage pre-paid, (d) Federal Express or similar overnight courier, or (e) facsimile and first class mail, postage pre-paid, and, if directed to any Class Member, shall be addressed to Class Plaintiffs' Interim Co-Lead Counsel at their addresses set forth on the signature page hereof, and if directed to Defendant, shall be addressed to their attorneys at the address set forth on the signature pages hereof or such other addresses as Class Plaintiffs' Interim Co-Lead Counsel or Defendant may designate, from time to time, by giving notice to all parties hereto in the manner described in this paragraph.

37.    **No Conflict Intended**.    The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

38.    **No Party Deemed to Be the Drafter**. None of the parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

32

39.    **Choice of Law**.  This Agreement and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to this Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

40.    **Amendment; Waiver**.  This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

41.    **Execution in Counterparts**.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the parties to this Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

42.    **Integrated Agreement**.  This Agreement constitutes the entire agreement between the Settling Parties and no representations, warranties or inducements have been made to any party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

43.    **Optional Termination of Agreement**.  After notice of settlement is sent to the Class and the Class has been given the opportunity to opt out, if any Person opts out of the Settlement Class, Morgan Stanley may at its own election, terminate this Agreement and withdraw from this Settlement; provided however, that any such election must be made by Morgan Stanley in writing within twenty-one (21) days following the deadline for Persons to exclude themselves

33

from the Settlement Class. Class Counsel agrees to provide Morgan Stanley with notice of any Person who requests to be excluded from the Settlement Class within three (3) days of receipt by Class Counsel of that exclusion request.

However, Defendant may not terminate this Agreement solely because one or more of the named plaintiffs in any of the sixteen (16) cases referred to as the "Cotchett Complaints" requests to be excluded from the Settlement Class. If any such "Cotchett Complaint" named plaintiff requests to be excluded from the Settlement Class, Class Counsel shall return to Defendant from the Settlement Amount that named plaintiff's pro rata share of the Gross Settlement Fund the named plaintiff would have received had it remained in the Settlement Class. The named plaintiffs in the "Cotchett Complaints" are those in sixteen (16) complaints, as amended as of the Effective Date, in the cases styled as: (1) *City of Los Angeles v. Bank of America N.A., et al.*, No. 08-10351 (VM); (2) *City of Stockton v. Bank of America N.A., et al.*, No. 08-10350 (VM); (3) *County of San Diego v. Bank of America, N.A., et al.*, No. 09-1195 (VM); (4) *County of San Mateo v. Bank of America, N.A., et al.*, No. 09-1196 (VM); (5) *County of Contra Costa v. Bank of America, N.A., et al.*, No. 09-1197 (VM); (6) *Sacramento Municipal Utility District v. Bank of America, N.A., et al.*, No. 09-10103 (VM); (7) *City of Riverside, et al. v. Bank of America N.A., et al.*, No. 09-10102 (VM); (8) *Los Angeles World Airports v. Bank of America., N.A., et al.*, No. 10-0627 (VM); (9) *Sacramento Suburban Water District v. Bank of America, N.A., et al.*, No. 10-0629 (VM); (10) *County of Tulare v. Bank of America, N.A., et al.*, No. 10-0628 (VM); (11) *Redevelopment Agency of the City of Stockton, et al. v. Bank of America, N.A., et al.*, No. 10 0630 (VM); (12) *Redevelopment Agency of the City and County of San Francisco v. Bank of Am., N.A.*, 10 Civ. 4987 (VM); (13) *City of Redwood City v. Bank of Am., N.A.*, 10 Civ. 4988 (VM); (14) *City of Richmond*

34

*v. Bank of Am., N.A.*, 10 Civ. 4989 (VM); (15) *East Bay Municipal Utility District v. Bank of Am., N.A.*, 10 Civ. 4990 (VM); and (16) *City of San Jose v. Bank of Am., N.A.*, 10 Civ. 4991 (VM).

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the date first herein above written.

PLAINTIFFS' INTERIM CO-LEAD COUNSEL, on behalf of Class Plaintiffs individually, on behalf of the Class, and on behalf of Class Counsel

By: _____

William A. Isaacson
Jonathan Shaw
wisaacson@bsfllp.com,
jshaw@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C.  20015
Tel:  (202) 237-2727
Fax:  (202) 237-6131

Michael D. Hausfeld
Michael P. Lehmann
Megan E. Jones
mhausfeld@hausfeldllp.com,
mlehmann@hausfeldllp.com,
mjones@hausfeldllp.com
HAUSFELD LLP
1700 K Street, NW, suite 650
Washington, D.C. 20006
Tel:  (202) 540-7200
Fax:  (202) 540-7201

Marc Seltzer
William Carmody
mseltzer@susmangodfrey.com,
bcarmody@susmangodfrey.com
SUSMAN GODFREY
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Tel:  (310) 789-3100
Fax:  (310) 789-3150

35

DEFENDANT MORGAN STANLEY

By: _____
    John Faulkner
    Managing Director


APPROVED AS TO FORM BY OUTSIDE COUNSEL TO
DEFENDANT MORGAN STANLEY

By: _____
    Shepard Goldfein
    Shepard.Goldfein@skadden.com
    SKADDEN ARPS SLATE MEAGHER & FLOM
    LLP
    Four Times Square
    New York, NY 10036
    Tel: (212) 735-3000
    Fax: (212) 735-2000