**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| IN RE MUNICIPAL DERIVATIVES | ) | MDL No. 1950 |
| ANTITRUST LITIGATION | ) | |
| | ) | Master Docket No. 08-02516 (VM) (GWG) |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| ALL ACTIONS | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
**WITH DEFENDANT MORGAN STANLEY**

**Table of Contents**

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND ................................................................................... 3

    A.    The Litigation................................................................................. 3

    B.    The Settlement Agreement .............................................................. 4

        1.  Proposed Settlement Class............................................................ 4

        2.  The Settlement Fund .................................................................... 5

        3.  Cooperation Provisions ................................................................ 5

            a.    Preliminary Approval ........................................................ 6

            b.    Proffers ............................................................................. 6

            c.    Production of Documents ................................................... 6

            d.    Interviews ......................................................................... 6

            e.    Declarations and Affidavits................................................ 7

            f.    Depositions ........................................................................ 7

            g.    Testimony at Trial ............................................................. 8

            h.    Quantum Meruit ................................................................ 8

        4.  The Release .................................................................................. 8

III.  ARGUMENT ........................................................................................ 9

    A.    The Settlement of Complex Litigation is Favored............................ 9

    B.    The Proposed Settlement Exceeds the Standard for Preliminary Approval ............... 10

        1.  The Proposed Settlement is the Result of Diligent, Arm's Length Negotiations Conducted by Highly Experienced Counsel. ...................... 11

        2.  The Proposed Settlement is Within the Range of Possible Approval.................. 12

    C.    The Proposed Settlement Class Should Be Certified Pursuant to Rule 23 ................. 14

        1.  The Class Meets the Requirements of Rule 23(a). ....................... 14

            a.    Numerosity ........................................................................ 14

            b.    Common Questions of Law and Fact ................................. 15

            c.    Typicality........................................................................... 16

            d.    Adequacy ........................................................................... 16

         2.  The Settlement Class Meets the Requirements of Rule 23(b)(3). ...................... 17

            a.    Common Questions of Law and Fact Predominate......................... 17

i

    b. A Class Action is the Superior Means of Adjudicating Plaintiffs' Claims ... 18

 D. Notice to the Class ................................................................................................... 19

IV. CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*In re Air Cargo Shipping Serv. Antitrust Litigation*,
No. 06-md-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009)........................................9

*Amchem Products Inc. v. Windsor*,
521 U.S. 591 (1997)........................................17, 18

*In re Ampicillin Antitrust Litigation*,
82 F.R.D. 652 (D.D.C. 1979)........................................13

*In re Buspirone Patent Litigation*,
210 F.R.D. 43 (S.D.N.Y. 2002)........................................18

*Carlough v. Amchem Products, Inc.*,
158 F.R.D. 314 (E.D. Pa. 1993)........................................19

*In re Chambers Development Sec. Litigation*,
912 F. Supp. 882 (W.D. Pa. 1995)........................................13

*In re Currency Conversion Fee Antitrust Litigation*,
No. 01........................................10

*D'Alauro v. GC Services Ltd. Partnership*,
168 F.R.D. 451 (E.D.N.Y. 1996)........................................18

*Detroit v. Grinnell Corp.*,
495 F.2 (2d Cir. 1974)........................................11

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992)........................................16

*In re Global Crossing*,
225 F.R.D. at 102 (citations omitted) ........................................ passim

*Grinnell Corp.*,
495 F.2d at 463 ........................................11, 13

*In re Initial Public Offering Sec. Litigation*,
260 F.R.D. 81 (S.D.N.Y. 2009)........................................12

*Marisol A. by Forbes v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)........................................15

*In re Medical X-Ray Film Antitrust Litigation*, No. CV 93-5904,
    1997 WL. 33320580 (E.D.N.Y. Dec. 26, 1997) ...........................................................10

*In re Michael Milken & Associate Sec. Litigation*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ...........................................................................................13

*In re NASDAQ Market Makers Antitrust Litigation*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................................2, 10, 12

*NASDAQ Market Makers Antitrust Litigation*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................11, 13

*In re Nigeria Charter Flights Contract Litigation*,
    233 F.R.D. 297 (E.D.N.Y. 2006) .......................................................................................18

*Paine Webber Ltd. Partnership Litigation*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................11, 12

*In re Playmobil Antitrust Litigation*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) .......................................................................16, 18, 19

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)................................................................................................14

*In re Visa Check/MasterMoney Antitrust Litigation*,
    280 F.3d 124 (2d Cir. 2001).................................................................................................16

*In re Visa Check/Mastermoney Antitrust Litigation*,
    297 F. Supp. 2d 503 (2003) .................................................................................................13

*W. Va. V. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) ......................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................................10, 19

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..................................................................................................14

*In re WorldCom Securities Litigation*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................................19

