**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE MUNICIPAL DERIVATIVES
ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

MDL No. 1950

Master Docket No. 08-02516
(VM) (GWG)

**PLAINTIFFS' JOINT**
**MEMORANDUM IN OPPOSITION**
**TO MOTION TO EXTEND STAY**
**ORDER**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Shipping Line, Inc. v. Massan Shipping Indus., Inc.*,
885 F.Supp. 499 (S.D.N.Y. 1995)...........................................................................7

*Arnold-Pontiac-GMC, Inc. v. General Motors Corp.*,
786 F.2d 564 (3d Cir. 1986)...................................................................................18

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*,
490 F. 3d 718 (9th Cir. 2007) ............................................................................4, 8

*Citibank, N.A. v. Hakim,*
No. 92 CIV. 6233 (MBM), 1993 WL 481335 (S.D.N.Y. Nov. 18, 1993)................5

*Digital Equip. Corp. v. Currie Enters.*,
142 F.R.D. 8 (D. Mass. 1991)...............................................................................11

*Hinds County, Miss. v. Wachovia Bank, N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009)....................................................................6

*In re Marceca*,
131 B.R. 774 (Bankr. S.D.N.Y. 1991)....................................................................3

*In re Nine West Shoes Antitrust Litig.*,
80 F.Supp.2d 181 (S.D.N.Y. 2000).........................................................................7

*In re Plastics Additives Antitrust Litig.*,
No. 03-2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) .........................4, 14, 15

*In re Residential Doors Antitrust Litig.*,
900 F. Supp. 749 (E.D. Pa. 1995) ..........................................................................4

*In re Scrap Metal Antitrust Litig.*,
No. 1:02 Civ. 0844, 2002 WL 31988168 (N.D. Ohio, Nov. 7, 2002) ...................10

*Lender's Serv., Inc. v. Dayton Bar Ass'n*,
758 F. Supp. 429 (S.D. Ohio 1991) ........................................................................6

*Pagtalunan v. Galaza*,
291 F.3d 639 (9th Cir. 2002) ..................................................................................7

*SEC v. Dresser Indus., Inc.*,
628 F.2d 1368 (D.C. Cir. 1980) ..............................................................................7

*Shaw v. United States*,
    371 F. Supp. 2d 265 (E.D.N.Y. 2005) ...................................................................18

*Sterling Nat. Bank v. A-1 Hotels Int'l., Inc.*,
    175 F.Supp.2d 573 (S.D.N.Y. 2001)...........................................................3, 4, 5, 6

*United States v. All Funds on Deposit*,
    767 F. Supp. 36 (E.D.N.Y. 1991) .........................................................................19

*United States v. District Council of New York City and Vicinity of the United
    Brotherhood of Carpenters and Joiners of America*,
    No. 90 Civ. 5722 (CSH), 1991 WL 243385 (S.D.N.Y. Nov. 8, 1991).....................7

*United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*,
    811 F. Supp. 802 (E.D.N.Y. 1992) ......................................................................11

*United States v. Rubin/Chambers, Dunhill Ins. Servs., Inc.*,
    No. 1:09-cr-1058 (VM) (S.D. N.Y.) ............................................................... passim

*Volmar Distribs., Inc. v. New York Post Co.*,
    152 F.R.D. 36 (S.D.N.Y.1993) .............................................................................5

**STATUTES**

15 U.S.C. § 15b.................................................................................................5

18 U.S.C. § 1005...............................................................................................5

18 U.S.C. § 3293...............................................................................................5

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure 30(b)(6)....................................................15, 16, 18

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.   AN EXTENSION OF THE STAY IS DISFAVORED UNDER THE LAW .................... 2

   A.   Granting DOJ's Request Would Cause Prejudice To Plaintiffs ...................... 5

   B.   Denying DOJ's Request For A Stay Does Not Burden Defendants. ........................ 10

   C.   Denying DOJ's Request For A Stay Does Not Burden the Court. ........................ 10

   D.   Denying DOJ's Request For A Stay Does Not Burden Non-Parties/DOJ .................... 11

   E.   Denying DOJ's Request For A Stay Is In the Public Interest ........................ 14

II.  DOJ AGREES THAT PLAINTIFFS SHOULD BE PERMITTED TO TAKE NON-
CONSPIRACY DEPOSITIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE
30(b)(6) .................................................................................................................. 15

III. PLAINTIFFS SHOULD BE PERMITTED TO TAKE CONSPIRACY-BASED
DEPOSITIONS .......................................................................................................... 16

IV.  PLAINTIFFS SHOULD BE PERMITTED TO PROPOUND SUBSTANTIVE
INTERROGATORIES ................................................................................................ 18

CONCLUSION .............................................................................................................. 20

## INTRODUCTION

Class Plaintiffs and Plaintiffs in various individual and class cases brought on behalf of California, New York entities, and the State of West Virginia (collectively "Plaintiffs") hereby submit this joint opposition to the United States Department of Justice's Antitrust Division's ("DOJ") third request for a stay of merits-related discovery in this case.

In November 2006, DOJ announced it was conducting an investigation of the municipal derivatives industry. *See* Declaration of Megan E. Jones (herafter referred to as "Jones Decl."), Ex. A. In its Motion, DOJ urges this Court to again extend the bar on merits-related discovery, until at least November 1, 2011, which is when the DOJ estimates that it will finish presenting *its own case in chief* in *United States v. Rubin/Chambers, Dunhill Ins. Servs., Inc., et al*., No. 1:09-cr-1058 (VM) (S.D. N.Y.) ("*CDR*") (as opposed to the conclusion of the trial itself). Notably, the DOJ refuses to say whether this will be the final time that it seeks to extend the bar on civil discovery (for example, until the end of the *CDR* trial estimated to conclude in February 2012). *See* Jones Decl., Ex. B ¶15.

