**HAUSFELD**LLP

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/15/11

202.540.7200 ph
202.540.7201 fax

700 K Street, NW
Suite 650
Washington, DC 20006

Michael D. Hausfeld
mhausfeld@hausfeldllp.com

April 13, 2011

**VIA HAND DELIVERY**



The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Suite 660
New York, NY 10007

    Re:    *In re Municipal Derivatives Antitrust Litigation*
           MDL No. 1950, Master Docket No. 08-2516 (VM) (GWG)

Dear Judge Marrero:

    Class Plaintiffs and Counsel for the City of Oakland et al, ("Plaintiffs") write in connection with this Court's order of March 1, 2011, directing the parties to "confer and submit jointly ... proposed language for any notice(s) ... concerning the State Agreement and its opt in provisions that BoA may seek to disseminate to putative class members of MDL No. 1950." *See* Docket No. 1253. Namely, this Court directed the parties to "disclose to claimants in clear, concise and neutral terms the nature of any remedies that may be available to them as putative class members in MDL No. 1950 and the attendant consequences of electing to opt in to the State Agreement." *Id.*

    On March 11, 2011, counsel for the state Attorneys General sent a proposed Notice Packet to Plaintiffs for their review. Plaintiffs consulted with our own notice provider to obtain professional advice about whether the packet used "clear, concise and neutral terms" in disclosing the remedies the State Agreement offers, and the consequences of joining it. On March 23, 2011, we had our first call with Bank of America counsel and state Attorneys General. Prior to that call and within days after it, Plaintiffs asked counsel for Bank of America and the state Attorneys General for several items of basic[1] information

---

[1] An example of the rudimentary information that Plaintiffs requested is to whom their proposed Notice Packet would be sent, and the origin of the address list. The state Attorneys General and Bank of America have refused to provide this information, stating it was not relevant or appropriate to providing adequate notice. However, how can Plaintiffs determine what information should be included in the Notice Packet without knowing the audience (ex: Bank of America's customers only? non-participating state Attorneys General? both?)?

HAUSFELD LLP

that would help to determine changes we might need to make to the Notice Packet to comply with this Court's order. Plaintiffs also asked counsel for their position on other specific items in the Notice Packet. Unfortunately, Bank of America and the state Attorneys General have dismissed Plaintiffs' inquiries as "neither relevant nor appropriate to providing a clear, concise and neutral notice as ordered by Judge Marrero," and refused to meet and confer about these items.

The most fundamental information Plaintiffs asked for -- clearly relevant to the "consequences of electing to opt in to the State Agreement" -- was for both the state Attorneys General and Bank of America to confirm that the settlement amount of the State Agreement *was not impacted by any misstatements of profit that former Bank of America employee Brian Zwerner has made or other fraud.* Plaintiffs' concern about such misstatements arose because two weeks ago, Brian Zwerner pled guilty to one count of conspiracy to make false entries in bank records under 18 U.S.C. Section 371 from as early as January 1999 to at least May 2002. *See* Information of Brian Zwerner ("Information"), attached as Exhibit A. Specifically, the conspiracy was carried out in part by understating "marketing profits on trade tickets for certain investment agreements ... so that money could be held back and accumulated in the kitty in order to pay kickbacks, disguised as fees to compensate brokers, including CDR, for controlling and manipulating the competitive bidding process for investment agreements ... to ensure that Bank A won certain of these bids." *Id.* at ¶ 22(c). On "numerous occasions," Defendant Zwerner and his BoA co-conspirators "allowed misstated marketing profit amounts to be incorporated in STARS," the Bank's computerized sales tracking and reporting database. *Id.* at ¶22(e).

On April 8, 2011, Bank of America counsel admitted to Plaintiffs that it produced STARS data to the state Attorneys General, and that it "did not change the STARs data" before providing it to them.[2] The state Attorneys General refused to confirm or deny that they relied on STARS data (that incorporated misstatements of profits) in determining that the value of the Agreement was fair and deciding to enter into it. According to Plaintiffs' economic expert, by falsely understating portions of three years' worth of marketer profit, a regression analysis based on STARS data will necessarily understate damages. Put another way, if the Attorneys General relied on STARS, which includes Zwerner's

---

[2] Bank of America also responded that though they are not privy to all the facts underlying the Zwerner Information, based on the information they do have, they believe that these "adjustments" were made on a small number of trades in comparison to the total number of trades included in the damage data. This proportion of affected transactions is not surprising, given that Mr. Zwerner's conduct spanned from January 1999 to at least May 2002, and the class period here is from 1992 to 2008. Nonetheless, potentially three years of data were impacted by Mr. Zwerner and his Bank of America co-conspirators. Bank of America did not comment, however, on the dollar magnitude of these adjustments.

HAUSFELD LLP

Judge Marrero
Page 3

fraudulent statements about some portion of the Bank's profit, in determining restitution, the fund will not accurately reflect actual financial losses.

Plaintiffs will be propounding discovery on this issue this week, as well as our remaining outstanding requests for information. We respectfully request that any issuance of notice be deferred until such discovery is obtained. Certainly, before nationwide notice of the State Agreement goes out to potential class members in MDL No. 1950, Plaintiffs should be permitted to ascertain the extent to which Mr. Zwerner's crime impacted the state Attorneys General and Bank of America estimate of damages, if any. Formal discovery is unfortunately necessary because, as stated above, Bank of America[3] and the state Attorneys General have refused to provide this critical information voluntarily to Plaintiffs.

Alternatively, if nonetheless, Bank of America and the states Attorney General insist upon notice being issued, notice of this potential defect in their damage estimate should be prominently featured in any such notice. If the justification for State Agreement settlement amount is based on faulty data, clearly the Notice Packet should contain such information to warn potential opt-in members of the consequences of joining the agreement.

Sincerely,

Michael D. Hausfeld

cc: All counsel of record

> Counsel for the State Attorneys General and defendant Bank of America are directed to respond by 4-21-11, by letter not to exceed 3 pages each, to the matters set forth above by Class Plaintiffs
>
> **SO ORDERED.**
>
> 4-14-11
> DATE        VICTOR MARRERO, U.S.D.J.

---

[3] Separate from the meet and confer process about the State AG Settlement, Bank of America is currently considering Class Plaintiffs' April 4, 2011, request to cooperate by providing a proffer on the Zwerner Information voluntarily under our Confidentiality Agreement and ACPERA. In particular, Class Plaintiffs have requested copies of the "Excel spreadsheets" that Mr. Zwerner used to track the misstated profits not reported in STARs. *See* Information at ¶23(c). Thus, it possible that any delay in issuing notice could be avoided by either party choosing to voluntarily provide this information to Plaintiffs.