UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                          :

IN RE MUNICIPAL DERIVATIVES     : Docket #08cv2516
ANTITRUST LITIGATION
                                : New York, New York
                                  November 3, 2011
----------------------------------:

PROCEEDINGS BEFORE
JUDGE GABRIEL W. GORENSTEIN,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For Class Plaintiffs:    HEINS, MILLS & OLSON
                         BY:  DAVID WOODWARD, ESQ.
                         310 Clifton Avenue
                         Minneapolis, Minnesota 55403


For Defendant            BRACEWELL & GIULIANI LLP
CDR Financial:           BY:  LaSHON KELL, ESQ.
                         2000 K Street, Suite 500
                         Washington, D.C. 20006
                         (202) 828-5816






Transcription Service: Carole Ludwig, *Transcription Services*
                       141 East Third Street #3E
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

# INDEX

## E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

## E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

THE CLERK:  In re Municipal Derivatives Antitrust Litigation, docket 08cv2516.  Counsel in the courtroom, please state your name on the record, and those on the telephone please state your names, the ones that will be speaking in court.

MR. DAVID WOODWARD:  Good morning, Your Honor, I'm David Woodward from Heins, Mills & Olson representing class plaintiffs.

MS. LaSHON KELL:  Good morning, Your Honor, LaShon Kell from Bracewell & Giuliani, representing defendants CDR Financial.

THE COURT:  Anyone on the phone going to be speaking?  I guess not.  All right, you can all be seated if you're not addressing the court, and actually I'm going to ask that you remain seated so that you'll be close to the microphone and the people on the phone can hear you.

We're here based on a letter dated October 25 from counsel for one of the firms representing class plaintiffs, a responsive letter dated November 1 from counsel for CDR and then another letter dated November 3 from plaintiffs.  I guess I should start by bringing up Judge Marerro's protective order which, unless I'm misreading it, says in paragraph 2 that it bars people who receive, emphasis on word "receive," protected materials from disseminating them.

So is it CDR's contention that these materials were received from someone else?

MS. KELL:   It's our contention that they were received from the Government.  They were initially seized because they were allegedly relevant to the Government's case, and then subsequently produced back to us as per se relevant to the criminal case.

THE COURT:   They were produced back to you as part of criminal discovery or they were produced back to you because they'd been seized, and under the terms of the warrant or their obligation, they were returning it?

MS. KELL:   Both.  They returned them in full, albeit in a different form in which they initially existed, but also currently they aer returning bits and pieces.  As Your Honor probably knows, we're on the eve of the criminal trial currently.  And so over the past several months, we get a variety of exhibits and documents and asking whether they are CDR's documents, whether they're privileged, and a variety of other questions.

THE COURT:   What was the last part, asking?

MS. KELL:   We get a variety of documents from the Government, and they're trying to, some of which have been given, they're giving back to us from our documents and some they're giving us and trying to understand whether they are,

in fact, CDR's documents or other documents.  So --

THE COURT:   You don't know?

MS. KELL:   The Government does not know.

THE COURT:   And you don't know?

MS. KELL:   At this point, correct.  Because they were not returned to us in the fashion in which they initially existed.  They were the physical files that CDR maintained, the vast majority of them were taken by the Government, and now they've been returned in single page TIFFS with OCR text, and so given --

THE COURT:   Single page TIFFS, what?

MS. KELL:   Single page TIFFS with OCR text.  And given the extremely limited resources that we have, we haven't been able to access those and search those on our own.

THE COURT:   Is the Government telling you what's your documents and what isn't or not?

MS. KELL:   That's a good question.  Sometimes they are and sometimes they're asking.

THE COURT:   Because they received them and now they don't know where they got them from?

MS. KELL:   At least in some of the ones that I have been personally dealing with, the questions are we believe these are CDR's documents.  Please let us know.

1

2          THE COURT:    But there are documents that you know

3     are your documents I assume?

4          MS. KELL:    Yes.

5          THE COURT:    And do you have any sense of the

6     volume of what you know are yours versus what you don't

7     know?

