1BNLMUNC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE:  MUNICIPAL DERIVATIVES
     ANTITRUST LITIGATION
4                                      08 CV 2516 (VM)

5    ------------------------------x

6                                      New York, N.Y.
                                       November 23, 2011
7                                      9:34 a.m.

8    Before:

9                     HON. VICTOR MARRERO,

10                                     District Judge

11                     APPEARANCES

12   HAUSFELD LLP
          Attorneys for Plaintiffs Mississippi, Bucks County, et al.
13   BY:  HILARY K. SCHERRER
          -and-
14   SUSMAN GODFREY LLP
     BY:  SETH ARD
15
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
16        Attorneys for Defendant Morgan Stanley
     BY:  SHEPARD GOLDFEIN
17        PAUL M. ECKLES
          NICHOLAS DANELLA
18
     COOK, HALL & LAMPROS
19        Attorneys for Plaintiff State of West Virginia
     BY:  CHRIS HALL (by telephone)
20
     COTCHETT PITRE & MCCARTHY
21        Attorneys for Plaintiff City of Los Angeles
     BY:  DANIEL STERRETT (by telephone)

22

23

24

25

1    (In open court)

2    THE COURT:  This is a proceeding in the matter of

3    Municipal Derivatives Antitrust Litigation, docket No. 08 Civil

4    2516, and it is one of the cases transferred to this Court by

5    the multidistrict litigation panel under MDL No. 1950.

6    The Court scheduled this proceeding in order to

7    consider the application of the parties for an order and final

8    judgment settling the claims of one of the group of plaintiffs

9    with one of the defendants, Morgan Stanley.  Previously by

10   order dated October 6 of this year, 2011, the Court had

11   approved an order granting the plaintiffs' counsel, lead

12   counsel, fees and costs of this litigation.

13   So, this proceeding will be to create the record

14   necessary for the Court to make its findings under appropriate

15   case law that the settlement proposed of this class action is

16   fair and reasonable in light of all of the factors set forth by

17   the Second Circuit in the applicable case law, specifically

18   that the settlement is justified in light of the complexity of

19   the case, the issues that were considered, the likelihood of

20   further litigation and implications of any such litigation, and

21   the other factors that go into a determination that this

22   settlement is fair and reasonable to the class and would

23   support a finding by the Court as a matter of fact.

24   For the plaintiffs, who speaks, Ms. Scherrer?

25   MS. SCHERRER:  Good morning, your Honor.  Hilary

1  Scherrer from Hausfeld LLP for the class plaintiffs.  I'm happy

2  to go through the *Grinnell* factors.  I'm prepared to do that or

3  if your Honor wants to truncate this with any questions, we

4  can.

5           THE COURT:  Just go through the factors briefly.

6           MS. SCHERRER:  Okay.  As you know, we're here today

7  seeking approval of a $6.5 million settlement with Morgan

8  Stanley.  It was the product of extensive arm's length

9  negotiations and represents an excellent result for the class.

10          In addition to the $6.5 million settlement amount,

11  obviously less the 1.55 million in attorneys' fees and costs,

12  Morgan Stanley has agreed to cooperate with plaintiffs in an

13  ongoing prosecution of this litigation against the non-settling

14  defendants.

15          The agreed-to cooperation including proffers to

16  counsel regarding the structure of the municipal derivatives

17  industry, as well as Morgan Stanley's participation in the

18  alleged anticompetitive transactions, production of documents

19  that were previously produced to the Department of Justice and

20  any state attorneys general regarding anticompetitive

21  investigations in the municipal derivatives industry.

22          THE COURT:  Ms. Scherrer, let me just interrupt for a

23  moment.  I forgot to mention that there are some interested

24  parties who asked to join this conference by telephone and I

25  just want to indicate that they are on now.

1    Would the parties who are on the phone please identify

2    yourselves so that we have you on the record.

3    MR. HALL:  Yes, Judge.  Thank you.  This is Chris Hall

4    with the law firm Cook, Hall & Lampros.  I represent the State

5    of West Virginia.

6    MR. STERRETT:  Good morning, your Honor.  This is

7    Daniel Sterrett from Cotchett, Pitre & McCarthy, representing

8    the City of Los Angeles, et al.

9    THE COURT:  Thank you.  And I appreciate your making

10   yourselves available by telephone for this proceeding.

11   Ms. Scherrer, proceed.

12   MS. SCHERRER:  Yes, your Honor.  I was discussing the

13   cooperation that was agreed to under this settlement agreement.

