15BMMUNC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE MUNICIPAL DERIVATIVES
     ANTITRUST LITIGATION                    08 Civ. 2516 (VM)(GWG)
4
     ------------------------------x
5                                            New York, N.Y.
                                             May 11, 2011
6                                            11:15 a.m.

7    Before:

8                    HON. GABRIEL W. GORENSTEIN,

9                                              Magistrate Judge

10                           APPEARANCES

11   HAUSFELD LLP
          Attorneys for Direct Class Plaintiffs
12   BY:  MICHAEL D. HAUSFELD
          MEGAN E. JONES
13
     LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
14        Attorneys for Plaintiffs City of Oakland, et al.
     BY:  JOSEPH R. SAVERI
15
     KING & SPALDING
16        Attorneys for Defendant Bank of America
     BY:  KEVIN R. SULLIVAN
17        SHANNON M. KASLEY

18   ERIC T. SCHNEIDERMAN, Attorney General of
     the State of New York
19   Department of Law
          Attorney for Intervenor
20   BY:  ELINOR R. HOFFMANN

21

22

23

24

25

15BMMUNC

1          (Case called)

2          THE COURT:  We are here based upon a number of letters

3     that I asked, I guess four dated May 3 and another four dated

4     May 9.

5          Well, I'm in a little bit of a difficult situation

6     because Judge Marrero has not indicated in any great detail the

7     substance of what he expects would be included in the class

8     notice.  He has issued an order, certainly, on the topic, the

9     March 1 order, and there is some words that everyone is trying

10    to parse there.  And I think they provide some guidance but not

11    perhaps 100 percent guidance as to what is relevant here in

12    terms of the plaintiff's requests for discovery.

13         So I think what I want to try to do as a model is the

14    following.  I don't know if it's going to work, but I'd like to

15    try it.  And the model is that if there is some piece of

16    information or discovery that's not burdensome and that can be

17    supplied on a reasonable time frame, I'd like the plaintiffs to

18    get it, and then we can postpone the argument about its

19    relevance to the presentations that will be made to Judge

20    Marrero.

21         I guess my main point that I'd like Bank of America

22    and the Attorney General to keep in mind is that the mere fact

23    that the plaintiffs get some piece of information does not, by

24    any means, mean that I think it's something that should be

25    included in the class notice.  For all we know, the class

15BMMUNC

1  notice, just as is written out, will be satisfactory to Judge

2  Marrero the way the defendants wrote it.  I don't know.  But

3  certainly any rulings that I make.  Let's say that the

4  plaintiff should get some piece of information, assuming I make

5  such rulings, has no bearing on that question.

6       And I guess at the end of it we should probably set

7  the deadline for when the presentations are going to be made to

8  Judge Marrero, because right now I don't know that there are

9  any such deadlines.  I don't even think he has put in a

10 deadline.

11      So with that in mind, I think what I'd like to do is

12 go through the categories of information.  And if it's

13 something that Bank of America has, I would certainly turn to

14 them first.  And then if it's something that only the Attorney

15 General has, then I will turn to the Attorney General's office.

16      I think I have worked off the letter from Ms. Jones of

17 May 3 for purposes of figuring out the categories, and I'm

18 limiting myself to what's identified as A through E in the

19 first paragraph of that letter, so I think I'd like to go

20 through that.  I think that's the universe.  I notice the word

21 inter alia is used.  That's not very helpful.  I am going to go

22 through those.  And if for some reason the plaintiffs think

23 there is something else, I guess I would be willing to hear

24 from them on that point.

25      On question 1, to whom the state agreement is being

15BMMUNC

1   mailed, again, my ground rule here for the moment is, I don't

2   want to hear about relevance.  I just want to hear about burden

3   and timeliness.

4         So limited to that question, I'll turn to Bank of

5   America because I know they offered some things and they said

6   they had some things, or maybe I should turn to plaintiff first

7   to see what they are missing.

8         MR. SULLIVAN:  Your Honor, Kevin Sullivan.  I'm happy

9   to go through it and tell you what we have given them, and then

10  they can say if they don't have it or not.  But it's up to you.

11        THE COURT:  Go ahead.

12        MR. SULLIVAN:  In terms of to whom the notice of state

13  agreement is going to be mailed, it is defined --

14        THE COURT:  Are you repeating things, if I might ask,

15  that are in your letter?  If you are, it might be better for

16  plaintiffs to say why it was inadequate.  If this is something

17  completely new to them, go ahead.

18        MR. SULLIVAN:  This is information we have identified

19  in our letters.

20        THE COURT:  Then let's hear from them as to why it's

21  unsatisfactory.

22        I'll now turn to plaintiffs.  They provided certain

23  information in their letters.  Tell me what more you need or

24  why it's not satisfactory.  Or maybe it's fine.  I don't know.

25        People should remain seated because people are on the

15BMMUNC

1    telephone, and we need to be close to the microphones.

2            MR. HAUSFELD:  This is Mr. Hausfeld, your Honor.  The

3    description made by Bank of America is by category as opposed

4    to by identification of entity.

5            THE COURT:  Do you want a list of the entities?

6            MR. HAUSFELD:  Yes.  And we would need an

7    identification of the definition of a covered derivative so we

8    have the identification of the products that are being covered

9    in terms of the entities that are being addressed.

10           THE COURT:  List of entities and identification of the

11   particular product.

12           Talk to me about burden on that.

13           MR. SULLIVAN:  Your Honor, they have every entity that

14   comprises the universe of who is going to get the notice

15   because they have the same damage data that the AGs have.

16           In addition, they have --

17           THE COURT:  Mr. Sullivan, if I'm speaking, it's really

18   important that you listen to me.  You interrupted me once.  If

19   I have got something in my mind, if you don't satisfy me, we

20   are never getting out of here.

21           Normally, in discovery disputes when people say they

22   already have it, I say, sorry, produce it again.  Tell me what

23   the problem is with giving them the list of entities.

24           MR. SULLIVAN:  Your Honor, there is no problem with

25   giving them another set of the same database that they have,

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15BMMUNC

1    that have some of the entities in it.

2           In addition, we have agreed to give them a specific

3    list of addresses for counter parties that we have.  And they

4    asked us for that information in connection with the Morgan

5    Stanley settlement.  We said we would produce it based upon on

6    what they wanted it for.  They then said they may want it for

7    other purposes.  We are happy to produce it to them as long as

8    we know what they want to use it for.

9           The only thing we don't want them to use it for is to

10   go out and make separate contact with the eligible counter

11   parties before this process is over.

12          THE COURT:  It sounds like you're willing to give them

13   the lists of entities.  And what about the identification of

14   the product?

15          MR. SULLIVAN:  The identification of the product is in

16   the database they have.  We can give them the list of the

17   entities with the trade number.  They can run that against the

18   database they have and figure out exactly what product that

19   entity traded with that, and they will have all the

20   information.

21          THE COURT:  Does that make sense to you on this side?

22          MR. HAUSFELD:  Not really, your Honor.  The proposed

23   settlement agreement covers -- includes covered derivatives

24   with no definition of what a covered derivative is so that a

25   participating entity, all of whom would also be members of the

15BMMUNC

 1    class, would not know which derivatives are being included

 2    within the proposed settlement.

 3           MR. SULLIVAN:  Your Honor, the covered derivatives are

 4    defined in the agreement with the AG as agreements that are

 5    covered by what's called attachment A.  Attachment A then

 6    provides more information about what those covered derivatives

 7    are.  The eligible counter party that received the notice will

 8    get a specific amount, will be told exactly how much money they

 9    are eligible to receive.  The plaintiffs will know who those

10    counter parties are because we would have told them.  They will

11    know --

12           THE COURT:  Told them when?

13           MR. SULLIVAN:  They have the full list now.  We will

14    give them the addresses which has the specific list from 1998

15    to 2003 that Bank of America considers the group.  The Attorney

16    General will make the final decision as to who actually gets

17    the notice, not Bank of America.  So if there is information

18    that the Attorney General needs to give, they can ask them.

19    But they will have the list of the eligible counter parties and

20    their addresses and they will have all of the information about

21    the trades that they did.

