UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | MDL No. 1950 <br><br> Master Docket No. 08-02516 (VM) <br><br> **Declaration of William Isaacson in Support of Class Plaintiffs' Motion for an Award of Attorneys' Fees** |

I, William A. Isaacson, declare:

1. I am a partner of the law firm Boies, Schiller & Flexner LLP. I submit this Declaration in support of the application for an award of fees and expenses the reimbursement of expenses incurred in the course of this litigation related to the investigation, prosecution, and partial settlement of antitrust claims in the municipal derivatives industry. This firm has acted as co-lead counsel for the class in the above captioned litigation since being appointed as interim co-lead counsel by the Court on August 1, 2008.

2. My firm has collected monthly reports of time and expenses from Boies, Schiller & Flexner LLP; Hausfeld LLP; Susman Godfrey L.L.P. (collectively,"Lead Counsel") and over 20 other law firms that have been involved in prosecuting the Class plaintiffs' case (collectively with Lead Counsel, "Plaintiffs' Counsel": independent from Lead Counsel, "Class Counsel") from at least December, 2008 through the present in this case.

1

      a.    Plaintiffs' Counsel's compensation for services rendered in this case is, and has at all times been, wholly contingent on the success of this litigation.

      b.    The expenses incurred in prosecuting this case are reflected in the books and record of Plaintiffs' Counsel as they are maintained in the ordinary course of business. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred.

3.    Plaintiffs Counsel's work on behalf of the class has included:

- Conducting research, including industry research and witness interviews; initiating and facilitating meetings with potential witnesses; conducting research and analysis regarding the municipal derivatives industry; researching Defendants, jurisdiction, and venue issues for complaints; initiating and managing service on Defendants.

- Researching, compiling evidence for, and filing the Consolidated Class Action Complaint of 50 pages and the Second Consolidated Amended Class Action Complaint ("SCAC") of 84 pages; and a Third Consolidated Amended Class Action Complaint ("TCAC"), which will shortly be submitted to the Court.

- Successfully defending the SCAC from Defendants' motion to dismiss which was premised in numerous different legal grounds.

- Negotiating confidentiality and electronic data and document preservation stipulations.

- Conducting individual meet and confers with Defendants regarding multiple types of discovery (including document requests, interrogatories, and Fed. R. Civ. P. 30(b)(6)) depositions).
- Conducting multiple meet and confers with Department of Justice officials regarding multiple stays of discovery.
- Monitoring criminal dockets of 11 criminal cases in the Southern District of New York, involving 19 individual and corporate defendants with ties to bid-rigging in the municipal derivative industry, including: 09-cr-1058; 10-cr-139; 10-cr-200; 10-cr-209; 10-cr-434; 10-cr-654; 10-cr-721; 10-cr-794; 10-cr-803; 10-cr-1178; 10-cr-1217, including the review of thousands of pages of trial transcripts from the *Carollo* and *Ghavami* criminal trials.
- Attending hearings in criminal cases, and negotiating discovery with federal agencies responsible for pursuing criminal cases.
- Negotiating and obtaining the production of over 300,000 audio files from defendants.
- Listening to, coding, and summarizing hundreds of thousands of audio files produced by Defendants.
- Electronically reviewing and searching hundreds of thousands of pages of documents produced by Defendants.
- Conducting extensive discovery with 15 Defendants, including propounding and negotiating numerous document requests and filing several discovery motions, which resulted in over 85 separate

discovery productions to Class Plaintiffs over two years (and along with transactional data, exceeded over ten million pages).

- Conducting meet and confers to obtain production of Defendants' transactional data.
- Creating and maintaining a database for Defendants' transactional data.
- Working with economic experts to understand the municipal derivatives market, Defendants' unlawful conduct, and its impact.
- Collecting and producing thousands of documents and other information in response to Defendants' discovery requests.
- Coordinating and directing multiple settlement negotiations on behalf of Class Plaintiffs with Defendants.
- Participating in negotiations, review, and analysis of settlement escrow accounts with Defendants and banking institutions.
- Litigating the out-of-court settlements between certain Defendants and certain state Attorneys General to ensure that class members had procedural protections as embodied in Rule 23 of the Federal Rules of Civil Procedure.
- Participating in conferences and hearings with Court.
- Drafting over 25 letters to this Court, and 22 letters to Judge Gorenstein on behalf of the class, covering such topics as protective orders, settlement discussions, discovery issues, and stays of discovery.

- Vigorously litigating the class action over the course of several years.

4. Plaintiffs' Counsel have also conducted the following activities with respect to the settlements reached to date:

- Conducting numerous in–person meetings, telephone call and email exchanges with experienced counsel on both sides regarding the settlement terms over the course of several months.
- Undertaking many steps to ensure that they had all necessary information to advocate for a fair settlement that serves the best interests of the Settlement Class.
- Analyzing all of the contested legal and factual issues posed by the litigation in order to make accurate demands and evaluations of the settling Defendants' positions.
- Reviewing a substantial volume of documents produced by the settling Defendants.
- Engaging in arm's-length negotiations that led to these settlement agreements.
- Preparing an extensive program to provide notice to potential claimants from the settlement funds.
- Conducting legal and factual research regarding the pertinent issues.
- Working with industry and economic consultants and experts.
- Responding to inquiries from class members and potential class members regarding class settlement and issues and the status of the litigation.

5.  It was necessary for each Class Representative to review nearly twenty years of bond issues to identify the deals that involved municipal derivatives. In some instances, this required Class Representatives to communicate with former employees, past and current bond counsel and financial advisors to obtain the necessary background information and documents, assist in verifying whether transactions or deals met the criteria for municipal derivatives as defined in the complaint, and to identify additional potential document sources. This was a time-consuming and complicated process.

6.  Class Representatives also expended considerable time and effort to search for, identify and locate responsive documents. In some instances, Class Representatives searched for documents in numerous archived boxes to confirm whether relevant documents existed. For example, for one Class Representative, documents created in the 1990s were in paper format and stored in boxes amongst other materials, therefore significant time and effort was undertaken to search for and locate responsive documents. The search for documents also required reviewing materials in several locations and from a variety of sources, such as: board meeting minutes, which in some instances were located in volumes of bound books; archived boxes of paper files of former municipal employees; records in the accounting and tax departments.

7.  Class Representatives also spent time consulting with counsel and their computer experts to identify and collect existing ESI, which in some instances, required numerous interviews with employees in the administration, business, accounting and IT departments.

8.  Class Representatives were also involved with the evaluation of settlements with multiple defendants (over five), as well as the negotiation process.

9. At historic rates, the aggregate lodestar reported to us by all counsel, derived by multiplying hours expended by each timekeeper's hourly rate, equals $31,112,043 as of the end of July 2012. Lead Counsel have requested the authority to award fees and expenses to Class Counsel based on Lead Counsel's estimation of their value and contribution to the case. Based on our knowledge of the case and the work done to date, however, Lead Counsel are confident that any adjustments to the lodestar amount reflecting that judgment will not reduce the total lodestar below the fees requested in this application.

10. As of July 2012, Plaintiffs' Counsel has expended 18,031.55 hours on this matter.

11. Over the life of this litigation, reported hourly rates for timekeepers at Lead Counsel have ranged from $130 to $975 per hour.

12. Class Plaintiffs' Counsel has incurred $ 71,796.67 in previously unreimbursed expenses reported from October 2011 to July 2012.

13. In addition to these expenses, Plaintiffs Counsel have expended $521,364.67 in unreimbursed notice and administrative costs relating to the settlements to date, which will be paid from the respective settlements directly.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of September, 2012, at Washington D.C.

_____
William A. Isaacson