# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION | MDL No. 1950 <br><br> Master Docket No. 08-02516 (VM) (JCF) <br><br> DECLARATION OF WILLIAM ISAACSON IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES |
| THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | |

I, William A. Isaacson, declare:

1. I am a partner of the law firm Boies, Schiller & Flexner LLP. I submit this Declaration in support of the application for an award of fees and expenses the reimbursement of expenses incurred in the course of this litigation related to the investigation, prosecution, and partial settlement of antitrust claims in the municipal derivatives industry. This firm has acted as co-lead counsel for the class in the above captioned litigation since being appointed as interim co-lead counsel by the Court on August 1, 2008.

2. My firm has collected monthly reports of time and expenses from Boies, Schiller & Flexner LLP; Hausfeld LLP; Susman Godfrey L.L.P. (collectively, "Lead Counsel") and over 20 other law firms that have been involved in prosecuting the Class plaintiffs' case (collectively with Lead Counsel, "Plaintiffs' Counsel") from at least December, 2008 through the present in this case.

   a) Plaintiffs' Counsel's compensation for services rendered in this case is, and has at all times been, wholly contingent on the success of this litigation.

   b) The expenses incurred in prosecuting this case are reflected in the books and record of Plaintiffs' Counsel as they are maintained in the ordinary course of

1

business. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred.

3. Plaintiffs Counsel's work on behalf of the class has included:

a) Conducting research, including industry research and witness interviews; initiating and facilitating meetings with potential witnesses; conducting research and analysis regarding the municipal derivatives industry; researching Defendants, jurisdiction, and venue issues for complaints; initiating and managing service on Defendants.

b) Researching, compiling evidence for, and filing the Consolidated Class Action Complaint of 50 pages and the Second Consolidated Amended Class Action Complaint ("SCAC") of 84 pages; and a corrected Third Consolidated Amended Class Action Complaint ("TCAC") of 127 pages.

c) Successfully defending the SCAC from Defendants' motion to dismiss, which was premised in numerous different legal grounds, and procuring answers to the TCAC.

d) Negotiating confidentiality and electronic data and document preservation stipulations.

e) Conducting individual meet and confers with Defendants regarding multiple types of discovery (including document requests, interrogatories, and Fed. R. Civ. P. 30(b)(6)) depositions).

f) Conducting multiple meet and confers with Department of Justice officials regarding multiple stays of discovery.

g) Monitoring criminal dockets of 11 criminal cases in the Southern District of New York, involving 19 individual and corporate defendants with ties to bid-rigging in the municipal derivative industry, including: 09-cr-1058; 10-cr-139; 10-cr-200; 10-cr-209; 10-cr-434; 1 0-cr-654; 1 0-cr-721; 1 0-cr-794; 1 0-cr-803; 1 0-cr-1178; 1 0-cr-1217, including the review of thousands of pages of trial transcripts from the criminal trials for liability evidence.

h) Attending hearings in criminal cases, and negotiating discovery with federal agencies responsible for pursuing criminal cases.

i) Negotiating and obtaining the production of over 300,000 audio files from defendants.

j) Completing the coding, and summarizing of all 300,000 audio files produced by Defendants.

k) Electronically reviewing and searching hundreds of thousands of pages of documents produced by Defendants.

l) Conducting extensive discovery with defendants, including propounding and negotiating numerous document requests and filing several discovery motions, which resulted in over 85 separate discovery productions to Class Plaintiffs.

m) Conducting meet and confers to obtain production of Defendants' transactional data.

n) Creating and maintaining a database for Defendants' transactional data.

o) Working with economic experts to understand the municipal derivatives market, Defendants' unlawful conduct, and its impact.

p) Collecting and producing thousands of documents and other information in response to Defendants' discovery requests.

q) Coordinating and directing multiple settlement negotiations on behalf of Class Plaintiffs with Defendants.

r) Participating in negotiations, review, and analysis of settlement escrow accounts with Defendants and banking institutions.

s) Litigating the out-of-court settlements between certain Defendants and certain state Attorneys General to ensure that class members had procedural protections as embodied in Rule 23 of the Federal Rules of Civil Procedure.

t) Participating in conferences and hearings with Court.

u) Drafting over 25 letters to this Court, and 22 letters to Judge Gorenstein on behalf of the class, covering such topics as protective orders, settlement discussions, discovery issues, and stays of discovery.

v) Developing a discovery plan for remaining defendants.

w) Vigorously litigating this case from inception.

4. Plaintiffs' Counsel have also conducted the following activities with respect to the settlements reached to date:

a) Conducting numerous in-person meetings, telephone call and email exchanges with experienced counsel on both sides regarding the settlement terms over the course of several months.

b) Undertaking many steps to ensure that they had all necessary information to advocate for a fair settlement that serves the best interests of the Settlement Class.

c) Analyzing all of the contested legal and factual issues posed by the litigation in order to make accurate demands and evaluations of the settling Defendants' positions.

    d) Reviewing a substantial volume of documents produced by the settling Defendants.

    e) Engaging in arm's-length negotiations that led to these settlement agreements.

    f) Preparing a program to provide notice to potential claimants from the settlement funds.

    g) Conducting legal and factual research regarding the pertinent issues.

    h) Working with industry and economic consultants and experts.

    i) Responding to inquiries from class members and potential class members regarding class settlement and issues and the status of the litigation.

5. Class Representatives continued to monitor the litigation, and were involved with the evaluation of settlements with multiple defendants as well as the negotiation process.

6. At historic rates, the aggregate lodestar reported to us by all counsel, derived by multiplying hours expended by each timekeeper's hourly rate, equals $42,110,371.45 from August 2008 to September 2013. Lead Counsel have requested the authority to award fees and expenses to Class Counsel based on Lead Counsel's estimation of their value and contribution to the case. Based on our knowledge of the case and the work done to date, however, Lead Counsel are confident that any adjustments to the lodestar amount reflecting that judgment will not reduce the total lodestar below the fees requested in this application.

7. Since Plaintiffs' last request for fees, Plaintiffs' Counsel have expended resources to complete the review of all the audio files produced by defendants, research supporting the drafting of the corrected third amended complaint, creation of evidence files for all defendants, preparations for ongoing discovery (including developing a discovery plan for remaining defendants), and the work necessary to achieve these two settlements.

8. Over the life of this litigation, reported hourly rates for timekeepers at Plaintiffs' Counsel have ranged from $110 to $1050 per hour.

9. Class Plaintiffs' Counsel has incurred $38,522.51 in previously unreimbursed expenses reported from July 2012 to September 2013, which consisted mainly of charges for computer legal research, copies, postage/courier charges, telephone and travel expenses.

10. In addition to these expenses, Plaintiffs' Counsel have expended $635,760.38 in notice and administrative costs relating to both Settlements to date, which will be paid from the respective settlements directly.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of April, 2014, at Washington D.C.

William A. Isaacson