## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MUNICIPAL DERIVATIVES ANTITRUST LITIGATION | MDL No. 1950<br><br>Master Docket No. 08-02516 (VM) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Declaration of William A. Isaacson in Support of Class Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursment of Expenses |

I, William A. Isaacson, declare:

1. I am a partner in the law firm of Boies, Schiller & Flexner LLP. I submit this Declaration in support of the application for an award of fees and the reimbursement of expenses incurred in the course of this litigation related to the investigation, prosecution, and settlement of antitrust claims in the municipal derivatives industry. My firm has acted as co-lead counsel for the class in the above captioned litigation since being appointed as interim co-lead counsel by the Court on August 1, 2008.

2. My firm has collected our own monthly reports of time and expenses, as well those of Hausfeld LLP and Susman Godfrey L.L.P. (collectively, "Lead Counsel") and over 20 other law firms that have been involved in prosecuting the Class plaintiffs' case (collectively with Lead Counsel, "Plaintiffs' Counsel": independent from Lead Counsel, "Class Counsel") from at least December, 2008 through the present in this case.

3. Plaintiffs' Counsel's compensation for services rendered in this case is, and has at all times been, wholly contingent on the success of this litigation.

4.      The expenses incurred in prosecuting this case are reflected in the books and record of Plaintiffs' Counsel as they are maintained in the ordinary course of business. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. To date, Plaintiffs' Counsel have collectively incurred $4,079,011.59 in out-of-pocket expenses in prosecuting this action. These expenses were reasonably necessary to the prosecution of this action, are of the type that counsel in such cases normally incur, and include such items as $2,200,806.72 in expert fees and expenses and $149,214.91 in mediation fees and expenses. Counsel have maintained detailed records enumerating these expenses and will provide it to the Court upon request. Because this Court has already approved payment of $1,594,813.35 of those expenses in connection with earlier settlements, the total unreimbursed expenses that Plaintiffs' Counsel seek to recover through this motion are: **$2,484,198.24**

5.      Plaintiffs Counsel's work on behalf of the class has included:

- Conducting research, including witness interviews; initiating and facilitating meetings with potential witnesses; conducting research and analysis regarding the municipal derivatives industry; researching Defendants, jurisdiction, and venue issues for complaints; initiating and managing service on Defendants.

- Researching, compiling evidence for, and filing multiple consolidated complaints on behalf of the Class.

- Successfully defending against Defendants' attacks on those complaints premised on numerous different legal grounds.

- Negotiating confidentiality and electronic data and document preservation stipulations.

- Conducting individual meet and confers with Defendants regarding multiple types of discovery (including document requests, interrogatories, and Fed. R. Civ. P. 30(b)(6)) depositions).

- Conducting multiple meet and confers with Department of Justice officials regarding multiple stays of discovery.

- Monitoring criminal dockets of multiple criminal cases including the review of thousands of pages of trial transcripts.

- Attending hearings in criminal cases, and negotiating discovery with federal agencies responsible for pursuing criminal cases.

- Negotiating and obtaining the production of over 300,000 audio files from defendants.

- Listening to, coding, and summarizing hundreds of thousands of audio files produced by Defendants.

- Electronically reviewing and searching well over a million pages of documents produced by Defendants.

- Conducting extensive discovery with 15 Defendants, including propounding and negotiating numerous document requests and filing multiple discovery motions, which resulted in over 85 separate discovery productions to Class Plaintiffs (which, along with transactional data, exceeded ten million pages).

- Conducting meet and confers to obtain production of Defendants' transactional data.

- Preparing for and taking the depositions of Defendants and third-party witnesses.

- Collecting, reviewing, and producing documents on behalf of Class Representatives.

- Preparing for the depositions of Class Representatives.

- Creating and maintaining a database for Defendants' transactional data.

- Working with economic experts to understand the municipal derivatives market, Defendants' unlawful conduct, and its impact.

- Identifying, retaining, and working with economic experts to prepare a report supporting class certification.

- Preparing a draft brief supporting class certification.

- Collecting and producing thousands of documents and other information in response to Defendants' discovery requests.