## STATUTES

26, and Section 1 of the Sherman Act, 15 U.S.C. § 1 ........................................................3

Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 ....................................................3

Fed. R. Civ. P. 23(b)(3)..................................................................................................18

Fed. R. Civ. P. 23(g) ............................................................................................... passim

Fed. R. Civ. Pro. 23(c)(2)(B) 19 ...................................................................................19

## MISCELLANEOUS

5 H. Newberg and A. Conte, *Newberg on Class Actions* §§ 8.04, 8.21 (3d ed. 1992).................19

v

I.      **INTRODUCTION**

           Plaintiffs the City of Baltimore, MD, the University of Mississippi Medical Center, the University of Southern Mississippi, the Mississippi Department of Transportation, the University of Mississippi, the Central Bucks School District, and the Bucks County Water & Sewer Authority ("Plaintiffs"), individually and on behalf of the putative class of purchasers in this action (the "Settlement Class" or "Class"), have entered into an agreement ("Settlement Agreement") with Defendant Morgan Stanley.  As set forth below, the Settlement Agreement was negotiated at arm's length by experienced counsel, is reasonable and appropriate, and deserving of preliminary approval by the Court.

           Pursuant to the Settlement Agreement, Morgan Stanley has paid a total of $6.5 million ("Settlement Amount" of $4,950,000 plus "Fees and Costs Amount" of $1,550,000) in exchange for dismissal of claims by the Class against Morgan Stanley in this litigation.  *See* Settlement Agreement (Ex. A to Plaintiffs' Motion for Preliminary Approval) at 8-10.  Additionally, while the Settlement Agreement is not an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Morgan Stanley, Morgan Stanley must cooperate with Class Counsel and Class Members by providing available information related to the municipal derivatives industry and/or claims asserted by Class Plaintiffs in this litigation.

           In light of ongoing confidential settlement discussions with other Defendants, Plaintiffs seek to defer providing notice of the Settlement Agreement to Class Members for a period not to exceed 90 days following preliminary approval of the Settlement Agreement.  Private and judicial resources will be conserved if Plaintiffs are able to provide notice of more than one settlement simultaneously.   In the interim, Plaintiffs will submit proposed forms of a Class Notice,

Publication Notice, Notice Plan, Claim Form and Distribution Plan for the Court's consideration and approval.

At the preliminary approval stage, the Court must simply determine if the Settlement Agreement, on its face, is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard," *i.e.*, whether the settlement is within the range of *possible* approval. *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ I*"). Because the settlement provides substantial monetary and non-monetary relief to the Settlement Class, it is well within the range of possible approval and should be preliminarily approved by the Court under Federal Rule of Civil Procedure 23(e). In addition, the Settlement Class meets the requirements of Rule 23 and Plaintiffs are committed to providing the best practicable notice to the Class beginning no later than 90 days following preliminary approval by the Court. For these reasons, Plaintiffs respectfully request that the Court enter an Order:

(a)      Preliminarily approving the Settlement Agreement;

(b)      Conditionally certifying the proposed Settlement Class;

(c)      Appointing Interim Co-Lead Counsel as counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(g);

(d)      Authorizing Plaintiffs to provide notice of the Settlement Agreement to Class Members, in a form to be approved in advance by the Court, no later than 90 days after granting this Motion;

(e)      Approving Rust Consulting, Inc. as administrator of the settlement and Citibank, N.A. as escrow agent;

(f)      Scheduling a final fairness hearing before the Court pursuant to Fed. R. Civ. P. 23(e)(2) to determine whether the proposed Settlement should be granted final approval;

(g)    Setting deadlines for accomplishing other steps in the Settlement-approval process;

(h)    Staying the proceedings against Morgan Stanley in accordance with the terms of the Settlement Agreement; and

(i)    Granting such other and further relief as may be appropriate.

## II.    BACKGROUND

### A.    The Litigation

The Second Consolidated Amended Class Action Complaint ("CAC") filed by Plaintiffs in June 2009 (Docket No. 450) alleges that certain Provider Defendants ("Alleged Provider Co-Conspirators") and Broker Defendants ("Alleged Broker Co-Conspirators")[1] conspired to fix, maintain or stabilize the price of, and to rig bids and allocate customers and markets for, municipal derivatives.  Plaintiffs seek damages under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and Section 1 of the Sherman Act, 15 U.S.C. § 1.  Plaintiffs contend that, as a direct result of the unlawful behavior alleged in the CAC, they and others similarly situated were injured when price competition for municipal derivatives was restrained, suppressed or eliminated in the United