Plaintiffs object to any further extension of the stay of discovery. First, there has been no material change in circumstances since the parties were last before the Court. To the extent DOJ seeks to "fault" Plaintiffs for the pace of discovery—such an assertion is meritless. Second, DOJ fails even to address, much less meet, the heavy burden required to extend the stay. There is simply no valid legal basis at all to continue the stay beyond the current date of February 1, 2011. Third, the extension of a stay would prejudice Plaintiffs as follows:

1. The stay will risk the loss of important evidence from witnesses of current parties as memories fade, as well as jeopardize the ability to gather evidence from new parties;

2. The stay could impact Plaintiffs' ability to take sufficient discovery to justify naming new defendants under the statute of limitations;

3.   The stay will delay settlement prospects for all Plaintiffs;

4.   The stay will impact Plaintiffs' ability to test the sufficiency of the DOJ's claims that the settlement between Bank of America and select States Attorneys-General constitutes "full restitution" of the alleged cartel by Bank of America; and

5.   The stay will continue to delay proceedings as a whole, which have been on file since March 2008.

Plaintiffs respectfully submit that the time has come for the stay to expire of its own accord.  Plaintiffs should not be placed in the position that DOJ, citing no authority and making no showing of any substance, can come to this Court every time the stay is about to expire, and attain a "limited" extension on a piecemeal basis.   DOJ has failed to demonstrate any sufficient basis to extend the stay.  Thus, under well-established law, the Court should deny DOJ's motion.

## ARGUMENT

## I.   AN EXTENSION OF THE STAY IS DISFAVORED UNDER THE LAW

In its Motion, DOJ urges this Court to extend the bar on substantive depositions and interrogatories until November 1, 2011.  This is the third time that DOJ has requested a stay of discovery in Plaintiffs' cases.  As in its preceding requests, DOJ not only seeks a longer stay than it requested before, but also refuses to state whether it will seek additional stays in the future. The law heavily disfavors subjecting civil plaintiffs to this kind of interminable delay in the prosecution of their cases, and DOJ cites no authority to support such an extension here.

In May of 2009, DOJ represented that it sought "a very limited stay of discovery both in terms of time and scope," and it repeatedly characterized the length of the proposed stay as "six months."  *See* Jones Decl., Ex. C at 4-5 & 8.  Last year, DOJ returned to this Court to seek "a limited stay of discovery until April, 2011."   *Id*., Ex. D at 5.  Now, DOJ has come back again, asking for a stay through November 1, 2011 – for a total of ***five years*** after it announced its

2

investigation in November 2006, or ***over three and a half years*** since these cases were filed in March 2008.  *See* Mtn. at 8.  During negotiations, DOJ refused to state whether it intends to ask for a stay until the conclusion of the *CDR* trial.  Indeed, DOJ refused to commit that this will be its final request for a stay, because, as it points out, there are recent indictments and "the grand jury investigation is continuing."  *See* Mtn. at 3 & 8.[1]  Rather than forthrightly ask this Court to stay civil discovery for several years, DOJ has requested and received a series of *in seriatim* requests for stays, each time labeling them "limited" and for a period of "months."  However, the cumulative impact of such stays is undeniable.

Nowhere in its Motion does DOJ cite to a single case, much less one that provides this Court with the authority to bar substantive discovery repeatedly and indefinitely, while DOJ finishes its criminal prosecutions.  The length of DOJ's requested stay (over three and a half years) is unprecedented, and research reveals no instance in which a Court has permitted a stay of discovery of the length DOJ seeks.

This is because "[n]othing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter."  *Sterling Nat. Bank v. A-1 Hotels Int'l., Inc.*, 175 F.Supp.2d 573, 576 (S.D.N.Y. 2001) ("*Sterling*") (quoting *Nosik v. Singe*, 40 F.3d 592, 596 (2d Cir. 1994.  As a general matter, a stay of discovery is an "extraordinary remedy."  *In re Marceca*, 131 B.R. 774, 778 (Bankr. S.D.N.Y. 1991) (citing *Weil v. Markowitz,* 829 F.2d 166, 175 n.17 (D.C. Cir. 1987) (observing that a "stay of discovery pending the outcome of related criminal proceedings is an extraordinary remedy appropriate for extraordinary circumstances.").

---

[1] Plaintiffs do not believe that any stay should be granted.  However, before granting another "limited stay," DOJ should be required to disclose to this Court whether this is its final request for a stay of civil discovery and if not, the likely end date of such a final request.   If it is the DOJ's position that civil discovery should not proceed until the end of the entirety of its criminal investigation, DOJ should disclose that fact to the Court.

In the absence of substantial prejudice, "parallel proceedings are unobjectionable under our jurisprudence." *Sterling*, 175 F. Supp. 2d at 576 (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)).  Indeed, courts have recognized that stays of discovery of a shorter duration than the one DOJ requests effectively "place[] plaintiffs out of court."  *See, e.g., Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F. 3d 718, 724 (9th Cir. 2007) ("*Blue Cross*") (noting cases holding that an 18 month stay was sufficient to effectively place plaintiffs out of court).  DOJ has been permitted to conduct its investigation in isolation, without civil discovery taking place, since at least November 2006, when it announced its public investigation; the time has come for this Court to permit the cities, counties, public agencies, and non-profits that were the victims of the alleged conduct by Defendants to conduct the discovery necessary to prosecute their cases.