8          MS. KELL:    No, actually we don't, because, as I

9     said, these, since they were returned in this fashion, we

10    have been unable at this time to spend the resources and the

11    money to access those documents because we've been focused

12    on the criminal trial.  And the case management order in the

13    criminal trial is currently in flux.  There are thousands of

14    exhibits being added, thousands of exhibits being

15    subtracted, and it's in a constant state of flux currently.

16    The criminal trial's scheduled for January 9.

17         THE COURT:    All right, I mean if you had – if you

18    had knowledge of what were your documents, this would be

19    very simple in my mind because I don't think this protective

20    order from the criminal case can be construed as covering

21    your own documents.  So the complication here is that there

22    are documents that you know are your documents and there are

23    documents that you haven't yet found out or made the effort

24    to find out whether they're your documents are not.  That's

25    the only complication.

1

2          MS. KELL:   Right, we have two sets, the returned

3   set which the Government is representing is a copy of the

4   physical files that they seized as well as copies of hard

5   drives that they received.

6          THE COURT:   Okay.

7          MS. KELL:   But then we also have this, as part of

8   the criminal trial, documents coming in here and there --

9          THE COURT:   Okay, well, why don't we limit

10  ourselves for the moment to the ones that Government has

11  returned to you and say here is your documents and here's

12  your hard drives.  Okay, let's talk about those.  Is it your

13  contention that those, you are limited from disseminating

14  those by the protective order in the criminal case?

15          MS. KELL:   One of our issues is we know that

16  those documents are CDR's documents because we've not been

17  able to access them or search them right now.  I don't want

18  to maintain necessarily that there aren't other documents in

19  there.  I assume all of the documents are CDR's, but I can't

20  say for sure that all of the documents --

21          THE COURT:   Because the Government could be

22  mistaken.

23          MS. KELL:   It's possible, and, frankly, Your

24  Honor, we have not had the resources or the time to trawl

25  through the return documents.

THE COURT:  Okay, but presumably, in order to do a production, you would have to go through them, and upon going through them, I assume it would be reasonably obvious which the Government had messed up informing that these were your documents, wouldn't it?

MS. KELL:  Agreed.  But we have, just so Your Honor knows, we have been producing documents under the RFP, the first RFP, and we continued to look for responsive documents that are separate and apart from the documents -

THE COURT:  I'm not talking about those.  I'm talking about the documents that you got back from the Government.  So it sounds like that, unless the Government messed up, you agree with me that anything in those documents that are actually your are not covered by the protective order.  Am I right or am I wrong?

MS. KELL:  I would prefer to have a court order telling me to produce documents.

THE COURT:  You don't want to agree to it.  I don't mind giving you a court order, it's no big deal, but the court order is going to say any documents that are yours, you are obligated to produce, notwithstanding the order in the criminal case, because the order in the criminal case doesn't apply to those documents.  That's going to make you happier than you are now?

MS. KELL:   Well, I mean, frankly, yes.

THE COURT:   Okay, I'm here to make --

MS. KELL:   But that is because --

THE COURT:   -- you happy if I can.

MS. KELL:   And I appreciate that, Your Honor, but I do want you to understand the major issue is, given that the criminal trial is around the corner, we are obviously trying to be, we're trying to focus on that since people's liberties at stake, and we're trying to make sure that we aren't doing anything that could impact their defense.  So obviously we're trying to be as cautious as possible given the fact that the trial is two months away.

THE COURT:   Okay, so I'll issue the order that says more or less what I just said.  Actually, if someone wants to supply me with a proposal, maybe plaintiff's counsel wants to do that, and then you can object to any wording in it.  That'll make it go a little faster.  Can you do that?

MR. WOODWARD:   Your Honor, I have a proposed order.  I can share it with --

THE COURT:   No, no, something like what I just said.  You'd have to order the transcript.  You know what, I'll order the transcript, I'll do it.  So I'll issue the order along the lines of what I just said.