14   This also includes interviews of three current officers or

15   employees of Morgan Stanley.

16   To date, the plaintiffs have received one proffer and

17   conducted an interview of a Morgan Stanley witness.  They've

18   also received the production of nearly 2.5 million documents

19   for review.

20   As the Court is aware, this settlement was

21   preliminarily approved on January 14, 2011.  Notice was issued

22   to class members via direct mail notification and publication

23   notice in July.  There are been no objections to the settlement

24   and we've received only 76 requests for exclusion, which is

25   less than 1 percent of the potential settlement class.

1    As you are aware, the Court must find that the

2  settlement is fair, adequate, and reasonable.  Those factors

3  for making this determination were set forth by the Second

4  Circuit in *City of Detroit v. Grinnell*.

5    The nine factors are the complexity, expense, and

6  likely duration of the litigation; the reaction of the class to

7  the settlement; the stage of the proceedings and amount of

8  discovery completed; the risks of establishing liability; the

9  risks of establishing damages; the risks of maintaining the

10  class action through trial; the ability of the defendants to

11  withstand a greater judgment; the range of reasonableness of

12  the settlement in light of the best possible recovery; and the

13  range of reasonableness of the settlement in light of all of

14  the attendant risks of litigation.

15    With respect to the first factor, the complexity,

16  expense, and likely duration of the litigation, this was a

17  federal antitrust case.  These are notoriously complex,

18  protracted, and this case was no different.  It was filed in

19  2008 and involves bid rigging and other anticompetitive

20  activities in the complex municipal derivatives industry.

21    Demonstrating liability and proving damages against

22  the large number of defendants has already required extensive

23  discovery, including the review of thousands of hours of audio

24  tapes and millions of pages of documents.  It has also required

25  the expenditure of substantial monetary resources.  Plaintiffs

expect the litigation in this case will continue to require

vast resources, particularly given the discovery stays that

continue to be requested by the Department of Justice.

With respect to the second factor, the reaction of the

class to the settlement, as I mentioned earlier, we have no

objectors to this settlement and there are 76 opt-outs out of

over 60,000 potential class members that were noticed.  The

objection deadline was October 11, so we don't expect any more

to come in.

The third factor is the stage of proceedings and the

amount of discovery completed to date -- I'm sorry -- the

amount of discovery completed at the time of settlement.  Due

to the stays, there was a limited amount of discovery that was

completed at the time of settlement.  However, clearly, counsel

did feel they had sufficient information in order to properly

evaluate the risks of settling versus continuing with the

litigation.

Additional information obtained through cooperation

and through discovery since the settlement was entered into has

confirmed that while Morgan Stanley faced some risk of

liability, the benefits of settlement outweighed the costs and

risks associated with further litigation against Morgan

Stanley.

The fourth, fifth, and sixth *Grinnell* factors are the

risks of establishing liability and damages and maintaining the

class action through trial.  If plaintiffs continue to litigate

against Morgan Stanley, they expect that Morgan Stanley would

assert defenses at each stage of the litigation, including

class certification stage, summary judgment, and at trial, and

plaintiffs would face steep monetary costs associated with

defending at each stage.

          While there are 11 criminal cases involving 19

individual, corporate, and individual defendants, none of these

are former or current Morgan Stanley employees.  And,

additionally, because liability is joint and several under the

Sherman Act, there is no risk of the damages -- I'm sorry --

because liability under the Sherman Act is joint and several,

the settlement in no way prejudices the ability of the

settlement class to recover its full amount of treble damages.

Additionally, the settlement secured Morgan Stanley's full

cooperation, which is invaluable in the prosecution of this

litigation going forward.

          Accordingly, the benefits of settlement as discussed

earlier outweigh the risks of litigation.

          The seventh factor is the ability of Morgan Stanley to

withstand a greater judgment.  I think everyone agrees that

Morgan Stanley is a financial institution that could likely

withstand a greater judgment.  However, again, plaintiffs

believe that the costs and risks associated with further

litigation outweigh this factor.

1    The eighth and ninth factors are the range of

2  reasonableness of the settlement in light of the best possible

3  recovery and the attendant risks of litigation.  Again, this

4  settlement contains a substantial cash payment of $6.5 million

5  and cooperation that we think is invaluable in the ongoing

6  litigation.  And, again, we think that the risks of further

7  litigation are outweighed by the settlement.

8    Therefore, we respectfully submit that the settlement

9  should be granted final approval.