22           MR. HAUSFELD:  Sounds to me, your Honor, as if the

23    Attorney General should be providing that information.  For

24    example, in attachment A to which Mr. Sullivan refers,

25    municipal derivatives is defined as municipal derivatives that

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15BMMUNC

1   are purchased by a particular entity.  That's not a sufficient

2   definition to understand what type of municipal derivative --

3            THE COURT:  You know for each particular entity what

4   derivative?

5            MR. HAUSFELD:  Yes.

6            THE COURT:  Do you have that or only the Attorney

7   General has that?

8            MR. SULLIVAN:  The Attorney General makes the final

9   decision as to who gets this notice.

10           THE COURT:  Has that decision been made yet?

11           MS. HOFFMANN:  Your Honor, that decision has not been

12   made with finality yet.  We are still addressing the criteria

13   in the agreement.

14           I do want to point out that the notice also defines

15   the covered derivative, and the information upon which we base

16   our list of addressees database is the same database that I

17   believe plaintiffs have.  We do not have a definite list of the

18   addressees yet.

19           THE COURT:  When are you going to have it?

20           MS. HOFFMANN:  We are hoping soon.

21           THE COURT:  Meaning tomorrow or a month from now?

22           MS. HOFFMANN:  I hope within a week from now, but I

23   don't know for sure.

24           THE COURT:  Can you provide it to them in a week from

25   now?  Can you do it?

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

15BMMUNC

1              MS. HOFFMANN:  Your Honor, our position is that we are

2       not subject to discovery at all.  Whether we do that, I would

3       have to take that up with my group, because to some extent it's

4       a policy decision within each person's office.  But I would be

5       concerned about --

6              THE COURT:  Are you not going to be providing it to

7       Bank of America?

8              MS. HOFFMANN:  Yes.  Bank of America will --

9              THE COURT:  They could provide it, if that makes you

10      feel better.

11             MS. HOFFMANN:  I would be concerned, as Mr. Sullivan

12      was, about the purpose for which these addresses are going to

13      be used.

14             THE COURT:  That I could limit through an order saying

15      they can only be used for purposes of making a proposal as to

16      the content of the class notice, be limited to those two.

17             I assume you couldn't object to that, right?

18             MR. HAUSFELD:  We would probably agree to it, your

19      Honor.

20             THE COURT:  It sounds like you are going to have this

21      in a week to Bank of America to turn it over to plaintiffs.

22             MS. HOFFMANN:  We hope to.  We are talking with Bank

23      of America.  There are some deals that we can't match to make

24      sure they correctly belong in the group, and we are working

25      through that.

15BMMUNC

1        THE COURT:  I don't want to rush you because you folks

2   are the ones with the greatest incentive to move this along.

3        MS. HOFFMANN:  We are trying to move it along as

4   quickly as possible.  We are working diligently to do that.  I

5   think Bank of America has been diligent also in working with us

6   on that issue, and we are trying to finalize the list.  Again,

7   I'm not in a position to agree to produce it.

8        THE COURT:  I'm not asking you to agree.  I'm just

9   asking when you are going to be giving it to Bank of America.

10        MS. HOFFMANN:  Again, I'm hopeful it will be done in

11   the next week.  It has taken longer than we expected.

12        THE COURT:  Is this going to include the

13   identification of the product that we have been talking about?

14        MS. HOFFMANN:  Our list will not include the precise

15   identification of the product, I don't believe.  I have to go

16   back and check.  But I think that can be easily determined from

17   the trade numbers associated with them.

18        THE COURT:  So is this going to do it?

19        MR. HAUSFELD:  It's difficult to say, your Honor,

20   because we also need the allocation formula in order --

21        THE COURT:  I haven't gotten to that yet.  Is it

22   related?

23        MR. HAUSFELD:  Yes.

24        THE COURT:  Go ahead.

25        MR. HAUSFELD:  In the complaint that was filed by the

15BMMUNC

class plaintiffs, there is a definition of covered derivatives
and there are seven types of derivative products.  In general
discussions with the bank it's been their position that there
were overcharges on some but not all of those derivative
products.  We would need to know how the bank and the states
reached agreement as to which derivative products they were
making restitution on to be able to advise our clients and for
potential putative class members to understand which derivative
products they purchased.  They were receiving restitution, yet
were being required to give releases on all derivative
products.

THE COURT:  It seems to me, unless I'm
misunderstanding you, that what a particular party needs,
perhaps, is the amount of money that they are getting.  It
covers -- they are going to give up a claim against any
possible product they have with respect to Bank of America,
right?

MR. HAUSFELD:  Yes.  But that's the problem.  There
are seven different products that could have been purchased.
The payment may only go to one or two.

THE COURT:  But surely the party knows what product it
has, or doesn't it?

MR. HAUSFELD:  It will know what products it
purchased.  It will not know what products the restitution is
being made on and what products for which there is no

15BMMUNC

1    restitution.

2            THE COURT:  That's what I don't understand.  What does

3    it matter?  They are getting the sum of $100,000.  If they

4    purchased four of the seven products and whether their formula

5    discounted one particular product as zero or get paid three

6    cents on the dollar for another one, what does it matter?  They

7    know what they are getting to cover everything.

8            MR. HAUSFELD:  It matters because of the mix of

9    products that purchases may be more weighted for those products

10   for which they are not getting any restitution.  And the

11   participating entity may wish not to release all its claims and

12   to pursue those claims because it had larger purchases in the

13   nonrestituted products.

14           THE COURT:  You still lost me.  Because they have to

15   give up all the claims, regardless.  They have to give up their

16   claims on everything, regardless.

17           MR. HAUSFELD:  That's a choice that they need to make.

18   And in making that choice, if in fact they have greater

19   purchases in products for which they are receiving no

20   restitution, they may decide that it's not worth it to take two

21   cents on 2 percent of their sales when they have, you know,

22   maybe dollars on 98 percent of their sales.

23           THE COURT:  Let me try it one more time.  I bought

24   seven products, A through G.  I'm being given $100 to

25   extinguish my claims against Bank of America.  What does it

15BMMUNC

1    matter if in Bank of America or in the Attorney General's mind

2    $98 is being allocated to product F?  You come back when I ask

3    you that question and you say, well, it might matter because

4    they feel that product A, in fact, is worth a whole lot of

5    money and they are only being paid 50 cents on product A.  I

6    keep saying to you, they are giving up their claim for A

7    through G for $100.  And if they think product A is worth a

8    thousand dollars, then they won't do it.

9          MR. HAUSFELD:  There is not ability of a potential

10   claimant to make that assessment, your Honor, given the fact

11   that all they are talking about in the notice and in the

12   settlement is an aggregate of derivative products.  If I only

13   bought one of product A, but 99 of products B through Z, and

14   I'm getting $2 for product A, I may not want to opt into a

15   settlement where the greater portion of my purchases deal with

16   a product for which I'm not receiving any allocated

17   restitution.

18         THE COURT:  I feel we are having the same conversation

19   literally three times.  Can anybody help us here?  Am I missing

20   something?

21         MR. SULLIVAN:  You've stated it exactly correctly.

22   The notice gives them a specific amount they are entitled to.

23   They know what transactions they have done with Bank of

24   America.  The notice tells them that others, including the

25   class plaintiffs here or the Oakland plaintiffs, feel they can

15BMMUNC

1    get them more, and they were -- also, they might end up getting

2    less.  They have the information from which they can then make

3    a judgment.  If they have a question, if they have options,

4    they can call the Attorney General in their state if it's one

5    of the working group members, they can consult --

6              THE COURT:  You're straying.  I don't want you to

7    stray.

8              MR. SULLIVAN:  They have options.  They have the basic

9    information.  They know what transactions they have entered

10   with Bank of America.  And they know what they would have to

11   release.  Whether they have done five or ten or one transaction

12   with Bank of America, they can -- they have enough information

13   to make a reasoned judgment as to whether this makes sense to

14   them.  And if it doesn't make sense to them or they are

15   confused and do nothing, they lose no rights.  They don't give

16   up their claim.

17             THE COURT:  Again, we are getting outside the areas.

18   I know all this.  I'm still in exactly where I were before.

19   Nothing you said, unfortunately, Mr. Hausfeld, has explained

20   the relevance of this.