- Contacting all 20 individuals indicted in connection with the DOJ's prosecution of the municipal derivative industry, as well as other confidential government witnesses.

- Obtaining witness interviews from many indicted individuals, and taking several of their depositions, including working with star government witness, Douglas Goldberg, to provide a 45 paragraph sworn affidavit detailing Defendants' role in the conspiracy, which was filed with the Court (Dkt. 1960-3).

- Coordinating and directing multiple settlement negotiations on behalf of Class Plaintiffs with Defendants.

- Participating in negotiations, review, and analysis of settlement escrow accounts with Defendants and banking institutions.

- Litigating the out-of-court settlements between certain Defendants and certain state Attorneys General to ensure that class members had procedural protections as embodied in Rule 23 of the Federal Rules of Civil Procedure.

- Participating in conferences and hearings with this Court.

- Drafting numerous letters to this Court and to Judge Gorenstein on behalf of the class, covering such topics as protective orders, settlement discussions, discovery issues, and stays of discovery.

- Vigorously litigating the class action over the course of nearly a decade.

6. Plaintiffs' Counsel have also conducted the following activities with respect to the settlements reached in this case:

- Conducting numerous in-person meetings, telephone call and email exchanges with experienced counsel on both sides regarding the settlement terms over the course of several months.

- Undertaking many steps to ensure that they had all necessary information to advocate for a fair settlement that serves the best interests of the Settlement Class.

- Analyzing all of the contested legal and factual issues posed by the

> litigation in order to make accurate demands and evaluations of the settling Defendants' positions.

- Reviewing a substantial volume of documents produced by the settling Defendants.

- Engaging in extended arm's-length negotiations, often with the participation of a well-respected former federal judge serving as mediator, that led to these settlement agreements.

- Preparing multiple written mediation submissions for each defendant with whom the Class mediated.

- Preparing an extensive program to provide notice to potential claimants from the settlement funds.

- Conducting legal and factual research regarding the pertinent issues.

- Working with industry and economic consultants and experts.

- Responding to inquiries from class members and potential class members regarding class settlement and issues and the status of the litigation.

7. It was necessary for each Class Representative to review nearly twenty years of bond issues to identify the deals that involved municipal derivatives. In some instances, this required Class Representatives to communicate with former employees, past and current bond counsel and financial advisors to obtain the necessary background information and documents, assist in verifying whether transactions or deals met the criteria for municipal derivatives as defined in the complaint, and to identify additional potential document sources. This was a time-consuming and complicated process.

8. Class Representatives also expended considerable time and effort to search for, identify and locate responsive documents. In some instances, Class Representatives searched for documents in numerous archived boxes to confirm whether relevant documents existed. For example, for one Class Representative, documents created in the 1990s were in paper format and

stored in boxes amongst other materials, therefore significant time and effort was undertaken to search for and locate responsive documents. The search for documents also required reviewing materials in several locations and from a variety of sources, such as: board meeting minutes, which in some instances were located in volumes of bound books; archived boxes of paper files of former municipal employees; records in the accounting and tax departments.

9.	Class Representatives also spent time consulting with counsel and their computer experts to identify and collect existing ESI, which in some instances, required numerous interviews with employees in the administration, business, accounting and IT departments.

10.	Class Representatives were also involved with the evaluation of settlements with multiple defendants throughout the negotiation process.

11.	At historic rates, the aggregate lodestar reported by all counsel, derived by multiplying hours expended by each timekeeper's historic hourly rate, exceeds $47 million as of the end of March 2016. Given that this case has been actively litigated for nearly a decade, if adjusted to current rates, that number would undoubtedly be substantially higher. For example, if all of the time I personally worked on this lawsuit were calculated at my current, rather than my historical, billing rate, the lodestar attributable to my work would be approximately 32% higher. Similarly, the Susman Godfrey firm has determined that its lodestar would be more than 24% higher if calculated at current, rather than historical, rates.

12. As of the end of March 2016, Plaintiffs' Counsel have collectively expended more than 120,000 hours on this matter.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of May, 2016, at Palo Alto, California

William A. Isaacson