---

[1] As set forth in the Settlement Agreement, the "Alleged Provider Co-Conspirators"are Bank of America, N.A., Bear Stearns & Co., Inc., JP Morgan Chance & Co., Morgan Stanley, National Westminster Bank Plc, Piper Jaffray & Co., Societe General SA, UBS AG, Wachovia Bank N.A., Wells Fargo & Co., Inc., Natixis Funding Corp. f/k/a IXIS Funding Corp., and before that, f/ka CDC Funding Corp., AIG Financial Products Corp., SunAmerica Life Assurance Co., Financial Security Assurance Holdings, Ltd., Financial Security Assurance, Inc., Trinity Funding Co. LLC, GE Funding Capital Market Services, Inc., Lehman Brothers, XL Capital Ltd., XL Asset Funding Co. I, LLC, XL Life Insurance & Annuity, Inc., and any provider that is added as a defendant in this litigation prior to the time that notice of this Settlement Agreement is mailed to members of the Class, as well as all employees, direct and indirect parents, subsidiaries, affiliates, predecessors and successors of each of the foregoing.  The "Alleged Broker Co-Conspirators" are Natixis Funding Corp. f/k/a IXIS Funding Corp., and before that, f/ka CDC Funding Corp., Investment Management Advisory Group, Inc., CDR Financial Products, Winters & Co. Advisors, LLC, George K. Baum & Co., Sound Capital Management, Inc., Piper Jaffray & Co., Inc., PackerKiss Securities, Inc., and any other broker that is added as a defendant in this litigation prior to the time that notice of this Settlement Agreement is mailed to members of the Class, as well as any employees, direct and indirect parents, subsidiaries, affiliates, predecessors and successors of each of the foregoing.

States; bids charged by Defendants to Plaintiffs and members of the Class were fixed, stabilized and maintained at non-competitive levels across the United States; customers and markets were allocated among Defendants and their co-conspirators; Plaintiffs and members of the Class received lesser interest rates on municipal derivatives than they would have received in a competitive marketplace, unfettered by collusive and unlawful activities; and competition in the sale of municipal derivatives was restrained, suppressed or eliminated in the United States.

This litigation was commenced in March 2008 with the filing of two class action lawsuits in this Court by purchasers of municipal derivatives against Defendants. On June 16, 2008, the United States Judicial Panel on Multidistrict Litigation transferred the cases to this Court. Pursuant to several pretrial orders, the Court consolidated all related actions under the above caption. In its Order of July 25, 2008 (Docket No. 174), the Court appointed Cohen Milstein, Hausfeld & Toll PLLC[2], Boies, Schiller & Flexner LLP, and Susman Godfrey LLP to serve as Co-Lead Interim Counsel for the plaintiff class.

B.    **The Settlement Agreement**

The Settlement Agreement includes the following material terms:

1.    **Proposed Settlement Class**

The Settlement Agreement defines the Settlement Class as "all state, local and municipal government entities, independent government agencies and private entities that purchased by negotiation, competitive bidding or auction municipal derivatives directly from an Alleged Provider Co-Conspirator, or through an Alleged Broker Co-Conspirator, at any time from January 1, 1992 through the present in the United States and its territories or for delivery in the United

---

[2] On November 21, 2008, Hausfeld LLP moved for an amendment of the Court's order appointing interim Co-Lead Interim Counsel, requesting that the firm Hausfeld LLP be substituted for Cohen, Milstein, Hausfeld & Toll, PLLC. (Docket No. 319). The Court granted Hausfeld LLP's motion on December 9, 2008. (Docket No. 327).

States and its territories." As will be reflected in the class notices ultimately approved by the Court, excluded from the Class are Morgan Stanley and its affiliates, and any of its officers, directors or employees. Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

### 2.       The Settlement Fund

Pursuant to the terms of the Settlement Agreement, on September 3, 2010, Morgan Stanley paid the full Settlement Amount of $4,950,000 (for settlement of the Released Claims, as defined in the Settlement Agreement) plus the Fees and Costs Amount of $1,550,000 (for Notice and Administrative Costs, Taxes and Tax Expenses, and Fee and Expense Award, as defined in the Settlement Agreement) into an interest-bearing Escrow Account. *See* Settlement Agreement ¶ 7. Subject to approval by the Court of a Distribution Plan to be submitted at a later date, the Gross Settlement Fund of $6.5 million, plus any interest earned, shall be applied as follows:

(a)      to pay all costs and expenses reasonably and actually incurred in connection with providing notice to the Class;

(b)      to pay all costs and expenses reasonably incurred in soliciting Class Members' claims and assisting them with the filing and processing of such claims;

(c)      to pay Taxes and Tax Expenses as defined in the Settlement Agreement;

(d)      to pay any Fee and Expense Award that is allowed by the Court, subject to and in accordance with other provisions of the Settlement Agreement; and

(e)      to distribute the balance of the "Net Settlement Fund" to Authorized Claimants as allowed by the Settlement Agreement, any Distribution Plan, or order of the Court.

*See* Settlement Agreement ¶ 14 (and definitions referenced therein).