There is no authority which suggests that repeated stays must be granted until a grand jury concludes its investigation, which appears to be what DOJ ultimately desires.  *See Sterling*, 175, F. Supp. 2d at 579 (S.D.N.Y. 2001) (rejecting as indefinite a requested stay of depositions for six months pending resolution of an ongoing Grand Jury investigation because "the argument for a further stay [six months later] will be at least as potent as it is now"); *In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591, at *5 (E.D. Pa. Nov. 29, 2004) ("*Plastics*") ("This Court refuses to bifurcate discovery on the basis of concurrent grand jury proceedings that may extend indefinitely."); *In re Residential Doors Antitrust Litig.*, 900 F. Supp. 749, 756 (E.D. Pa. 1995) ("*Residential Doors*") (rejecting argument that discovery can be stayed without prejudice to plaintiffs until completion of DOJ's criminal investigation of unspecified others at unknown future date).  This is particularly true here, when the grand jury's

said investigation could last up to ten years. [2]  Like the court in *Sterling*, this Court should decline to extend the stay now, because it is likely that DOJ could use its primary argument ("to protect its investigation") to justify a stay until 2016.

As set forth below, the following factors, none of which are addressed in DOJ's motion, strongly counsel against the extension of a stay here:  (1) the private interests of affected civil plaintiffs in proceeding expeditiously with the civil litigation, balanced against the prejudice to such plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  *Volmar Distribs., Inc. v. New York Post Co*., 152 F.R.D. 36, 38 (S.D.N.Y.1993) ("*Volmar*") (balancing relevant factors "is a case-by-case determination, with the basic goal being to avoid prejudice"); *Citibank, N.A. v. Hakim,* No. 92 CIV. 6233 (MBM), 1993 WL 481335, at *3 (S.D.N.Y. Nov. 18, 1993) (reciting factors).

### A.    Granting DOJ's Request Would Cause Prejudice To Plaintiffs.

Further delay of substantive depositions and interrogatories until at least November 2011 will prejudice the Plaintiffs significantly.  *First*, the stay will continue to delay proceedings as a whole, which have been on file since at as early as March 2008.  Plaintiffs have been

---

[2] Even if DOJ continues to pursue this investigation, it may not be completed for many years. Significantly, certain of the offenses charged in *CDR* carry a *ten-year* statute of limitations. *See CDR* Docket No. 1 (Oct. 29, 2009) (*See* Indictment, ¶¶ 67-69) (charging false entries in bank records, 18 U.S.C. § 1005).  That limitations period goes far beyond that applicable to a civil antitrust case.  *Compare* 18 U.S.C. § 3293 (providing a ten-year statute of limitations for false entries in bank records, 18 U.S.C. § 1005) *with* 15 U.S.C. § 15b (subjecting civil antitrust claims to a four-year statute of limitations).  As courts have noted, one practical effect of a ten-year statute of limitations is that it tends to cause government investigations to lag.  *See also Sterling*, 175 F. Supp. 2d at 580 n.6 ("[T]he statute of limitations for many of the crimes presumably being considered by the grand jury is ten years. . . . As a former supervising prosecutor, I am well aware that one of the unfortunate effects of extended statutes of limitations is the removal or urgency from the government's investigative processes.").  With recent indictments issued in December 2010, DOJ will have upcoming trials to protect for the next 12-24 months.

handicapped in their prosecution of their cases for three years, and they should not be so handicapped for another year or more (extending the stay from February 2011 to February 2012, when the trial is estimated to conclude). As stated previously, DOJ will likely ask for more time until the conclusion of the *CDR* trial (February 2012). Indeed, DOJ refuses to commit that this will be its final request for a stay and as it points out, there are recent indictments and "the grand jury investigation is continuing." *See* Mtn. at 3 & 8. Effectively, DOJ seeks to delay the civil cases indefinitely. This requested extension imposes a "weighty burden on plaintiff[s]." *Sterling*, 175 F. Supp. 2d at 580 ("If a stay is granted, it is completely unpredictable how the criminal investigation will have progressed over the next six months. Unless the government has completed its investigation by that time, and is prepared to say it will not bring charges by that time, the argument for a further stay will be at least as potent as it is now. Effectively, then, the defendants seek to delay the entire civil case indefinitely. This is a weighty burden on plaintiff.") Moreover, the parties cannot even enter into a scheduling order, because DOJ's indefinite stay requests have made impracticable determining dates on which critical events, including trials, could be scheduled. These are specific harms affecting Plaintiffs, as opposed the hypothetical ones used by DOJ to justify its requested stay.

*Second*, the Court has made it clear that new defendant co-conspirators can be added as new information is uncovered. *Hinds County, Miss. v. Wachovia Bank, N.A*., 620 F. Supp. 2d 499, 529 (S.D.N.Y. 2009). Allowing substantive discovery is critical to the process of identifying such new information, but it is forbidden under the current stay. DOJ's requested limitation on merits discovery prevents use of discovery for this purpose. Moreover, it is likely that any newly-added defendant will assert that the statute of limitations is running during the period of that hiatus. *See Lender's Serv., Inc. v. Dayton Bar Ass'n*, 758 F. Supp. 429, 444 (S.D.