Okay, now we've come to an issue that I don't know if we're going to make really any progress on today because I don't think the parties have discussed it to the length that I would hope, and I don't think I have any factual information that's going to allow me to make a decision on it. And that's the balancing of the burdens against the plaintiff's need for the material. I gather there's no, I mean I assume there's no argument on relevance. So you're raising burden at this point, right?

MS. KELL: Well, actually I do argue that conceivably some of these documents requested in some of their document requests are not relevant. The document request themselves ask for any documents and communications regarding any subject, regarding any indicted individual, any identified individual, that's over 50 people over a 19-year period.

So obviously given that those document requests are such a catch-all, then by their very definition they're going to catch things that are not relevant. It's not as if the document requests are specific. Many of the plaintiff's other document requests are specific, and obviously we've been focusing on trying to get the documents that apply to those specific requests. Here, these requests, 1 and 4 specifically, are basically catch-alls. So they are going

to catch all sorts of communications that are not relevant,
all sorts of documents that are just maintained in the
normal course of business over a 19-year period, and likely
documents that, internally communications regarding the
criminal trial.  You know, obviously we would argue that
that, those are sensitive, not relevant, and inappropriate.

THE COURT:   Well, it would depend what they are.
I mean certainly you have a privilege argument.  I'm not
sure it's relevancy.  Well, I just don't know what I'm
supposed to do today because I don't think that the
discussion that should happen here, which is a discussion
between the two of you trying to understand what documents
there are and how it can be limited has happened.

I mean I appreciate you're having come from far-
flung areas, but, Mr. Woodward, I don't know what I can do.
Obviously, the current phrasing of, I think, the documents
could be culling in things that are not terribly relevant to
the suit.  And I assume you're not interested in looking at
irrelevant documents yourself, so you might want to work
with Miss Kell to narrow them.  No?  That was a question,
Mr. Woodward.

MR. WOODWARD:   I'm sorry, Your Honor, we have
been making good faith efforts for months to resolve our
differences, and we haven't been able to do so.  We've had

about several teleconferences to discuss these issues and

have exchanged email for months trying to reach --

THE COURT:   Well, I assume that a lot of it was

about the protective order.  I'm wrong?

MR. WOODWARD:   Part of it was on the protective

order, Your Honor, yes.  We feel that our document requests,

including request number 1 and 4, are entirely appropriate.

The case law that we shared with the court is very clear

that --

THE COURT:   I mean I don't think I actually got

the text of the request.

MR. WOODWARD:   You do attached as an exhibit to

the October 25 letter.  Both the – well, all three of

plaintiff's document requests that we're seeking --

THE COURT:   Hold on, hold on.

MR. WOODWARD:   -- order to compel are included

there.

THE COURT:   Well, okay, hold on.  So all

documents concerning any identified participant -- you said

it was on any subject matter.  This one says "relating to

any subject covered in the complaint."  So it's not quite

the way you thought it was.

MS. KELL:   No, I'm sorry, I was referring to any

subject matter in the complaint.  I just didn't say it

initially.

THE COURT:   So what's --

MS. KELL:   It's not --

THE COURT:   What's wrong with that?

MS. KELL:   It's not as if the requests are limited to the allegations.  It's the 100-page complaint with exhibits covering a variety and discussing a variety of things.

THE COURT:   It's not as if it's limited to the allegations of the complaint?

MS. KELL:   Yes.

THE COURT:   As opposed to the subject areas covered by the complaint?

MS. KELL:   Well, there are a variety of subject areas and general things discussed in the 100-page complaint, but plaintiff's counsel does offer other RFP's that are specific alle --

THE COURT:   RP, I'm sorry?

MS. KELL:   Request for production.

THE COURT:   Oka.

MS. KELL:   For specific allegations in their complaint, such as the allege certain transactions at issue regarding CDR and obviously --

THE COURT:   So what subjects are in the complaint

that you think are not relevant?

MS. KELL: Well, the complaint will discuss, for instance, industries, industry conferences, all sorts of matter that not specific to the allegations put forth.

THE COURT: So you should be – and when you allegations, you mean the transactions and – is that what you're getting at?

MS. KELL: Yes, specifically relating to CDR as well as relating to the --

THE COURT: So you're interested in documents on industry conferences that these people were involved in?