10    THE COURT:  Thank you.  Ms. Scherrer, one question

11  that comes to mind, you mentioned treble damages.  As you're

12  undoubtedly aware, the antitrust division brought a criminal

13  case against some of the defendants, some defendants who are

14  involved in the same conduct that you're charging here against

15  Morgan Stanley.  That case is scheduled to go to trial in just

16  another month and a half.

17    Assuming for the moment that the judgment were to be

18  rendered their liability or guilt on the part of the

19  defendants, establishing a record of the conduct that you're

20  alleging here against Morgan Stanley, that judgment would

21  become essentially res judicata as to some of these issues

22  under the Clayton Act.  Presumably, some plaintiffs might be

23  able to use it to support litigation against other defendants

24  and conceivably obtain treble damages.

25    So, how does that weigh in the scheme of things with

1  the settlement of this case now?

2          MS. SCHERRER:  Well, your Honor, I think plaintiffs

3  feel as if they've done extensive due diligence here with

4  respect to the settlement as to Morgan Stanley and feel that

5  this is a fair settlement as to Morgan Stanley given their

6  participation in the alleged conspiracy, I should say what we

7  believe is their limited participation in the alleged

8  conspiracy.

9          If for some reason which we don't foresee it comes out

10 at the criminal trial that their participation was greater than

11 expected, as you know, the liability is joint and several and

12 so those transactions would or additional damages would remain

13 available in the case for plaintiffs to pursue against other

14 defendants.

15         THE COURT:  Thank you.  Anything else?

16         MS. SCHERRER:  In addition to finding the settlement

17 is fair and reasonable and adequate, your Honor needs to also

18 find that the notice issued by the class comported with due

19 process and meets the requirements of Rule 23(e)(1) and

20 Rule 23(c)(2)(B).  I'm happy to go through those factors as

21 well.

22         THE COURT:  Do so briefly just for the record.

23         MS. SCHERRER:  Sure.  On June 29, 2011, you approved

24 the form of notice and the comprehensive notice program that

25 provided extensive direct notice to all class members that were

reasonably identifiable and publication notice providing

summary notice in national, local, and trade print

publications, as well as web-based publications.

On July 11 and 12, 2011, the direct mail notice was

sent out to over 60,000 potential settlement class members.

The direct mail notice provided class members with

detailed information in plain language about the action and

proposed settlement which included the nature of the action and

class certified; the claims, issues and defenses; a summary of

the monetary terms of the settlement and the plan of

allocation; the right of class members to appear through their

own attorney; the right to request exclusion and the times and

means of doing so; and the binding nature of the judgment,

including information about the nature of the class release.

And for your information, a copy of the direct mail

notice is attached to the affidavit of Eric Miller which was

submitted with our papers.

Notice of settlement was also published in a number of

publications which were selected to ensure that decision-makers

that purchase municipal derivatives would be reached with

notice.  Those publications included the Wall Street Journal,

the American School Board Journal, the Bond Buyer, the

Chronicle of Higher Education, County News, Governing,

Healthcare Finance, Municipal Sewer and Water, Nation's Cities

Weekly, Public Management, Public Works, State Legislatures,

1BNLMUNC

1    U.S. Mayor, El Nuevo Dia, El Vocero Pacific Daily News, Primera

2    Hora, Saipan Tribune Samoa News, St. Croix Avis, St. Johns

3    Trade Winds, Virgin Islands Daily News.

4            The publication notice included abbreviated

5    information regarding the settlement, including the monetary

6    terms, the right of the settlement class members to speak with

7    their own attorney at their own expense, and right to object or

8    opt out of the settlement.

9            The publication notice also advised class members that

10   they could obtain additional information via a toll-free phone

11   number as well as a website that was set up by the claims

12   administrator, www.MunicipalDerivativesSettlement.com.

13           Around July 11, Rust, which was the claims

14   administrator, posted a number of the court documents as well

15   as the settlement agreement, the preliminary approval order on

16   that website.  The website also contains answers to frequently

17   asked questions.

18           As of October 31, the website was visited by at least

19   3,686 -- I should say it was visited 3,686 times and the

20   toll-free information line received 503 calls.  As a result of

21   those visits and calls which resulted in inquiries, Rust mailed

22   additional direct mail notices to class members.

23           Again, we respectfully submit that this notice program

24   complied with due process as well as the requirements of

25   Rule 23.

1    THE COURT:  All right.  Thank you.  Ms. Scherrer, you

2    mentioned that there was 70 plus members of the class who

3    essentially opted out.