21             As an aside, I know I said I wasn't going into

22   relevance, but for some of these I think I am going to because

23   I have to understand in order to even allow discovery on it.

24             Did someone else have an idea?

25             MR. HAUSFELD:  Can I try this, your Honor.  If the

15BMMUNC

```
 1    list is being composed of those entities which purchased

 2    covered products, and notice is being sent to those who are

 3    deemed qualified by the state AGs, based on purchases that the

 4    state AGs are connecting with regard to this settlement, that

 5    information is readily available.  And if that information is

 6    not only possessed by the states but is the nexus for the

 7    states sending out not only the notice but the amount, it would

 8    seem not burdensome to provide us with the same information

 9    which provided the basis for the state's decision as to who

10    gets the notice and what amount of money they are getting,

11    based on the transactions that the state believes are covered.

12            THE COURT:  I am not sure I followed what you just

13    said.  Try it again.  What is it you want?  We already talked

14    about your getting a list of entities and the products when

15    they have finished doing this task.  Are the amounts included,

16    too?

17            MS. HOFFMANN:  Your Honor, in the list --

18            THE COURT:  They can derive the amounts?

19            MS. HOFFMANN:  In the notice -- the notice will

20    clearly state the amount to which each entity is entitled to.

21            THE COURT:  I think they are looking for -- are you

22    looking for the amount in advance, or not necessarily?

23            MR. HAUSFELD:  My understanding is, the notices will

24    contain an amount in advance.

25            THE COURT:  I know the notice will have an amount.
```

15BMMUNC

1    I'm talking about whether you in discovery are looking for the

2    amount for each particular entity.

3              MR. HAUSFELD:  Yes.

4              THE COURT:  And was that part of what we had

5    previously agreed you were going to be giving to Bank of

6    America and Bank of America was going to be giving to

7    plaintiff?

8              MS. HOFFMANN:  Your Honor, we were not planning to do

9    that, no.

10             THE COURT:  Our discussion had been the list of

11   entities and some number that would allow them to derive the

12   products that were involved.

13             MS. HOFFMANN:  That's right.  There has been reference

14   to the transactions.

15             THE COURT:  When I then turn to you and said, what

16   more are you looking for, you started talking about allocation.

17   We started going down the road where I said the same thing five

18   times and you said the same thing five times, we made no

19   progress.  I am not sure where we are right now.

20             MR. HAUSFELD:  We would like to be in the same

21   position that the state AGs are in in terms of understanding

22   not only who gets the notice, but what transactions prompted

23   the state AG not only to send the notice to that entity, but

24   the amount that the state AGs ascribing to that entity, and

25   then the products that were purchased by that entity that the

1    state AGs have determined are eligible for restitution.

2            THE COURT:  Again, you still have not persuaded me

3    even as to relevance to this.  I don't know if you want another

4    shot at it, but I feel like we have done this a bunch of times.

5    If you have nothing more to add, tell me and we will go on.

6            MR. HAUSFELD:  If I could try it this way.  I am not

7    sure it's adding, but hopefully clarifying.  We would like to

8    be in the same position as the state AGs are in with respect to

9    the knowledge as to not only who is being solicited to opt in,

10   but why they are being solicited to opt in, and the basis for

11   the decision by the state AGs as to which products the state AG

12   is allocating a restitution and the amount.  All of that

13   information --

14           THE COURT:  I guess my response to that is, I need to

15   know why that is going to enable you to make comments or

16   propose language in the class notice that you wouldn't have

17   otherwise been able to do?

18           MR. HAUSFELD:  Because with respect --

19           THE COURT:  And if the answer is, you want to judge

20   whether they did a good job of coming up with the amount of

21   money, that's going to be a very tough road for you to hoe.  I

22   don't know that that's something that you're entitled to know.

23           MR. HAUSFELD:  Despite the absence presently of the

24   reference to detailed findings and conclusions by the Court in

25   a separate opinion, the Court expressed three essential

15BMMUNC

1    concerns.

2              THE COURT:  You're talking about Judge Marrero?

3              MR. HAUSFELD:  Yes.

4              THE COURT:  Go ahead.  Unfortunately, the one thing I

5    didn't bring was the most important thing, which was the letter

6    that had all the documents attached to it.  But I happen to

7    have a copy of the --

8              MR. HAUSFELD:  He identified as page 3 three essential

9    concerns about this process.  And just before the paragraph

10   that's labeled ordered, he identified that it was necessary to

11   protect the interests of the putative class members, to protect

12   the Court's jurisdiction, and to preserve the Court's ability

13   to render meaningful relief on the claims before it.

14             Clearly, the information we requested is extremely

15   relevant to that last of the Court's concerns because what

16   relief may be obtained now will clearly affect the relief that

17   the Court can render to the rest of the class under the

18   remainder of the claims because this is a matter involving

19   joint and several liability, at a minimum.

20             THE COURT:  But if I'm an entity and I'm deciding

21   whether to opt into this or not, what I need to know is how

22   much I am getting, and then make a judgment about whether I can

23   do better in the class action.

24             MR. HAUSFELD:  That would only be, your Honor, if

25   you're getting either something for everything.  But if you're

1   getting something for less than everything that you did,

2   another aspect of what you would need to decide is what it was

3   that you purchased and whether or not you think that what

4   you're getting is sufficient to release your claim for

5   everything when the greater portion of what you purchased may

6   not be compensated for at all.

7           THE COURT:  I'm getting a single number to cover

8   everything.  This is the same thing we did five times.  I don't

9   know if I want to do it six times.

10          MR. HAUSFELD:  I don't disagree with your Honor's

11  present position, but it's a position in a class that occurs

12  inherently when there is a number of items that are purchased.

13  If I purchase ten different items and I purchase item one only

14  once, but I purchase the other nine a thousand times, it may

15  not be worth it to me to take a settlement as a single sum for

16  all the purchases if all I'm getting is a penny on the one item

17  that I bought.  If, however, it may be, your Honor, that it's a

18  penny for all ten items, then I could understand that my claim

19  may not be worth that much in the aggregate.

20          THE COURT:  What do you care what's going on in the

21  mind of a person who is offering you?  If they are offering you

22  $100, what does it matter if in their mind the hundred is

23  allocated all to item A or all to item G?  What does that

24  matter?  You are giving up A through G, regardless.

25          MR. HAUSFELD:  Because it may make a difference to me

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15BMMUNC

```
 1    if I have greater purchases in the items for which I'm not

 2    being offered any restitution, and I may decide that I want to

 3    pursue my claims for those products.

 4            THE COURT:  We have now done it seven times.  That's

 5    it.  We are done.  I keep saying the same thing and your answer

 6    just doesn't make any sense to me, Mr. Hausfeld.  I know you

 7    are trying to explain it to me.  I know you are doing a

 8    good-faith effort.  But you have not persuaded me that this

 9    even meets the relevance standard that I would need to require

10    production of information on it.

11            We need to go on to another category.  You are going

12    to have your opportunity, presumably before Judge Marrero when

13    you write a letter saying that I have denied you this thing.

14    If he disagrees with me, maybe he will send it back.

15            Let's go on.

16            MR. HAUSFELD:  Yes.

17            The next area, though --

18            THE COURT:  We may have covered other things.

19            MR. HAUSFELD:  I was about to get exactly to the next

20    area.  The allocation formula is something that we would want

21    to know.

22            THE COURT:  This is the same issue, in my mind, right?

23    This is the same principle that is at issue.

24            MR. HAUSFELD:  It's without the detail.  It's the

25    overview.  What formula was used to make the allocation on an
```

15BMMUNC

 1   individual entity.

 2              THE COURT:  As between particular entities.

 3              MR. HAUSFELD:  Yes.

 4              THE COURT:  As opposed to how we came up with the 65

 5   million, which is what more of our discussion was going to and

 6   why I should or should not accept my piece of the 65 million.

 7   This is the question of -- how many potential opt-ins are

 8   there, approximately?  5,000, 50,000?

 9              MR. SULLIVAN:  I can give a guesstimate of that.

10   There were approximately -- just one second.  There are well

11   over 3,000 trades in the entire damage database.  The number of

12   counter parties in the '98 to 2003 time period would be a

13   subset of that, so it's a significant number.

14              THE COURT:  Let's pretend it's 4,000.  So what you're

15   asking, of the 65 million, how did they pick a number for each

16   of those 4,000 people?

17              MR. HAUSFELD:  What formula, if any, was used to

18   derive the amount that each would get?