### 3.       Cooperation Provisions

Pursuant to the Settlement Agreement, Morgan Stanley agrees to provide cooperation to the Settlement Class that will aid in the prosecution of the claims against the remaining Defendants. Aspects of that cooperation include the following:

### a.   Preliminary Approval

Morgan Stanley will cooperate to the extent reasonably necessary in connection with Class Counsel's preparation of the motion for preliminary approval and any related documents needed to effectuate and implement the terms of the Settlement Agreement.

### b.   Proffers

Within five business days of preliminary approval, counsel for Morgan Stanley will meet with Class Counsel to provide a general description of the municipal derivatives industry, including Morgan Stanley's participation in transactions that are the subject matter of this litigation.

### c.   Production of Documents

Within ten business days of preliminary approval, Morgan Stanley will produce to Plaintiffs any documents previously produced to the Department of Justice or any state attorney general pursuant to subpoenas or civil investigative demands, as modified through negotiations, regarding investigations of alleged antitrust violations in the municipal derivatives industry. Subsequent to that production, while any action in this litigation remains pending, at Class Counsel's written request and explanation, Morgan Stanley will also produce specific documents relating to particular transactions.  In the event any disagreement arises concerning the scope, burden, relevance or permissibility of such requests, the parties will seek resolution by the Court.

### d.   Interviews

Following preliminary approval and upon reasonable notice, Morgan Stanley will make available for interview(s) with Class Counsel and/or their experts, up to three current officers or

6

employees of Morgan Stanley designated by Class Counsel (and subject to the protocol set forth in Paragraph 18(d) of the Settlement Agreement).  Morgan Stanley also agrees to use commercially reasonable efforts to arrange interviews with any of its former officers or employees.  To the extent Class Counsel requests more than three interviews, or if Morgan Stanley believes Class Counsel has unreasonably designated any current officer or employee for interview, the parties will meet and confer, but failing agreement, will seek resolution of any such disputes by the Court.

### e.      Declarations and Affidavits

After final approval of the Settlement Agreement, and upon reasonable notice, Morgan Stanley will make available to Class Counsel up to three current officers or employees designated by Class Counsel for preparation of declarations and/or affidavits in connection with class certification or summary judgment motions.  Morgan Stanley also agrees to use commercially reasonable efforts to assist Class Counsel in arranging for declarations or affidavits from former officers or employees.  Additionally, Morgan Stanley will make current officers and employees available to provide declarations or affidavits regarding authentication of documents (any such sworn statements will not count toward the limit of three).  To the extent Class Counsel requests additional declarations or affidavits, or if Morgan Stanley believes Class Counsel has unreasonably designated any current officer or employee for preparation of a declaration or affidavit, the parties will meet and confer, but failing agreement, will seek resolution of any such disputes by the Court.

### f.      Depositions

After final approval of the Settlement Agreement, and upon reasonable notice, Morgan Stanley will make available for deposition(s) in this litigation up to three current officers or employees designated by Class Counsel.  Morgan Stanley also agrees to use commercially reasonable efforts to assist Class Counsel in arranging the depositions of former officers or

employees.  To the extent Class Counsel requests additional depositions, or if Morgan Stanley believes Class Counsel has unreasonably noticed any current officer or employee for deposition, the parties will meet and confer, but failing agreement, will seek resolution of any such disputes by the Court.

### g.      Testimony at Trial

Subject to the specific provisions set forth in Paragraph 18(g) of the Settlement Agreement, upon reasonable notice, and at Morgan Stanley's expense, Morgan Stanley will make available for testimony at trial each of its then current officers or employees designated by Class Counsel, and who Class Counsel believe in good faith have information that would assist Plaintiffs.  Morgan Stanley will use commercially reasonable efforts to assist Class Counsel in arranging for the appearance at trial of any former officers or employees.  In the event Morgan Stanley believes Class Counsel has unreasonably designated any current officer or employee for testimony at trial, the parties will meet and confer, and seek resolution by the Court as necessary.

### h.      Quantum Meruit

Morgan Stanley will not object to any application made by a Class Member or Class Counsel for quantum meruit from any entity or person that opts out of the Settlement Agreement. Morgan Stanley will have no liability to any Class Member or Class Counsel with respect to such claims.