Ohio 1991) ("Since no claim had yet been asserted against the individual defendants at the time the stay order was entered, the stay order could not possibly have applied to new claims being asserted against new defendants.").[3] Plaintiffs' ability to add additional defendants and claims could thus be directly impacted by the terms of a stay until November 2011, which would expire just four months short of the four year anniversary of the first filed complaint. *See In re Nine West Shoes Antitrust Litig.*, 80 F.Supp.2d 181, 191 (S.D.N.Y. 2000) ("Under § 4B of the Clayton Act, a four year statute of limitations governs private civil antitrust actions seeking treble damages."). This very real harm to the Plaintiffs is one that DOJ ignores, by requesting a stay until November 2011.

*Third*, over time, key witnesses may become unavailable, memories may fade, and defendants may become insolvent. "In all cases, a delay in the proceedings creates the danger that evidence may be lost." *American Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F.Supp. 499, 503 (S.D.N.Y. 1995). As the D.C. Circuit explained:

> Grand jury investigations take time, as do criminal prosecutions. If [the Department of] Justice moves too slowly the statute of limitations may run, witnesses may die or move away, memories may fade, or enforcement resources may be diverted. . . . Thus, we should not block parallel investigations… in the absence of 'special circumstances' in which the nature of the proceedings demonstrably prejudices substantial rights of the investigated party or of the government.

*SEC v. Dresser Indus.*, Inc., 628 F.2d 1368, 1377 (D.C. Cir. 1980) (*en banc*). *Accord United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America*, No. 90 Civ. 5722 (CSH), 1991 WL 243385 at *4 (S.D.N.Y. Nov. 8, 1991); *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) (observing that delay

---

[3] Indeed, GE Funding Capital Market Services, Inc., one of the Defendants dismissed without prejudice from various Plaintiffs' complaints, has argued in its Motion to Dismiss the Second Amended Complaint of West Virginia that the latter's claim against it are time-barred. *See* Dckt. No. 1115, p. 5.

"inherently increases the risk that witnesses' memories will fade and evidence will become stale").   Even if litigation resumes, stays create a "danger of denying justice by delay."  *Blue Cross*, 490 F.3d at 724 (citing *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assocs.*, 743 F.2d 1519, 1524 (11th Cir. 1984)).  Plaintiffs have, based on Defendants' own initial disclosures, put forth a six-page list of potential witnesses whose memory about emails, deals, and telephone conversations is critical to establishing the conspiracy alleged here.   *See* Jones Decl., Ex. E.  The more time passes, the harder it is going to be for those witnesses to recall such matters or for Plaintiffs to even locate them (if they are fired, laid off, or change jobs).  For example, if there is an unidentified speaker on a tape on a call in November 2006, the sooner Plaintiffs can ask about it the more likely the answer will be recalled.  Or if an employee has left the company, the sooner a Defendant is asked about where that employee is now, the greater likelihood that useful information will be available (*e.g.*, providing an address where COBRA payments are sent, etc.) *See* Jones Decl., Ex. E. (listing a multitude of former employees of Defendants).  With each month of the stay, the more witnesses' memories fade and the knowledge of their whereabouts become more uncertain, Plaintiffs' ability to prove their case(s) is directly impacted.

　　　　*Fourth*, an extension of the stay delays settlement prospects.  Without discovery, Plaintiffs cannot test the sufficiency of evidence to confront Defendants with in order to drive settlement.  Plaintiffs have suffered the results of lost monies as a result of the alleged cartel since 1992, and further delaying compensation to these Plaintiffs, the bulk of which are public entities facing some of the most dire financial straits since the 1930s, is a real **_public_** harm caused by the requested stay.

　　　　*Fifth*, Bank of America settled with select States Attorneys-General, and intends to send out widespread notice to Plaintiffs and absent class members soliciting their participation in the

opt-in settlement, extinguishing all future rights against Bank of America.  *See* Jones Decl., Ex. F at 14-15.  Thus, an extension of the existing stay prohibits Plaintiffs from adequately investigating claims made about the Bank of America settlement with select States Attorneys-General in a timely fashion – *i.e*, <u>*before*</u> a Plaintiff has to make a decision to participate in the opt-in settlement and waive all future rights against Bank of America.  If the stay is granted, Plaintiffs and absent class members will have to evaluate whether to join the Bank of America settlement without access to discovery or even the tapes themselves through media accounts.

This absence of information to Plaintiffs is compounded by DOJ itself commenting that "Bank of America has met its obligations… to pay *full restitution* to the IRS and municipalities based on anticompetitive conduct identified by these federal and state agencies."  *See* Jones Decl., Ex. G.  (emphasis added).  To Plaintiffs' knowledge, never in the history of antitrust settlements has DOJ chosen to take a position on the sufficiency of a private civil settlement. Since it has done so here by issuing a nationwide press release, DOJ cannot now simultaneously ask this Court to issue a stay that effectively shields its determination from testing by the victims of the crime itself.

If a plaintiff makes a claim pursuant to such notice, all of its rights against Bank of America are waived.  *See* Jones Decl., Ex. F at 21-22.  If DOJ's stay is granted, Plaintiffs will be required to evaluate that settlement without the benefit of any civil discovery or knowledge of the Bank of America tapes themselves (the contents of which are embargoed from being released to the press under this Court's Audio Recording Protective Order).  Thus, DOJ has publicly commented on the sufficiency of a settlement that Plaintiffs and absent class members have no means to investigate themselves.  Plaintiffs' ability to investigate the sufficiency of this settlement is directly impacted by DOJ's requested stay.  It is inequitable to permit DOJ to issue

press releases about the sufficiency of the Bank of America settlement, clearly designed to influence Plaintiffs' estimation of it, but then ask this Court to cloak all of the facts related to it from discovery.  Having chosen to publicly comment on the Bank of America settlement, DOJ should be estopped from denying discovery about it by civil plaintiffs.