MR. WOODWARD: We're primarily interested, Your Honor, in the conduct allegations contained in the complaint.

THE COURT: Well, this is what I'm talking about. So could you narrow the requests to those transactions?

MR. WOODWARD: We could specify a range of paragraphs, Your Honor, but we feel what we have done is sufficient under the case law of referring to subjects contained in the complaint. Case law --

THE COURT: I'll ask you my question again. You feel that documents on their attending industry conferences are something you're entitled to?

MR. WOODWARD: On industry conferences --

1

THE COURT:   Don't talk to me about case law.
Talk to me about practicality, all right.  The way discovery
works is not you obtain every possible thing that
conceivably could have some bearing on and phrase in the
complaint.  You have to balance burden, you have to balance
all kinds of things under Rule 26(b)(2).

So I just don't think you two have talked about
this. It's disappointing to me.  I mean I can't believe that
you couldn't talk about what you're interested in like
limiting it to the transactions for these people, and I
don't know why we're having this discussion now.  I mean I
don't mind making (indiscernible) for that, but if you start
telling me about how case law says you're entitled to
anything that's mentioned in the complaint, we're not
getting anywhere.

If you want to just do a motion to compel, we'll
do it.  I don't know that you're going to be happy with that
mechanism either.  Do you have any ideas on what we should
do now?  You tell me.

MS. KELL:   Your Honor, if I could.  As I said, we
are trying to produce documents as best we can given our
circumstances and given the pending criminal trial.  We have
been doing that.  We have in our discussions spoken about
focusing on the specific requests regarding specific

transactions. So we have made the effort to get documents despite the fact that we're dealing with pretty strained circumstances with every, all the former and current employees either being indicted or having pled and the criminal trial around the corner. So we have efforts to answer the requests and continue to do so.

THE COURT: See, what I need is, I need you two to talk about what you're willing to produce, what you're not willing to produce, I mean this should be listed for me and should say these categories of documents they're willing to do it, or disagreement as to timetable. They want to do it in three months; I want them to do it one month. These categories of documents I'm willing to live without. These categories of documents, you know, they're not willing to produce and they're just wrong because it's relevant to the lawsuit. That's what we need to do here. We're not going to do it now.

I don't know what to tell you, Mr. Woodward. The discussion that you should have had, I don't know want to say whose fault it is, hasn't happened. Maybe the protective order was holding everything up. You need to hear from them on burden. How am I supposed to make judgments on burden when I don't even know what the burden is. I don't know if the burden is, you know, spending

$10,000 to hire a firm to do something or if it's a hundred hours of someone's work.  How do I make judgments on burden without knowing any of this?

MR. WOODWARD:  Your Honor, we made that attempt to discuss burden in particular, in detail, and we have just have not gotten the information, and I'm sorry to get back to case law, but it's defendant's burden to come forward with a factual showing.  We have --

THE COURT:  No, that's fine, and we'll do that on a motion.  We're not going to do it now because it's, it wasn't – I mean your initial letter was basically about the protective order, and I agree with you on the protective order.  And maybe it's the defendant's fault for not putting it in their letter, but it's hard to blame them when your letter didn't kind of address the issue and talk about what you knew about their burden.  I mean this is just all amorphous concepts right now.  What am I supposed to do, issue an order saying respond to this thing exactly as written and do it in some period of time I would make up?

I can't say that everything here, I mean you conceded properly that not everything here is necessarily relevant, to say every single statement in the complaint they have to produce documents on.  It just doesn't make any sense.

MR. WOODWARD: Well, Your Honor, we can have additional discussions between the parties and return to you with a motion to compel. I think on document request number 5, perhaps that's something we can readily dispose of today.

THE COURT: Okay, let's talk about it. This is about three specific bond offerings.

MR. WOODWARD: That's right, Your Honor. Number 5 asks for CDR documents with reference to three bond transactions in Florida. The amount is identified in request number 5, the dates of the bond offerings are identified as April 1999, December 1999, January 2000. We feel that this is clearly relevant information, CDR was involved in those transactions.