4    MS. SCHERRER:  Seventy-six, yes.

5    THE COURT:  Seventy-six.  Do you represent that each

6    of these 76 followed the procedure in full insofar as having

7    had sufficient notice and filling out whatever appropriate form

8    and giving you and the settlement administrator the proper

9    notice of having complied with all of the procedures?

10    MS. SCHERRER:  Yes, your Honor, we do.  As you may

11    have noticed, there was a footnote in our brief when where

12    mentioned the State of Massachusetts and the State of Oregon.

13    The attorneys general for those two states opted out the

14    states, as well as entities of the state for which they claimed

15    to have sole legal authority to represent.  We have had some

16    exchange of correspondence with those two attorneys generals in

17    order to get more specific information as to the entities of

18    state that they're opting out.  They have not provided any

19    additional information.

20    At this point we are content to proceed forward.  If

21    this becomes an issue during the claims administration process,

22    that's something we can bring to your attention at that stage.

23    THE COURT:  All right.  Thank you.

24    Mr. Goldfein.

25    MR. GOLDFEIN:  Good morning, your Honor, and thank

1  you.  I'm Shepard Goldfein from Skadden Arps.  We represent

2  Morgan Stanley.  I wanted to answer your question a little bit

3  differently with regard to the implications of the criminal

4  matter.

5      Morgan Stanley has not been named as an unindicted

6  coconspirator in the bill of particulars, as far as we've been

7  able to follow the proceedings in the criminal matters, nor

8  have any of its employees been named as unindicted

9  coconspirators.

10      In addition, based on the documents that we produced

11 and the proffer that we made to plaintiff's counsel of a

12 witness and his views about the structure of the industry but,

13 more importantly, the underlying facts, I don't believe there's

14 any evidence whatsoever that Morgan Stanley was implicated in

15 any wrongdoing regarding the allegations involved in this case.

16      I can't speak for the other hundreds, thousands of

17 tapes or other documents plaintiffs have reviewed, obviously,

18 in their files from the other defendants.  But I can tell you

19 that Morgan Stanley has not been indicted and not been named in

20 any of the proceedings.

21      Under the Clayton Act's provisions, I do not believe

22 that any findings that would be made in the criminal case would

23 be admissible as prima facie evidence of guilt against Morgan

24 Stanley or liability in the civil litigation, which is what the

25 statute provides.

1    So in response to your question, I don't think that

2  there would be any implication as far as I know to date.  It

3  would be something that would have to come up during the trial

4  perhaps that could theoretically occur.  But based on what I

5  know today, there would be no implications of the criminal

6  matter as to Morgan Stanley.

7    And settlement was a very hard-negotiated agreement

8  between us and plaintiffs' counsel.  It was really a settlement

9  that plaintiffs' counsel was very sensitive in finding and

10  getting to a number that they could justify as fair,

11  reasonable, and adequate to the class.

12    Morgan Stanley's point of view is it was a settlement

13  that had to take into consideration the potential exposure in

14  any jury trial that can occur.  As your Honor knows, things

15  that one might not predict often occur before a jury.  But,

16  nevertheless, we took into consideration the legal fee and

17  costs associated with disruption to the business and diversion

18  of management's time to litigation.

19    So, we earnestly believe this is a fair, reasonable,

20  and adequate settlement.  I just wanted to respond to your

21  question that you had asked.  Thank you.

22    THE COURT:  All right.  Thank you.  I appreciate that,

23  Mr. Goldfein.  I'm not sure if you may be aware of the scope of

24  that criminal trial and the information that's before the

25  Court.  The parties have estimated that the amount of discovery

1    that the government has produced to the defendants in that case

2    exceeds four terabytes of material, which I have seen various

3    estimates translating them to paper documents that exceed

4    hundreds of millions of pieces of paper, audio tapes,

5    conversations, etc.  So, one never knows what's in there.

6            MR. GOLDFEIN:  That's my point.

7            THE COURT:  All right.  Well, thank you very much.

8            If there is no one else who wishes to address the

9    Court on this matter, I will declare the hearing closed and the

10   record closed.

11           Based on the submissions that the parties have made in

12   support of the settlement and the representations made to the

13   Court at this hearing, I am persuaded that the Court can find

14   the factors set forth by the Second Circuit in the *Grinnell*

15   case in favor of an approval of the settlement as fair and

16   reasonable and adequate to the class for all of the reasons set

17   forth on this record, and I will so find and so order in

18   issuing approval in a final judgment today.

19           Anything else?

20           MR. GOLDFEIN:  Thank you very much, your Honor.

21           THE COURT:  Thank you.  Have a good day and a good

22   holiday.

23                          o0o

24

25