19              THE COURT:  Unfortunately, I need to pose the same

20   question to you, which is to say, I, as an entity, am going to

21   learn that my share is $100,000.  Why will it matter to me

22   whether the municipality next door got 50,000 or 150,000, or

23   whatever it might be?

24              MR. HAUSFELD:  If there is no rational basis for it,

25   you may decide that this is nothing that you want to accept.

15BMMUNC

1    It is a standard requirement in any settlement of collective

2    claims, multiple claims dealing with the same wrong that class

3    plaintiffs always identified to the Court and to the class.

4    And here there is no difference between soliciting opt-ins or

5    sending out a notice to a class where they can opt out if they

6    choose not to participate.  You need to include the formula of

7    allocation so everyone understands that you weren't treated

8    disparately from someone else in the same position.

9              MS. HOFFMANN:  Your Honor, may I address that?

10             The first thing I'd like to say is that we believe

11   that the notice as drafted provides a description of the

12   allocation formula that's consistent with notices that we

13   reviewed even in class actions, even ones that Mr. Hausfeld set

14   out.  We believe that's already provided.

15             THE COURT:  Just remind me what paragraph that's in.

16             MS. HOFFMANN:  Yes.  If the Court has a copy of our

17   question and answer packet, our proposed question and answer

18   packet.

19             THE COURT:  Yes.

20             MS. HOFFMANN:  It's the answer to question 12, I

21   believe.

22             THE COURT:  Famous independent expert economist.

23   Okay.  Go ahead.

24             MS. HOFFMANN:  We believe that's addressed.  If the

25   Court believes that it should be addressed to a greater extent,

15BMMUNC

we will certainly consider language that's more fulsome,
subject to not revealing any confidential information or
economic analysis that we need that's essentially our work
product.

Your Honor, I also want to, if I can, draw a
distinction between this settlement and class settlements.  Our
settlement is a settlement among sovereign states and the Bank
of America.  We have chosen to make the settlement fund
available for claims of restitution from injured parties.  We
thought that was important thing to do.  Our settlement is not
a Rule 23 settlement and it's not subject, our position is, to
any sort of a fairness inquiry.

THE COURT:  I know all that.  I think you are also in
a situation where Judge Marrero has already decided that there
is not going to be a fairness inquiry and that all that's going
to happen is that there is going to be an opportunity for the
plaintiffs to propose changes, additions to the notice, and
that Judge Marrero is reserving the right to approve that
notice.  I understand that.

But I guess it would be worth somewhat addressing the
question of why for purposes of Judge Marrero approving that
notice he might not want the option of requiring that the
particular opt-ins understand how their share was calculated as
opposed to being just told, don't worry, we have some economist
that did it.

15BMMUNC

1          MS. HOFFMANN:  Your Honor, we certainly would be

2     amenable to making the language better.

3          THE COURT:  It's not a language problem.  It's a

4     substance problem.

5          MS. HOFFMANN:  Or adding more substance to the

6     description.

7          THE COURT:  Are you willing to add a substance to the

8     allocation formula?  What kind of substance are you talking

9     about?

10         MS. HOFFMANN:  We could add more detail to the

11    description, perhaps.  I would like to talk to my colleagues.

12    But what I don't think is necessary is discovery.

13         THE COURT:  Let's talk about what the form of that

14    discovery is.  I'm not asking you to agree to anything or to

15    admit that you're subject to the Court's jurisdiction.

16         But going back to my first principle, when I walked in

17    here, assuming I found that this has enough relevance for me to

18    require discovery, what is the problem from your point of view

19    with providing the actual analysis that is leading to the

20    allocation formula?

21         MS. HOFFMANN:  Your Honor, that analysis includes some

22    work product and economic analysis that we are applying

23    elsewhere in our investigation, and we would not want to reveal

24    that.

25         THE COURT:  Because you feel that there would be what?

15BMMUNC

 1          MS. HOFFMANN:  We believe that it would be damaging to

 2   our investigation and to our ability to negotiate effectively

 3   with other participants in the industry that we are

 4   investigating.

 5          THE COURT:  And that would be because if they found

 6   out the formula, what would happen?

 7          MS. HOFFMANN:  Well, there are elements in the formula

 8   that relate to the economic analysis that our economists are

 9   using to calculate damages, overcharges on particular type of

10   instances.

11          THE COURT:  I couldn't follow that at all.  What is

12   going to be the harm if other people learned about this

13   formula?  I should add, I don't know that they would ever have

14   to since I could make this a confidential production.  I still

15   don't understand what the harm is.

16          MS. HOFFMANN:  Your Honor, my recollection of the

17   allocation formula is complex.  It includes elements of the way

18   the economists looked at particular instruments and determined

19   overcharges.  And I don't think it would be appropriate to

20   reveal that at this stage in our investigation.

21          THE COURT:  That's a little conclusory, so I don't

22   know that it's going to carry much weight.

23          MS. HOFFMANN:  Again, we are willing to look at our

24   language in the notice and determine if we can make that more

25   detailed to provide greater insight into the allocation

15BMMUNC

1   formula.

2           THE COURT:  If we were to order production, what is

3   the format of which this is in right now?  Is there some report

4   that identifies the allocation formula?

5           MS. HOFFMANN:  No, your Honor.

6           THE COURT:  What is there?

7           MS. HOFFMANN:  There is really nothing except

8   exchanges among us and our economist regarding work product.

9           THE COURT:  There is no report or paper or discussion

10  of what formula should be used?

11          MS. HOFFMANN:  I don't think there is anything that I

12  would call a report, no.

13          MR. SAVERI:  Your Honor, may I?

14          THE COURT:  Sure.

15          MR. SAVERI:  This is Joe Saveri from Lieff Cabraser.

16          It would seem to me that if there is nothing written

17  down and it's all in the heads --

18          THE COURT:  She didn't say that.  She said it's in the

19  form of e-mails.

20          MR. SAVERI:  To the extent there is a writing, it

21  would seem to me that there is some description.  It doesn't

22  have to be the arithmetic, but it could be some kind of

23  description about how you value certain claims, how you

24  distinguish certain claims, and how the $67 million is going to

25  be allocated between different types of people, potential

15BMMUNC

1    opt-outs or opt-ins.  If that information exists, I haven't

2    really heard much about why it would be burdensome to produce

3    that.

4             THE COURT:  It's not burdensome.  There is another

5    point which I accept as part of the burden, which is that there

6    is some confidentiality work product.

7             MR. SAVERI:  Your Honor, with respect to that, it

8    seems to me that there are mechanisms that we could adopt to

9    specifically allay those concerns.  At this point we are

10   talking about access to the information.  We are not talking

11   about whether the information that there is a confidentiality

12   concern about would be put in the notice.

13            THE COURT:  Let's pretend you get the formula,

14   hypothetically.  What do you then do with it in terms of making

15   a proposal to Judge Marrero regarding --

16            MR. SAVERI:  Now we are talking about the relevance of

17   the material.  We are not talking about the burden.  But --

18            THE COURT:  I haven't yet decided all this.

19            MR. SAVERI:  I understand.  Your question is what will

20   we do with the information.  And what we do with the

21   information is we would look at it.  And with respect to the

22   notice, we would ask or make sure that to the extent that the

23   notice describes what the individual recipient of the notice's

24   share would be, whether that's fairly and accurately described.

25            I mean, your Honor, if the notice just says, you are

15BMMUNC

1    going to get $100,000, that would be the lump sum and I

2    understand that maybe that would be enlightening because the

3    recipient knows how much they bought, and this is how much they

4    are getting.  But, I mean, my experience in having done a

5    number of these cases is that one of the questions that someone

6    will ask when they are trying to make an informed decision

7    about whether to accept that or not is how is that calculated?

8    What was the math?  I think that's --

9               THE COURT:  Now we are going back to the same problem.

10   That's why I am shaking my head.

11              MR. SAVERI:  Your Honor, I think to the extent there

12   is a plan of allocation and it provides a basis for a

13   description of how an individual share was calculated either by

14   type, by some general description, that's information that we

15   would say needs to be accurately described in adequate detail.

16   It is simply not enough, we would argue, to say, there is a

17   plan of allocation, your claim has been calculated pursuant to

18   a plan of allocation, and that information is useful to

19   determine for any individual recipient of the notice whether to

20   opt in and accept it or not.  They are going to ask that

21   question.