### 4.      The Release

In exchange for the monetary and other considerations paid by Morgan Stanley, Settlement Class members would release, relinquish, acquit, and forever discharge Morgan Stanley[3] from any

---

[3] Including its direct and indirect parents, subsidiaries, and affiliates, and its respective present and former officers, directors, employees, managers, members, partners, agents, shareholders (in their capacity as shareholders), attorneys, and legal representatives, and the predecessors, successors,

and all claims, demands, actions, suits and causes of action, damages and liabilities of any nature against Morgan Stanley arising from or in any way relating to any conduct prior to the date of the Settlement Agreement and arising out of or related in any way to the purchase of municipal derivatives in the United States during the period from January 1, 1992 to the present, or any conduct alleged in this litigation or that could have been alleged in this litigation, including but not limited to any conduct or legal claims similar to those alleged in *United States v. Rubin/Chambers, et al.*, 09 CR 1058 (VM) (S.D.N.Y.) and/or *United States v. Carollo, et al.*, 10 CR 0654 (HB) (S.D.N.Y.).  Regardless of whether they seek or obtain any distribution from the settlement fund, Settlement Class Members covenant not to sue Morgan Stanley with respect to the Released Claims and are permanently banned and enjoined from instituting or prosecuting any Released Claim against Morgan Stanley.[4]

## III.  ARGUMENT

### A.  The Settlement of Complex Litigation is Favored

Plaintiffs and Morgan Stanley have reached an agreement that provides a recovery and guarantees meaningful cooperation from Morgan Stanley in the prosecution of Plaintiffs' claims against the non-settling Defendants.  Having negotiated for a substantial cash payment from Morgan Stanley as well as cooperation going forward, Plaintiffs have avoided the potential risks inherent in complex antitrust class action litigation and secured a favorable settlement for the Settlement Class.  Reaching such a positive result at this stage in the litigation makes the settlement even more attractive (particularly given that Morgan Stanley denies knowledge of wrongdoing by any current or former officers or employees).  *See In re Global Crossing Sec. &*

---

heirs, executors, administrators and assigns of each of the foregoing.  *See* Settlement Agreement at p. 9 ("Releasees").

*ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004).  In assessing this proposed settlement, the Court should be mindful of the "general public policy favoring settlement."  *In re Air Cargo Shipping Serv. Antitrust Litig.*, No. 06-md-1775, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009).

### B.   The Proposed Settlement Exceeds the Standard for Preliminary Approval

When parties to a class action seek to settle, they must first seek preliminary approval of the proposed class action and certification of a settlement class, then, if preliminary approval and class certification are granted, they must provide notice to the settlement class and appear at a fairness hearing, after which time the Court may grant final approval of the settlement.  *See Manual for Complex Litigation* (Fourth) § 21.63 (2004); *NASDAQ I*, 176 F.R.D. at 102.  Because the first step of the process is "preliminary," the standards for preliminary approval are less exacting than those applied for final approval.  "[T]he court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (quoting *NASDAQ I*, 176 F.R.D. at 102); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Preliminary approval is granted so long as the settlement was arrived at through a fair process and the terms of the settlement are within the "range of *possible* approval." *NASDAQ I*, 176 F.R.D. at 102 (emphasis added).

In conducting its preliminary approval inquiry, a court considers both the negotiating process leading up to the settlement and the settlement's substantive terms.  *In re Global Crossing*, 225 F.R.D. at 102 (citations omitted).  Preliminary approval should be granted "if the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no

---

[4] The release provision is found at ¶ 12 of the Settlement Agreement (and "Releasors" is defined at pp. 9-10).

obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys fees." *In re Medical X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) (citations omitted).

The negotiations here were conducted by experienced counsel on both sides at arm's length over a period of several months. *See* Decl. of Michael D. Hausfeld in Support of Plaintiffs' Motion for Preliminary Approval ("Decl."), at ¶¶ 3-6. Plaintiffs' attorneys were well-informed of all material facts and the negotiations were non-collusive. *See id.* at 7. Moreover, considering the cooperation to be provided by Morgan Stanley in addition to the $6.5 million cash payment, the Settlement Agreement is well within the range of possible approval. As will be demonstrated in further detail at the final fairness hearing, the proposed settlement with Morgan Stanley is "fair, reasonable, and adequate." *See Detroit v. Grinnell Corp.*, 495 F.2 448, 463 (2d Cir. 1974).[5]

### 1. The Proposed Settlement is the Result of Diligent, Arm's Length Negotiations Conducted by Highly Experienced Counsel.

The negotiations that resulted in this proposed settlement were fairly conducted by highly qualified counsel who endeavored to obtain the best possible result for their clients and the Settlement Class. When counsel for the parties engage in diligent arm's length negotiations, a settlement is generally entitled to a presumption of fairness. *See NASDAQ Mkt. Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*"). Moreover, when a settlement is the product of negotiations between experienced and informed counsel, courts tend to give counsel's opinion considerable weight because they are closest to the facts and risks associated with continuing the litigation. *See Paine Webber Ltd. P'ship Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).

---

[5] There are nine factors that courts consider in assessing a settlement's substantive terms at final approval. *See Grinnell Corp.*, 495 F.2d at 463. Those factors are discussed herein only to the extent they provide a useful guide for evaluating a settlement's fairness at this preliminary stage.