**B.     Denying DOJ's Request For A Stay Does Not Burden Defendants.**

Permitting discovery to proceed does not pose any additional burden to named Defendants, who will be required, at some point, to engage in civil discovery as part of the instant actions.  Moreover, denying DOJ's Motion would likely alleviate any burden that Defendants may have in responding to discovery.  This is because, through depositions and interrogatories, Plaintiffs can more narrowly tailor document requests and thereby lighten Defendants' burden to review and produce broad categories of discovery.  Moreover, allowing Plaintiffs an unfettered ability to prosecute their cases allows all the parties, including those named now as Defendants and those that may be ultimately named, to resolve litigation that has already lasted for close to three years.  No party, defendant or plaintiff, benefits from interminable litigation and its attendant costs.

**C.     Denying DOJ's Request For A Stay Does Not Burden The Court.**

Denying DOJ's Motion would ameliorate the burden of this litigation on the Court.  Just as no party benefits from interminable litigation, no court benefits from stagnation.  This Court has a substantial interest in moving its civil docket of any case, let alone the instant coordinated actions, which involve approximately forty named Defendants, and over thirty named Plaintiffs and allegations of a decade and a half of wrongful conduct.  *See In re Scrap Metal Antitrust Litig.*, No. 1:02 Civ. 0844, 2002 WL 31988168, at *7 (N.D. Ohio, Nov. 7, 2002) ("[t]he Court has an obligation to move its docket, and not to let cases languish before it."); *United States v.*

*Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992)

("convenience of the courts is best served when motions to stay proceedings are discouraged.").

DOJ's criminal investigation and trials could extend for many years.  "The convenience to the

court weighs against a stay because it is unrealistic to postpone indefinitely the pending action

until criminal charges are brought or the statute of limitations has run for all crimes conceivably

committed by [defendants]."  *See Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 13 (D.

Mass. 1991).

> **D.     Denying DOJ's Request For A Stay Does Not Burden Non-Parties/DOJ.**
>
> **1.  Non-Parties**

Allowing Plaintiffs to propound interrogatories does not cause any burden to non-parties

since they are not likely to be responsible for answering them.  Moreover, it is Plaintiffs' position

that based *inter alia* on previous orders by the Court, any otherwise applicable statute of

limitations is tolled as to parties not yet named as Defendants but which are ultimately

determined to have been involved in the alleged conspiracy.  Thus, the longer Plaintiffs are

delayed in employing all formal methods of discovery based on which such a determination

could be made, the longer such parties would remain in false repose.  These entities have an

interest in being expeditiously identified as Defendants so that they may begin preparing their

defenses.[4]

> **2.  DOJ**

Based on DOJ's own past statements, it has already disclosed voluminous information

about its investigation to defendants.    The criminal defendants in *CDR* have received:

- A voluntary Bill of Particulars identifying approximately 250 affected

---

[4] Additionally, if a party is going to raise a statute of limitations defense, Plaintiffs should be
permitted to brief that issue before it purportedly runs.

transactions, the dates of the relevant bids, and the co-conspirators (approximately 30 individuals and 25 entities).  *See* Jones Decl., Ex. H at 1.  As DOJ explained to Judge Marrero in August of 2010, "since those individuals have been identified as co-conspirators since last December, defense counsel have been on notice and able to seek whatever information that might assist them in presenting their case from those individuals directly."  *Id.*, Ex. I at 4.;

- Some 100 interview reports of seven current or former CDR employees.  *Id.*, Ex. H at 1.;

- Approximately 2000 tape-recorded conversations obtained from third parties in which the Government had identified a CDR employee as one of the speakers.  *Id.* at 2.;

- What DOJ deemed "highly probative work product in the form of 'deal buckets' containing the documents and tape-recorded conversations (including digests of those conversations) that the Government had found, to date, relating to any of the transactions in the Bill."  *Id.*;

- "[A]lmost all of the documents that were electronically stored and possibly material to the preparation of the defense (identified by source and searchable)."  *Id.*;

- Statements and memoranda of interviews with eight additional individuals who were involved in the municipal derivatives industry regardless of whether the government intended to call them as a witness in the prosecution. [5]  *Id.*, Ex. J at 2-3.; and

- Transactional files.  *Id.*, Ex. H at 2.

In the criminal *CDR* case against CDR and its executives, DOJ has assured Judge Marrero that "the Government has repeatedly demonstrated its willingness *to share evidence* with the defense and to assist the defense in *understanding the Government's case*."  *See* Jones Decl., Ex. H at 5.

---

[5] They include statements from James Engel of Bank of America; Dominick Carollo of GE/RBC; Martin McConnell of Wachovia; Shlomi Raz of JP Morgan Chase; Phillip Murphy of Bank of America; Douglas Campbell of Bank of America; Daniel Naeh of CDR; and Donald Travis of Societe Generale.  *Id.*, at Ex. I.

(emphasis added)[6]  DOJ claims that the document production it has made to the Defendants constitutes "a road map of the Government's case."  *See* Jones Decl., Ex. H at 3.  So what exactly is left of DOJ's trial strategy that warrants protection through the delay of discovery in the civil actions?