The discussion about those transactions was in a publicly disseminated article. The SEC had issued a cease and desist order involving these transactions. We're not asking about the SEC investigation, we're not asking about any federal investigation here. We're asking for the CDR documents relating to these three bond offerings. It's a specific reasonable, relevant request, Your Honor. We'd ask that you direct CDR to provide all of its documents responsive to document request number 5.

THE COURT: You didn't seem to have any objection to it other than the protective order in your letter.

1

2          MS. KELL:   Correct, Your Honor.

3          THE COURT:   So I assume there's no problem

4    providing those?

5          MS. KELL:   We will definitely endeavor to find

6    them.

7          THE COURT:   Endeavor to find them, okay.  I mean

8    I'll give you a deadline if that's all you're going to say.

9    The deadline would be within 30 days of today you need to

10   produce them.  Okay?

11         MS. KELL:   We will attempt to find them.

12         THE COURT:   You will attempt to find them.

13         MS. KELL:   As I said, Your Honor, we --

14         THE COURT:   Well, you have to make reasonable

15   efforts.  So you --

16         MS. KELL:   Yes, we will definitely make

17   reasonable efforts.

18         THE COURT:   If you're not able to find the,

19   you're going to need to explain that I think to Mr.

20   Woodward, right?

21         MS. KELL:   We will.

22         THE COURT:   And to me.

23         MS. KELL:   We will.

24         THE COURT:   All right, well, you should keep very

25   careful track of your efforts because they might be looked

1

2 at a later time.

3      MS. KELL:   Well, and, Your Honor, we will engage

4 in further discussions, and as we've already – obviously, in

5 our prior discussions with plaintiffs, the criminal trial

6 was not so close at hand, but obviously it is, it's

7 difficult for us at this time to focus on --

8      THE COURT:   See, the idea that it's difficult to

9 focus I don't know that we have a record on that yet.  I

10 don't know how many lawyers CDR has.  If these documents are

11 in electronic form, I don't know why people who are working

12 on the civil case are necessarily affected by the fact that

13 there's a criminal case going on.  So, yeah, I could imagine

14 a situation where someone's affected, and I could imagine a

15 situation where there was zero effect at all.  So --

16      MS. KELL:   It's largely due, Your Honor, to the

17 fact that it's a very small company, and the very few

18 remaining people are getting ready to go to trial.

19      THE COURT:   That's fine, but I don't see why if –

20 I mean unless they are needed to find the Florida bond

21 offerings in '99 and the documents, which somehow I doubt, I

22 don't see why that has anything to do with it.

23      MS. KELL:   They are essential in helping us

24 locate --

25      THE COURT:   They are?

MS. KELL: -- documents. Yes.

THE COURT: Okay, well, I - I'm not sure we're at a stage yet where I need to make rulings on that or require affidavits from someone telling me that. Mr. Woodward, do you have some view on what we do with the situation?

MR. WOODWARD: I'm sorry, I didn't hear your question, Your Honor.

THE COURT: Do you have some view on what we should do with the situation?

MR. WOODWARD: Well, we're asking, again, that CDR be directed to produce these documents. They've had --

THE COURT: Right, but --

MR. WOODWARD: They've had it since --

THE COURT: Sir, sir, sir.

MR. WOODWARD: Sorry.

THE COURT: But if, in fact, the only people who are able to assist the lawyers in finding the documents, preparing for a criminal trial, that might be a reason to allow for some delay, right?

MR. WOODWARD: It could be, Your Honor, and the fact that we asked for these documents on February 22 of this year, I don't think that should be found to be a sufficient reason for this extensive delay over eight months to communicate with the appropriate people within CDR to

produce these specific documents requested in document
request number 5.

THE COURT:   I mean, again, I just don't have the
factual record.  So I can't say that a particular course of
action is reasonable or not.  You're telling me that every
single person is involved in, who could help you find these
documents, Miss Kell, who's going on trial?

MS. KELL:   Yes.

THE COURT:   Every one?