22              MR. HAUSFELD:  Your Honor, if I may, as pointed out by

23   counsel for the Attorney General, there is a specific question

24   in the notice packet that starts off in the heading, how was my

25   share calculated?  So, obviously, that is a question that they

1  anticipate is important to being answered.  And the answer

2  starts with:  Your share was based on a formula.  What we are

3  asking for is the formula.

4          THE COURT:  I understand it's an unsatisfactory answer

5  for many reasons, but that doesn't mean that it's necessarily

6  going to be relevant because it may be that that's an

7  appropriate -- sometimes the answer is, how was my share

8  calculated?  Answer:  We are not going to tell you that.  Just

9  decide based on the amount of money you got and you decide

10 whether you want to do this.  That could be an adequate answer.

11 Just because the question is in here, that doesn't mean we have

12 to give all the information on it.

13         MR. HAUSFELD:  Your Honor is absolutely correct.  If

14 they said, it's none of your business, I would calculate what

15 you got.  That's not what they said.  They said it's based on a

16 formula.

17         THE COURT:  Mr. Hausfeld, if it said, that's none of

18 your business, we would still be here saying, we'd like to know

19 how you did it anyway.

20         MR. HAUSFELD:  I am not so sure.  If they were candid

21 in saying to their potential solicited opt-ins, how we

22 calculated, it is none of your business, that would be an

23 accurate description of what they did.

24         THE COURT:  I think that's tantamount to what they

25 have done right now.  They have essentially said that's none of

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15BMMUNC

1   your business.  They just did it in the polite lawyerly way.

2          MR. HAUSFELD:  I respectfully differ, your Honor.  If

3   someone says to me something is none of my business, I

4   understand that.  If they say to me, hey, your allocation was

5   based on a formula --

6          THE COURT:  Which we are not going to tell you because

7   it's none of your business.

8          MR. HAUSFELD:  Put that in.

9          THE COURT:  I don't think we are going to solve this

10  by putting in, this is none of your business.  It's obvious

11  they think it's none of their business because, otherwise, they

12  would have put the formula in or they would even tell you.

13         MR. HAUSFELD:  Your Honor, if I may, this is a

14  settlement which, in essence, is intended to be class wide.

15  You're soliciting an entire group of people that did business

16  with a particular defendant that had already been sued before

17  any state investigations by private parties, over which this

18  Court has jurisdiction.  Judge Marrero indicated he is

19  concerned that this potential class type settlement is going to

20  affect the Court's jurisdiction as well as his ability to

21  confer meaningful relief on the remainder of the class and the

22  remainder of the claims.

23         THE COURT:  We are going over old area.  I would just

24  point out, it's not of the magnitude of concern that you had

25  impressed upon me.  If it was, he would have a fairness hearing

15BMMUNC

1   on it.  It's something less than that.

2           MR. HAUSFELD:  Your Honor, again, I respectfully

3   disagree.  Without the Court's statement of findings, reasoning

4   and conclusions, as you started this hearing, it is a little

5   unclear exactly what was bothering the Court and what he wanted

6   to do about it.

7           And one of the things that we had asked at the

8   beginning of this process, not with you, but with the bank and

9   the state AGs, was to wait for the issuance of those findings

10  and reasoning and conclusions which would have helped formulate

11  responses more intelligently and rationally.

12          THE COURT:  The ones from Judge Marrero?

13          MR. HAUSFELD:  Yes.

14          THE COURT:  I wouldn't count on your getting much more

15  out of that.  I've got a feeling that might be limited to the

16  legal basis for the order.  I don't know that it's going to

17  elaborate on the content of the order.  There is no point in

18  waiting.

19          MR. HAUSFELD:  In that respect then --

20          THE COURT:  There may be a point in my doing my

21  rulings and you're objecting and taking it to Judge Marrero.

22  That's a different question.  But we are not going to wait on

23  anything.

24          MR. HAUSFELD:  In that respect, when the Court raises

25  concerns about actions which would undermine the Court's

1    jurisdiction, and which might impede the Court's ability to

2    render meaningful relief on the remaining claims before it, I

3    think all of these questions are significant and material to

4    those concerns.

5         What makes this entire process unprecedented is the

6    existence of a prior claim asserted in this court under federal

7    jurisdiction which preceded by a year or more any state

8    investigation, and clearly by more than a year of any attempted

9    state settlement of the same claims that were sought to being

10   settled by the class plaintiffs and to which this Court

11   appointed a special master for settlement purposes.

12        All of those factors have to be put in context as to

13   why the Court was bothered at all to do anything with respect

14   to states that basely said then, as they say now, this Court

15   has no right to oversee anything that I do.  They have lost

16   that.  That's gone.  Judge Marrero has taken some jurisdiction

17   over this.

18        THE COURT:  I feel we are repeating long-ago battles,

19   not even battles from earlier today, but ones from February.

20        Here is my problem.  I have concern about the Attorney

21   General's work product issues and matters they deem

22   confidential and matters that may affect other settlements.  So

23   I have now focused once again on the relevance point, and I

24   feel I'm back in the same boat as I was with respect to our

25   discussion regarding the particular amounts and how the amount

15BMMUNC

1    was derived for.  I have the same issue for the allocation as

2    between the parties.  I know you disagree.  I know you think

3    that's very important.  And you are welcome to object to my

4    failure to provide discovery when you provide your comments to

5    Judge Marrero.  Okay?

6            MR. HAUSFELD:  I respect your Honor's decision, and we

7    will preserve our rights to think about it on appeal.

8            THE COURT:  What's left in terms of the discovery

9    requests that isn't covered by what I've already said here?

10           MR. HAUSFELD:  Three essential elements.  One dealing

11   with the economic analysis, or the determination of the

12   settlement amount in the first place.

13           THE COURT:  The 65 million?

14           MR. HAUSFELD:  Yes.  The issue simply is was there

15   such an economic analysis done independently by the State

16   Attorney General's economist.  And if there was, is it

17   burdensome to produce that analysis.

18           THE COURT:  What's your position on that?

19           MS. HOFFMANN:  Your Honor, that goes to the heart of

20   our work product in this investigation, and we will not produce

21   it.  We cannot produce that and maintain the integrity of our

22   investigation and our work product on a going-forward basis.

23   We believe that this is not at all addressed to compliance with

24   the March 1 order.  It has nothing to do with the language --

25           THE COURT:  I just wanted to hear about burden,

15BMMUNC

1    though.

2          This is even a step removed from what we are talking

3    about here in terms of what is important for plaintiff to know.

4    They know they are getting a hundred thousand dollars.  How the

5    Attorney General evaluated the claim that led to them getting

6    $100,000 is even less pertinent than knowing the formula for

7    the $100,000.  I think if you lose on the first thing a

8    fortiori, you're losing on this one.  I assume you can't make

9    an argument that's more relevant than that.

10          MR. HAUSFELD:  Your Honor, this has been instructive

11   in this respect.  It's becoming clear, from what's being said,

12   that this is a settlement that's being offered to entities to

13   opt in to take in the literal black box.  They don't know the

14   formula.  They won't know the analysis.  As long as we are in a

15   position now, given those admissions and acknowledgements, we

16   will be able to comment in a notice to Judge Marrero, and then

17   Judge Marrero can decide in the context of the concerns he has

18   already expressed whether that's appropriate.

19          MS. HOFFMANN:  Your Honor, I just need to make one

20   statement here.  This was an investigation undertaken by the

21   state in the public interest.  We entered into a settlement

22   with Bank of America that encompassed many, many factors.  We

23   believe that it's a settlement that's in the public interest

24   and in the interest of the parties that are going to be able to

25   elect to claim restitution if they wanted to.

1          And I really have a problem with Mr. Hausfeld's

2     assertion that this settlement is in some sort of black box and

3     done in an obfuscatory manner that will injure parties that

4     were hurt by the conduct of the conspirators.

5          THE COURT:  I thought the black box analogy was

6     perfectly appropriate, but that's just me.

7          MR. HAUSFELD:  Thank you, your Honor.

8          MR. SULLIVAN:  Your Honor, if I can interject.  The

9     implication of the black box is, I think -- it has connotations

10    that could be misleading.