The Court previously found that Interim Co-Lead Counsel are highly capable and have the requisite qualifications and experience to lead this litigation on behalf the proposed Settlement Class (Docket No. 183).  The terms of the Settlement Agreement were negotiated through extensive meetings and discussions over the course of several months.  *See* Decl., ¶ 4.  During this period of time, there were numerous in-person meetings, telephone calls and email exchanges regarding the settlement terms.  *See id.*, ¶ 5.  The discussions were meaningful and informed as Interim Co-Lead Counsel took many steps to insure that they had all necessary information to advocate for a fair settlement that serves the best interests of the Settlement Class.  Co-Lead Counsel analyzed all the contested legal and factual issues posed by the litigation in order to make accurate demands and evaluations of Morgan Stanley's positions.  *See id.*, ¶¶ 6-7.

### 2.      The Proposed Settlement is Within the Range of Possible Approval.

To preliminarily approve the Settlement Agreement, the Court must determine that the proposed settlement falls within the range of settlement that could possibly be worthy of final approval as "fair, adequate and reasonable."  *NASDAQ I*, 176 F.R.D. at 102.  The settlement here contains a substantial cash payment and non-cash benefits that will likely improve Plaintiffs' chances of recovery from the remaining non-settling defendants.  Notably, the benefits to the Settlement Class come at a relatively early stage of the litigation, where non-monetary aspects may prove to be particularly valuable.  *See In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 117-18 (S.D.N.Y. 2009) (discussing risks of proceeding with litigation).   Under these circumstances and considering the overall benefits, the proposed settlement is an excellent result for the Settlement Class.

Continuing this litigation against Morgan Stanley would involve a protracted and expensive battle, involving complex legal and factual issues with vigorously contested motion practice.  At trial, Morgan Stanley would assert defenses, making the outcome uncertain for both

parties because it would turn on issues of proof, many of which would be the subject of complicated expert testimony, particularly with regard to the nature of municipal derivatives transactions and damages.[6]  *See NASDAQ II*, 187 F.R.D. at 475-76; *see also W. Va. V. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").  Additionally, even after trial is concluded, there could potentially be one or more lengthy appeals.  *See In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993).  Given this uncertainty, "[a] very large bird in the hand of this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 882, 838 (W.D. Pa. 1995).

Further, because liability under the Sherman Act is joint and several, this settlement in no way prejudices the ability of the Class to recover its full treble damages caused by the alleged conspiracy.  The Settlement Agreement secures Morgan Stanley's immediate cooperation – via interviews, proffers, and production of documents – to assist in prosecuting Plaintiffs' claims against the non-settling Defendants.  If approved, the settlement with Morgan Stanley could very well hasten recovery by the Class by providing access to information that would otherwise be obtainable only through protracted discovery.  *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class would "relinquish no part of its potential recovery" due to joint and several liability and where settling defendant's "assistance in the case against [a non-settling defendant] will prove invaluable to the plaintiffs.").

For the foregoing reasons, the Settlement Agreement is well within the possible range of final approval as a "fair, reasonable and adequate" resolution of Plaintiffs' claims against Morgan

---

[6] Because Interim Co-Lead Counsel may have to litigate against other defendants through trial and

Stanley.  *See Grinnell Corp.*, 495 F.2d at 463; *see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (2003) (fact that class faced long trial and additional time it would take to exhaust all appeals "weigh[ed] heavily in favor of approving the Settlements.").

### C.      The Proposed Settlement Class Should Be Certified Pursuant to Rule 23

The Second Circuit has long recognized the propriety of certifying a class solely for purposes of settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Global Crossing*, 225 F.R.D. at 451.   A court may grant certification where, as here, the proposed settlement class satisfies the four requirements of Rule 23(a) and at least one subsection of Rule 23(b).  *See Weinberger*, 698 F.2d at 73.  Here, Plaintiffs seek certification of the following class:

> All state, local and municipal government entities, independent government agencies and private entities that purchased by negotiation, competitive bidding or auction municipal derivatives directly from an Alleged Provider Co-Conspirator, or through an Alleged Broker Co-Conspirator, at any time from January 1, 1992 through the present in the United States and its territories or for delivery in the United States and its territories.  Excluded from the Class are Morgan Stanley and its affiliates, and any of its officers, directors or employees.  Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

Settlement Agreement at p. 4.

### 1.      The Class Meets the Requirements of Rule 23(a).

#### a.      Numerosity

Rule 23(a) requires that a class be so numerous that joinder of all members would be "impracticable."  Fed. R. Civ. P. 23(a)(1).   While there is no magic number that satisfies this requirement and a plaintiff need not allege the exact number or identity all class members, courts in the Second Circuit generally "find a class sufficiently numerous when it comprises forty or more

---

appeal, their duties to the Class preclude a full discussion of potential litigation risks.

members." *In re Indep. Energy Holdings*, 210 F.R.D. 476, 479 (S.D.N.Y.  2002); *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

Here, the proposed Settlement Class consists of all state, local and municipal government entities, independent government agencies and private entities that purchased municipal derivatives in the United States directly from an Alleged Provider Co-Conspirator, or through an Alleged Broker Co-Conspirator, at any time from January 1, 1992 through the present.  While the exact size of the proposed Settlement Class is not known to Plaintiffs at this time, it likely numbers in the thousands.   Joinder of all such entities is clearly impracticable and the numerosity requirement is satisfied here.