DOJ has not only identified its cooperating witnesses,[7] but it has also described the testimony that it expects from them.  As DOJ explained almost one year ago, the testimony of former CDR employees, "will establish, in essence, that defendants secretly manipulated and controlled the bidding for contracts involving the proceeds of municipal bonds and other related contracts, to favor particular providers and that this conduct cheated the municipal issuers that were CDR's clients and the Internal Revenue Service".  *See* Jones Decl., Ex. H at 2.  More recently, in a letter to Judge Marrero, DOJ elaborated that:

> [T]he government expects that witnesses will testify, that CDR was paid kickbacks by certain providers in exchange for the award of particular transactions.  Witnesses are expected to testify that many of these kickbacks were disguised as 'swap brokerage' fees, i.e., payments to CDR in connection with transactions between a winning provider and another financial institution that were supposedly brokered by CDR for the winning provider paying the kickback.  Witnesses are also expected to testify that CDR did little or no work to earn some of these payments and, further, that some of these transactions took place solely for the purpose of generating the 'swap' brokerage fee, i.e., the kickback, for CDR.

---

[6] As it emphasized to Judge Marrero in August of last year, "[t]he materials we have so far produced to defense counsel demonstrate that we are interpreting our obligations liberally, as suggested by the memorandum."  *See* Jones Decl., Ex. at 4.

[7] (1) Philip Murphy (Bank of America); (2) Shlomi Raz (JP Morgan); (3) Martin McConnell (Wachovia); (4) Donald Travis (Societe Generale); (5) Dani Naeh (CDR); and (6) Douglas Campbell (Bank of America).  *See* Jones Decl., Ex. J, at 4.  Earlier, in March of 2010, the DOJ had revealed plea agreements with three cooperating witnesses:  Daniel Moshe Naeh, Matthew Adam Rothman, and Douglas Alan Goldberg.  *See* Mtn. at 3 & n. 4.  To the extent that the DOJ intends to call additional witnesses, including expert witnesses, it must identify them by January 10, 2011, when its preliminary witness list is due, and, again, on June 27, 2011, when its final witness list is due.

*See* Jones Decl., Ex. K at 2.

In addition, DOJ has identified the documentary evidence that it intends to use at trial. As it reported to Judge Marrero, "[t]he testimony [of its witnesses] will be corroborated by evidence falling in two broad categories – relevant transactional documents and relevant recorded conversations." *Id.*, Ex. H at 2.  More specifically, DOJ disclosed openly that it plans to submit "the bid specifications for each affected transaction, records reflecting which providers were solicited to bid, the bids received, and the award of the contract, and certifications from CDR and the winning provider regarding the <u>bona fides</u> of the bidding process." *Id.*  DOJ also announced its plan to submit "highly probative recorded evidence" that it has received from eight financial institutions. *Id.* at 3.

To the extent that it intends to use any of this evidence as exhibits, DOJ must say so by today, January 10, 2011, when its preliminary list of case-in-chief exhibits is due and, again, on June 27, 2010, when its final list of case-in-chief exhibits is due.  *See* Jones Decl., Ex. L.  Thus, the universe of testimony and documents that must be protected from disclosure to CDR to protect DOJ's trial strategy is scant, indeed.   As demonstrated above, DOJ has already disclosed to CDR:  documents and a description of what DOJ thinks those documents will show at trial, witnesses and a description of what it thinks those witnesses will show at trial, the nature of corroborative witness testimony, and DOJ's overall trial story.  In light of the voluminous evidence already disclosed to CDR, DOJ has not met its burden in justifying its request for a stay.

**E.     Denying DOJ's Request For A Stay Is In The Public Interest.**

Multiple courts have recognized a compelling public interest in the "vigorous[] enforce[ement of] national anti-trust laws through the expeditious resolution of . . .  private

antitrust litigation." *Plastics*, 2004 WL 2743591, at *8 (citing *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.,* 87 F.R.D 53 (E.D. Pa. 1980), and *Residential Doors*, 900 F. Supp. at 756). While this public interest is even greater in class actions, *id.*, here, the great bulk of both the individual and Class Plaintiffs are themselves government entities, cities, counties and public entities, which greatly magnifies the public interest in moving discovery forward. Significantly, most of the victims in these cases are public institutions, which not only directly serve and represent the public interest but which are facing near unprecedented financial difficulties meeting these responsibilities. They include counties and cities on which millions of public citizens depend for education of their children, maintenance of their roads, water, sewer and utility systems, and protection of their safety. These *public* entities face financial pressures in meeting these obligations worse than at any time since the Great Depression, making the timeliness of any recovery here of profound *public* importance.

_____

In sum, all of the relevant factors favor denial of DOJ's Motion.

## II.      DOJ AGREES THAT PLAINTIFFS SHOULD BE PERMITTED TO TAKE NON-CONSPIRACY DEPOSITIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

The May 27, 2010 Order limits Plaintiffs, until February 1, 2010, to taking depositions of custodians of documents concerning matters relating to the production of documents. *See* 5/27/10 Order. As DOJ itself concedes in its Motion, this Court should, at the very least, enter an Order that provides that "the Plaintiffs shall be permitted to depose witnesses, pursuant to Fed. R. Civ. P. 30(b)(6) on topics such as industry organization, the extent of commerce, the manner in which bidding on municipal derivative contracts is generally conducted, the profitability of municipal derivative contracts, how industry participants calculate profits,

defendants' databases, and the identity of individuals who were involved in the industry."  *See* Mtn. at 11.  Given DOJ's position, this Court should immediately allow Plaintiffs to take the depositions of Defendants under Rule 30(b)(6) on the topics DOJ identifies in its Proposed Order.  *Id.*[8]  However, for the reasons stated herein, Plaintiffs believe all depositions should go forward, not just those pursuant to Fed. R. Civ. P. 30(b)(6).