MS. KELL:   Currently, the company CEO and the
remaining two individuals who worked on the muni desk that
remain at the company, all three of those are under the
indictment.  The only other individual at the company is an
HR individual who had no connection to any of the
transactions at issue.

THE COURT:   There's four people at the company,
is that what you're saying?

MS. KELL:   Correct.  Three of whom are involved
in the trial.

THE COURT:   Well, Mr. Woodward, regardless of
what happened in the past, I can see why someone needs to
prepare who's going to be on trial in eight weeks, no?
Should I tell them no, you can't prepare for your criminal
trial?  Do you think I might get in trouble for doing that?

MR. WOODWARD:   Your Honor, with respect to the
fact that there are parallel criminal and civil proceedings
going on here, we're trying to accommodate both interests
and I just don't believe that the burden issue is so great
or the interference with the criminal trial on these three
bond transactions is undue.

MS. KELL:   But it also, it's not just these three
bond transactions.

THE COURT:   Well, let's start with these three
bond transactions since those seem to be of particular
interest right now in front of us.   Is this more than a 25-
minute conversation with somebody as to what these documents
are?   I just don't know.

MS. KELL:   Yes, I can certainly reach out to the
individuals and ask them --

THE COURT:   Well, it sounds like that's our
priority right now is these three bond transactions.

MS. KELL:   I will make them a priority.

THE COURT:   Okay.

MS. KELL:   You know, to address Mr. Woodward's
point, I'm curious as to why this is now such an issue, I
mean at this stage right before the criminal trial is set.
It's a distraction from the criminal trial, and I'm sure as
to why --

1

2          THE COURT:   Well, I gather the requests have been

3   pending for some time.

4          MS. KELL:   Yes, but we have been working with Mr.

5   Woodward on producing other documents

6          THE COURT:   Other documents?

7          MS. KELL:   Yeah, responsive to other document

8   requests.  I mean right now we've been served with four

9   separate requests for production of documents which are,

10  with over 180 requests, and we just had the --

11         THE COURT:   From this case or other cases?

12         MS. KELL:   From this case, as well --

13         THE COURT:   From other plaintiff's counsel?

14         MS. KELL:   No.

15         THE COURT:   It's from the same plaintiff's

16  counsel.

17         MS. KELL:   Correct, and we've just been noticed

18  for a deposition, a 30(b)(6) deposition the day after the

19  Thanksgiving holidays for our CEO whose wife is currently in

20  the hospital dealing with pancreatic cancer.  So there's

21  some other issues going on with the company.

22         THE COURT:   Okay.  Well, I think it's sort of an

23  unusual situation, Mr. Woodward.  I mean it's one thing if

24  you're dealing with IBM and asking them to do a document

25  production.  It's another thing if you're dealing with four

people, three of whom are on, who are about to go into a
criminal trial and one of whom has no knowledge of the
documents.  It's an unusual situation which is why our
normal expectations may not be able to prevail here.  It's
going to have to be taken into account.  I don't see how it
could not be.

So our priority right now is looking – I'm going
to do the order.  We're going to look into these three bond
offerings.  On a short-term basis, you're going to have your
discussion about the other requests, see if you can reach an
agreement about what can be done now, what can be done
later, what's burdensome, what you're going to put off, all
of that.  If you think you have a basis for a motion to
compel, go ahead, file one.

That may be it from my end.  Mr. Woodward, do you
think there's anything else we can deal with today?

MR. WOODWARD:  No, Your Honor, I understand that
the court will be issuing the order it initially outlined
concerning CDR's own documents I take it?

THE COURT:  Yes.

MR. WOODWARD:  Thank you.

THE COURT:  Miss Kell, anything?

MS. KELL:  Nothing further, Your Honor.

THE COURT:  Okay, thank you, everybody.

          MR. WOODWARD:    Thank you.

          MS. KELL:    Thank you.

            (Whereupon the matter is adjourned.)

# C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, In re Municipal

Derivatives Antitrust Litigation, Docket #08cv2516, was

prepared using PC-based transcription software and is a true

and accurate record of the proceedings.

Signature_____

Date:  November 16, 2011