11         The negotiation was undertaken between the Bank of

12    America and the states in good faith over a significant period

13    of time with a substantial volume of information and data

14    exchanged and provided at the same time, the same data and

15    analysis was provided to the class plaintiffs.  There was full

16    discussion, full disclosure of what Bank of America's position

17    was with respect to settling this matter, detailed information

18    was provided, volumes of information was provided to the class.

19    Bank of America suggested that the class and the AGs and the

20    Attorneys General worked together.  The Attorneys General chose

21    not to.  They have every right to make that position.

22         The notice that's going to go out will not give a

23    formula that's based on work product.  No notice in the class

24    that has been presented in this matter has included such a

25    formula.  One of the more recent notices that Mr. Hausfeld

15BMMUNC

1    participated in makes no mention at all of a plan of allocation

2    in a five-page notice.  And there are other examples like that.

3          So I think while we are happy to have this discussion

4    about whether the formula should or shouldn't be provided in

5    the notice with Judge Marrero, I don't think discovery is

6    necessary to get us to that point.

7          THE COURT:  I don't know why we are going over this

8    again.

9          MR. SAVERI:  Your Honor, first of all, we represent

10   individuals to whom Mr. Sullivan never produced the information

11   that he described.  I don't think that's really the point of

12   why we are here today.

13         My clients are going to ask me, when they receive the

14   notice, what this number is, what it represents, and how it was

15   calculated.  What we are asking for in terms of discovery is

16   the kind of information in a notice and in the material that's

17   provided to people who received that to make an informed

18   decision, and that's why we are here today.  If that

19   information is not going to be provided, we understand that.

20   But it means that our clients are going to have a very

21   difficult time in making an informed decision about the letter

22   that they received.  And having done class action work for a

23   number of years, this kind of notice would not comport with

24   ordinary standards and the kind of due process notice that's

25   required.  But we understand your Honor's position.  But why we

1   are here and why we asked is to get that kind of information in

2   the notice that ordinarily people, entities, sophisticated

3   businesses need to make the decision.  That's the kind of

4   simple request.  I haven't heard very much about burden.  I

5   have heard about confidentiality.  We understand your position.

6   I just wanted to make that clear.

7           THE COURT:  This is a policy decision, I guess, that

8   Judge Marrero is going to have to make which is, is this going

9   to be like the class notice?  Is that what it's going to look

10  like?  Or is it something far less than that?  And if there

11  was -- I go back to what I said at the beginning.  If it was

12  something simple and nonburdensome, I would say just give it

13  and at least it could be presented in a little more detail to

14  Judge Marrero as to what you would be proposing to put in.

15  When issues of work product are raised and they are not

16  frivolous, I feel I have to put it over, as it were.

17          MR. HAUSFELD:  Your Honor, if I may, I believe you

18  have accurately described the dilemma.  It is to some extent a

19  policy decision.  And without further guidance or without

20  preguidance from the Court it makes it even more difficult at

21  this point to select out what type of notice Judge Marrero was

22  thinking of and what were underlying his concerns that he

23  expressed in his March 1 order.

24          There are two other areas that we wish to go into, but

25  I think that they are already kind of covered in the discussion

15BMMUNC

1   we have.  We are going to want to see the basis for the

2   statement of allegations.  And in terms of burdensomeness, if

3   they have that, will they turn it over to us in a meaningful

4   manner.  That is tied with your Honor's considerations of

5   relevance and possibly that's -- that is a decision, as your

6   Honor has said, that needs to be left to the Court.

7           THE COURT:  You're referring to what letter, letter C?

8   What are you talking about, the basis for the allegation?

9           MR. HAUSFELD:  There is in the notice --

10          THE COURT:  No.

11          MR. HAUSFELD:  Yes, it is C, your Honor.

12          THE COURT:  Letter C, which is characterized as the

13  representations made by Bank of America to the Attorney

14  Generals to support the settlement amount.

15          MR. HAUSFELD:  Right.  There is a running, several

16  multi page statement of what the state AGs are prepared to

17  prove at a trial, and we would like to see the basis for that.

18          THE COURT:  You're asking what Bank of America told

19  them, not --

20          MR. HAUSFELD:  It's unclear whether it was Bank of

21  America or it was more than Bank of America.

22          THE COURT:  I'm reading your letter.  You asked for

23  representations of Bank of America.  Now you want something

24  else?

25          MR. HAUSFELD:  Yes.  Because based on what

15BMMUNC

1    Mr. Sullivan has said, I take that the bank has provided

2    nothing differently to the state AGs than they had already

3    provided to the class plaintiffs.

4         But what the state AGs have said in their statement to

5    the class is they have information that they have gathered in

6    their investigative efforts, which they do not limit to Bank of

7    America, which support the allegations by the states that there

8    has been collusive conduct in the market for derivatives

9    generally, not just those engaged in by Bank of America.

10   Either they have those documents and we are asking for them to

11   be turned over, or it's too burdensome to produce them.  We

12   don't want any notes or any work product.

13        THE COURT:  This would presumably come exclusively

14   from the AG, because you got whatever it is from the Bank of

15   America.

16        MR. HAUSFELD:  Yes.

17        THE COURT:  I'll hear from them on burden.

18        MS. HOFFMANN:  Your Honor, my understanding of this

19   request is that the class counsel are requesting essentially

20   all of the information compiled during the three-year

21   investigation that we have conducted in this industry pursuant

22   to our subpoena power.

23        Let me say two things about that.  One is, we believe

24   that class counsel now have a considerable amount, if not all

25   of that information, not including work product, because they

15BMMUNC

 1     have access to things like audiotapes and documents and e-mails

 2     and data from many of the participants in the industry.  That's

 3     my understanding of the correspondence I have seen on the

 4     docket relating to discovery in this matter.

 5            And apart from that, your Honor, again, this is part

 6     of our investigatory file, class plaintiffs have served our

 7     office with a Freedom of Information law request, which we are

 8     addressing and will respond to in due course, consistent with

 9     the policies of the office.  But we are not prepared to turn

10     over our investigatory files voluntarily to the class.

11            THE COURT:  So it's burden, it's work product.  What's

12     the problem?

13            MS. HOFFMANN:  Your Honor, it's a confidential

14     investigation, and we don't believe it's relevant to the

15     notice.

16            I should also point out --

17            THE COURT:  So there is no burden.  It's work product?

18            MS. HOFFMANN:  Your Honor, it would be enormously

19     burdensome.

20            THE COURT:  Ms. Hoffman, I'm trying to get you to

21     answer my question.  I hope you won't feel put upon if I just

22     ask you to state on the record whether it's burden or work

23     product or both.

24            MS. HOFFMANN:  Your Honor, I apologize.  It's both.

25     And, your Honor, I also want to mention, we have reviewed,

15BMMUNC

 1   although we do not believe that our settlement is subject to

 2   the same kind of scrutiny as the Rule 23 settlement, we have

 3   reviewed notices in class actions, and none of them revealed

 4   the basis for allegations in terms of documentation to a group

 5   of plaintiffs before they have chosen whether they are going to

 6   opt in or opt out of the settlement.

 7         THE COURT:  I'll accept the representation on burden,

 8   that this would be very burdensome.  Of course, I can see a

 9   work product issue.  Again, this fits into this larger picture

10   problem of what their vision is of what's required to be

11   disclosed in the notice.

12         In light of the burden and the work product issue, I

13   am not going to order discovery at this point at this time.

14         What's left?

15         MR. HAUSFELD:  Your Honor, with respect to the burden

16   generally and work product, normally, in order to assert a work

17   product privilege, it can't be asserted in the abstract.  We

18   have not heard any particulars as to what specific information

19   is deemed to be work product so we can challenge that.  Could

20   we get a log?

21         THE COURT:  Not from a nonparty who has not even had a

22   subpoena or anything else.  That would be burdensome in and of

23   itself.  I think it's better for the big picture to be decided

24   before we get to that point.

25         MR. HAUSFELD:  I don't disagree, your Honor.  I think

15BMMUNC

1    it is a situation where the big picture is to be clarified by

2    the Court because for the Court to accept at face value, and it

3    may be correct, though, that the production, for example, of a

4    formula upon which it's represented they base the allocation on

5    involves work product, is a little stretch.