### b.    Common Questions of Law and Fact

Rule 23(a) further requires that questions of law or fact exist that are common to the proposed class.  Fed. R. Civ. P. 23(a)(2).  Plaintiffs need not show "an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with grievances of the proposed class."  *In re Global Crossing*, 225 F.R.D. at 451 (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)); *see also Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

Here, Plaintiffs' allegations raise questions of law and fact common to the proposed Settlement Class, including, for example:  whether Defendants engaged in a combination or conspiracy to fix, maintain or stabilize the price of, and to rig bids and allocate customers and markets for, municipal derivatives; the duration of the conspiracy alleged in the CAC and the nature of the acts performed by Defendants in furtherance of the alleged conspiracy; whether the alleged conspiracy violated Section 1 of the Sherman Act; the effect of the alleged conspiracy on the municipal derivatives market; and whether the alleged conspiracy caused injury to the business

or property of Plaintiffs and other members of the Settlement Class. Proof of the allegations in the CAC will clearly be common to all members of the Settlement Class

### c. Typicality

Third, Rule 23(a) requires that claims of Class Plaintiffs be typical of the claims of other members of the class. See Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied where, as here, the claims of the representative plaintiffs arise from the same course of alleged conduct that gives rise to the claims of other class members. *See, e.g., In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998). "Indeed, when 'the same [alleged] unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'" *In re Global Crossing*, 225 F.R.D. at 452 (citation omitted).

Here, the claims of the representative Plaintiffs are typical when compared to the claims of other members of the Settlement Class. Plaintiffs allege that Defendants created and maintained an illegal cartel in the municipal derivatives industry. The claims of the representative Plaintiffs, like those of the Settlement Class, arise from the same alleged anticompetitive conduct by the same Defendants and are based on the same legal theories. Accordingly, Plaintiffs satisfy the typicality requirement. *See id*.

### d. Adequacy

Finally, Rule 23(a) requires that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). As the Second Circuit has noted, "adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285,

291 (2d Cir. 1992); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 142 (2d Cir. 2001).

Both requirements are satisfied here.  As this Court previously determined, Interim Co-Lead Counsel are qualified, experienced and thoroughly familiar with complex antitrust class action litigation (Docket No. 183).  Moreover, in reaching this Settlement Agreement, the interests of all Class members were adequately protected and there are no conflicts between or among the named Plaintiffs and other Class members.  All Class members share an overriding interest in obtaining the largest monetary recovery possible from Morgan Stanley.  *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members.  All share the common goal of maximizing recovery.").  The Class members here also share common interest in obtaining Morgan Stanley's early settlement and cooperation in prosecuting the claims against the non-settling Defendants. For all the reasons set forth above, the adequacy requirement is satisfied.

### 2.    The Settlement Class Meets the Requirements of Rule 23(b)(3).

Once the four prerequisites of Rule 23(a) are satisfied, plaintiffs in a class action must also show that a proposed settlement class meets the requirements of Rule 23(b).  Under Rule 23(b)(3), Plaintiffs here must first demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  In addition, Plaintiffs must show that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id*.  With respect to both requirements, the court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).

### a.    Common Questions of Law and Fact Predominate.

17

The CAC alleges a single conspiracy from which all Plaintiffs' injuries arise, issues common to the class members – for example, the existence and scope of the alleged conspiracy among Defendants, the impact of Defendants' conspiracy, and the amount of damage suffered by the class as a result of an alleged violation of Section 1 of the Sherman Act – predominate over any individual questions. Accordingly, class treatment of the claims is appropriate for purposes of this settlement. *See Amchem Prods. Inc.,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 247 (E.D.N.Y. 1998) (finding predominance where case involved allegations of "pricing structure to regulate prices . . . , to maintain prices at artificially high levels, and to hinder price competition"); *In re Buspirone Patent Litig.,* 210 F.R.D. 43, 58 (S.D.N.Y. 2002) (citation omitted) (finding predominance requirement satisfied where "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs"). Here, the predominance prong is easily satisfied.