## III.        PLAINTIFFS SHOULD BE PERMITTED TO TAKE CONSPIRACY-BASED DEPOSITIONS

Plaintiffs should also be allowed to immediately begin substantive depositions regarding the operation of the alleged conspiracy, a process which Plaintiffs are fully prepared to begin and which DOJ raises no legally supportable argument against.

With no legal support, DOJ makes several meritless factual arguments in urging this Court to continue to bar Plaintiffs from taking substantive depositions.  First, DOJ baldly asserts that allowing substantive depositions would give criminal defendants an advantage in trial by "afford[ing] a premature view of the evidence and the testimony of witnesses who are likely to testify at trial."  *See* Mtn. at 8.  But, as DOJ explained to Judge Marrero in the criminal case, "the Government has repeatedly demonstrated its willingness to share evidence with the defense and to assist the defense in understanding the Government's case."  *See* Jones Decl., Ex. H at 5. Thus, DOJ has *already* afforded the criminal defendants exactly what DOJ paradoxically claims it does not want previewed to those same defendants.  *Id*.  Any suggestion that depositions would compromise the secrecy of DOJ's evidence and witnesses in the criminal case does not withstand scrutiny.

Next, DOJ asserts that the depositions will interfere with trial because its witnesses will

---

[8] The DOJ suggests that it may object to the taking of such depositions if they involve a substantive witness in the criminal trial. As Plaintiffs have repeatedly made clear, they are more than willing to accommodate the schedule of any witness they seek to depose.

be forced to prepare for a future deposition. *See* Mtn. at 9. As Plaintiffs explained explicitly to DOJ during negotiations, however, we are willing to accommodate the schedule of witnesses whom they intend to depose. *See* Jannaco Decl., Ex. E at 2. Given that Plaintiffs are willing to accommodate the schedule of witnesses at the criminal trial, it is not clear why they would be preparing for deposition around the time of trial. Even if they were, DOJ does not explain why preparing for deposition would require any more work than preparing for trial, especially in light of its view that Plaintiffs can use transcripts of the criminal witnesses' testimony instead of taking depositions. *See* Mtn. at 9.

DOJ further speculates that Plaintiffs will not be ready to take depositions before November of this year. In fact, Plaintiffs have been investigating this case for the last four years. *See* Jones Decl., ¶ 20; Declaration of Joshua I. Barrett, attached as Exhibit M; and Declaration of Stuart G. Gross, attached as Exhibit N. They have interviewed witnesses, and reviewed and analyzed thousands of pages of transactional data that Defendants produced on October 4, 2010, as well as in 2009, as well as very substantial information from their own files. *See* Jones Decl., ¶ 21. When Bank of America provided Interim Co-Lead Counsel with twelve DVDs and one hard drive (500 GB) containing recordings and transcripts of audio recordings, counsel assigned the review and analysis to twelve law firms, and they completed the review in just seven weeks. With some forty-five attorneys from sixteen law firms available to review additional documents, Plaintiffs will be amply prepared to start taking substantive depositions well before November 1, 2011. Indeed, Plaintiffs are prepared to take begin taking such depositions immediately.

Any claim by DOJ that Plaintiffs have not vigorously pursued the limited discovery permitted to date is meritless. *See* Jones Decl., Ex. O., Jones Ltr. J. Gorenstein, dated December 23, 2010. After our review of Defendants' October 4, 2010 production revealed deficiencies,

Plaintiffs have propounded the maximum number of depositions permitted under the existing stay. Similarly, after evaluation of the audio recording information was provided by Defendants on October 4, 2010 and subsequent meet and confers with Defendants took place regarding same, Plaintiffs propounded document requests for audio recordings and their transcripts.

Finally, DOJ suggests that Plaintiffs do not need to take substantive depositions because, "following their appearances at the trial, transcripts of the testimony of the witnesses will be available to the Plaintiffs from the court reporters." *See* Mtn. at 9. But the prosecution involves only one of the forty Defendants named in some or all of the coordinated actions here. Evidence from the criminal trial is just a sliver of what Plaintiffs need to prove their claims against all for these Defendants. Even if there were complete overlap between the criminal and civil cases, the testimony of witnesses would not resolve issues that are uniquely civil in nature, including class certification, antitrust injury, and damages. *Compare Arnold-Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 572 (3d Cir. 1986) (holding that a civil action under the Sherman Act requires "that the plaintiffs were injured as a proximate result of that conspiracy") *with Shaw v. United States*, 371 F. Supp. 2d 265, 272 (E.D.N.Y. 2005) (observing that "a relevant market and an antitrust injury are not required elements to prove a criminal violation of Section 1 of the Sherman Act").

—————————————————————————

In sum, this Court should deny DOJ's Motion to stay substantive depositions.

## IV.        PLAINTIFFS SHOULD BE PERMITTED TO PROPOUND SUBSTANTIVE INTERROGATORIES

This Court should also deny DOJ's Motion to stay substantive interrogatories.[9]  As described above, until February 1, this Court's May 27, 2010, Order limits Plaintiff's interrogatories to those:  (1) seeking names of witnesses with knowledge of information relevant to the action's subject matter; (2) the computation of each category of damage alleged; (3) the existence, custodian, location and general description of relevant documents, physical evidence, or similar information; and (4) the identities of speakers, transactions, and other summary information relating to tape recordings.  *See* Jannaco Decl., Ex. A-1.  Interrogatories would enable Plaintiffs to tailor their discovery requests more narrowly, and to identify discoverable materials, witnesses, and transactions more efficiently than by going through documents.