6            Normally, traditionally, there would be an ability to

7    test, what is work product separate from the formula?  Can the

8    formula be produced without the work product?  With regard to

9    burdensome, that would normally be a request, for example, to

10   provide an index or an inventory.  That shouldn't be

11   burdensome.

12           THE COURT:  We are in a little bit of a streamlined

13   process here.  This is not typical discovery.  This is our

14   effort to quickly determine what we can get to allow you to

15   give comments on a notice that's not part of this case and for

16   which there are reasons not to delay.  I don't think that these

17   typical requirements of Rule 26 discovery are necessary.

18           MR. SAVERI:  Your Honor, I would just say, at a

19   minimum, if there is a burden claim, it must be particularized

20   at some level, and the simple affirmation, that, yes, it is

21   burdensome, I would submit, respectfully, is insufficient.

22           THE COURT:  And which burdensome affirmation did you

23   feel was insufficient, the one as to every document that

24   supports their allegations?

25           MR. SAVERI:  I don't want to rewind the tape, but with

1    respect to the plan of allocation, I didn't think that there

2    was a particularized showing of --

3              THE COURT:  I didn't think there was any burden

4    showing on that.

5              MR. SAVERI:  Excuse me, your Honor?

6              THE COURT:  I think the showing that I accepted was

7    that it was confidential and work product rather than burden.

8              MR. SAVERI:  Excuse me, your Honor.  Maybe I didn't

9    hear that correctly.  But with respect to the last point, it

10   seems to me --

11             THE COURT:  The last point meaning every document that

12   supports --

13             MR. SAVERI:  We are talking about the particular

14   statements and information that may have been provided by Bank

15   of America and others.

16             THE COURT:  No, no, no.  Not Bank of America, because

17   I think everyone agreed they had that.  It was the non Bank of

18   America documents, wasn't it?

19             MR. SULLIVAN:  Your Honor is correct.

20             THE COURT:  And then the Attorney General said, now

21   you're asking us to talk about every subpoena we issued as part

22   of this three-year investigation.  That seems so obvious that

23   would be work product and burdensome and they would have a

24   confidentiality interest in not revealing the scope of their

25   investigation.  I didn't require anything further.  If there is

15BMMUNC

1     some particular question you want asked, I don't mind seeing if

2     we can use this opportunity to get an answer.

3          MR. SAVERI:  No, your Honor.

4          MR. HAUSFELD:  Your Honor, for purposes of the record,

5     if I may, your Honor has expressed that this request for

6     discovery and this search for information is, I think the words

7     you used are not part of this case.

8          THE COURT:  It's not part of the claims in this case,

9     the merits of the claims, which is what Rule 26 applies to, the

10    claims or defenses in this case.

11         MR. HAUSFELD:  I respectfully differ, your Honor.

12         THE COURT:  Hold on.  Stop.  If you would like to

13    obtain this discovery for some other purpose, which is to prove

14    your claims in this case, we will have a very different track

15    for that and it will not be expedited.  It will involve

16    subpoenas and document requests and the need to be consistent

17    with my prior order.  That's fine.  I'm not saying -- I'm not

18    making any ruling as to the relevance or burden or

19    producibility of any of this material with respect to your

20    claims or defenses in this case.

21         MR. HAUSFELD:  There is an aspect of what has occurred

22    which Judge Marrero clearly took note in his March order.

23    Because if he wished to do nothing, if he felt that this was a

24    process that could occur totally outside the oversight or

25    supervision or jurisdiction of this Court, he would have done

15BMMUNC

1    nothing.  He did something.

2            THE COURT:  Obviously, I'm open to some discovery or

3    we wouldn't be here.  I would have just issued an order saying

4    you're entitled to no discovery on this.

5            MR. HAUSFELD:  But the discovery issue goes to the

6    dilemma your Honor identified with respect to the policy behind

7    Judge Marrero's concerns, what type of notice is this.

8            Before notice would go out in a typical class action,

9    there would had to have been a motion for preliminary approval

10   and there would have had to have been a decision by the Court

11   that it made sense to do that and that the proposal was fair

12   and reasonable.

13           THE COURT:  We would have a fairness hearing, in fact.

14           MR. HAUSFELD:  No.  The fairness hearing would occur

15   after notice.

16           THE COURT:  Whatever.

17           MR. HAUSFELD:  But that step has been bypassed through

18   this process.  And the fairness hearing, as well, that would

19   have occurred subsequently is likewise bypassed.  So there are

20   no indicia of a traditional review or oversight by a Court to

21   determine whether or not a settlement is fair or reasonable or

22   a claimant should accept or not accept participation in a

23   particular settlement.

24           THE COURT:  We are a little bit spinning our wheels

25   here.  This is the very policy issue that I said is going to

1    have to be brought up with Judge Marrero.

2         MR. HAUSFELD:  All I wanted to do, your Honor, and I

3    appreciate your indulgence in allowing me to state that for the

4    record, we do believe that's a policy issue.  We do believe

5    that issue needs to be decided, given the observations about

6    what is and is not being said in the notice.

7         One of the things that was somewhat disturbing in

8    terms of an acknowledgement this morning, in one of the letters

9    from the state AGs, there was a reference made to the fact that

10   by reason of this seeking of the discovery by the class

11   plaintiffs and the California plaintiffs, the ability of the

12   state AGs to send out this notice has been unduly delayed.  But

13   given what the state AG said, they are not even ready yet to do

14   that themselves.  So there are representations being made that

15   don't accurately characterize this process.  And I think --

16        THE COURT:  Duly noted.  I am not sure it's relevant

17   to any of our issues today other than the fact that we are not

18   in perhaps the rush that we were told about earlier.  But it

19   really doesn't affect what I was doing because I am prepared

20   for what I view as nonburdensome discovery to require it.  And

21   if it takes a few weeks, that's not a problem for me.  But we

22   have larger issues than that.

23        MR. HAUSFELD:  Yes, your Honor.  And as your Honor has

24   stated a number of times, to which we agree, those larger

25   issues need to be decided and addressed by the Court.

15BMMUNC

1          THE COURT:  Any other topic areas that have not

2     essentially been disposed of by what you said?  Is there

3     something that you agree is not burdensome and is not subject

4     to an objection that I think is reasonable?

5          MR. HAUSFELD:  I don't think anything --

6          THE COURT:  The famous data from Mr -- begins with a

7     Z.

8          MR. HAUSFELD:  Zwerner.  It took us six weeks to seek

9     the information and two hours to learn that the Bank of America

10    had no information to give us because Mr. Zwerner is no longer

11    in their control, and they cannot state with any certainty

12    whether or not what he did had any impact on the financial

13    materials that were disclosed to us.

14         MR. SULLIVAN:  Your Honor, may I correct the record

15    again.  Mr. Hausfeld must have misspoke because we told class

16    plaintiffs, as soon as this order information was filed and we

17    had the first discussion about it, that the reason we could not

18    proffer any information to the class plaintiffs about this

19    order information before that time was because we didn't learn

20    of it ourselves.  It only came to us from the Justice

21    Department.  But they knew that we didn't have access to

22    Mr. Zwerner immediately.  It didn't take six weeks to get --

23    for them to get that information.

24         We did go through with them and spent three hours with

25    them two days ago and went through the particular trades that

 1    are in the so-called kitty and provided what information we

 2    have been able to gather based upon our own investigation, even

 3    though the results are limited.

 4           But to get to the question of discovery versus notice,

 5    which is, I think, what you were asking about, the class has a

 6    proffer.  They have the documents.  The Oakland plaintiffs,

 7    along with West Virginia, sent us a discovery request for this

 8    information.  To the extent they have requested information,

 9    they will get it this Friday, the 13th of May.  So I think,

10    unless there is disagreement from the plaintiffs here, I think

11    we can proceed on the basis that they will have that discovery

12    by no later than Friday, May the 13th.

13           MR. HAUSFELD:  What we were seeking the discovery for

14    was what was just not addressed, which is whether or not that

15    what Mr. Zwerner did affected the financials.  The answer to

16    that is the bank does not know.  We are satisfied with that

17    answer as of now, and we are not seeking any further

18    information from the bank on that.

19           THE COURT:  That's the end of it?

20           MR. HAUSFELD:  Yes.

21           THE COURT:  Anything else on your list of desired

22    discovery that we have not covered?