### b.     A Class Action is the Superior Means of Adjudicating Plaintiffs' Claims

The Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication. *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 301 (E.D.N.Y. 2006); *see* Fed. R. Civ. P. 23(b)(3) (listing four considerations relevant to this determination). The Court needs to consider "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996). Here, any interests of Class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the

class mechanism.   At minimum, hundreds of entities purchased municipal derivatives from Defendants during the proposed class period and settling their claims in the context of a class action will conserve both judicial and private resources, and will hasten recovery.   *See In re Buspirone Patent Litig.,* 210 F.R.D. at 58 ("The numerous common issues of fact and law and the difficulty of numerous individual lawsuits indicates that a class action is superior to other methods for a fair and efficient adjudication of the controversy."); *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d at 249 (certifying a class because "proceeding forward as a class action for liability is superior and would avoid duplication, unnecessary costs and a wasting of judicial resources").

### D.   <u>Notice to the Class</u>

Rule 23 requires that notice be given in a reasonable manner to all class members who would be bound by a proposed settlement prior to the final approval of the settlement.  See Fed. R. Civ. P. 23.   Where, as here, notice of certification of a settlement class and notice of a proposed settlement are to be combined, the more detailed requirements of Rule 23(c)(2)(B) apply and "[t]he Court must direct to the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. Pro. 23(c)(2)(B); *see also Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993) (citing 5 H. Newberg and A. Conte, *Newberg on Class Actions* §§ 8.04, 8.21 (3d ed. 1992)).

Notice regarding a proposed settlement is adequate under both Rule 23 and due process standards if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," and it can "be understood by the average class member."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005); *In re WorldCom Secs. Litig.*, 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005).

In light of ongoing settlement discussion with other Defendants, Plaintiffs propose deferring provision of notice to the Settlement Class for no more than 90 days following the

Court's preliminary approval of the Morgan Stanley settlement.   To the extent additional settlements are reached in coming months, significant efficiencies may be gained by sending a single notice that includes any such additional settlements.   In the interim, Plaintiffs will submit proposed forms of a Class Notice, Publication Notice, Notice Plan, Claim Form and Distribution Plan for the Court's consideration and approval.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Preliminary Approval, certify the Settlement Class, and authorize the dissemination of notice to the Class within 90 days.

Dated: December 2, 2010                                   Respectfully submitted,

_____
Arun S. Subramanian

<table>
<tr><td>

William A. Isaacson
Tanya Chutkan
Jonathan M. Shaw
Jack A. Simms
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Magda M. Jimenez
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) *446-2350*

</td><td>

Michael D. Hausfeld
Megan Jones
HAUSFELD LLP
1146 19th Street, NW
5th Floor
Washington, DC  20036
Telephone: (202) 579-1089
Facsimile: (202) 747-5713

William C. Carmody
Arun S. Subramanian
SUSMAN GODFREY L.L.P.
654 Madison Avenue, 5th Floor
New York, NY 10065-8440
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

</td></tr>
<tr><td>

H. Lee Godfrey
Erica W. Harris
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096

</td><td>

Marc M. Seltzer
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100

</td></tr>
</table>

20

Telephone:  (713) 651-9366                    Facsimile:  (310) 789-3150
Facsimile:  (713) 654-6666

**Plaintiffs' Co-Lead Counsel**

## CERTIFICATE OF SERVICE

I certify that on December 3, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all counsel of record whoa re CM/ECF participants.  In additiona, I further certify that I caused a copy of the above-referenced document and the notice of electronic filing to be mailed by first-class mail, postage paid, to the following non-ECF participates at the following addressed:

| | |
|---|---|
| Eric B. Fastiff<br>Lieff, Cabraser, Heimann & Bernstein, LLP<br>275 Battery Street<br>San Francisco, CA 94111-3339 | Eugene A. Spector<br>Jeffrey L. Spector<br>Spector, Roseman, Kodroff & Willis, PC<br>1818 Market Street<br>Suite 2500<br>Philadelphia, PA 19103 |
| G. Scott Emblidge<br>Moscone, Emblidge & Quandra, LLP<br>220 Montgomery Street<br>Suite 2100<br>San Francisco, CA 94101 | Matthew Friedrich<br>Boies, Schiller & Flexner LLP<br>5301 Wisconsin Avenue, NW<br>Suite 800<br>Washington, DC  20015 |
| Richard A. Koffman<br>Cohen, Milstein, Hausfeld & Toll, PLLC<br>West Tower, Suite 500<br>1100 New York Avenue, North West<br>Washington, DC  20005 | Richard M. Heimann<br>Lieff, Cabraser, Heimann & Bernstein, LLP<br>275 Batter Street<br>30th Floor<br>San Francisco, CA 94111 |
| Rudolph DiTrapano<br>DiTrapano Barrett & DiPiero<br>604 Virginia Street, East<br>Charleston, WV 25301 | Sylvia Sokol<br>Moscone, Emblidge & Quadra, LLP<br>220 Montgomery Street<br>Suite 2100<br>San Francisco, CA 94101 |
| Christopher B. Hall<br>Cook, Hall & Lampros, LLP<br>1230 Peachtree Street NE<br>Promenade Two, Suite 3700<br>Atlanta, GA 30309 | |

/s/ Arun Subramanian