In its Motion, DOJ makes only quick mention of substantive interrogatories.  *See* Mtn. at 8 & n. 12.  After asserting that substantive depositions would offer defendants and potential defendants "a premature view of the evidence and the testimony of witnesses who are likely to testify at trial," DOJ drops a footnote in which it writes "[t]he government objects to the propounding of substantive interrogatories for the same reason."  *Id.*  Such conclusory statements do not support granting a further stay.  As noted above, "mere conclusory allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly exploit civil discovery . . .  will not avail on a motion for a stay."  *See United States v. All Funds on Deposit*, 767 F. Supp. 36, 42 (E.D.N.Y. 1991)  (emphasis in original) (quoting *United States v. Leasehold Interests*, 754 F. Supp. 282, 287 (E.D.N.Y. 1990)).

---

[9] Even if the Court is inclined to grant DOJ's cursory request to bar substantive interrogatories, given the DOJ's view that Plaintiffs should move forward with Fed. R. Civ. P. 30(b)(6) depositions, there is no reason to bar them from propounding interrogatories relating to the same topics.  As described above, DOJ believes that Plaintiffs should move forward with depositions on such as industry organization, the extent of commerce, the manner in which bidding on municipal derivative contracts is generally conducted, the profitability of municipal derivative contracts, how industry participants calculate profits, defendants' databases, and the identity of individuals who were involved in the industry."  *See* Mtn. at 11.

Moreover, as described above, DOJ has repeatedly assured Judge Marrero in the criminal case that the Defendants already know about the evidence and testimony of witnesses who are likely to testify at trial.  Thus, there is no merit to any suggestion that interrogatory responses would give Defendants a sneak peak at the prosecution's case.  In sum, Plaintiffs should be allowed to propound substantive interrogatories starting on February 1, 2011.

## CONCLUSION

For the foregoing reasons, this Court should deny DOJ's Motion to Extend the Stay Order.

Dated: January 10, 2011

Respectfully submitted,

*/s/Michael D. Hausfeld*
Michael D. Hausfeld
*mhausfeld@hausfeldllp.com*
Megan E. Jones
*mjones@hausfeldllp.com*
HAUSFELD LLP
1700 K Street, NW
Suite 650
Washington, DC  20006
Telephone:  (202) 540-7200
Facsimile:  (202) 540-7201

Michael P. Lehmann
*mlehmann@hausfeldllp.com*
HAUSFELD LLP
44 Montgomery St.
Suite 3400
San Francisco, CA 94104
Telephone:  (415) 633-1909
Facsimile:  (415) 358-4980

William C. Carmody
*bcarmody@SusmanGodfrey.com*
Arun S. Subramanian
*asubramanian@SusmanGodfrey.com*
Seth D. Ard
*sard@Susmangodfrey.com*
SUSMAN GODFREY L.L.P.
654 Madison Avenue, 5th Floor
New York, NY 10065-8440
Telephone:  (212) 336-8330
Facsimile:   (212) 336-8340


William A. Isaacson
*wisaacson@bsfllp.com*
Tanya Chutkan
*tchutkan@bsfllp.com*
Jonathan M. Shaw
*jshaw@bsfllp.cpm*
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW
Washington, DC 20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131

**Plaintiffs' Co-Lead Interim Class Counsel**


G. Scott Emblidge
*emblidge@mesllp.com*
Sylvia Sokol
*sokol@mesllp.com*
MOSCONE, EMBLIDGE & SATER, LLP
220 Montgomery Street
Mills Tower, Suite 2100
San Francisco, CA 94104
Telephone:  (415) 362-3599
Facsimile:   (415) 362-2006

**Attorneys for Plaintiffs City of Oakland,
County of Alameda, City of Fresno, and Fresno
County Financing Authority**

21

Richard M. Heimann
*rheimann@lchb.com*
Joseph R. Saveri
*jsaveri@lchb.com*
Eric B. Fastiff
*efastiff@lchb.com*
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:   (415) 956-1000
Facsimile:    (415) 956-1008

Steven E. Fineman
*sfineman@lchb.com*
Daniel E. Seltz
*dseltz@lchb.com*
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:   (212) 355-9500
Facsimile:    (212) 355-9592

Joseph W. Cotchett
*JCotchett@cpmlegal.com*
Nanci E. Nishimura
*NNishimura@cpmlegal.com*
Steven N. Williams
*SWilliams@cpmlegal.com*
Stuart G. Gross
*SGross@cpmlegal.com*
COTCHETT, PITRE & McCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:   (650) 697-6000
Facsimile:    (650) 697-0577

**Counsel for Public Entity Plaintiffs**[10]

---

[10]     Active Retirement Community, Inc., d/b/a Jefferson's Ferry; City of Los Angeles; City of Stockton; City of Stockton Redevelopment Agency; City of Stockton Public Financing Authority; County of San Diego; County of San Mateo; Contra Costa County; City of Riverside; City of Riverside Redevelopment Agency; City of Riverside Public Financing Authority; Sacramento Municipal Utility District; Sacramento Suburban Water District; Los Angeles World Airports; County of Tulare; East Bay

By:   *s/ Joshua I. Barrett*_____
Joshua I. Barrett, Esq.
jbarret@dbdlaw1.com
DITRAPANO BARRETT & DIPIERO, PLLC
604 Virginia Street East
Charleston, WV  25301
Telephone:  (304) 342-0133
Facsimile:   (304) 342-4605

**Counsel for State of West Virginia**

---

Municipal Utility District; Redwood City; City of Richmond; City of San Jose; City of San Jose
Redevelopment Agency; San Francisco Redevelopment Agency; Kendal on Hudson, Inc.