23           MR. SAVERI:  Your Honor, I think that in large part

24    our request with respect to Zwerner has been dealt with by the

25    previous discussion.  Just for purposes of the record, we

1    requested -- among the material we requested was some

2    information about whether the plan of allocation or other

3    materials that would be used to determine shares to individual

4    class members or potential opt-ins to this settlement was

5    affected by any tainted data.  I am not going to belabor that

6    because I think you have already heard argument about the

7    extent to which we are entitled to material regarding the plan

8    of allocation.

9          To my mind, it would be a subset of that and I don't

10   mean --

11         THE COURT:  Just to be clear, I'm willing to order

12   discovery on what might even be potentially irrelevant matters

13   as long as I don't see a burden or a work product problem.

14   This might have been an area where I would like to have you get

15   this information and with that information you could make the

16   argument to Judge Marrero.  The only reason you haven't gotten

17   the other information is I felt they were really burdensome as

18   to work product and confidentiality concerns.  I am not sure I

19   feel this way about this data.  Is there something you want

20   that you have not been getting?

21         MR. SAVERI:  What we would want, and maybe this would

22   be subject to some kind of response from the AGs or the B of A,

23   we want to know whether the plan of allocation as it was

24   determined, or whatever the basis is of the plan of allocation,

25   whether it has been affected or tainted by the information

1    that, apparently, because of Mr. Zwerner's activity, was

2    fraudulent or might be otherwise unreliable.  And I don't

3    know --

4              THE COURT:  This could be a very narrow question that

5    perhaps they wouldn't mind answering, which is that for

6    purposes of doing any calculations they did, in line No. 208 or

7    whatever it is that has the data that shows the revenue, did

8    they rely on Bank of America's data, which you believe is

9    tainted and which they may have other explanations for.

10             MR. SAVERI:  That's correct, your Honor.  I didn't

11   want to prejudgement answer --

12             THE COURT:  It's possible they won't object to answer

13   that.  We will turn to them and find out.

14             MS. HOFFMANN:  Your Honor, I can answer that question

15   right away.  We have looked at this Zwerner data.  We have gone

16   through it.  We are taking it into account in allocating the

17   restitution part.

18             THE COURT:  You are not taking Bank of America's data

19   at face value.

20             MS. HOFFMANN:  That is correct.

21             THE COURT:  Bank of America's input --

22             MS. HOFFMANN:  With regard to the transaction, which

23   the Zwerner kitty, we are taking it into account in revising

24   the allocation so that --

25             THE COURT:  How are you taking it into account?

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

15BMMUNC

1          MS. HOFFMANN:  I am not trying to be evasive here.  I

2     understand my very basic understanding is that sometimes the

3     profits were overstated, sometimes they were understated.  We

4     are figuring in those precise amounts to the extent we can to

5     determine --

6          THE COURT:  Are you just willing to describe perhaps

7     in writing what you did to do that?  In other words, how do you

8     know that something was over or understated?

9          MS. HOFFMANN:  I will have to talk to my group.  I

10    think in principle what we are willing to say today is we are

11    taking it into account on a transaction by transaction basis

12    for purposes of the allocation.

13         THE COURT:  Would you want more than that?

14         MR. SAVERI:  Your Honor, with respect, I would like an

15    answer to the last question you asked, how was it taken into

16    account.

17         THE COURT:  And you don't know whether you want to

18    answer that?

19         MS. HOFFMANN:  I don't know whether we can describe it

20    to a greater extent than I have just described it.

21         THE COURT:  Someone could answer it, presumably.  And

22    someone must be able to say that there was some method by which

23    they decided something was over or under, based on some

24    principle.

25         MS. HOFFMANN:  I think perhaps, your Honor, with all

15BMMUNC

1    respect, perhaps this can be addressed best by looking at the

2    language in the notice regarding allocation and trying to

3    propose more detailed language that would take into account

4    this issue as well.

5             THE COURT:  Let me change the topic area.

6             On the question of answering this question, I guess we

7    could put off to see if they are willing to answer it.  And if

8    they don't, that would be another complaint to Judge Marrero.

9             My suggestion is, you write a letter either saying we

10   are not going to give you further information or providing the

11   methodology or whatever else.  If you can do that --

12            MR. SAVERI:  That seems perfectly fair, your Honor.

13            THE COURT:  Do that in the next few days.  If you

14   don't give it, explain why you are not giving it, burden, work

15   product, whatever it is.  Please explain in detail.

16            MR. SAVERI:  That works for us, your Honor.

17            THE COURT:  Anything else on your list?

18            MR. HAUSFELD:  Nothing, your Honor.

19            THE COURT:  I guess we need a plan of action.

20            I suppose what you could do is consider this in an

21   aisle of discovery in any areas where I didn't give you the

22   discovery, and then you should somehow make a presentation to

23   Judge Marrero.

24            I guess there is two ways you can do this.  One is,

25   you could object to the failure to get the discovery.  The

15BMMUNC

1    other way, which might be better, would be to do it all in one

2    package, which is to say, here is our comments to the class

3    notice with the information we have now.  Here is why it's

4    totally inadequate, because we didn't get discovery on this,

5    that, and the other thing, and here is why we need that

6    discovery.  Because we want to be able to beef up this notice

7    to have the following kinds of things, and discovery would

8    allow us to do that.  I think that's the better way to do it.

9         When do you think you can put that together?

10         MR. HAUSFELD:  That would depend in large part on the

11    production that your Honor did grant discovery on, and that's

12    the list, and I would say within two weeks of getting that

13    list.

14         THE COURT:  That's fair.  And then you would

15    presumably respond to that letter to Judge Marrero?

16         MR. SULLIVAN:  Yes, we would, your Honor.  We could

17    respond to that within a week.  I would like to at least

18    explore this so we can move this along.  I know the state has

19    an interest in moving this along.  We would like to get this

20    issue resolved and potentially move us forward in other aspects

21    of this case.

22         Knowing precisely who is on the list is not going to

23    be necessary for the plaintiffs to make their arguments to

24    Judge Marrero about the content of the notice because the

25    content of the notice is going to go to those parties.  They

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

15BMMUNC

1   will get those parties.

2           THE COURT:  Why do you need the actual list in order

3   to make these arguments?

4           MR. HAUSFELD:  So that we can determine an argument

5   that we would make as to the adequacy of the -- to whom the

6   notice is being sent.  And then we can check the names of the

7   entities will be accompanied by the transactions, so we will be

8   able to know why they are getting this and who is getting it.

9   And, in our opinion, we want to object to that aspect of the

10  notice as well.

11          THE COURT:  There is your answer.  What do you want to

12  say about it?  Are we going over a week here?  I thought this

13  list was coming pretty soon.

14          MR. SULLIVAN:  I think the AG suggested it would be

15  within about a week.

16          THE COURT:  We are arguing over one week.  This is not

17  worth it.

18          MR. SULLIVAN:  Why don't we schedule it for say two

19  weeks.

20          THE COURT:  Two weeks from when they get the list.

21  The Attorney General has every incentive to speed this along.

22  They are the ones that have the greatest interest.  I am going

23  to rely on them to act expeditiously.  Maybe the two-week

24  period is too long.  It seems to me you can pretty much prepare

25  this starting now.  Can you do it one week from when you get

15BMMUNC

1   the list.  This is all on the table right now.  You've written

2   the letters anyway.

3           MR. HAUSFELD:  Again, your Honor, being of utmost

4   candor, we are coming into graduation season.  A lot of

5   people --

6           THE COURT:  That's why I don't want to put it any

7   later.

8           MR. HAUSFELD:  That's why I said give me two weeks so

9   we can work our personnel in a way that we can get it done

10  within two weeks of when we get it.

11          THE COURT:  Here is what I am going to do.  Let's say

12  one week.  If you need more time, talk to the other side.  If

13  there is a dispute, write me a letter.  I'll be very reasonable

14  about extensions.  Let's shoot for one week.  Let's start

15  preparing it now.  If you need more time, just come back to me.

16          MR. HAUSFELD:  Thank you.

17          THE COURT:  One week for the response.

18          Anything else from plaintiffs?

19          MR. HAUSFELD:  No, your Honor.

20          THE COURT:  From your side?

21          MR. SULLIVAN:  No, your Honor.

22          THE COURT:  Thank you.

23                            o0o

24

25